**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**CASE NO.:_____**

STARR INDEMNITY & LIABILITY
COMPANY, a Texas corporation,

       Plaintiff,

v.

JOHN MORIARTY & ASSOCIATES OF
FLORIDA, INC., a Massachusetts corporation,

       Defendant.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Starr Indemnity & Liability Company (**"Starr Indemnity"**) brings this action seeking declaratory relief against Defendant John Moriarty & Associates of Florida, Inc. (**"JMAF"**) and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    This is a diversity action for declaratory relief pursuant to 28 U.S.C. § 2201 to declare the rights and other legal relations of the parties regarding an insurance policy issued by Starr Indemnity.

2.    Starr Indemnity is a corporation organized and existing under the laws of the State of Texas with its principal place of business in the State of New York.

3.    JMAF is a corporation organized and existing under the laws of the State of Massachusetts with its principal place of business at 3 Church Street, Winchester, Massachusetts 01890.

4.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship between Starr Indemnity and JMAF. The

amount in controversy exceeds $75,000.00, exclusive of interest and costs. Indeed, the putative class plaintiffs in the Main Underlying Lawsuit (defined below) allege that they have sustained "hundreds of millions of dollars in damages." *See* Ex. 1 ¶ 6. This amount exceeds the limits of the Starr Practice Policy (defined below) as well as the underlying policies in the CCIP Tower of Insurance and the 2020-2021 Practice Tower of Insurance (both defined below).

5.      This Court has personal jurisdiction over JMAF, and venue is proper in this District under 28 U.S.C. § 1391.

6.      This action is brought pursuant to 28 U.S.C. § 2201, which provides that the Court may declare the rights and other legal relations of the parties. Starr Indemnity and JMAF are both parties having an interest in the insurance policy referenced herein.

7.      All conditions precedent to filing this action have been satisfied or waived.

## BACKGROUND

### The Underlying Claims

8.      This matter arises out of the June 24, 2021 collapse of the Champlain Towers South condominium building (**"Champlain Towers"**) in Surfside, Florida.

9.      The following lawsuits (collectively, the **"Underlying Lawsuits"**) related to the Champlain Towers collapse have been filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County against JMAF by and/or on behalf of alleged unit owners, residents, occupants, and/or guests at Champlain Towers at the time of the collapse, as well as a purported subrogee of some such individuals:

      a.   *In re: Champlain Towers South Collapse Litigation* (Case No. 2021-015089-CA-01) (the **"Main Underlying Lawsuit"**). The operative complaint in the Main Underlying Lawsuit is attached as **Exhibit 1**.

b. *Valentina Arango Gomez, as Personal Representative of the Estate of Catalina Gomez Ramirez v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-020530-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 2**.

c. *Vivian Mora Duenas and Cristina Mora Bonfante, as Co-Personal Representatives of the Estate of Juan Alberto Mora, Jr. v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-020950-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 3**.

d. *Vivian Mora Duenas and Cristina Mora Bonfante, as Co-Personal Representatives of the Estate of Juan Alberto Mora, Sr. v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-020877-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 4**.

e. *Sergio Barth Tobar and Juliana Gomez, as Co-Personal Representatives of the Estate of Valeria Barth Gomez v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-022374-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 5**.

f. *Sergio Barth Tobar, as Personal Representatives of the Estate of Luis Fernando Barth v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-027161-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 6**.

g. *Maximiliano Lucero, as Personal Representative of the Estates of Fabian Alberto Nunez and Sofia Galfrascoli Nunez v. Champlain Towers South Condominium*

*Association, Inc., et al.* (Case No. 2021-026638-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 7**.

h.  *Adriana LaFont, as Personal Representative of the Estate of Manuel Victor LaFont, Jr. v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-025137-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 8**.

i.  *Abraham Benhayoun, as Personal Representative of the Estate of Cristina Elvira Betarte v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-017562-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 9**.

j.  *Abraham Benhayoun, as Personal Representative of the Estate of Leon Oliwkowicz Paitnika v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-017558-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 10**.

k.  *Enrique Arango, as Personal Representative of the Estate of S.C. v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-018527-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 11**.

l.  *Josefina Henriquez, as Personal Representative of the Estate of Ana Isabel Ortiz v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-019164-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 12**.

m.  *Erika Giganti, as Personal Representative for the Estate of Francis Rosa Fernandez v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-016855-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 13.**

n.  *Sergio Lozano, as the Personal Representative for the Estates of Antonio and Gladys Lozano v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-016856-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 14**.

o.  *Juana Villalba Rojas, as Personal Representative of the Estate of Leidy Vanessa Luna Villalba v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2021-17238-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 15**.

p.  *Universal Property & Casualty Insurance Company a/s/o Max Friedman and Ellen Friedman, et al. v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2022-001944-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 16**.

q.  *Konstantinos Giannitsopoulos and Fatima Baghat Giannitsopoulos, as Co-Personal Representatives of the Estate of Andreas Konstantinos Giannitsoploulos v. Champlain Towers South Condominium Association, Inc., et al.* (Case No. 2022-003172-CA-01). The operative complaint from this lawsuit is attached as **Exhibit 17**.

10.   The Main Underlying Lawsuit is a putative class action. The plaintiffs in the Main Underlying Lawsuit filed suit both on behalf of themselves and on behalf of putative class and subclass members who were unit owners, residents, occupants, and/or guests at Champlain Towers at the time of the collapse.

11.   The plaintiffs in the Underlying Lawsuits allege that JMAF was the general contractor for the construction of a condominium building next to Champlain Towers South known as "Eighty-Seven Park." The plaintiffs in the Underlying Lawsuits generally allege that the

construction of Eighty-Seven Park compromised the structure of Champlain Towers South and contributed to its collapse.

12.     The plaintiffs in the Underlying Lawsuits have asserted claims for negligence and/or strict liability against JMAF based on JMAF's alleged involvement in the construction of Eighty-Seven Park.

13.     The plaintiffs in the Underlying Lawsuits seek to hold JMAF liable for bodily injuries and/or property damage allegedly sustained as a result of the Champlain Towers collapse.

14.     In the Main Underlying Lawsuit, co-defendant Champlain Towers South Condominium Association, Inc. (the **"Champlain Association"**) has filed a cross-claim against JMAF and other defendants, a copy of which is attached as **Exhibit 18**. The allegations in the cross-claim are similar to the allegations in the Main Underlying Lawsuit. In the cross-claim, the Champlain Association asserts claims of negligence and strict liability against JMAF, and seeks to hold JMAF liable for bodily injuries and/or property damage allegedly sustained as a result of the Champlain Towers collapse.

15.     In addition to the Underlying Lawsuits, St. Johns Insurance Company, Inc. (**"St. Johns"**) sent a letter dated December 7, 2021, to JMAF indicating that St. Johns has paid property damage losses allegedly sustained by certain of its purported insureds in connection with the Champlain Towers South collapse (the **"St. Johns Subrogation Demand"**). A copy of the St. Johns Subrogation Demand is attached as **Exhibit 19**. The St. Johns Subrogation Demand and the Underlying Lawsuits are collectively referred to herein as the **"Underlying Claims."**

16.     In the St. Johns Subrogation Demand, St. Johns alleged that JMAF provided "general contracting services for the construction project at 'Eighty-Seven Park,' which may be contributed to the collapse." St. Johns further asserted that it is a subrogee of the aforementioned individuals and

demanded that JMAF pay St. Johns the amount it allegedly paid to the individuals for their alleged property damage losses.

**The CCIP Tower of Insurance**

17.     JMAF was issued a tower of liability insurance policies in a Contractor Controlled Insurance Program (**"CCIP"**) for the Eighty-Seven Park project (the **"CCIP Tower of Insurance"**). The CCIP Tower of Insurance is comprised of the following insurance policies:

a.  A primary insurance policy (policy no. CR006N817) issued by Aspen Specialty Insurance Company (attached as **Exhibit 20**).

b.  A first-level excess insurance policy (policy no. CX006MW17) issued by Aspen Specialty Insurance Company (attached as **Exhibit 21**).

c.  A second-level excess insurance policy (policy no. NY17FXS905191IC) issued by Navigators Specialty Insurance Company (attached as **Exhibit 22**).

d.  A third-level excess insurance policy (policy no. CEX09602849-00) issued by Gemini Insurance Company (attached as **Exhibit 23**).

e.  A fourth-level excess insurance policy (policy no. 1000015609) issued by Starr Surplus Lines Insurance Company (the **"Starr CCIP Policy"**) (attached as **Exhibit 24**).

f.  A fifth-level excess insurance policy (policy no. EXC2063550) issued by Great American Insurance Company (attached as **Exhibit 25**).

g.  A sixth-level excess insurance policy (policy no. EXC30000449300) issued by Endurance Assurance Corporation (attached as **Exhibit 26**).

**The 2020-2021 Practice Tower of Insurance**

18.     Additionally, John Moriarty & Associates, Inc. (**"JMA"**) was issued a tower of liability insurance policies for the Policy Period from October 31, 2020 to October 31, 2021 (the **"2020-2021 Practice Tower of Insurance"**).

19.     For purposes of the Underlying Claims, any coverage provided by the 2020-2021 Practice Tower of Insurance applies in excess of the CCIP Tower of Insurance. *See* Arch Practice Policy, Wrap-Up Exclusion With Limited Exception for Excess Coverage Endorsement (00 GL0540 00 02 11).

20.     The 2020-2021 Practice Tower of Insurance includes the following insurance policies:

a.  A primary insurance policy (policy no. 11PKG8931805) issued by Arch Insurance Company (the **"Arch Practice Policy"**) (attached as **Exhibit 27**).

b.  A first-level excess insurance policy (policy no. US00068515LI20A) issued by XL Specialty Insurance Company (attached as **Exhibit 28**).

c.  A second-level excess insurance policy (policy no. AEC 9826955-09) issued by American Guarantee and Liability Insurance Company (attached as **Exhibit 29**).

d.  A third-level excess insurance policy (policy no. 1000586652201) issued by Starr Indemnity (the **"Starr Practice Policy"**) (attached as **Exhibit 30**).

**The Starr Practice Policy**

21.     The Starr Practice Policy was delivered to the broker of JMA and JMAF in New York.

22.     Section I. Coverage in the Excess Liability Policy Form (form number XS 100 (10/08)) in the Starr Practice Policy states, in part:

**A.** We will pay on behalf of the Insured, the "Ultimate Net Loss" in excess of the "Underlying Insurance" as shown in **ITEM 5.** of the Declarations, that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies and that takes place in the Coverage Territory. Except for the terms, definitions, conditions and exclusions of this Policy, the coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy(ies) shown in **ITEM 5.A.** of the Declarations.

**B.** Regardless of any other warranties, terms, conditions, exclusions or limitations of this Policy, if any applicable Underlying Insurance Policy(ies) does not cover "Ultimate Net Loss" for reasons other than exhaustion of its limit of liability by payment of claims or suits, then this Policy will not cover such "Ultimate Net Loss".

**C.** The amount we will pay for the "Ultimate Net Loss" is limited as described in **SECTION II. LIMITS OF INSURANCE.**

23. Section III in the Excess Liability Policy Form (form number XS 100 (10/08)) in the

Starr Practice Policy includes the following definitions:

**A.** "Ultimate Net Loss"

"Ultimate Net Loss" means the total sum, after reduction for all recoveries including other valid and collectible insurance, excepting only the "Underlying Insurance" scheduled under **ITEM 5.** of the Declarations, actually paid or payable due to a claim or suit for which you or an Insured are liable either by a settlement to which we agreed or a final judgment.

The term "Ultimate Net Loss" shall also include defense costs when such defense costs are included within the limits of insurance of any applicable "Underlying Insurance".

**B.** "Underlying Insurance"

"Underlying Insurance" means the Policy(ies) and/or self-insured retention identified in ITEM 5. of the Declarations. "Underlying Insurance" shall include:

**1.** The First Underlying Insurance Policy(ies) scheduled in **ITEM 5.A.** of the Declarations;

**2.** Any Additional Underlying Insurance Policy(ies) scheduled in **ITEM 5.B.** of the Declarations; and

**3.** Any renewal or replacement of such Policy(ies).

24.     The Arch, XL, and American Guarantee Practice Policies are the applicable First Underlying Insurance Policy(ies). *See* Starr Practice Policy, Excess Liability Policy Schedule of Underlying Insurance (XS 102 (10/08)). Accordingly, except as noted otherwise in the Starr Practice Policy (including in the portion of Section I. Coverage quoted above), the Starr Practice Policy follows the terms, definitions, conditions and exclusions of these policies.

25.     Page 3 of the Excess Liability Policy Form (XS 100 (10/08)) in the Starr Practice Policy defines Insured as follows:

> The word Insured means the Named Insured and any person or organization qualifying as an Insured in the First Underlying Insurance Policy(ies), but only to the extent to which such person(s) or organization(s) qualify as an Insured in the First Underlying Insurance Policy(ies) at the inception date of this Policy. Newly acquired or formed organizations must comply with **SECTION IV. CONDITIONS, D. Changes** in order to qualify for coverage.

26.     The Broad Form Named Insured – Designated Endorsement (00 GL0472 00 06 14), as modified by Endorsement No. 003, in the Arch Practice Policy adds JMAF as a Named Insured under the Arch Practice Policy.

27.     Therefore, JMAF is an Insured under the Starr Practice Policy.

28.     Section IV.M, When "Ultimate Net Loss" is Payable, in the Excess Liability Policy Form (XS 100 (10/08)) in the Starr Practice Policy states:

> Coverage under this Policy will not apply unless and until the Insured or the Insured's "Underlying Insurance" has paid or is obligated to pay the full amount of the limits of the "Underlying Insurance" scheduled in **ITEM 5.** of the Declarations. If other insurance applies, coverage under this Policy will not apply until the other insurance has paid or is obligated to pay the full amount of its limit of insurance.
>
> When the "Ultimate Net Loss" is determined, we will pay on behalf of the Insured the amount of "Ultimate Net Loss" to which this insurance applies.

29.     The Wrap-Up Exclusion With Limited Exception for Excess Coverage Endorsement (00 GL0540 00 02 11) in the Arch Practice Policy states:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of either your ongoing operations or operations included in the "products-completed operations hazard" at or from any project for which a "wrap-up insurance program" in which you have been enrolled, except as follows:

This insurance will be excess for the conduct of your business in a construction project which is the subject of a "wrap-up insurance program" in which you are or were a participant.

However, this coverage is contingent upon all of the following conditions:

> 1. The limits of the "wrap up insurance program" at its inception are at least:

>> a. $50,000,000 Each Occurrence;

>> b. $50,000,000 General Aggregate; and

>> c. $50,000,000 Product-Completed Operations Aggregate; and

>> The above Limits of Insurance are minimal limits. If the actual Limits of Insurance are greater, this policy is excess over the greater limits; and

> 2. The Limits of Insurance of the "wrap-up insurance program" have not been reduced or exhausted by any cause other than the payment of covered damages only.

Failure of any of the conditions listed in 1. or 2. above will not invalidate this insurance. However in the event of any such failure, or if the insurance for the "wrap-up insurance program" is not valid or collectible for any reason, this insurance shall only apply as if the Limits of Insurance of the "wrap up insurance program" were in full effect. You are responsible for the payment of such amounts equal to the Limits of Insurance, and the satisfaction of any deductible or retention for the "wrap-up insurance program" before this insurance becomes applicable.

Limits of Insurance provided by this policy are excess of the total limits of the "wrap-up insurance program" but no less than the Limits of Liability shown in Item (1) above, or the remaining available limits of insurance, if any, for the "wrap-up insurance program" if they have been reduced or exhausted by the payment of covered damages. However, under no circumstances will our Limits of Insurance exceed those listed in the Declarations of this policy.

The coverage provided by this insurance is solely for the benefit of you alone and will not inure to the benefit of any other party.

When this coverage applies as excess, we will have the right, but not the duty, to defend the insured against any "suit".

"Wrap-up insurance program" means an insurance program, whether primary or excess, that:

> 1. requires some or all of the contractors working on the project to participate;

> 2. is purchased by you or is purchased for you by the owner of the project or by another contractor; and

> 3. is limited to a specific construction project, joint venture, or all work for another contractor under a controlled insurance program.

30. The preamble of the Commercial General Liability Coverage Form (CG 00 01 04 13) in the Arch Practice Policy states, "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." As noted, JMAF is a Named Insured under the Arch Practice Policy and, therefore, "you" as used in the Arch Practice Policy includes JMAF.

31. JMAF is enrolled in the CCIP Tower of Insurance, which is a "wrap-up insurance program" for the Eighty-Seven Park construction project. The "bodily injury" and "property damage" alleged in the Underlying Claims is alleged to arise out of operations included in the "products-completed operations hazard" at the Eighty-Seven Park project. *See* Arch Practice Policy, Commercial General Liability Coverage Form (CG 00 01 04 13) at 15 (defining "products-completed operations hazard").

32. Therefore, any coverage available to JMAF for the Underlying Claims under the Starr Practice Policy is in excess of the limits of the CCIP Tower of Insurance as well as the "Underlying Insurance" in the 2020-2021 Practice Tower, and the Starr Practice Policy is only implicated if all of the aforementioned policies are properly and completely exhausted.

33. The Anti-Stacking Endorsement (XS 107 (04/11)) in the Starr Practice Policy (the **"Anti-Stacking Endorsement"**) states:

If this insurance and any other insurance issued to the Insured by the Company or any of its affiliated companies shall apply to the same Claim or Suit, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy. This condition does not apply to any other insurance issued by the Company or any of its affiliated companies specifically to apply as excess insurance of over this policy.

34.     Page 1 of the Excess Liability Policy Form (XS 100 (10/08)) in the Starr Practice Policy defines "the Company" as Starr Indemnity.

35.     Starr Surplus is an affiliated company of Starr Indemnity.

36.     In the Anti-Stacking Endorsement, "this insurance" refers to the Starr Practice Policy.

37.     The Starr CCIP Policy was issued to JMAF (which is an Insured under the Starr Practice Policy) by Starr Surplus (which is an affiliated company of Starr Indemnity). Therefore, the Starr CCIP Policy is "any other insurance issued to the Insured by the Company or any of its affiliated companies," triggering the Anti-Stacking Endorsement if both the Starr CCIP Policy and Starr Practice Policy are implicated with respect to the Underlying Claims.

38.     Pursuant to the Anti-Stacking Endorsement, if the Starr CCIP Policy and the Starr Practice Policy are both implicated with respect to the Underlying Claims, the maximum limit of insurance available will be, at most, the "highest applicable limit of insurance available under any one policy."

39.     Because the Starr CCIP Policy and the Starr Practice Policy each have limits of $25,000,000 Each Occurrence, $25,000,000 Other Aggregate(s), Where Applicable, and $25,000,000 Products-Completed Operations Aggregate, if the Starr CCIP Policy limit is exhausted, no additional coverage is available under the Starr Practice Policy.

40.     Therefore, the Starr Practice Policy does not provide coverage for the Underlying Claims.

**Starr Indemnity's Reservation of Rights**

38.     JMAF has requested that Starr Surplus provide coverage for the Underlying Claims under the Starr CCIP Policy, and that Starr Indemnity also provide coverage for the Underlying Claims under the Starr Practice Policy.

39.     In response to JMAF's request for coverage under the Starr Practice Policy, Starr Indemnity sent JMAF a reservation of rights letter dated April 6, 2022, a copy of which is attached as **Exhibit 31**. In the letter, Starr Indemnity explained that, pursuant to the Anti-Stacking Endorsement in the Starr Practice Policy, to the extent the Starr Practice Policy is ever implicated with respect to the Underlying Claims, the maximum limit of insurance available will be, at most, the limits of the Starr CCIP Policy. No additional coverage is available under the Starr Practice Policy. Starr Indemnity reserved its rights to deny coverage for the Underlying Claims for this reason and to limit or deny coverage for additional reasons discussed in the letter.

40.     There is an actual controversy between Starr Indemnity and JMAF regarding the application of the Starr Practice Policy, and specifically the Anti-Stacking Endorsement, to the claims asserted in the Underlying Claims.

## COUNT I
### Declaration of No Coverage Under the Starr Practice Policy

41.     Starr Indemnity hereby incorporates by reference and re-alleges, as if fully stated herein, each and every allegation of paragraphs 1 through 40 of this Complaint.

42.     For the Starr Practice Policy to apply to the Underlying Claims, the Starr CCIP Policy will also need to apply to the Underlying Claims and first be exhausted by those Claims.

43.     However, pursuant to the Anti-Stacking Endorsement in the Starr Practice Policy, to the extent the Starr CCIP Policy and the Starr Practice Policy are implicated with respect to the Underlying Claims, the maximum limit of insurance available will be, at most, the limits of the Starr CCIP Policy. No additional coverage will be available under the Starr Practice Policy.

44.     Accordingly, pursuant to the Anti-Stacking Endorsement in the Starr Practice Policy, there is no coverage for the Underlying Claims under the Starr Practice Policy.

45.     Additionally, there may be limited or no coverage for the Underlying Claims under the Starr Practice Policy based on additional, independent reasons, including those discussed in the reservation of rights letter attached as **Exhibit 31**.

46.     Starr Indemnity is entitled to a declaratory judgment in its favor, stating that Starr Indemnity has no liability to JMAF under the Starr Practice Policy for any "Ultimate Net Loss" (as that term is defined in the Starr Practice Policy) or other amounts arising out of or related to any of the Underlying Claims.

WHEREFORE, Starr Indemnity respectfully requests that the Court declare the rights of the parties under the Starr Practice Policy and declare that Starr Indemnity has no liability to JMAF under the Starr Practice Policy for any "Ultimate Net Loss" (as that term is defined in the Starr Practice Policy) or other amounts arising out of or related to any of the Underlying Claims. Starr Indemnity further respectfully requests that the Court grant such other and further relief as the Court may deem just and proper.

Dated: April 6, 2022

Respectfully submitted,


STARR INDEMNITY & LIABILITY
COMPANY

By its attorneys,

*/s/ Lincoln A. Rose*
Michael P. Duffy, BBO# 137325
Lincoln A. Rose BBO# 691797
Peabody & Arnold LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210-2261
617-951-2100
mduffy@peabodyarnold.com
lrose@peabodyarnold.com


Steven J. Brodie (FL Bar # 333069) (pro hac
vice application forthcoming)
sbrodie@carltonfields.com
Carlton Fields, P.A.
2 MiamiCentral
700 NW 1st Avenue, Suite 1200
Miami, FL 33136
Telephone (305) 530-0050
Facsimile (305) 530-0055

Heidi Hudson Raschke (FL Bar # 61183)
(pro hac vice application forthcoming)
hraschke@carltonfields.com
Carlton Fields, P.A.
4221 West Boy Scout Blvd., Suite 1000
Tampa, Florida 33607
Telephone:  (813) 223-7000
Facsimile:   (813) 229-4133

Andrew K. Daechsel (FL Bar # 118157) (pro
hac vice application forthcoming)
akdaechsel@carltonfields.com
Carlton Fields, P.A.
525 Okeechobee Blvd., Ste. 1200
West Palm Beach, Florida 33401
Telephone:  (561) 659-7070
Facsimile:   (561) 659-7368

*Attorneys for Plaintiff Starr Indemnity &
Liability Company*