# EXHIBIT 7

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

NO.:

MAXIMILIANO LUCERO, as Personal
Representative of the Estates of Fabian
Alberto Nunez and Sofia Galfrascoli
Nunez, deceased,
     Plaintiffs,

v.

CHAMPLAIN TOWERS SOUTH
CONDOMINIUM ASSOCIATION, INC.,
a Florida not-for-profit corporation;
MORABITO CONSULTANTS, INC., a
foreign for-profit corporation; CONCRETE
PROTECTION AND RESTORATION, INC.,
a foreign for-profit corporation; WILLCOTT
ENGINEERING, INC., a Florida for-profit
corporation; 8701 COLLINS DEVELOPMENT,
LLC, a Florida limited liability company;
JOHN MORIARTY & ASSOCIATES OF
FLORIDA, INC., a foreign for-profit
Corporation; NV5, INC., a foreign-for profit
corporation; NV5 GLOBAL INC., a foreign-for
profit corporation; BIZZI & PARTNERS
DEVELOPMENT, LLC, a foreign limited
liability company; TANENBAUM HARBER
OF FLORIDA, LLC., a Florida limited liability
company,
     Defendants.

_____/

## COMPLAINT

COMES NOW, Plaintiff, MAXIMILIANO LUCERO, as Personal Representative of the

ESTATE OF FABIAN ALBERTO NUNEZ ("FABIAN ESTATE"), deceased, and the ESTATE

OF SOFIA GALFRASCOLI NUNEZ, ("SOFIA ESTATE"), deceased, and sues Defendants,

CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC., a Florida not-for-

profit corporation; MORABITO CONSULTANTS, INC., a foreign for-profit corporation;

CONCRETE PROTECTION AND RESTORATION, INC., a foreign for-profit corporation;

WILLCOTT ENGINEERING, INC., a Florida for-profit corporation; 8701 COLLINS DEVELOPMENT, LLC, a Florida limited liability company; JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC., a foreign for-profit Corporation; NV5, INC., a foreign-for profit corporation; NV5 GLOBAL INC., a foreign-for profit corporation; BIZZI & PARTNERS DEVELOPMENT, LLC, a foreign limited liability company, and alleges as follows:

## INTRODUCTION

This is a wrongful death action brought as a result of the collapse of Champlain Towers South, (hereinafter "the Building") located at 8777 Collins Ave, Surfside, FL, 33154. Plaintiff's claims are against entities that owned, controlled maintained, restored, managed, inspected and oversaw the Building, where the deceased were invited guests, and of the neighboring property whose owners, agents and representatives performed construction work that interfered and damaged the Building. As has been made very public, the Building's collapsed on June 24, 2021, killed 98 people and took the lives of the present Plaintiffs. As has also been made public, it was a very preventable event that should have never occurred.

## JURISDICTION, VENUE, PARTIES

1.      This is a wrongful death action brought by the FABIAN ESTATE and the SOFIA ESTATE pursuant to Section 768.16, Florida Statutes, seeking damages in excess of $30,000.00, exclusive of interests, costs and attorney's fees.

2.      Venue is proper in this circuit because the building collapse that killed Plaintiffs occurred in Miami-Dade County.

3.      At all times material, Plaintiffs, are *sui juris* and an estate has been set up or is in the process of being set up in Miami-Dade County.

4.      At all times material, Fabian Alberto Nunez and Sofía Galfrascoli Nunez were

invitees of the building and guests of Rodrigo Selem Cache and Jacqueline Isa Patoka Brodach, and were staying in unit 803, of "Champlain Towers South" located at located at 8777 Collins Ave, Surfside, FL, 33154.

5.      At all times material, Plaintiff, MAXIMILIANO LUCERO is the adult survivor of both decedents and has been or will be the duly appointed Personal Representative of the Estates of the deceased. She brings this claim on behalf of the Decedents' Estates as well as the Decedent's Survivors, namely herself.

6.      At all times material, CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. (hereinafter the "ASSOCIATION") was and is a Florida not-for-profit corporation licensed to and doing business in Miami-Dade County, Florida, and was and is the owner, operator and/or manager of Champlain Towers South.

7.      At all times material, Defendant, MORABITO CONSULTANTS, INC., was and is a foreign for-profit corporation, licensed to and doing business in Florida, and was engaged in providing engineering consulting services at the Building.

8.      At all times material, Defendant, CONCRETE PROTECTION AND RESTORATION, INC., was and is a foreign for-profit corporation, licensed to and doing business in Florida, and was engaged in assessing, inspecting and/or performing concrete structural restoration to the subject building.

9.      At all times material, Defendant, WILLCOTT ENGINEERING, INC, was and is a Florida for-profit corporation, licensed to and doing business in Florida, and provided engineering consulting services at the Building. Said Defendant conducted an engineering inspection of the Building in January 2020.

10.     At all times material, Defendant, 8701 COLLINS DEVELOPMENT, LLC, was and

is a Florida limited liability company, licensed to and doing business in Florida, and owned, operated, constructed, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Miami Fl, 33154. Said Defendant was or is the neighboring landowner whose conduct and use on its land improperly interfered with the decedents' use of their property and damaged said property.

11.     At all times material, Defendant, JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC., was and is a foreign for-profit corporation, licensed to and doing business in Miami-Dade County, and was engaged in providing general contracting services for the construction project at "Eighty-Seven Park."

12.     At all times material, Defendant, NV5, INC., was and is a foreign for-profit corporation, licensed to and doing business in Miami-Dade County, and was engaged in providing geotechnical engineering services for the construction project at "Eighty-Seven Park."

13.     At all times material, Defendant, NV5 GLOBAL, INC., was and is a Foreign Profit Corporation, licensed to and doing business in Miami-Dade County, and was engaged in providing geotechnical engineering services for the construction project at "Eighty-Seven Park."

14.     At all times material, Defendant, BIZZI & PARTNERS DEVELOPMENT, LLC, was and is a foreign limited liability company, doing business in Florida, and operated, managed, supervised and/or developed a construction project known as "Eighty-Seven Park" and located at 8701 Collins Ave, Miami Fl, 33154. Said Defendant committed a tort in the state of Florida and directly caused and/or contributed to causing the damages suffered by the Plaintiff herein.

15.     All conditions precedent to the bringing of this action and Plaintiff's rights to the relief sought herein have occurred, have been performed or have been waived.

## BACKGROUND

16.     Prior to its collapse, Champlain Towers South was a 12-storybeachside residential building with 136 units, located at 8777 Collins Avenue, Surfside, Florida.

17.     In the decades leading up to this catastrophe, the ASSOCIATION, INC., was repeatedly placed on notice of the progressively worsening and unsound structural integrity of the Building by the maintenance manager, various residents and through various building inspections; there is a copious public record of the ASSOCIATION'S being on notice of these conditions.

18.     For example, William Espinosa oversaw maintenance of Champlain Towers South from 1995-2000 and recounted that he personally witnessed up to two feet of standing sea water in the garage during high tide ("Condo Collapse: Former Maintenance Manager William Espinosa Was    Concerned    About    Saltwater    Intrusion"    AP.    Available    at: https://miami.cbslocal.com/2021/06/20/condo-collapse-former-maintenance-manager-william-espinosa- was-concerned-about-saltwater-intrusion/ ).

19.     Additionally, one of the Building's attorneys, Donna DiMaggio Berger, acknowledged that it is common knowledge that sea water corrosion is a serious issue for beach front properties like the Building, "[c]oncrete spalling, rebar deterioration—these are not unusual events when you have buildings exposed to corrosive conditions." ("*Miami-Area Condo Failure: Years of Warnings, but Mixed Signals*" A.P. Available at: https://www.wsj.com/articles/miami-area-condo-failure-years-of-warnings-but-mixed-signals-11624994509 ).

20.     These are just two of many examples clearly illustrating that the ASSOCIATION was aware and should have been aware of the extremely dangerous condition that existed within the Building's structure.

21.     Even the residents of the Building did not believe it was properly maintained; in 2001, a building resident filed a lawsuit against the ASSOCIATION alleging it "failed to repair or

negligently repaired" the "common elements of the outside walls of the building" which lead to property damage from water intrusion into her unit through "cracks in the outside wall of the building."

22.     In 2015, a suit was filed by another resident against the ASSOCIATION alleging property damage caused by the same problems (*Zaidenweber, Matilde v. Champlain Towers South Condo Assn Inc.*, Case No.: 01-26634 CA 22; and MatildeFainstein v. Champlain Towers South Condominium Association Inc., Case No.: 13 2015 CA 022299000001).

23.     In 2018 the ASSOCIATION was forced to act because the county's 40-year recertification process required an examination of the structural soundness of the Building.

24.     To comply with the recertification process, the ASSOCIATION was forced to hire MORABITO CONSULTANTS, INC., ("MORABITO") who inspected the Building and, on October 8, 2018, it provided its Structural Field Survey Report to the ASSOCIATION.

25.     The Morabito report confirmed that the Building had significant damage to its structural integrity.

26.     Specifically, the Morabito report identified "major structural damage" below the pool deck, "[a]bundant cracking and spalling of varying degrees was observed in the concrete columns, beams, and walls" ... "most of the concrete deterioration needs to be repaired in a timely fashion" and it warned that "[f]ailure to replace the waterproofing in the near future will cause the extent of the concrete deterioration to expand exponentially."

27.     In spite of the severe, documented deterioration of the Building's structure, MORABITO failed to advise the ASSOCIATION of the urgency with which it needed to perform the repairs we now know were necessary.

28.     Not surprisingly, no action was taken by the ASSOCIATION.

29.    On April 9, 2021, the president of the ASSOCIATION'S Board, Jean Wodnicki, addressed the residents of the Building in a "State of the Building" letter wherein she indicated repairs would be at least $15 million (https://s.wsj.net/public/resources/documents/miamiletter0628.pdf); In this letter she goes on to state:

    a.    "[I]ndeed the observable damage such as in the garage has gotten significantly worse since the initial inspection. When you visually see the concrete spalling (cracking), that means that the rebar holding it together is rusting and deteriorating beneath the surface."

    b.    "Please note that the original scope of work in the 2018 report has expanded. The concrete deterioration is accelerating."

    c.    "A lot of this work could have been done or planned for in years gone by, but this is where we are now."

30.    Nonetheless, Wodnicki indicated the ASSOCIATION did not want to spend its reserves on these repairs: "this Board feels it would be inappropriate to spend our Reserves for these projects. We need to conserve some cash in the event of an emergency."

31.    On June 24, 2021, approximately 3 months after Ms. Wodnicki's letter on behalf of the Board, the Building suffered a catastrophic failure and collapsed, killing ninety-eight people, including Fabian Alberto Nunez and Sofia Galfrascoli Nunez.

32.    As stated by Surfside Mayor Charles Burkett, "the building collapsed for inexplicable reason[s], buildings in the United States do not fall down, and something very wrong was going on" ("Mayor: Something very wrong at building collapse," AP. Available at: https://www.usatoday.com/videos/news/nation/2021/06/26/mayor-something-

very-wrong-building- collapse/5359108001/)

## COUNT I: NEGLIGENCE AGAINST
## CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC.

Plaintiff re-incorporates paragraphs one (1) through thirty-two (32) as set forth herein.

33.     At all times material, CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC., as the owner of the property located at 8777 Collins Ave, Surfside, FL, 33154, had a non-delegable duty to maintain its property in a reasonably safe condition.

34.     This non-delegable duty included inspecting and maintaining the subject building so that conditions on the premises did not create a danger to the public, invitees, and their residents, including Fabian Alberto Nunez and Sofia Galfrascoli Nunez.

35.     At the time of the Building's collapse, the Building was in a defective, structurally unsound, and dangerous condition, to wit: The Building's concrete, steel, rebar and other materials that contributed to the structural integrity of the building were severely compromised and required immediate remediation.

36.     Defendant knew or should have known of the dangerous condition that the Building presented and taken all necessary precautions or warned of such dangers so Plaintiffs could have conducted themselves properly.

37.   In spite of multiple warnings presented to Defendant, Defendant failed to properly maintain and remediate the structural integrity of the Building and it failed to warn of the dangers the Building presented; this further contributed to the dangerous condition the Building presented.

38.   On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner through the following acts and/or omissions:

a.  Failing to appreciate the significance of the cracking, fractures, and defects in the structure brought to their attention by their residents, agents and/or employees;

b.  Permitting the water from the pool deck and other water in existence under the structure to seep and leak into the structure of the subject building causingdamage to the structural integrity of the subject building;

c.  Placing Fabian Alberto Nunez and Sofia Galfrascoli Nunez in the zone of danger of imminent risk of death or serious bodily injury;

d.  Failing to properly analyze, review, communicate, prevent and/or eliminate the risks associated with the fractures, crack, and defects in the subject structure;

e.  Failing to disclose to Fabian Alberto Nunez and Sofia Galfrascoli Nunez, that the structure was weak, deficient and/or defective rendering the structure unsafe;

f.  Failing to disclose to Fabian Alberto Nunez and Sofia Galfrascoli Nunez, that the cracks and defects observedon the structure created a dangerous condition and were likely to cause a collapse;

g.  Failing to disclose to the Fabian Alberto Nunez and Sofia Galfrascoli Nunez, that

the cracks observed in thestructure before its collapse were a safety concern;

h. Failing to perform, manage, supervise, oversee, and/or inspect the repairs and/or restoration of the structure;

i. Failing to properly train, instruct, and supervise personnel who participated in maintenance, inspection, repair or restoration of the subject building;

j. Failing to warn Fabian Alberto Nunez and Sofia Galfrascoli Nunez that the building was unsafe;

k. Failing to notify Fabian Alberto Nunez and Sofia Galfrascoli Nunez to timely evacuate the subject building;

l. Using improper equipment and/or improperly using equipment during therepair and/or restoration of the subject building;

m. Recklessly and carelessly not requesting the evacuation of the Building before attempting to perform repairs and/or restoration; and

n. Negligently failing to disclose any dangerous condition relative tothe structure in the circumstances.

39. As a foreseeable and proximate result of Defendant's failures, the subject building collapsed causing the deaths of Fabian Alberto Nunez and Sofia Galfrascoli Nunez.

**WHEREFORE,** for the foregoing reasons, MAXIMILIANO LUCERO, as Personal Representative of the FABIAN ESTATE and SOFIA ESTATE demand judgment against Defendant CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC., for all damages and costs compensable under Section 768.21, Florida Statutes, and under Florida

law, and such further relief as the Court deems just and proper.

## COUNT II: NEGLIGENCE AGAINST MORABITO CONSULTANTS., INC.

Plaintiff re-incorporates paragraphs one (1) through thirty-two (32) as set forth herein.

40.    At all relevant times, Defendant, its agents, servants, or employees, were engaged in providing engineering, inspecting, and consulting services for the Building. Accordingly, Defendant undertook to inspect, evaluate, and advise CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. on certain repairs and to assess the Building.

41.    Defendant had a duty to incorporate therein nationally recognized safety standards and practices; to follow and incorporate therein the terms and provisions of the applicable building codes; to make a design, plan and specification which would not produce harm, injury or death to the public, the Building's residents and their property, including the DECEASED, and to perform their services in a safe manner.

42.    This duty included providing accurate information as to the condition of the Building and potential safety risks and recommending timely evacuation of the Building so that conditions on the premises did not create a danger to the public, the Building's residents and their property, including DECEASED.

43.    Before June 24, 2021, Defendant inspected the Building on at least two separate occasions. The Building, its appurtenances, and particularly the concrete structure, pool deck, and parking garage, were all inspected and evaluated for safety under Defendant's supervision. At both inspections, Defendant identified several significant structural defects in the Building.

–11–

44.   At all times material, Defendant knew, or in the exercise of reasonable care should have known that the subject building was in a defective, weakened, and dangerous condition.

45.   Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the subject building where they were performing their services was being inhabited by its residents.

46.   Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, and the Deceased, from the defective condition of the building. .

47.   On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by allowing a hazardous and dangerous condition to exist in the subject building and failing to accurately disclose the inherent dangers associated with major structural damage, among others. Defendant failed to warn the public and among others, the Deceased, of the dangers outlined above.

48.   Defendant further failed to appreciate the hazardous and dangerous condition of the Building, communicate the urgency of its condition and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation.

49.   As a foreseeable and proximate result of MORABITO CONSULTANTS, INC.'s negligence and reckless disregard for human life, safety and property in this matter, DECEASED sustained injuries resulting in their deaths and loss of property.

**WHEREFORE**, for the foregoing reasons, MAXIMILIANO LUCERO, as Personal Representative of the FABIAN ESTATE and SOFIA ESTATE demand judgment against Defendant, MORABITO CONSULTANTS, INC., for all damages and costs compensable under Section 768.21, Florida Statutes, and under Florida law, and such further relief as the Court deems just and proper.

## COUNT III: NEGLIGENCE AGAINST CONCRETE PROTECTION AND RESTORATION, INC.

Plaintiff re-incorporates paragraphs one (1) through thirty-two (32) as set forth herein.

50.    At all times material, Defendant, its agents, servants or employees, were engaged in inspecting, assessing and making restorations to the concrete of the Building and had a duty to the residents to not endanger them and to maintain the building in a reasonably safe condition for use by the public and its residents, including DECEASED, and to perform its services and construction work in a safe manner.

51.    At all times material, Defendant employed a number of workers, servants, agents, and employees to perform the work incidental to the concrete restoration process. These workers, servants, agents, and employees were working within the nature, course, and scope of their employment, and were repairing the concrete foundation of the Building, the roof, and other structural components of the Building.

52.    Specifically, Defendant was negligent for failing to follow industry standards and mandatory health and safety guidelines while working on the structural aspects of the building, including the concrete, roof, and other areas.

53.     Furthermore, Defendant failed to secure the foundation of the Building.

54.     Due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the subject building where they were performing the restoration was being inhabited by its residents. Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, including DECEASED, from the hazards of the Building.

55.     The Defendant's activities did, in fact, constitute a known and dangerous condition to DECEASED, and as a result of the Defendant's conduct, the building collapsed.

56.     On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist in the subject building; failing to repair the defective condition; in failing to recommend evacuation of the residents from the subject building; and in failing to warn the public and DECEASED of the imminent collapse.

57.     Defendant further failed to appreciate the hazardous and dangerous condition of the Building, communicate the urgency of its condition and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation.

58.     The Defendant was also negligent, in that a contractor engaged in work of this nature, scope, and type is at all times required to institute and maintain safety precautions of a type and nature sufficient and necessary to safeguard all persons and property affected by the contractor's

–14–

operations.

59.     As a foreseeable and proximate result of CONCRETE PROTECTION AND

RESTORATION, INC.'S negligence and reckless disregard for human life, safety and property in

this matter, the DECEASED sustained injuries resulting in their death and loss of property.

        **WHEREFORE**, for the foregoing reasons, MAXIMILIANO LUCERO, as

Personal Representative of the FABIAN ESTATE and SOFIA ESTATE demand judgment against

Defendant, CONCRETE PROTECTION AND RESTORATION, INC., for all damages and costs

compensable under Section 768.21, Florida Statutes, and under Florida law, and such further relief

as the Court deems just and proper

## COUNT IV: NEGLIGENCE AGAINST WILLCOTT ENGINEERING, INC.

        Plaintiff re-incorporates paragraphs one (1) through thirty-two (32) as set forth herein.

60.     At all relevant times, Defendant, its agents, servants, or employees, were engaged

in providing engineering consulting services for the Building.

61.     In early 2020, Defendants inspected the Building and provided their    Engineering

Services Proposal" to the Champlain Towers South Condominium Association. The Building, its

appurtenances, and particularly pool deck and parking garage, were all inspected and evaluated for

safety under Defendant's supervision. At its inspection, Defendant identified several defects in the

Building.

62.     Defendant had a duty to incorporate therein nationally recognized safety standards

and practices; to follow and incorporate therein the terms and provisions of the applicable building

codes; to make a design, plan and specification which would not produce harm, injury or death to the public, the Building's residents and their property, including the DECEASED, and to perform its services in a safe manner.

63.     This duty included providing accurate information as to the condition of the Building and potential safety risks ensuring timely evacuation of the Building so that conditions on the premises did not create a danger to the public, its residents and their property, including DECEASED.

64.     At all times material, Defendant knew, or in the exercise of reasonable care should have known that the Building was in a defective, weakened, and dangerous condition.

65.     Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the Building was inhabited by its residents.

66.     Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, and the DECEASED, from the defective condition of the building.

67.     On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by allowing a hazardous and dangerous condition to exist in the subject building and not accurately disclosing the inherent dangers associated with major structural damage, among others. Defendant failed to warn the public and among others, the DECEASED of the dangers of the Building.

68.     Defendant further failed to appreciate the hazardous and dangerous condition of the

–16–

Building, communicate the urgency of its condition and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation.

69.     As a foreseeable and proximate result of WILLCOTT ENGINEERING, INC.'s negligence and reckless disregard for human life, safety and property in this matter, DECEASED sustained injuries resulting in their deaths and loss of property.

**WHEREFORE,** for the foregoing reasons, MAXIMILIANO LUCERO, as Personal Representative of the FABIAN ESTATE and SOFIA ESTATE demand judgment against Defendant, WILCOTT ENGINEERING, INC., for all damages and costs compensable under Section 768.21, Florida Statutes, and under Florida law, and such further relief as the Court deems just and proper

## COUNT V: NEGLIGENCE AGAINST 8701 COLLINS DEVELOPMENT, LLC

Plaintiff re-incorporates paragraphs one (1) through thirty-two (32) as set forth herein.

70.     Upon information and belief, Defendant owned and/operated, constructed, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Surfside Florida, 33154. The project is directly next door to Champlain Towers South.

71.     At all times material, Eighty-Seven Park was and is an 18-story, 66-unit condominium building, with an underground parking garage, located next door to the Building.

72.     Upon information and belief, construction of the Eighty-Seven Park condominium high rise took place between 2016 and March 2020. During its construction, residents of the Building

–17–

complained to Defendant that the construction was causing their building and the ground inside their units to shake substantially.

73.    At all times material, Defendant had a non-delegable duty to maintain its property in a reasonably safe condition.

74.    This non-delegable duty included ensuring that conditions on their premises did not create a danger to the public and their property, including DECEASED.

75.    The aforementioned construction process taken by Defendant or at the Defendant's instruction, caused the concrete foundation of the Building to become weakened and dangerous, creating a hazard to the public and their property, including the DECEASED.

76.    Additionally, upon information and belief, in the course of the aforesaid construction and/or development, the Defendant made various excavations in the above-described area abutting the Building and impacted the foundation of the Building.

77.    Upon information and belief, in the course of the aforesaid work, the Defendant excavated beneath the Eighty-Seven Park property and impacted the Building to become weakened and dangerous, creating a hazard to the public and the Building, including the DECEASED.

78.    Upon information and belief, on various occasions during 2016, 2017, 2018, 2019 and thereafter, the Defendant was made aware that its construction activities were a danger to the structures surrounding the project, including the Building.

79.    Upon information and belief, the Defendants failed to properly underpin or otherwise brace the Building during the construction and failed to comply with the applicable rules, codes and

regulations governing undermining, underpinning, and bracing of adjacent properties, among other activities.

80.    Upon information and belief, the Defendants failed to follow and abide by accepted industry standards and guidelines by not underpinning and/or bracing the Building during the project.

81.    At all material times, Defendants knew, or should have known, that the construction activities that took place on the Project were done in such a manner as to likely cause damage to the structural foundation of the Building.

82.    Further, Defendants knew or should have known that had they followed the applicable rules, codes, regulations, and industry standards they would not have caused damage to the structural foundation of the Building.

83.    Nevertheless, the construction activities on the Project were performed in a negligent and haphazard manner without regard for the safety and protection of the public, including the DECEASED.

84.    Due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the Building next to where they were performing the construction was being inhabited by its residents. Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public and their property in general, and the DECEASED in particular, from the hazards of such work.

85.    The Defendant's activities did, in fact, constitute a known and dangerous condition to the DECEASED, by creating severe and significant instability in the foundation and structure of

–19–

the Building, and as a result, the building collapsed.

86.     On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendants' conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendants conduct on the Eighty-Seven Park Property; and in failing to warn the public and the DECEASED of the need to evacuate the Building and or of its imminent collapse.

87.     On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist in the subject building; in failing to repair the defective condition; in failing to recommend evacuation of the residents from the subject building; and in failing to warn the public and the DECEASED of the imminent collapse.

88.     As a foreseeable and proximate result of 8701 COLLINS DEVELOPMENT, LLC's negligence and reckless disregard for human life, safety and property in this matter, the subject building collapsed, causing the DECEASED to sustain injuries resulting in their death and loss of property.

        **WHEREFORE**, for the foregoing reasons, MAXIMILIANO LUCERO, as Personal Representative of the FABIAN ESTATE and SOFIA ESTATE demand judgment against Defendant, 8701 COLLINS DEVELOPMENT, LLC., for all damages and costs compensable under Section 768.21, Florida Statutes, and under Florida law, and such further relief as the Court deems

just and proper.

## COUNT VI: NEGLIGENCE AGAINST JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC

Plaintiff re-incorporates paragraphs one (1) through thirty-two (32) as set forth herein.

89.    At all relevant times, Defendant, its agents, servants, or employees, were engaged inproviding general contracting services for the construction of Eighty-Seven Park located next door to the Building.

90.    Defendant had a duty to incorporate therein nationally recognized safety standards and practices; to follow and incorporate therein the terms and provisions of the applicable building codes; to make a design, plan and specification which would not produce harm, injury or death to the public and the Building's residents, including the DECEASED, and to perform its services in a safe manner.

91.    This duty included providing accurate information regarding the dangerous conditions and potential safety risks that existed at the Building as a result of the Eighty-Seven Park construction, including recommending safety measures and timely evacuation of the Building so that conditions created by the construction of Eighty-Seven Park did not create a danger to the Building's residents and their property, including DECEASED.

92.    At all times material, Defendant knew, or in the exercise of reasonable care should have known that Eighty-Seven Park construction would damage the Building's foundation.

93.    At all times material, Defendant knew, or in the exercise of reasonable care should have known that that as a result of the Eighty-Seven Park construction, the Building was in a

–21–

defective, weakened, and dangerous condition.

94.     Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the Building next to where they were performing their services was being inhabited by its residents.

95.     Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public and their property in general, and the DECEASED, from the dangers they created.

96.     On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendant's conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendants conduct on the Eighty-Seven Park Property; and in failing to warn the public and the DECEASED of the need to evacuate the Champlain Towers South building and or of its imminent collapse.

97.     Defendant further failed to appreciate the hazardous and dangerous conditions the Eighty-Seven Park construction created at the Building, failed to communicate the urgency of such conditions and the danger of its impending collapse, and to recommend appropriate measures including immediate repair and evacuation of the Building

98.     As a foreseeable and proximate result of JOHN MORIARTY OF FLORIDA, INC.'s

–22–

negligence and reckless disregard for human life, safety and property in this matter, DECEASED sustained injuries resulting in their deaths and loss of property.

**WHEREFORE,** for the foregoing reasons, MAXIMILIANO LÚCERO, as Personal Representative of the FABIAN ESTATE and SOFIA ESTATE demand judgment against Defendant, JOHN MORIARTY OF FLORIDA, INC., for all damages and costs compensable under Section 768.21, Florida Statutes, and under Florida law, and such further relief as the Court deems just and proper.

## COUNT VII: NEGLIGENCE AGAINST NV5, INC.

Plaintiff re-incorporates paragraphs one (1) through thirty-two (32) as set forth herein.

99.    At all relevant times, Defendants, their agents, servants, or employees, were engaged in providing geotechnical engineering services for the construction of Eighty-Seven Park located next door to the Building.

100.    Defendants had a duty to incorporate therein nationally recognized safety standards and practices; to follow and incorporate therein the terms and provisions of the applicable building codes; to make a design, plan and specification which would not produce harm, injury or death to the public and the Building's residents, including the DECEASED, and to perform their services in a safe manner.

101.    This duty included providing accurate information regarding the dangerous conditions and potential safety risks that existed at the Building as a result of the Eighty-Seven Park construction, including recommending safety measures and timely evacuation of the Building so that

conditions created by the construction of Eighty-Seven Park did not create a danger to the Building's residents and their property, including DECEASED.

102.   At all times material, Defendants knew, or in the exercise of reasonable care should have known that Eighty-Seven Park construction would damage the Building's foundation.

103.   At all times material, Defendants knew, or in the exercise of reasonable care should have known that that as a result of the Eighty-Seven Park construction, the Building was in a defective, weakened, and dangerous condition.

104.   Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendants and their workers, servants, agents, and employees knew or should have known that the Building next to where they were performing their services was being inhabited by its residents.

105.   Nevertheless, the Defendants negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public and their property in general, and the DECEASED, from the dangers they created.

106.   On the above-mentioned date and place, Defendants through their agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendant's conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendants conduct on the Eighty-Seven Park Property; and in failing to warn the public and the DECEASED of the need to evacuate the Building and or of its imminent collapse.

--24--

107.   Defendants further failed to appreciate the hazardous and dangerous conditions the Eighty-Seven Park construction created at the Building, communicate the urgency of such conditions and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation of the Building.

108.   As a foreseeable and proximate result of NV5, INC. and NV5 GLOBAL, INC.'s negligence and reckless disregard for human life, safety and property in this matter, the DECEASED sustained injuries resulting in their deaths and loss of property.

**WHEREFORE**, for the foregoing reasons, MAXIMILIANO LUCERO, as Personal Representative of the FABIAN ESTATE and SOFIA ESTATE demand judgment against Defendant, NV5, INC., for all damages and costs compensable under Section 768.21, Florida Statutes, and under Florida law, and such further relief as the Court deems just and proper.

## COUNT VIII: NEGLIGENCE AGAINST NV5 GLOBAL, INC.

Plaintiff re-incorporates paragraphs one (1) through thirty-two (32) as set forth herein.

109.   At all relevant times, Defendants, their agents, servants, or employees, were engaged in providing geotechnical engineering services for the construction of Eighty-Seven Park located next door to the Building.

110.   Defendants had a duty to incorporate therein nationally recognized safety standards and practices; to follow and incorporate therein the terms and provisions of the applicable building codes; to make a design, plan and specification which would not produce harm, injury or death to the public and the Building's residents, including the DECEASED, and to perform their services in a safe manner.

111.    This duty included providing accurate information regarding the dangerous conditions and potential safety risks that existed at the Building as a result of the Eighty-Seven Park construction, including recommending safety measures and timely evacuation of the Building so that conditions created by the construction of Eighty-Seven Park did not create a danger to the Building's residents and their property, including DECEASED.

112.    At all times material, Defendants knew, or in the exercise of reasonable care should have known that Eighty-Seven Park construction would damage the Building's foundation.

113.    At all times material, Defendants knew, or in the exercise of reasonable care should have known that that as a result of the Eighty-Seven Park construction, the Building was in a defective, weakened, and dangerous condition.

114.    Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendants and their workers, servants, agents, and employees knew or should have known that the Building next to where they were performing their services was being inhabited by its residents.

115.    Nevertheless, the Defendants negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public and their property in general, and the DECEASED, from the dangers they created.

116.    On the above-mentioned date and place, Defendants through their agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from

Defendant's conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendants conduct on the Eighty-Seven Park Property; and in failing to warn the public and the DECEASED of the need to evacuate the Building and or of its imminent collapse.

117.    Defendants further failed to appreciate the hazardous and dangerous conditions the Eighty-Seven Park construction created at the Building, communicate the urgency of such conditions and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation of the Building.

118.    As a foreseeable and proximate result of NV5 GLOBAL, INC.'s negligence and reckless disregard for human life, safety and property in this matter, the DECEASED sustained injuries resulting in their deaths and loss of property.

WHEREFORE, for the foregoing reasons, MAXIMILIANO LUCERO, as Personal Representative of the FABIAN ESTATE and SOFIA ESTATE demand judgment against Defendant, GLOBAL, INC., for all damages and costs compensable under Section 768.21, Florida Statutes, and under Florida law, and such further relief as the Court deems just and proper.

## COUNT IX: NEGLIGENCE AGAINST BIZZI & PARTNERS DEVELOPMENT, LLC

Plaintiff re-incorporates paragraphs one (1) through thirty-two (32) as set forth herein.

119.    Upon information and belief, Defendant owned and/operated, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Surfside Florida, 33154. The project is directly next door to Champlain Towers South.

120.    At all times material, Defendant owed a duty to DECEASED and the general public

–27–

to perform their activities in a reasonably safe manner that did not harm or endanger the DECEASED's person or property.

121.  Upon information and belief, in the course of their aforesaid construction and/or development, the defendant made various excavations in the above-described area abutting the premises of the DECEASED.

122.  Upon information and belief, in the course of the aforesaid work, the Defendant excavated beneath the Eighty-Seven Park property and impacted the Building to become weakened and dangerous, creating a hazard to the public and their property, including the DECEASED.

123.  Upon information and belief, on various occasions during 2016, 2017, 2018, 2019 and thereafter, the Defendant was made aware that their construction activities were a danger to the structures surrounding the project, including the Building.

124.  Upon information and belief, the Defendant failed to properly underpin or otherwise brace the Champlain Towers during the Project and failed to comply with the applicable rules, codes and regulations governing underpinning and bracing of adjacent properties.

125.  Upon information and belief, the Defendants failed to follow and abide by accepted industry standards and guidelines by not underpinning and/or bracing the Building during the project.

126.  At all material times, Defendant knew, or should have known, that the construction activities that took place on the Project were done in such a manner as to likely cause damage to the structural foundation of the Building.

127.  Further, Defendant knew or should have known that had it followed the applicable rules, codes, regulations and industry standards it would have reduced the likelihood of causing

damage the structural foundation of the Building.

128.   Nevertheless, the construction activities on the Project were performed in a negligent and haphazard manner without regard for the safety and protection of the public, including the DECEASED.

129.   Due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the Building next to where they were performing the restoration was being inhabited by its residents.

130.   Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public and their property in general, including the DECEASED in particular, from the hazards of such work.

131.   The Defendant's activities did, in fact, constitute a known and dangerous condition to the DECEASED, by creating severe and significant instability in the foundation and structure of the Building, and as a result, the Building collapsed.

132.   On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendant's conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendants conduct on the Eighty-Seven Park Property; and in failing to warn the public and the DECEASED of the need to evacuate the Building and or of its imminent collapse.

133.   The Defendant was also negligent, in that a contractor engaged in work of this nature,

scope, and type is at all times required to institute and maintain safety precautions of a type and nature sufficient and necessary to safeguard all persons affected by the contractor's operations.

134.    As a foreseeable and proximate result of BIZZI & PARTNERS DEVELOPMENT, LLC's negligence and reckless disregard for human life, safety and property in this matter, the Building collapsed, causing the DECEASED to sustain injuries resulting in their deaths and loss of property.

**WHEREFORE**, for the foregoing reasons, MAXIMILIANO LUCERO, as Personal Representative of the FABIAN ESTATE and SOFIA ESTATE demand judgment against Defendant, BIZZI & PARTNERS DEVELOPMENT, LLC., for all damages and costs compensable under Section 768.21, Florida Statutes, and under Florida law, and such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all issues triable as a matter of right.

NOTICE OF DESIGNATION OF ELECTRONIC MAIL ADDRESSES

NOTICE is hereby given, in conformity with the requirements of Florida Rules of Judicial Administration 2.516, of designation of a primary and secondary e-mail address for the undersigned, Anthony Chiarello, Esquire, as set forth below:

1.    Primary email address:        anthony@chiarellolegal.com

2.    Secondary email address:    acl.001@chiarellolegal.com

DATED December 9, 2021.

A. CHIARELLO LEGAL, P.A.
**Attorneys for Plaintiff**

–30–

200 SE 6th Street Suite 304
Fort Lauderdale, FL 33301
Telephone: 754.444.9940
Facsimile: 954.994.0040
Primary email: anthony@chiarellolegal.com

By: /s/: *Anthony Chiarello*
Anthony Chiarello, Esq.
Florida Bar No.: 73760