# EXHIBIT 13

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FL

CIVIL DIVISION
CASE NO.:

ERIKA GIGANTI, as Personal Representative of the
Estate of FRANCIS ROSA FERNANDEZ, deceased,

     Plaintiff,

v.

CHAMPLAIN TOWERS SOUTH CONDOMINIUM
ASSOCIATION, INC., a Florida not-for-profit
corporation; SCOTT STEWART, individually;
MORABITO CONSULTANTS, INC., a foreign for-profit
corporation; CONCRETE PROTECTION AND
RESTORATION, INC., a foreign for-profit corporation;
WILLCOTT ENGINEERING, INC., a Florida for-profit
corporation; EIGHTY-SEVEN PARK, LLC, a Florida
limited liability company; 8701 COLLINS AVENUE
CONDOMINIUM ASSOCIATION, INC., a Florida not-
for-profit corporation; 8701 COLLINS
DEVELOPMENT, LLC, a Florida limited liability
company; JOHN MORIARTY & ASSOCIATES OF
FLORIDA, INC., a foreign for-profit Corporation; NV5,
INC., a foreign-for profit corporation; NV5 GLOBAL
INC., a foreign-for profit corporation; TERRA WORLD
INVESTMENTS, LLC, a Florida limited liability
company; TERRA GROUP, LLC, a Florida limited
liability company; BIZZI & PARTNERS
DEVELOPMENT, LLC, a foreign limited liability
company;

     Defendants.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1

Plaintiff, ERIKA GIGANTI as Personal Representative of the Estate of FRANCIS ROSA FERNANDEZ, by and through the undersigned counsel, hereby sues Defendants, CHAMPLAIN TOWERS SOUTH CONDOMINUM ASSOCIATION, INC. (hereinafter "CHAMPLAIN TOWERS SOUTH") a Florida not-for-profit corporation; SCOTT STEWART, individually; MORABITO CONSULTANTS, INC. (hereinafter "MORABITO CONSULTANTS") a foreign for-profit corporation; CONCRETE PROTECTION AND RESTORATION, INC. a foreign for-profit corporation; WILLCOTT ENGINEERING, INC., a Florida for-profit corporation; EIGHTY-SEVEN PARK, LLC, a Foreign limited liability company; 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC., a Florida not-for-profit corporation; 8701 COLLINS DEVELOPMENT, LLC; a Florida limited liability company; JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC., a foreign for-profit corporation; NV5, INC., a foreign for-profit corporation; NV5 GLOBAL, INC., a foreign for-profit corporation; TERRA WORLD INVESTMENTS, LLC, a Florida limited liability company; TERRA GROUP, LLC, a Florida limited liability company; BIZZI & PARTNERS DEVELOPMENT, LLC, a foreign limited liability company; and as grounds therefore allege the following:

## **INTRODUCTION**

This is a wrongful death action brought against Defendants who were either involved in the ownership, maintenance, restoration, management, inspection and oversight of the building where the DECEASED was an invitee on the property known as "Champlain Towers South", located at 8777 Collins Ave, Surfside, FL, 33154 (hereinafter "the Building") or with the neighboring property whose representative's, employee's and/or agent's conduct interfered with and damaged the property where the DECEASED was an invitee. On June 24, 2021, the unthinkable occurred in the town of Surfside, Florida, a residential building was reduced to rubble. Referred to as one of the most

catastrophic building collapses in United States history, Francis Rosa Fernandez (the "DECEASED"), along with hundreds of residents and other visitors, lost her life. The collapse was preventable and a result of the direct negligence of the Defendants.

The conduct of these Defendants was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of persons, including the DECEASED, who lost her life as a result of the Defendants' actions or omissions.

## JURISDICTION, VENUE AND THE PARTIES

1.      This is a wrongful death action brought pursuant to section 768.16, Florida Statutes, seeking damages in excess of $30,000.00, exclusive of interests, costs and attorney's fees. Accordingly, this Court has subject matter jurisdiction over this cause.

2.      Venue is proper in this circuit because the acts and omissions forming the basis of this Complaint all occurred in this circuit, because the incident occurred in Miami-Dade County.

3.      At all times material, Plaintiff, was *sui juris* and a resident of Miami-Dade County, Florida.

4.      At all times material, FRANCIS ROSA FERNANDEZ was an invitee at the building known as "Champlain Towers South" located at located at 8777 Collins Ave, Surfside, FL, 33154.

5.      At all times material, Plaintiff, ERIKA GIGANTI was the adult daughter of the DECEASED and has been or will be the duly appointed Personal Representative of the Estate of DECEASED. She brings this claim on behalf of the Decedent's Estate as well as the Decedent's Survivors, namely herself, PABLO PLASENCIA, her brother, and CHRISTINE PLASENCIA, her sister, who are the only surviving adult children of the Decedent.

6.      At all times material, CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. was and is a Florida not-for-profit corporation licensed to and doing business

in Miami-Dade County, Florida, and was and is the owner, operator and/or manager of Champlain Towers South.

7.      At all times material to this action, Defendant, SCOTT STEWART, was and is a legal resident of Miami-Dade County, Florida, is over the age of 18 and is otherwise *sui juris*. Said Defendant was engaged in providing property management services at Champlain Towers South.

8.      At all times material, Defendant, MORABITO CONSULTANTS, INC., was and is a foreign for-profit corporation, licensed to and doing business in Florida, and was engaged in providing engineering consulting services at the Building.

9.      At all times material, Defendant, CONCRETE PROTECTION AND RESTORATION, INC., was and is a foreign for-profit corporation, licensed to and doing business in Florida, and was engaged in assessing, inspecting and/or performing concrete structural restoration to the Building.

10.     At all times material, Defendant, WILLCOTT ENGINEERING, INC, was and is a Florida for-profit corporation, licensed to and doing business in Florida, and provided engineering consulting services at the Building. Said Defendant conducted an engineering inspection of the Building in January 2020.

11.     At all times material, Defendant, EIGHTY-SEVEN PARK, LLC, was and is a Florida limited liability company, licensed to and doing business in Florida, and owned, operated, constructed, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Miami Fl, 33154. Said Defendant was or is the neighboring landowner of Champlain Towers South, whose conduct and use on its land improperly interfered with and damaged the Building.

12.     At all times material, Defendant 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC., was and is a Florida not-for-profit corporation, licensed to and doing business in Florida, and owned, operated or managed the building known as "Eighty-Seven Park", located at 8701 Collins Ave, Miami Fl, 33154. Said Defendant was or is the neighboring landowner of Champlain Towers South whose conduct and use of its land improperly interfered with and damaged the Building.

13.     At all times material, Defendant, 8701 COLLINS DEVELOPMENT, LLC, was and is a Florida limited liability company, licensed to and doing business in Florida, and owned, operated, constructed, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Miami Fl, 33154. Said Defendant was or is the neighboring landowner whose conduct and use on its land improperly interfered whose conduct and use of its land improperly interfered with and damaged the Building.

14.     At all times material, Defendant, JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC., was and is a foreign for-profit corporation, licensed to and doing business in Miami-Dade County, and was engaged in providing general contracting services for the construction project at "Eighty-Seven Park."

15.     At all times material, Defendant, NV5, INC., was and is a foreign for-profit corporation, licensed to and doing business in Miami-Dade County, and was engaged in providing geotechnical engineering services for the construction project at "Eighty-Seven Park."

16.     At all times material, Defendant, NV5 GLOBAL, INC., was and is a Foreign Profit Corporation, licensed to and doing business in Miami-Dade County, and was engaged in providing geotechnical engineering services for the construction project at "Eighty-Seven Park."

17.     At all times material, Defendant, TERRA WORLD INVESTMENTS, LLC., was and is a Florida limited liability company, licensed to and doing business in Miami-Dade County, and operated, managed, supervised and/or developed a construction project at "Eighty-Seven Park."

18.     At all times material, Defendant, TERRA GROUP, LLC., was and is a Florida limited liability company, licensed to and doing business in Miami-Dade County, and operated, managed, supervised and/or developed a construction project at "Eighty-Seven Park."

19.     At all times material, Defendant, BIZZI & PARTNERS DEVELOPMENT, LLC, was and is a foreign limited liability company, doing business in Florida, and operated, managed, supervised and/or developed a construction project known as "Eighty-Seven Park" and located at 8701 Collins Ave, Miami Fl, 33154.

20.     Local governments, including Town of Surfside, have been placed on legal notice of this claim.

21.     All conditions precedent to the bringing of this action and Plaintiff's rights to the relief sought herein have occurred, have been performed or have been waived.

## **BACKGROUND**

22.     At all times material, prior to its collapse, Champlain Towers South was a 12-story beachside residential building with 136 units, located at 8777 Collins Avenue, Surfside, Florida.

23.     In the decades leading up to this catastrophe, CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. was placed on actual notice of the deplorable conditions that existed. Concerns about the structural integrity of the Building were repeatedly brought to their attention by the residents, the maintenance manager and in various building inspections.

24.     In fact, William Espinosa, who oversaw maintenance of Champlain Towers South from 1995-2000, recounted that he personally witnessed concerning amounts of sea water

accumulating in the garage during high ocean tides.[1] He recalled that sometimes one to two feet of sea water would sit in the garage for extended periods of time. Despite warning the Building's managers and owners on numerous occasions, nothing was done to resolve this serious ongoing problem.

25.     Indeed, Donna DiMaggio Berger, an attorney for Champlain Towers South, acknowledged that it is common knowledge that sea water corrosion is a serious issue for beach front properties when she said in a recent interview: "Concrete spalling, rebar deterioration—these are not unusual events when you have buildings exposed to corrosive conditions."[2] She added, "This building was buffeted by water." She was right. These are not unusual events. In fact, her statements make clear that any reasonable person would have known that the structure of the Building was in peril and bound to fail without proper repair. CHAMPLAIN TOWERS SOUTH CONDOMIUNUM ASSOCIATION, INC. knew of the dangerous condition that existed within the Building's structure and elected to ignore it.

26.     Contrary to recent assertions by Ms. DiMaggio Berger, the residents of Champlain Towers South did not believe the structure was properly maintained and resorted to taking matters into their own hands when the condominium association failed to act on their behalf.

27.     In 2001, a building resident filed a lawsuit against CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. alleging property damage caused by water entering her unit through "cracks in the outside wall of the building." The complaint alleged that CHAMPLAIN

---

[1] "Condo Collapse: Former Maintenance Manager William Espinosa Was Concerned About Saltwater Intrusion" AP. Available at: https://miami.cbslocal.com/2021/06/20/condo-collapse-former-maintenance-manager-william-espinosa-was-concerned-about-saltwater-intrusion/

[2] "*Miami-Area Condo Failure: Years of Warnings, but Mixed Signals*" A.P. Available at: https://www.wsj.com/articles/miami-area-condo-failure-years-of-warnings-but-mixed-signals-11624994509

TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. "failed to repair or negligently repaired" the "common elements of the outside walls of the building." [3] No action was taken.

28.     Still faced with dangers at the Building that were unaddressed, a second lawsuit was filed in 2015 alleging additional property damage caused by the same defects, which concerned the structural integrity of the Building.

29.     It was not until 2018 that CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. elected to take any action to address the safety concerns that existed at the Building. Even then, CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC.'s sole motivating factor for taking action was to pass the county's 40-year recertification process.

30.     Toward that end, MORABITO CONSULTANTS, INC., was hired by CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. to prepare the necessary paperwork to obtain the recertification of the condo building, as required by Miami-Dade County and the Town of Surfside.

31.     MORABITO CONSULTANTS, INC. inspected the Building and provided their Structural Field Survey Report to CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. on October 8, 2018 assessing the overall condition of the building and explaining what repairs were necessary to provide a safe and functional infrastructure for the future.

32.     The report confirmed what residents had been saying for years, the Building had significant cracks and breaks in the concrete. These compromised the structural integrity of the Building.

---

[3] Zaidenweber, Matilde v. Champlain Towers South Condo Assn Inc., Case No.: 01-26634 CA 22; and Matilde Fainstein v. Champlain Towers South Condominium Association Inc., Case No.: 13 2015 CA 022299000001

33.     Specifically, the report identified evidence of "major structural damage" below the pool deck and warned that waterproofing below the pool deck and entrance drive was failing and that "[f]ailure to replace the waterproofing in the near future will cause the extent of the concrete deterioration to expand exponentially." The report further explained that "[a]bundant cracking and spalling of varying degrees was observed in the concrete columns, beams, and walls …" and recommended that "most of the concrete deterioration needs to be repaired in a timely fashion." No action was taken to resolve these conditions.

34.     Notwithstanding the comprehensive inspection, documented in photographs, and the severe structural issues with the Building, foundation, and other areas, at no time did MORABITO CONSULTANTS, INC. advise CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. that there was any urgency to performing repairs or any need to evacuate residents immediately or during repairs.

35.     On April 9, 2021, the president of the CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC.'s Board, Jean Wodnicki, wrote a letter to the residents which was referred to as "State of the Building." In the letter, Wodnicki attempted to address concerns voiced by residents as to whether the repairs were necessary due to the cost, amounting to more than $15 million.

36.     Three months prior to the Building's collapse, Wodnicki acknowledged that "indeed the observable damage such as in the garage **has gotten significantly worse** since the initial inspection. **When you visually see the concrete spalling (cracking), that means that the rebar holding it together is rusting and deteriorating beneath the surface.**"[4]

---

[4] https://s.wsj.net/public/resources/documents/miamiletter0628.pdf

37.     To further justify the need for over $15 million, Wodnicki wrote "[p]lease note that the original scope of work in the 2018 report has expanded. **The concrete deterioration is accelerating**."

38.     She then admitted that "**[a] lot of this work could have been done or planned for in years gone by, but this is where we are now**."

39.     Wodnicki concluded the letter by providing residents with a status of CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC.'s current finances and the loan that was acquired from a financial institution to fund the repairs. When addressing CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC.'s limited reserves, she stated that the Board would not utilize its reserves to fund the repairs. "[T]his Board feels it would be inappropriate to spend our Reserves for these projects. **We need to conserve some cash in the event of an emergency."**

40.     Three months later, the Building collapsed.

## THE CATASTROPHE

41.     On June 24, 2021, at approximately 1:30 a.m., Champlain Towers South suffered a catastrophic failure and collapsed, resulting in the deaths of at least fifty-four people, including the DECEASED, as of the filing of this complaint. However, nearly eighty-six remain unaccounted for and the death toll will certainly rise.

42.     Surfside Mayor Charles Burkett eloquently stated the obvious when he announced the Town of Surfside's plan to relocate the remaining residents and begin a forensic investigation of the

collapse. He said, "the building collapsed for inexplicable reason[s], buildings in the United States do not fall down, and something very wrong was going on."[5]

## COUNT I: NEGLIGENCE AGAINST
## CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC.

43.     Plaintiff re-incorporates paragraphs one (1) through forty-two (42) as set forth herein.

44.     At all times material, CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC., as the owner of the property located at 8777 Collins Ave, Surfside, FL, 33154, had a non-delegable duty to maintain its property in a reasonably safe condition.

45.     This non-delegable duty included inspecting and maintaining the subject building so that conditions on the premises did not create a danger to the public, including DECEASED.

46.     Upon information and belief, at the time of the accident described above, the subject building was in a defective, weakened, and dangerous condition. Specifically, the Building's concrete, structural integrity, rebar, and other foundational materials were in deplorable condition and required remediation.

47.     Upon information and belief, at all times material, Defendant had actual knowledge and notice of the defective and dangerous condition of the building, or, in the exercise of reasonable care, should and would have had known of the unsafe condition of the premises. Specifically, Defendant was on notice as of October 2018, if not earlier, that the Building had major structural damage. In addition, the parking lot was noted to have abundant cracking, crumbling of columns, beams, and walls, among other areas.

---

[5]     Mayor: 'Something very wrong' at building collapse, AP. Available at: https://www.usatoday.com/videos/news/nation/2021/06/26/mayor-something-very-wrong-building-collapse/5359108001/

48.     Notwithstanding such knowledge, Defendant failed to act and continued to negligently and carelessly maintain the Building. Defendant's failures allowed the Building to remain in a dangerous and defective condition.

49.     On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner through the following acts and/or omissions:

    a.  Failing to appreciate the significance of the cracking, fractures, and defects in the structure brought to their attention by their residents, agents and/or employees;

    b.  Permitting the water from the pool deck and other water in existence under the structure to seep and leak into the structure of the subject building causing damage to the structural integrity of the subject building;

    c.  Placing DECEASED in the zone of danger of imminent risk of death or serious bodily injury;

    d.  Failing to properly analyze, review, communicate, prevent and/or eliminate the risks associated with the fractures, crack, and defects in the subject structure;

    e.  Failing to disclose to DECEASED, that the structure was weak, deficient and/or defective rendering the structure unsafe;

    f.  Failing to disclose to the DECEASED, that the cracks and defects observed on the structure created a dangerous condition and were likely to cause a collapse;

    g.  Failing to disclose to the DECEASED, that the cracks observed in the structure before its collapse were a safety concern;

    h.  Failing to perform, manage, supervise, oversee, and/or inspect the repairs and/or restoration of the structure;

    i.  Failing to properly train, instruct, and supervise personnel who participated in maintenance, inspection, repair or restoration of the subject building;

    j.  Failing to warn DECEASED that the building was unsafe;

     k.  Failing to notify the DECEASED to timely evacuate the subject building;

     l.  Using improper equipment and/or improperly using equipment during the repair and/or restoration of the subject building;

     m. Recklessly and carelessly not requesting the evacuation of the subject structure before attempting to perform repairs and/or restoration; and

     n.  Otherwise negligently failing to disclose any dangerous condition relative to the structure in the circumstances.

50.    As a result, the subject building was unsafe, unstable and collapsed.

51.    As a foreseeable and proximate result of CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC.'s negligence and reckless disregard for human life and safety in this matter, DECEASED sustained injuries resulting in her death.

**WHEREFORE**, for the foregoing reasons, the Plaintiff demands judgment against Defendant CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. for damages, costs and such further relief as the Court deems just and proper. ERIKA GIGANTI, as the Personal Representative of the Estate of FRANCIS ROSA FERNANDEZ, seeks all compensable damages for the estate under Florida Statute Section 768.21. ERIKA GIGANTI, PABLO PLASENCIA, and CHRISTINE PLASENCIA, the surviving adult children of the Estate of FRANCIS ROSA FERNANDEZ, seek all compensable damages under Florida Statute Section 768.21.

## COUNT II: NEGLIGENCE AGAINST
## SCOTT STEWART

52.    Plaintiff re-incorporates paragraphs one (1) through forty-two (42) as set forth herein.

53.    At all times material, SCOTT STEWART was the manager of the property located at 8777 Collins Ave, Surfside, FL, 33145, and had duty to maintain the property in a reasonably safe condition.

54.     This duty included inspecting and maintaining the subject building so that conditions on the premises did not create a danger to the public, including DECEASED.

55.     Upon information and belief, at the time of the accident described above, the subject building was in a defective, weakened, and dangerous condition. Specifically, the Building's concrete, structural integrity, rebar, and other foundational materials were in deplorable condition and required remediation.

56.     Upon information and belief, at all times material, Defendant had actual knowledge and notice of the defective and dangerous condition of the building, or, in the exercise of reasonable care, should and would have had known of the unsafe condition of the premises.

57.     Notwithstanding such knowledge, Defendant failed to take action and continued to negligently and carelessly maintain Champlain Towers South. Defendant's failures allowed the Building to remain in a dangerous and defective condition.

58.     On the above-mentioned date and place, Defendant breached his duty to exercise reasonable care and acted in a negligent manner through the following acts and/or omissions:

    a.  Failing to appreciate the significance of the cracking, fractures, and defects in the structure brought to their attention by their residents, agents and/or employees;

    b.  Permitting the water from the pool deck and other water in existence under the structure to seep and leak into the structure of subject building causing damage to the structural integrity of the subject building;

    c.  Placing DECEASED in the zone of danger of imminent risk of death or serious bodily injury;

    d.  Failing to properly analyze, review, communicate, prevent and/or eliminate the risks associated with the fractures, crack, and defects in the subject structure;

    e.  Failing to disclose to DECEASED, that the structure was weak, deficient and/or defective rendering the structure unsafe;

f.  Failing to disclose to the DECEASED, that the cracks and defects observed on the structure created a dangerous condition and were likely to cause a collapse;

g.  Failing to disclose to the DECEASED, that the cracks observed in the structure before its collapse were a safety concern;

h.  Failing to perform, manage, supervise, oversee, and/or inspect the repairs and/or restoration of the structure;

i.  Failing to properly train, instruct, and supervise personnel who participated in maintenance, inspection, repair or restoration of the subject building;

j.  Failing to warn DECEASED that the building was unsafe;

k.  Failing to notify the DECEASED to timely evacuate the subject building;

l.  Using improper equipment and/or improperly using equipment during the repair and/or restoration of the subject building;

m.  Recklessly and carelessly not requesting the evacuation of the subject structure before attempting to perform repairs and/or restoration; and

n.  Otherwise negligently failing to disclose any dangerous condition relative to the structure in the circumstances.

59.   As a result, the subject building was unsafe, unstable and collapsed.

60.   As a foreseeable and proximate result of SCOTT STEWART'S negligence and reckless disregard for human life and safety in this matter, DECEASED sustained injuries resulting in her death.

**WHEREFORE**, for the foregoing reasons, the Plaintiff demands judgment against Defendant SCOTT STEWART for damages, costs and such further relief as the Court deems just and proper ERIKA GIGANTI, as the Personal Representative of the Estate of FRANCIS ROSA FERNANDEZ seeks all compensable damages for the estate under Florida Statute Section 768.21. ERIKA GIGANTI, PABLO PLASENCIA, and CHRISTINE PLASENCIA, the surviving adult

children of the Estate of FRANCIS ROSA FERNANDEZ, seek all compensable damages under Florida Statute Section 768.21.

COUNT III: NEGLIGENCE AGAINST<br>MORABITO CONSULTANTS, INC.

61.    Plaintiff re-incorporates paragraphs one (1) through forty-two (42) as set forth herein.

62.    At all relevant times, Defendant, its agents, servants, or employees, were engaged in providing engineering, inspecting, and consulting services for the Building. Accordingly, Defendant undertook to inspect, evaluate, and advise CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. on certain repairs and to assess the Building.

63.    Defendant had a duty to incorporate therein nationally recognized safety standards and practices; to follow and incorporate therein the terms and provisions of the applicable building codes; to make a design, plan and specification which would not produce harm, injury or death to the public including the DECEASED, and to perform their services in a safe manner.

64.    This duty included providing accurate information as to the condition of the Building and potential safety risks and recommending timely evacuation of the Building so that conditions on the premises did not create a danger to the public, including DECEASED.

65.    Before June 24, 2021, Defendant inspected the Building on at least two separate occasions. The Building, its appurtenances, and particularly the concrete structure, pool deck, and parking garage, were all inspected and evaluated for safety under Defendant's supervision. At both inspections, Defendant identified several significant structural defects in the Building.

66.    At all times material, Defendant knew, or in the exercise of reasonable care should have known that the subject building was in a defective, weakened, and dangerous condition.

67.    Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known

16

that the subject building where they were performing their services was occupied by residents and invitees.

68.     Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, and the DECEASED, from the defective condition of the building.

69.     On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by allowing a hazardous and dangerous condition to exist in the subject building and failing to accurately disclose the inherent dangers associated with major structural damage, among others. Defendant failed to warn the public and among others, the Deceased, of the dangers outlined above.

70.     Defendant further failed to appreciate the hazardous and dangerous condition of the Building, communicate the urgency of its condition and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation.

71.     As a foreseeable and proximate result of MORABITO CONSULTANTS, INC.'s negligence and reckless disregard for human life and safety in this matter, DECEASED sustained injuries resulting in her death.

        **WHEREFORE**, for the foregoing reasons, the Plaintiff demands judgment against Defendant MORABITO CONSULTANTS, INC. for damages, costs and such further relief as the Court deems just and proper. ERIKA GIGANTI, as the Personal Representative of the Estate of FRANCIS ROSA FERNANDEZ, seeks all compensable damages for the estate under Florida Statute Section 768.21. ERIKA GIGANTI, PABLO PLASENCIA, and CHRISTINE PLASENCIA, the surviving adult children of the Estate of FRANCIS ROSA FERNANDEZ, seek all compensable damages under Florida Statute Section 768.21.

## COUNT IV: NEGLIGENCE AGAINST
## CONCRETE PROTECTION AND RESTORATION, INC.

72.     Plaintiff re-incorporates paragraphs one (1) through forty-two (42) as set forth herein.

73.     At all times material, Defendant, its agents, servants or employees, were engaged in inspecting, assessing and making restorations to the concrete of the Building and had a duty to its invitees to not endanger them and to maintain the Building in a reasonably safe condition for use by the public, including DECEASED, and to perform its services and construction work in a safe manner.

74.     At all times material, Defendant employed a number of workers, servants, agents, and employees to perform the work incidental to the concrete restoration process. These workers, servants, agents, and employees were working within the nature, course, and scope of their employment, and were repairing the concrete foundation of the Building, the roof, and other structural components of the Building.

75.     Specifically, Defendant was negligent for failing to follow industry standards and mandatory health and safety guidelines while working on the structural aspects of the building, including the concrete, roof, and other areas.

76.     Furthermore, Defendant failed to secure the foundation of the Building.

77.     Due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the subject building where they were performing the restoration was being occupied by residents and invitees. Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, including DECEASED, from the hazards of the Building.

78.     The Defendant's activities did, in fact, constitute a known and dangerous condition to DECEASED, and as a result of the Defendant's conduct, the building collapsed.

79.     On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist in the subject building; failing to repair the defective condition; in failing to recommend evacuation of the subject building; and in failing to warn the public and DECEASED of the imminent collapse.

80.     Defendant further failed to appreciate the hazardous and dangerous condition of the Building, communicate the urgency of its condition and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation.

81.     The Defendant was also negligent, in that a contractor engaged in work of this nature, scope, and type is at all times required to institute and maintain safety precautions of a type and nature sufficient and necessary to safeguard all persons and property affected by the contractor's operations.

82.     As a foreseeable and proximate result of CONCRETE PROTECTION AND RESTORATION, INC.'S negligence and reckless disregard for human life and safety in this matter, the DECEASED sustained injuries resulting her death.

       **WHEREFORE**, for the foregoing reasons, the Plaintiff demands judgment against Defendant CONCRETE PROTECTION AND RESTORATION, INC. for damages, costs and such further relief as the Court deems just and proper. ERIKA GIGANTI, as the Personal Representative of the Estate of FRANCIS ROSA FERNANDEZ, seeks all compensable damages for the estate under Florida Statute Section 768.21. ERIKA GIGANTI, PABLO PLASENCIA, and CHRISTINE

19

PLASENCIA, the surviving adult children of the Estate of FRANCIS ROSA FERNANDEZ, seek all compensable damages under Florida Statute Section 768.21.

**COUNT V: NEGLIGENCE AGAINST
WILLCOTT ENGINEERING, INC.**

83.     Plaintiff re-incorporates paragraphs one (1) through forty-two (42) as set forth herein.

84.     At all relevant times, Defendant, its agents, servants, or employees, were engaged in providing engineering consulting services for the Building.

85.     In early 2020, Defendants inspected the Building and provided their "Engineering Services Proposal" to the Champlain Towers South Condominium Association. The Building, its appurtenances, and particularly pool deck and parking garage, were all inspected and evaluated for safety under Defendant's supervision. At its inspection, Defendant identified several defects in the Building.

86.     Defendant had a duty to incorporate therein nationally recognized safety standards and practices; to follow and incorporate therein the terms and provisions of the applicable building codes; to make a design, plan and specification which would not produce harm, injury or death to the public, including the DECEASED, and to perform its services in a safe manner.

87.     This duty included providing accurate information as to the condition of the Building and potential safety risks ensuring timely evacuation of the Building so that conditions on the premises did not create a danger to the public, including DECEASED.

88.     At all times material, Defendant knew, or in the exercise of reasonable care should have known that the Building was in a defective, weakened, and dangerous condition.

89.     Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the Building was occupied by its residents and invitees.

90.     Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, and the DECEASED, from the defective condition of the Building.

91.     On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by allowing a hazardous and dangerous condition to exist in the subject building and not accurately disclosing the inherent dangers associated with major structural damage, among others. Defendant failed to warn the public and among others, the DECEASED of the dangers of the Building.

92.     Defendant further failed to appreciate the hazardous and dangerous condition of the Building, communicate the urgency of its condition and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation.

93.     As a foreseeable and proximate result of WILLCOTT ENGINEERING, INC.'s negligence and reckless disregard for human life and safety in this matter, DECEASED sustained injuries resulting in her death.

        **WHEREFORE**, for the foregoing reasons, the Plaintiff demands judgment against Defendant WILLCOTT ENGINEERING, INC. for damages, costs and such further relief as the Court deems just and proper. ERIKA GIGANTI, as the Personal Representative of the Estate of FRANCIS ROSA FERNANDEZ, seeks all compensable damages for the estate under Florida Statute Section 768.21. ERIKA GIGANTI, PABLO PLASENCIA, and CHRISTINE PLASENCIA, the surviving adult children of the Estate of FRANCIS ROSA FERNANDEZ, seek all compensable damages under Florida Statute Section 768.21.

## COUNT VI: NEGLIGENCE AGAINST
## EIGHTY-SEVEN PARK, LLC

94.     Plaintiff re-incorporates paragraphs one (1) through forty-two (42) as set forth herein.

95.     Upon information and belief, at all times material, Defendant was and is the owner, operator and/or manager of "Eighty-Seven Park", located at 8701 Collins Ave, Surfside Florida, 33154. The project is directly next door to Champlain Towers South.

96.     At all times material, Eighty-Seven Park was and is an 18-story, 66-unit condominium building, with an underground parking garage, located next door to the Building.

97.     Upon information and belief, construction of the Eighty-Seven Park condominium high rise took place between some time in 2016 and March 2020. During its construction, residents of the Building complained to Defendant that the construction was causing their building and the ground inside their units to shake substantially.

98.     At all times material, Defendant had a non-delegable duty to maintain its property in a reasonably safe condition.

99.     This non-delegable duty included ensuring that conditions on their premises did not create a danger to the public, including the DECEASED.

100.     The aforementioned construction process taken by Defendant or at the Defendant's instruction, caused the concrete foundation of the Building to become weakened and dangerous, creating a hazard to the public, including the DECEASED.

101.     Additionally, upon information and belief, in the course of the aforesaid construction and/or development, the Defendant made various excavations in the above-described area abutting the Building.

102.     Upon information and belief, in the course of the aforesaid work, the Defendant excavated beneath the Eighty-Seven Park property and impacted the Building to become weakened and dangerous, creating a hazard to the public, including the DECEASED.

22

103.    Upon information and belief, on various occasions during 2016, 2017, 2018, 2019 and thereafter, the Defendant was made aware that its construction activities were a danger to the structures surrounding the project, including the Building.

104.    Upon information and belief, the Defendants failed to properly underpin or otherwise brace the Building during the construction and failed to comply with the applicable rules, codes and regulations governing undermining, underpinning, and bracing of adjacent properties, among other activities.

105.    Upon information and belief, the Defendants failed to follow and abide by accepted industry standards and guidelines by not underpinning and/or bracing the Building during the project.

106.    At all material times, Defendants knew, or should have known, that the construction activities that took place on the Project were done in such a manner as to likely cause damage to the structural foundation of the Building.

107.    Further, Defendants knew or should have known that had they followed the applicable rules, codes, regulations, and industry standards they would not have caused damage to the structural foundation of the Building.

108.    Nevertheless, the construction activities on the Project were performed in a negligent and haphazard manner without regard for the safety and protection of the public, including the DECEASED.

109.    Due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the Building next to where they were performing the construction was being occupied by residents and invitees. Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to

take the appropriate or reasonable precautions generally recognized to protect the public in general, and the DECEASED in particular, from the hazards of such work.

110.   The Defendant's activities did, in fact, constitute a known and dangerous condition to the DECEASED, by creating severe and significant instability in the foundation and structure of the Building, and as a result, the building collapsed.

111.   On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendants' conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendants conduct on the Eighty-Seven Park Property; and in failing to warn the public and the DECEASED of the need to evacuate the Building and or of its imminent collapse.

112.   On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist in the subject building; in failing to repair the defective condition; in failing to recommend evacuation of the Building; and in failing to warn the public and the DECEASED of the imminent collapse.

113.   As a foreseeable and proximate result of EIGHTY-SEVEN PARK, LLC's negligence and reckless disregard for human life and safety in this matter, the subject building collapsed, causing the DECEASED to sustain injuries resulting in her death.

   **WHEREFORE**, for the foregoing reasons, the Plaintiff demands judgment against Defendant EIGHTY-SEVEN PARK, LLC for damages, costs and such further relief as the Court deems just and proper. ERIKA GIGANTI, as the Personal Representative of the Estate of FRANCIS ROSA FERNANDEZ, seeks all compensable damages for the estate under Florida Statute Section

768.21. ERIKA GIGANTI, PABLO PLASENCIA, and CHRISTINE PLASENCIA, the surviving adult children of the Estate of FRANCIS ROSA FERNANDEZ, seek all compensable damages under Florida Statute Section 768.21.

## COUNT VII: NEGLIGENCE AGAINST
## 8701 COLLINS DEVELOPMENT, LLC

114.    Plaintiff re-incorporates paragraphs one (1) through forty-two (42) as set forth herein.

115.    Upon information and belief, Defendant owned and/operated, constructed, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Surfside Florida, 33154. The project is directly next door to Champlain Towers South.

116.    At all times material, Eighty-Seven Park was and is an 18-story, 66-unit condominium building, with an underground parking garage, located next door to the Building.

117.    Upon information and belief, construction of the Eighty-Seven Park condominium high rise took place between 2016 and March 2020. During its construction, residents of the Building complained to Defendant that the construction was causing the Building and the ground inside its condominium units to shake substantially.

118.    At all times material, Defendant had a non-delegable duty to maintain its property in a reasonably safe condition.

119.    This non-delegable duty included ensuring that conditions on their premises did not create a danger to the public, including DECEASED.

120.    The aforementioned construction process taken by Defendant or at the Defendant's instruction, caused the concrete foundation of the Building to become weakened and dangerous, creating a hazard to the public, including the DECEASED.

121.    Additionally, upon information and belief, in the course of the aforesaid construction and/or development, the Defendant made various excavations in the above-described area abutting the Building and impacted the foundation of the Building.

122.    Upon information and belief, in the course of the aforesaid work, the Defendant excavated beneath the Eighty-Seven Park property and impacted the Building to become weakened and dangerous, creating a hazard to the public and the Building, including the DECEASED.

123.    Upon information and belief, on various occasions during 2016, 2017, 2018, 2019 and thereafter, the Defendant was made aware that its construction activities were a danger to the structures surrounding the project, including the Building.

124.    Upon information and belief, the Defendants failed to properly underpin or otherwise brace the Building during the construction and failed to comply with the applicable rules, codes and regulations governing undermining, underpinning, and bracing of adjacent properties, among other activities.

125.    Upon information and belief, the Defendants failed to follow and abide by accepted industry standards and guidelines by not underpinning and/or bracing the Building during the project.

126.    At all material times, Defendants knew, or should have known, that the construction activities that took place on the Project were done in such a manner as to likely cause damage to the structural foundation of the Building.

127.    Further, Defendants knew or should have known that had they followed the applicable rules, codes, regulations, and industry standards they would not have caused damage to the structural foundation of the Building.

128.   Nevertheless, the construction activities on the Project were performed in a negligent and haphazard manner without regard for the safety and protection of the public, including the DECEASED.

129.   Due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the Building next to where they were performing the construction was being occupied by residents and invitees. Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, and the DECEASED in particular, from the hazards of such work.

130.   The Defendant's activities did, in fact, constitute a known and dangerous condition to the DECEASED, by creating severe and significant instability in the foundation and structure of the Building, and as a result, the building collapsed.

131.   On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendants' conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendants conduct on the Eighty-Seven Park property; and in failing to warn the public and the DECEASED of the need to evacuate the Building and or of its imminent collapse.

132.   On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist in the subject building; in failing to repair the defective condition; in failing to recommend evacuation  of the subject building; and in failing to warn the public and the DECEASED of the imminent collapse.

133.     As a foreseeable and proximate result of 8701 COLLINS DEVELOPMENT, LLC's negligence and reckless disregard for human life and safety in this matter, the subject building collapsed, causing the DECEASED to sustain injuries resulting in her death.

**WHEREFORE**, for the foregoing reasons, the Plaintiff demands judgment against Defendant 8701 COLLINS DEVELOPMENT, LLC for damages, costs and such further relief as the Court deems just and proper. ERIKA GIGANTI, as the Personal Representative of the Estate of FRANCIS ROSA FERNANDEZ, seeks all compensable damages for the estate under Florida Statute Section 768.21. ERIKA GIGANTI, PABLO PLASENCIA, and CHRISTINE PLASENCIA, the surviving adult children of the Estate of FRANCIS ROSA FERNANDEZ, seek all compensable damages under Florida Statute Section 768.21.

## COUNT VIII: NEGLIGENCE AGAINST
## JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC

134.     Plaintiff re-incorporates paragraphs one (1) through forty-two (42) as set forth herein.

135.     At all relevant times, Defendant, its agents, servants, or employees, were engaged in providing general contracting services for the construction of Eighty-Seven Park located next door to the Building.

136.     Defendant had a duty to incorporate therein nationally recognized safety standards and practices; to follow and incorporate therein the terms and provisions of the applicable building codes; to make a design, plan and specification which would not produce harm, injury or death to the public, including the DECEASED, and to perform its services in a safe manner.

137.     This duty included providing accurate information regarding the dangerous conditions and potential safety risks that existed at the Building as a result of the Eighty-Seven Park construction, including recommending safety measures and timely evacuation of the Building so that

conditions created by the construction of Eighty-Seven Park did not create a danger to the Building's residents and invitees, including DECEASED.

138.    At all times material, Defendant knew, or in the exercise of reasonable care should have known that Eighty-Seven Park construction would damage the Building's foundation.

139.    At all times material, Defendant knew, or in the exercise of reasonable care should have known that that as a result of the Eighty-Seven Park construction, the Building was in a defective, weakened, and dangerous condition.

140.    Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the Building next to where they were performing their services was being occupied by residents and invitees.

141.    Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, and the DECEASED, from the dangers they created.

142.    On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendant's conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendants conduct on the Eighty-Seven Park property; and in failing to warn the public and the DECEASED of the need to  evacuate the Champlain Towers South building and or of its imminent collapse.

143.    Defendant further failed to appreciate the hazardous and dangerous conditions the Eighty-Seven Park construction created at the Building, failed to communicate the urgency of such

conditions and the danger of its impending collapse, and to recommend appropriate measures including immediate repair and evacuation of the Building

144.    As a foreseeable and proximate result of JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC.'s negligence and reckless disregard for human life and safety in this matter, DECEASED sustained injuries resulting in her death.

**WHEREFORE**, for the foregoing reasons, the Plaintiff demands judgment against Defendant JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC. for damages, costs and such further relief as the Court deems just and proper. ERIKA GIGANTI, as the Personal Representative of the Estate of FRANCIS ROSA FERNANDEZ, seeks all compensable damages for the estate under Florida Statute Section 768.21. ERIKA GIGANTI, PABLO PLASENCIA, and CHRISTINE PLASENCIA, the surviving adult children of the Estate of FRANCIS ROSA FERNANDEZ, seek all compensable damages under Florida Statute Section 768.21.

## COUNT IX: NEGLIGENCE AGAINST NV5, INC AND NV5 GLOBAL, INC.

145.    Plaintiff re-incorporates paragraphs one (1) through forty-two (42) as set forth herein.

146.    At all relevant times, Defendants, their agents, servants, or employees, were engaged in providing geotechnical engineering services for the construction of Eighty-Seven Park located next door to the Building.

147.    Defendants had a duty to incorporate therein nationally recognized safety standards and practices; to follow and incorporate therein the terms and provisions of the applicable building codes; to make a design, plan and specification which would not produce harm, injury or death to the public including the DECEASED, and to perform their services in a safe manner.

148.    This duty included providing accurate information regarding the dangerous conditions and potential safety risks that existed at the Building as a result of the Eighty-Seven Park

construction, including recommending safety measurchamplaines and timely evacuation of the Building so that conditions created by the construction of Eighty-Seven Park did not create a danger to the Building's residents and invitees, including DECEASED.

149.    At all times material, Defendants knew, or in the exercise of reasonable care should have known that Eighty-Seven Park construction would damage the Building's foundation.

150.    At all times material, Defendants knew, or in the exercise of reasonable care should have known that that as a result of the Eighty-Seven Park construction, the Building was in a defective, weakened, and dangerous condition.

151.    Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendants and their workers, servants, agents, and employees knew or should have known that the Building next to where they were performing their services was being occupied by residents and invitees.

152.    Nevertheless, the Defendants negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, and the DECEASED, from the dangers they created.

153.    On the above-mentioned date and place, Defendants through their agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendant's conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendants conduct on the Eighty-Seven Park property; and in failing to warn the public and the DECEASED of the need to  evacuate the Building and or of its imminent collapse.

154.    Defendants further failed to appreciate the hazardous and dangerous conditions the Eighty-Seven Park construction created at the Building, communicate the urgency of such conditions

31

and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation of the Building.

155.    As a foreseeable and proximate result of NV5, INC. and NV5 GLOBAL, INC.'s negligence and reckless disregard for human life and safety in this matter, the DECEASED sustained injuries resulting in her death.

**WHEREFORE**, for the foregoing reasons, the Plaintiff demands judgment against Defendant NV5, INC. and NV5 GLOBAL, INC. for damages, costs and such further relief as the Court deems just and proper. ERIKA GIGANTI, as the Personal Representative of the Estate of FRANCIS ROSA FERNANDEZ, seeks all compensable damages for the estate under Florida Statute Section 768.21. ERIKA GIGANTI, PABLO PLASENCIA, and CHRISTINE PLASENCIA, the surviving adult children of the Estate of FRANCIS ROSA FERNANDEZ, seek all compensable damages under Florida Statute Section 768.21.

## COUNT X: NEGLIGENCE AGAINST
## TERRA WORLD INVESTMENTS, LLC AND TERRA GROUP, LLC

156.    Plaintiff re-incorporates paragraphs one (1) through forty-two (42) as set forth herein.

157.    Upon information and belief, Defendants owned and/operated, constructed, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Surfside Florida, 33154. The project is directly next door to the Building.

158.    At all times material, Defendants owed a duty to the DECEASED and the general public to perform their activities in a reasonably safe manner that did not harm or endanger the DECEASED.

159.    Upon information and belief, in the course of their aforesaid construction and/or development, Defendants made various excavations in the above described area abutting the Building.

160.     Upon information and belief, in the course of the aforesaid work, the Defendants excavated beneath the Eighty-Seven Park property and impacted the Building to become weakened and dangerous, creating a hazard to the public, including the DECEASED.

161.     Upon information and belief, on various occasions during 2016, 2017, 2018, 2019 and thereafter, the Defendants were made aware that their construction activities were a danger to the structures surrounding the project, including Champlain Towers South.

162.     Upon information and belief, the Defendants failed to properly underpin or otherwise brace the Champlain Towers during the Project and failed to comply with the applicable rules, codes and regulations governing underpinning and bracing of adjacent properties.

163.     Upon information and belief, the Defendants failed to follow and abide by accepted industry standards and guidelines by not underpinning and/or bracing the Building during the project.

164.     At all material times, Defendants knew, or should have known, that the construction activities that took place on the Project were done in such a manner as to likely cause damage to the structural foundation of Champlain Towers South.

165.     Further, Defendants knew or should have known that had they followed the applicable rules, codes, regulations and industry standards they would not have caused damaged to the structural foundation of Champlain Towers South.

166.     Nevertheless, the construction activities on the Project were performed in a negligent and haphazard manner without regard for the safety and protection of the public, including and the DECEASED.

167.     Due to the nature of the dangers potentially associated with this type of work, the Defendants and their workers, servants, agents, and employees knew or should have known that the subject building next to where they were performing the restoration was being occupied by residents

and invitees. Nevertheless, the Defendants negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, and the DECEASED in particular, from the hazards of such work.

168.    The Defendants' activities did, in fact, constitute a known and dangerous condition to and the DECEASED, by creating severe and significant instability in the foundation and structure of Champlain Towers South, and as a result, the building collapsed.

169.    On the above-mentioned date and place, Defendants through their agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at Champlain Towers South that resulted from Defendants' conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendants conduct on the Eighty-Seven Park property; and in failing to warn the public and the DECEASED of the need to evacuate the Champlain Towers South building and or of its imminent collapse.

170.    Defendants were also negligent, in that a contractor engaged in work of this nature, scope, and type is at all times required to institute and maintain safety precautions of a type and nature sufficient and necessary to safeguard all persons affected by the contractor's operations.

171.    As a foreseeable and proximate result of TERRA WORLD INVESTMENTS, LLC AND TERRA GROUP, LLC's negligence and reckless disregard for human life and safety in this matter, the subject building collapsed, causing and the DECEASED to sustain injuries resulting her death.

**WHEREFORE**, for the foregoing reasons, the Plaintiff demands judgment against Defendant TERRA WORLD INVESTMENTS, LLC AND TERRA GROUP, LLC for damages, costs and such further relief as the Court deems just and proper. ERIKA GIGANTI, as the Personal

Representative of the Estate of FRANCIS ROSA FERNANDEZ, seeks all compensable damages for the estate under Florida Statute Section 768.21. ERIKA GIGANTI, PABLO PLASENCIA, and CHRISTINE PLASENCIA, the surviving adult children of the Estate of FRANCIS ROSA FERNANDEZ, seek all compensable damages under Florida Statute Section 768.21.

<b>COUNT XI: NEGLIGENCE AGAINST<br>BIZZI & PARTNERS DEVELOPMENT, LLC</b>

172.  Plaintiff re-incorporates paragraphs one (1) through forty-two (42) as set forth herein.

173.  Upon information and belief, Defendant owned and/operated, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Surfside Florida, 33154. The project is directly next door to Champlain Towers South.

174.  At all times material, Defendant owed a duty to DECEASED and the general public to perform their activities in a reasonably safe manner that did not harm or endanger the DECEASED.

175.  Upon information and belief, in the course of their aforesaid construction and/or development, the defendant made various excavations in the above described area abutting the Building.

176.  Upon information and belief, in the course of the aforesaid work, the Defendant excavated beneath the Eighty-Seven Park property and impacted the Building to become weakened and dangerous, creating a hazard to the public, including the DECEASED.

177.  Upon information and belief, on various occasions during 2016, 2017, 2018, 2019 and thereafter, the Defendant was made aware that their construction activities were a danger to the structures surrounding the project, including the Building.

178.    Upon information and belief, the Defendant failed to properly underpin or otherwise brace the Champlain Towers during the Project and failed to comply with the applicable rules, codes and regulations governing underpinning and bracing of adjacent properties.

179.    Upon information and belief, the Defendants failed to follow and abide by accepted industry standards and guidelines by not underpinning and/or bracing the Building during the project.

180.    At all material times, Defendant knew, or should have known, that the construction activities that took place on the Project were done in such a manner as to likely cause damage to the structural foundation of the Building.

181.    Further, Defendant knew or should have known that had it followed the applicable rules, codes, regulations and industry standards it would have reduced the likelihood of causing damage the structural foundation of the Building.

182.    Nevertheless, the construction activities on the Project were performed in a negligent and haphazard manner without regard for the safety and protection of the public, including the DECEASED.

183.    Due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the Building next to where they were performing the restoration was being occupied by residents and invitees. Nevertheless, the Defendant negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, including the DECEASED in particular, from the hazards of such work.

184.    The Defendant's activities did, in fact, constitute a known and dangerous condition to the DECEASED, by creating severe and significant instability in the foundation and structure of the Building, and as a result, the Building collapsed.

185.    On the above-mentioned date and place, Defendant through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendant's conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendants conduct on the Eighty-Seven Park property; and in failing to warn the public and the DECEASED of the need to evacuate the Building and or of its imminent collapse.

186.    The Defendant was also negligent, in that a contractor engaged in work of this nature, scope, and type is at all times required to institute and maintain safety precautions of a type and nature sufficient and necessary to safeguard all persons affected by the contractor's operations.

187.    As a foreseeable and proximate result of BIZZI & PARTNERS DEVELOPMENT, LLC's negligence and reckless disregard for human life and safety in this matter, the Building collapsed, causing the DECEASED to sustain injuries resulting her death.

**WHEREFORE**, for the foregoing reasons, the Plaintiff demands judgment against Defendant BIZZI & PARTNERS DEVELOPMENT, LLC for damages, costs and such further relief as the Court deems just and proper. ERIKA GIGANTI, as the Personal Representative of the Estate of FRANCIS ROSA FERNANDEZ, seeks all compensable damages for the estate under Florida Statute Section 768.21. ERIKA GIGANTI, PABLO PLASENCIA, and CHRISTINE PLASENCIA, the surviving adult children of the Estate of FRANCIS ROSA FERNANDEZ, seek all compensable damages under Florida Statute Section 768.21.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

DATED: July 8, 2021.

SILVA & SILVA, P.A.
*Attorneys for Plaintiff*
236 Valencia Avenue
Coral Gables, Florida 33134
Telephone: (305) 445-0011
Facsimile: (305) 445-1181

By: /s/Jorge E. Silva
JORGE E. SILVA, ESQ.
Florida Bar No.: 964476
JSilva@silvasilva.com
CARLOS E. SILVA, ESQ.
Florida Bar No.: 999032
CSilva@silvasilva.com
PAUL JON LAYNE, ESQ.
Florida Bar No. 23558
PLayne@silvasilva.com
BENJAMIN FERNANDEZ IV, ESQ.
Florida Bar No. 638811
BFernandez@silvasilva.com