# EXHIBIT 15

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FL

CIVIL DIVISION CASE NO.:

JUANA VILLALBA ROJAS, as Personal Representative of the Estate of LEIDY VANESSA LUNA VILLALBA, Deceased,

Plaintiff,

v.

CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC., a Florida not-for-profit corporation; SCOTT STEWART, individually; MORABITO CONSULTANTS, INC., a foreign for-profit corporation; CONCRETE PROTECTION AND RESTORATION, INC., a foreign for-profit corporation; WILLCOTT ENGINEERING, INC., a Florida for-profit corporation; EIGHTY-SEVEN PARK, LLC, a Florida limited liability company; 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC., a Florida not-for-profit corporation;   8701   COLLINS DEVELOPMENT, LLC, a Florida limited liability company; JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC., a foreign for-profit Corporation; NV5, INC., a foreign-for profit corporation; NV5 GLOBAL INC., a foreign-for profit corporation; TERRA WORLD INVESTMENTS, LLC, a Florida limited liability company; TERRA GROUP, LLC, a Florida limited liability company; BIZZI & PARTNERS DEVELOPMENT, LLC, a foreign limited liability company; TANENBAUM HARBER OF FLORIDA, LLC., a Florida limited liability company; SCOTT D. DYER ARCHITECT, P.A. a Florida for-profit corporation;

Defendants.

_____/

## **WRONGFUL DEATH COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, JUANA VILLALBA ROJAS as Personal Representative of the Estate of LEIDY VANESSA LUNA VILLALBA, Deceased, by and through the undersigned counsel, hereby sues Defendants, CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC., a Florida not-for-profit corporation; SCOTT STEWART, individually; MORABITO CONSULTANTS, INC., a foreign for-profit corporation; CONCRETE PROTECTION AND

RESTORATION, INC. a foreign for-profit corporation; WILLCOTT ENGINEERING, INC., a Florida for-profit corporation; EIGHTY-SEVEN PARK, LLC, a Foreign limited liability company; 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC., a Florida not-for-profit corporation; 8701 COLLINS DEVELOPMENT, LLC; a Florida limited liability company; JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC., a foreign for-profit corporation; NV5, INC., a foreign for-profit corporation; NV5 GLOBAL, INC., a foreign for-profit corporation; TERRA WORLD INVESTMENTS, LLC, a Florida limited liability company; TERRA GROUP, LLC, a Florida limited liability company; BIZZI & PARTNERS DEVELOPMENT, LLC, a foreign limited liability company; TANENBAUM HARBER OF FLORIDA, LLC, a Florida limited liability company; SCOTT D. DYER ARCHITECT, P.A. a Florida for-profit corporation; and as grounds therefore allege the following:

## **INTRODUCTION**

1.      This is a wrongful death action brought against Defendants who were either involved in the ownership, maintenance, restoration, management, inspection, insuring and oversight of the building where the DECEDENT resided, known as "Champlain Towers South", located at 8777 Collins Ave, Surfside, FL, 33154 (hereinafter "the Building") or with the neighboring property whose representative's, employee's and/or agent's conduct interfered with and damaged the property where the DECEDENT resided.

2.      At approximately 1:30 a.m. on June 24, 2021, the unthinkable occurred in the town of Surfside, Florida, when a residential building was reduced to rubble.  Referred to as one of the most catastrophic building collapses in United States history, LEIDY VANESSA LUNA VILLALBA (the "DECEDENT"), along with hundreds of other residents, lost her residence and her life.



3.      The collapse was preventable and a result of the direct negligence of the Defendants. The conduct of these Defendants was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and property rights of persons, including the DECEDENT, who lost her life as a result of the Defendants' actions or omissions.

## JURISDICTION, VENUE AND THE PARTIES

4.      This is a wrongful death action brought pursuant to section 768.16, Florida Statutes, seeking damages in excess of $30,000.00, exclusive of interests, costs and attorney's fees. Accordingly, this Court has subject matter jurisdiction over this cause.

5.      Venue is proper in this circuit because the acts and omissions forming the basis of this Complaint all occurred in this circuit, because the incident occurred in Miami-Dade County, Florida.

6.      At all times material, Plaintiff, was sui juris and a resident of Paraguay.

7.     At all times material, LEIDY VANESSA LUNA VILLALBA, a nanny, resided with Mr. Luis Pettengill and Sophia Lopez Moreira and their three children in condominium unit no. 1010 located at residential building known as "Champlain Towers South" located at located at 8777 Collins Ave, Surfside, FL, 33154.

8.     At all times material, Plaintiff, JUANA VILLALBA ROJAS was the biological mother of the DECEDENT (D/O/B March 27, 1972) and has been or will be the duly appointed Personal Representative of the Estate of DECEDENT.  She brings this claim on behalf of the Decedent's Estate as well as the Decedent's Survivors, namely herself and her husband, Osvaldo Luna Machuca (D/O/B November 14, 1968), who is the Decedent's biological father, and who are the survivors of the Decedent's Estate.

9.     At all times material, CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. (hereinafter "CHAMPLAIN TOWERS SOUTH"), was and is a Florida not-for-profit corporation licensed to and doing business in Miami-Dade County, Florida, and was and is the owner, operator and/or manager of Champlain Towers South.

10.     At all times material to this action, Defendant, SCOTT STEWART (hereinafter "STEWART"), was and is a legal resident of Miami-Dade County, Florida, is over the age of 18 and is otherwise sui juris. This Defendant was engaged in providing property management services at Champlain Towers South.

11.     At all times material, Defendant, MORABITO CONSULTANTS, INC. (hereinafter "MORABITO"), was and is a foreign for-profit corporation, licensed to and doing business in Florida, and was engaged in providing engineering consulting services at the Building.

12.     At all times material, Defendant, CONCRETE PROTECTION AND RESTORATION, INC. (hereinafter "CONCRETE PROTECTION"), was and is a foreign for-

4

profit corporation, licensed to and doing business in Florida, and was engaged in assessing, inspecting and/or performing concrete structural restoration to the subject building.

13.    At all times material, Defendant, WILLCOTT ENGINEERING, INC. (hereinafter "WILLCOTT"), was and is a Florida for-profit corporation, licensed to and doing business in Florida, and provided engineering consulting services at the Building. Said Defendant conducted an engineering inspection of the Building in January 2020.

14.    At all times material, Defendant, EIGHTY-SEVEN PARK, LLC, was and is a Florida limited liability company, licensed to and doing business in Florida, and owned, operated, constructed, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Miami FL, 33154. This Defendant was or is the neighboring landowner of Champlain Towers South, whose conduct and use on its land improperly interfered with the DECEDENT'S use of the property and damaged the property in which she resided.

15.    At all times material, Defendant 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. was and is a Florida not-for-profit corporation, licensed to and doing business in Florida, and owned, operated or managed the building known as "Eighty-Seven Park", located at 8701 Collins Ave, Miami FL, 33154. This Defendant was or is the neighboring landowner of Champlain Towers South whose conduct and use of its land improperly interfered with the DECEDENT'S use of the property and damaged the property in which she resided.

16.    At all times material, Defendant, 8701 COLLINS DEVELOPMENT, LLC was and is a Florida limited liability company, licensed to and doing business in Florida, and owned, operated, constructed, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Miami FL, 33154. This Defendant was or is the neighboring landowner whose conduct and use on its land improperly interfered with the DECEDENT'S use of the property and damaged the property in which she resided.

5

17.     At all times material, Defendant, JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC. (hereinafter "MORIARTY"), was and is a foreign for-profit corporation, licensed to and doing business in Miami-Dade County, and was engaged in providing general contracting services for the construction project at "Eighty-Seven Park."

18.     At all times material, Defendant, NV5, INC., was and is a foreign for-profit corporation, licensed to and doing business in Miami-Dade County, and was engaged in providing geotechnical engineering services for the construction project at "Eighty-Seven Park."

19.     At all times material, Defendant, NV5 GLOBAL, INC., was and is a Foreign Profit Corporation, licensed to and doing business in Miami-Dade County, and was engaged in providing geotechnical engineering services for the construction project at "Eighty-Seven Park."

20.     At all times material, Defendant, TERRA WORLD INVESTMENTS, LLC., was and is a Florida limited liability company, licensed to and doing business in Miami-Dade County, and operated, managed, supervised and/or developed a construction project at "Eighty-Seven Park."

21.     At all times material, Defendant, TERRA GROUP, LLC., was and is a Florida limited liability company, licensed to and doing business in Miami-Dade County, and operated, managed, supervised and/or developed a construction project at "Eighty-Seven Park."

22.     At all times material, Defendant, BIZZI & PARTNERS DEVELOPMENT, LLC ("hereinafter "BIZZI"), was and is a foreign limited liability company, doing business in Florida, and operated, managed, supervised and/or developed a construction project known as "Eighty-Seven Park" located at 8701 Collins Ave, Miami FL, 33154. This Defendant committed a tort in the state of Florida and directly caused and/or contributed to causing the damages suffered by the Plaintiff herein.

23.     At all times material, Defendant, TANENBAUM-HARBER OF FLORIDA, LLC (hereinafter "TANENBAUM-HARBER"), was and is a Florida limited liability company, licensed

to and doing business in Florida, and was and is engaged in the business of selling insurance. This Defendant procured insurance for Defendant CHAMPLAIN TOWERS SOUTH.

24.     At all times material, Defendant, SCOTT D. DYER ARCHITECT, P.A. was and is a Florida for-profit corporation with its principal place of business in Coral Springs, FL, authorized to and doing business in Miami-Dade County, Florida.  At all times material hereto, this Defendant was an architectural firm that, upon information and belief, was hired by Defendant CHAMPLAIN TOWERS SOUTH to perform the planned 40-year remediation and renovation work.

25.     Local governments, including the Town of Surfside, have been or will be placed on legal notice of this claim and will be added to this suit as party defendants at a later date.

26.     All conditions precedent to the bringing of this action and Plaintiff's rights to the relief sought herein have occurred, have been performed or have been waived.

## BACKGROUND

27.     At all times material hereto, prior to its collapse, Champlain Towers South was a 12-story beachside residential building with 136 units, located at 8777 Collins Avenue, Surfside, Florida.  Construction of the building was completed in 1981 and it contained 136 units, at least 55 of which were reduced to rubble in the June 24, 2021 collapse.

28.     In the decades leading up to this catastrophe, Defendant CHAMPLAIN TOWERS SOUTH was placed on actual notice of the deplorable conditions that existed. Concerns about the structural integrity of the Building were repeatedly brought to its attention by the residents, the maintenance manager, and in various building inspections.

29.     In fact, William Espinosa, who oversaw maintenance of CHAMPLAIN TOWERS SOUTH from 1995-2000, recounted that he personally witnessed concerning amounts of sea water

accumulating in the garage during high ocean tides.[1] He recalled that sometimes one to two feet of sea water would sit in the garage for extended periods of time. Despite warning the Building's managers and owners on numerous occasions, nothing was done to resolve this serious ongoing problem.

30.     Indeed, Donna DiMaggio Berger, an attorney for CHAMPLAIN TOWERS SOUTH, acknowledged that it is common knowledge that sea water corrosion is a serious issue for beach front properties when she said in a recent interview: "Concrete spalling, rebar deterioration—these are not unusual events when you have buildings exposed to corrosive conditions."[2] She added, "This building was buffeted by water." These are not unusual events. In fact, her statements make clear that any reasonable person would have known that the structure of the Building was in peril and bound to fail without proper repair. CHAMPLAIN TOWERS SOUTH knew of the dangerous condition that existed within the Building's structure and elected to ignore it.

31.     Contrary to assertions otherwise, the residents of the building did not believe the structure was properly maintained and resorted to taking matters into their own hands when the condominium association failed to act on their behalf.

32.     In 2001, a building resident filed a lawsuit against CHAMPLAIN TOWERS SOUTH alleging property damage caused by water entering her unit through "cracks in the outside wall of the building." The complaint alleged that CHAMPLAIN TOWERS SOUTH "failed to

---

[1] "Condo Collapse: Former Maintenance Manager William Espinosa Was Concerned About Saltwater Intrusion" AP. Available at: https://miami.cbslocal.com/2021/06/20/condo-collapse-former-maintenance-manager-william-espinosa-was-concerned-about-saltwater-intrusion/

[2] Miami-Area Condo Failure: Years of Warnings, but Mixed Signals" A.P. Available at: https://www.wsj.com/articles/miami-area-condo-failure-years-of-warnings-but-mixed-signals-11624994509

repair or negligently repaired" the "common elements of the outside walls of the building."[3] Still, no action was taken.

33.     Still faced with dangers at the Building that were unaddressed, a second lawsuit was filed in 2015 alleging additional property damage caused by the same defects, which concerned the structural integrity of the Building.

34.     It was not until 2018 that Defendant CHAMPLAIN TOWERS SOUTH elected to take any action to address the safety concerns that existed at the Building. Even then, CHAMPLAIN TOWERS SOUTH's sole motivating factor for taking action was to pass the county's 40-year recertification process.

35.     Toward that end, MORABITO was hired by CHAMPLAIN TOWERS SOUTH to prepare the necessary paperwork to obtain the recertification of the condo building, as required by Miami-Dade County Code, Section 8-11(f), and the Town of Surfside.

36.     The fundamental purpose of the required inspection and recertification is to confirm that the building is structurally safe for continued occupancy.

37.     It is critical that the structural inspection performed in relation to the recertification process examine the effects and impacts of time with respect to deterioration of the structure and determine whether immediate action is necessary to ensure the structural stability of the building and the safety of the residents.

38.     The need for a thorough structural inspection and examination, including a quantitative analysis performed through sampling and testing, is especially necessary in the marine

---

[3] Zaidenweber, Matilde v. Champlain Towers South Condo Assn Inc., Case No.: 01-26634 CA 22; and Matilde Fainstein v. Champlain Towers South Condominium Association Inc., Case No.: 13 2015 CA 022299000001

climate in which the condominium building was located where highly aggressive conditions exist year round.

39.     At an absolute minimum, a proper structural inspection and analysis would have examined the structure for the following: general alignment, including bulging, settlement, defections, expansion, and contraction; any portions showing distress such as beams, columns, structural   walls, floors, or roofs; surface conditions of the structure which should be specifically examined for cracking, spalling, peeling, signs of moisture penetration & stains; cracks throughout the structure; the general extent of deterioration such as cracking or spalling of concrete or masonry, oxidation of metals, rot or borer attack in wood; previous patching or repairs and the condition of such; and the nature of the present loading conditions and its magnitude. This is explicitly spelled out by the **Minimum Inspection Procedural Guidelines For Building's Structural Recertification Form**:

## MINIMUM INSPECTION PROCEDURAL GUIDELINES FOR BUILDING'S STRUCTURAL RECERTIFICATION

### 2. PRESENT CONDITION OF STRUCTURE

| | | |
|---|---|---|
| a. | General alignment (not good, fair, poor, explain if significant) | |
| | 1. | Bulging: |
| | 2. | Settlement: |
| | 3. | Defections: |
| | 4. | Expansion: |
| | 5. | Contraction: |
| b. | Portion showing distress (Note, beams, columns, structural walls, floors, roofs, other): | |
| c. | Surface conditions – describe general conditions of finishes, noting cracking, spalling, peeling, signs of moisture penetration & stains: | |
| d. | Cracks – note location in significant members. Identify crack size as HAIRLINE if barely discernable; FINE if less than 1 mm in width; MEDIUM if between 1 and 2 mm in width; WIDE if over 2 mm.: | |
| e. | General extent of deterioration – cracking or spalling of concrete or masonry; oxidation of metals; rot or borer attack in wood: | |
| f. | Previous patching or repairs: | |
| g. | Nature of present loading indicate residential, commercial, or other; estimate magnitude: | |

40.     The Minimum Inspection Procedural Guidelines for Building's Structural Recertification outlines the detailed analysis that must be performed in order to ensure the structural stability of the building, including thorough inspection requirements and provision of supporting data.

41.     The Champlain Towers South condominium building was in serious and significant disrepair, with obvious damage and deterioration to exterior walls and load-bearing structural members and this was known to the Defendants for years.

42.     MORABITO inspected the Building and provided its Structural Field Survey Report to CHAMPLAIN TOWERS SOUTH on October 8, 2018, assessing the overall condition of the building and explaining what repairs were necessary to provide a safe and functional infrastructure for the future.

43.     The report confirmed what residents had been saying for years, the Building had significant cracks and breaks in the concrete. These breaks and cracks compromised the structural integrity of the Building.

44.     Specifically, the report identified evidence of "major structural damage" below the pool deck and warned that waterproofing below the pool deck and entrance drive was failing and that "[f]ailure to replace the waterproofing in the near future will cause the extent of the concrete deterioration to expand exponentially." The report further explained that "[a]bundant cracking and spalling of varying degrees was observed in the concrete columns, beams, and walls ..." and recommended that "most of the concrete deterioration needs to be repaired in a timely fashion." No action was taken to resolve these conditions.



45.     Notwithstanding the comprehensive inspection, documented in photographs, and the severe structural issues with the Building, foundation, and other areas, at no time did

MORABITO advise CHAMPLAIN TOWERS SOUTH that there was any urgency to performing repairs or any need to evacuate residents immediately or during repairs.

46.     On April 9, 2021, the president of the CHAMPLAIN TOWERS SOUTH's Board, Jean Wodnicki, wrote a letter to the residents, which letter was referred to as "State of the Building." In the letter, Wodnicki attempted to address concerns voiced by residents as to whether the repairs were necessary due to the cost, amounting to more than $15 million.

47.     Three months prior to the Building's collapse, Wodnicki acknowledged that "indeed the observable damage such as in the garage has gotten significantly worse since the initial inspection. When you visually see the concrete spalling (cracking), that means that the rebar holding it together is rusting and deteriorating beneath the surface."[4]

48.     To further justify the need for over $15 million, Wodnicki wrote "[p]lease note that the original scope of work in the 2018 report has expanded. The concrete deterioration is accelerating."

49.     She then admitted that "[a] lot of this work could have been done or planned for in years gone by, but this is where we are now."

50.     Wodnicki concluded the letter by providing residents with a status of CHAMPLAIN TOWERS SOUTH's current finances and the loan that was acquired from a financial institution to fund the repairs. When addressing CHAMPLAIN TOWERS SOUTH's limited reserves, she stated that the Board would not utilize its reserves to fund the repairs. "[T]his Board feels it would be inappropriate to spend our Reserves for these projects.  We need to conserve some cash in the event of an emergency."

---

[4] https://s.wsj.net/public/resources/documents/miamiletter0628.pdf

51.     MORABITO's report further detailed that **"Several sizeable spalls were noted in both the topside of the entrance drive ramp and underside of the pool/entrance drive/planter slabs, which included instances with exposed, deteriorating rebar."**

52.     Thus, Defendant MORABITO found that not only were the structural concrete slabs underneath the pool deck experiencing dramatic and rapid deterioration due to dilapidated and ineffective waterproofing, but that the concrete on the underside of the pool had significant concrete spalling and "exposed, deteriorating rebar."

53.     MORABITO advised that the "Entrance/Pool deck concrete slabs that are showing distress" must be **"removed and replaced in their entirety."**

54.     Defendant MORABITO told Defendant CHAMPLAIN TOWERS SOUTH that "the concrete deterioration needs to be repaired in a timely fashion" and "in accordance with the recommendations of International Concrete Repair Institute (ICRI)."

55.     Defendant CHAMPLAIN TOWERS SOUTH, INC. never repaired the significant concrete deterioration despite knowing of the danger it posed.

56.     Defendant MORABITO's observations and findings during its 2018 inspection certainly should have spurred MORABITO to further examine the structural stability of the Champlain Towers South building by inspecting the sub-surface foundation.

57.     This was never done by Defendant MORABITO.

58.     Defendant MORABITO's report also reveals that Defendant CHAMPLAIN TOWERS SOUTH was aware of the significant concrete deterioration and structural issues long before Defendant MORABITO's 2018 inspection and report but, instead of expending the money necessary to sufficiently address the critical structural issues, Defendant CHAMPLAIN TOWERS SOUTH chose to perform shoddy concrete patchwork in an apparent attempt to delay making the repairs that they undoubtedly knew were necessary.

59.     Defendant MORABITO's 2018 inspection further "revealed that many of the previous garage concrete repairs are failing resulting in additional concrete cracking, spalling and leaching of calcium carbonate deposits." Alarmingly, at the "underside of Entrance/Pool deck where the slab had been epoxy-injected, new cracks were radiating from the originally repaired cracks."

60.     MORABITO's report noted that the "installed epoxy is not continuous as observed from the bottom of the slab, which is evidence of poor workmanship performed by the previous contractor" and were "ineffective in properly repairing the existing cracked and spalled concrete slabs."



**Previously installed and failed injection repairs**

61.     Instead of performing a full-scale repair and/or replacement of the structural concrete, Defendant CHAMPLAIN TOWERS SOUTH attempted to save money by performing ineffective and shoddy spot repairs.

62.     Once again, instead of performing the repairs and work known to be critical to the structural stability of the building and necessary to protect the lives of the building's occupants, Defendant CHAMPLAIN TOWERS SOUTH ignored the numerous red flags and warnings that a massive structural collapse was imminent.

63.     Defendant CHAMPLAIN TOWERS SOUTH's numerous and repeated decisions to ignore its obligations to maintain the structural stability of the building and safeguard the vulnerable and unsuspecting occupants was reckless and unforgivable.

64.     Defendant MORABITO's findings rendered the Champlain Towers South building as an "unsafe" structure under Miami-Dade County Building Code Section 8-5(b)(2)(ii).

65.     Despite the Champlain Towers South building being classified as an unsafe structure under the Miami-Dade County Building Code by virtue of Defendant MORABITO's findings that there was major structural damage, neither Defendant CHAMPLAIN TOWERS SOUTH nor Defendant MORABITO took any action to notify the residents and occupants of the building or otherwise make the building safe.

66.     The significant and alarming issues identified in Defendant MORABITO's October 2018 Report may have only been compounded and made even more urgent to address quickly by the fact that the Champlain Towers South building had been sinking since the 1990's, potentially compromising the structural stability of the building's foundation, which Defendants CHAMPLAIN TOWERS SOUTH and MORABITO knew or should have known about upon the exercise of reasonable care.

67.     Upon information and belief, Defendant CHAMPLAIN TOWERS SOUTH had also received numerous complaints from its residents that recent construction activities next door, at Eight Seven Park, were causing the Champlain Towers South building to tremor and shake, further evidencing the compromised structural integrity of the building. Defendant CHAMPLAIN TOWERS SOUTH ignored these reports of shaking and compromised structural integrity even in the face of the 2018 MORABITO Report advising of major structural damage.

68.     Outrageously, upon information and belief, Defendant CHAMPLAIN TOWERS SOUTH did not inform the residents of Champlain Towers South of the major structural damage and exponentially worsening concrete damage until approximately April 2021.  Instead of timely informing the residents and occupants of the building that Defendant MORABITO's inspection and analysis found major structural damage and that the structural safety of the building was compromised, on November 13, 2018, CHAMPLAIN TOWERS SOUTH Board Member Mara Chouela forwarded Defendant MORABITO's report and accompanying estimates to Town of Surfside Building Official Rosendo Prieto. Notably, Ms. Chouela's email forwarding the MORABITO Report to Mr. Prieto contained no message whatsoever and was simply an empty email with the MORABITO Report attached.

| From: | Mara Chouela <mara.chouela@gmail.com> |
| Sent: | Tuesday, November 13, 2018 12:39 PM |
| To: | Rosendo Prieto |
| Subject: | Champlain Tower Sounth |
| Attachments: | Morabito Report Mechanical280.pdf; Morabito Report279.pdf |

69.     Upon receipt of the October 8, 2018 MORABITO Report, which explicitly identified "major structural damage" and "abundant" concrete cracking and spalling, which rendered the Champlain Towers South building as an "unsafe" structure under Miami-Dade County Building Code Section 8-5(b)(2)(ii), Town of Surfside Building Official Mr. Prieto was required by Building Code Section 8.5(e) to have an inspection conducted to make an independent determination of the building's structural stability and if deemed to be unsafe, take immediate emergency action to protect the residents and community.

70.     Upon information and belief, Town of Surfside and Mr. Prieto took no such action and never had the Champlain Towers South building inspected in response to the October 8, 2018 MORABITO Report despite the conclusions of major structural damage and abundant cracking and spalling in the structural concrete. This was in direct violation of the duties placed on the Town of Surfside by the Miami-Dade County Building Code and allowed the residents of Champlain Towers South to continue unknowingly living in an unsafe structure that had major structural damage.

71.     On November 13, 2018, just hours after sending the MORABITO Report to Mr. Prieto, Ms. Chouela sent Mr. Prieto an email documenting an in-person meeting they had at Mr. Prieto's office and inviting Mr. Prieto to Defendant CHAMPLAIN TOWERS SOUTH's upcoming November 15, 2018 Board Meeting "to explain the facts of the 40 year inspection."

On Nov 13, 2018, at 3:30 PM, Mara Chouela <mara.chouela@gmail.com> wrote:

Ross

Thank you so much for having us in your office. We appreciate your time a lot.

We would like to invite you to our board meeting on Tuesday 15 at 7:30 to explain the facts of the 40 year inspection.

Thank you so much!

72.     On November 16, 2018, Mr. Prieto sent an email to Town Manager Guillermo Olmedillo stating that he and Assistant Building Officer Mike Pena "were invited and attended the Condo Board / Unit Owner meeting" the night prior and that "it went very well." Mr. Prieto stated that "The response was very positive from everyone in the room" and that "All main concerns over their forty year recertification process were addressed."

| From: | Rosendo Prieto |
| Sent: | Friday, November 16, 2018 10:15 AM |
| To: | Guillermo Olmedillo |
| Cc: | Irina Mocanu ; Mike Pena ; Duncan Tavares |
| Subject: | Meeting Champlain South 8777 Collins Av |

Mr. Mgr.:

ABO Pena and myself were invited and attended the Condo Board / Unit Owner meeting at The Champlain Tower South last night and it went very well. The response was very positive from everyone in the room. All main concerns over their forty year recertification process were addressed. This particular building is not due to begin their forty year until 2021 but they have decided to start the process early which I wholeheartedly endorse and wish that this trend would catch on with other properties. If you have any questions please let me know. Thank you.

73.     Meeting minutes from the November 15, 2018 Condo Board / Unit Owner meeting that CHAMPLAIN TOWERS SOUTH Board Member Mara Chouela invited Mr. Prieto to and which Mr. Prieto and Mr. Pena attended, reflect that Mr. Prieto and Defendant CHAMPLAIN TOWERS SOUTH's Board falsely assured the unit owners that the building was "in very good shape" and that the building was not in danger.

*Guest Speaker Building Official of Town of Surfside*  Mr. Ross Prieto building official of Town of Surfside is presented by Mara Chouela to discuss 40 year certification. Structural engineer report was reviewed by Mr. Prieto although report was not in the format for the 40 year certification he determined the necessary data was collected and it appears the building is in very good shape. The 40 year certification for the building will be due in 2021. Process and timeline discussed regarding the aspects of the 40 year that will

74.     The false assurances of safety given by the Town of Surfside and Defendant CHAMPLAIN TOWERS SOUTH to the unit owners was utterly outrageous in light of the October 8, 2018 Report by Defendant MORABITO, which found "major structural damage" and "abundant cracking and spalling" in the concrete columns, beams and walls—a Report that the CHAMPLAIN

TOWERS SOUTH Board had for over a month and which was directly provided to Mr. Prieto and the Town of Surfside just days before the November 15, 2018 meeting.

75.     The false assurances of the building's safety given and/or condoned by Defendant CHAMPLAIN TOWERS SOUTH's Board were unquestionably false statements of material fact which CHAMPLAIN TOWERS SOUTH's Board knew to be false, which were made and/or condoned with the intent that the building's unit owners rely on such statements to continue living in the building believing that it was safe. These knowingly false statements resulted in the residents and occupants living in a building they were led to believe was structurally safe when it in fact was not.

76.     Following Defendant MORABITO's inspection and the rendering of its October 8, 2018 Report, Defendants CHAMPLAIN TOWERS SOUTH and/or MORABITO were required to submit a written report to the Town of Surfside certifying that the Champlain Towers South building was structurally safe in conformity with the aforementioned minimum inspection procedural guidelines, pursuant to Miami-Dade County Building Code Section 8-11(f)(iv).

77.     Defendants   CHAMPLAIN   TOWERS   SOUTH   CONDOMINIUM ASSOCIATION, INC. and MORABITO never submitted the required report mandated by Miami-Dade County Building Code Section 8-11(f)(iv) prior to the collapse.

78.     Instead, in an apparent attempt to wash away its failures in the wake of this tragedy, Defendant MORABITO submitted the report required by Miami-Dade County Building Code Section 8-11(f)(iv) at 5:35 p.m. on June 24, 2021, approximately 16 hours after the Champlain Towers South building collapsed.

79.     The Section 8.11(f) report that Defendant MORABITO submitted after the devastating collapse starkly and noticeably contrasts MORABITO's October 8, 2018 Report.

80.    The unverified report Defendant MORABITO submitted following the collapse mentions *none* of the alarming findings from MORABITO's October 8, 2018 Report - there is no reference to the "major structural damage" that would "expand exponentially" if not repaired, nor is there reference to the "abundant cracking and spawling[.]"

81.    Defendant MORABITO's post-collapse report even removed a photograph of significant and dangerous concrete spalling on a structural support column in the garage which was included in MORABITO's October 8, 2018 Report, shown below:



82.    The October 8, 2018 MORABITO Report that CHAMPLAIN TOWERS SOUTH Board Member Mara Chouela forwarded to the Town of Surfside's Building Official, Mr. Prieto, could not possibly qualify as the report mandated by Section 8-11(f)(iv) as the MORABITO Report did not certify that the building "is structurally and electrically safe...for continued occupancy." In fact, the MORABITO Report confirmed the opposite, that there was major structural damage which threatened the lives of the residents and occupants.

83.    Upon information and belief, Defendant CHAMPLAIN TOWERS SOUTH and the Town of Surfside, through Mr. Prieto, concealed the results of Defendant MORABITO's 2018

inspection and the recommendations provided in the October 8, 2018 report and chose not to inform the building's residents of the significant and immediate need for structural repairs until years later.

84.     Defendant CHAMPLAIN TOWERS SOUTH outrageously hid the dangers from the building's residents and allowed them to continue living in a building the residents thought to be safe but which Defendant CHAMPLAIN TOWERS SOUTH knew to be imminently and catastrophically dangerous.

85.     Defendant CHAMPLAIN TOWERS SOUTH's immense, intentional, and repeated failures to make the necessary repairs required to safeguard the residents despite knowing for *years* of the building's dangerous structural condition resulted in this tragedy and the unimaginable suffering that has been inflicted.

86.     In a 2021 letter written to the residents of Champlain Towers South, the President of Defendant CHAMPLAIN TOWERS SOUTH's Board of Directors, Jean Wodnicki, outright admitted that the work to fix the major structural damage to the building and make the building safe "could have been done or planned for in years gone by. But this is where we are now." There is no question that it should have been done.

87.     Although Defendant MORABITO identified the significant structural issues in the 2018 inspection and report and advised that the issues should be repaired in a timely fashion, Defendant MORABITO unacceptably failed to explain the significance of its findings with respect to the potential for an imminent structural collapse.

88.     Defendant MORABITO had a responsibility to explain that the structural issues identified presented an immediate and significant risk to the lives of the people in the building, but MORABITO failed to do so.

89.     Defendant MORABITO knew or should have known that the issues identified in the 2018 inspection/analysis and reflected in the October 8, 2018 report rendered the Champlain

Towers South condominium building structurally unstable and at risk of a devastating collapse at any moment.

90.     Defendant MORABITO further should have recognized that the issues identified and observed in the 2018 inspection/analysis required a thorough examination of the building's foundation to examine whether it was structurally safe. Defendant MORABITO failed to do this.

91.     Defendant MORABITO knew or should have known that a failure to advise Defendant CHAMPLAIN TOWERS SOUTH that the building was at risk of an imminent collapse and that it should be evacuated until the necessary and life-saving repairs could be made would expose the occupants of the building to an unreasonable and unacceptable risk of harm.

92.     Despite this aforementioned knowledge, Defendant MORABITO failed to do what was right and chose not to advise that the Champlain Towers South condominium building was at risk of a collapse and further failed to advise that Defendant CHAMPLAIN TOWERS SOUTH evacuate the building until the necessary repairs could be made and the structural stability of the building ensured.

93.     The Town of Surfside similarly failed to protect the residents of Champlain Towers South from the inevitable catastrophe of a building collapse when Rosendo Prieto received the 2018 MORABITO Report informing him of the "major structural damage" that would only get exponentially worse and the "abundant cracking and spalling" to the structural concrete of the building but failed to abide by his duties under the Miami-Dade County Building Code by failing to have an independent inspection performed and thereafter taking the immediate emergency actions mandated by the Miami-Dade County Building Code.

94.     Worse, just days after receiving and reviewing the 2018 MORABITO Report, Mr. Prieto falsely told the residents of Champlain Towers South at the November 15, 2018 meeting that the building "is in very good shape."

95.     Defendants' concerted actions to ignore the findings of massive structural damage to the building and instead mislead the residents into believing that the building was safe resulted in this tragedy.

96.     Upon information and belief, Defendant CHAMPLAIN TOWERS SOUTH retained Defendant MORABITO and Defendant SCOTT D. DYER ARCHITECT, P.A. in 2020 for purposes of the repair and restoration process.

97.     Upon Defendant MORABITO's 2020 retention, Defendant MORABITO unquestionably knew that the "major structural damage" MORABITO identified in 2018 had not been addressed and had only gotten exponentially worse.

98.     Despite knowing that the structural damage and issues identified in 2018 were not addressed, Defendant MORABITO still failed to advise Defendant CHAMPLAIN TOWERS SOUTH, the building's residents, or the Town of Surfside that the building was even closer to a catastrophic collapse and was unsafe for occupancy.

99.     Defendant SCOTT D. DYER ARCHITECT, P.A. was an architect retained for purposes of the 2021 remediation work and was responsible for creating plans for the work to be done.

100.    In creating the plans, Defendant SCOTT D. DYER ARCHITECT, P.A., unquestionably learned of the massive structural damage that was planned to be addressed by the remediation and repair work.

101.    Despite learning of the major structural damage to the building and the significant risk of collapse in 2020, Defendant SCOTT D. DYER ARCHITECT, P.A. did nothing to warn the residents that they were living in an exceedingly unsafe building that was at imminent risk of collapse even though Defendant SCOTT D. DYER ARCHITECT, P.A. knew or should have

known that such a failure to warn the residents of the building would result in catastrophic harm to the residents.

102.    Similarly, Defendant SCOTT D. DYER ARCHITECT, P.A. did nothing to raise concerns over the major structural damage and compromised condition of the building to officials who had the ability to step in and take immediate emergency action to protect the building's residents.

103.    Defendant SCOTT D. DYER ARCHITECT, P.A. also failed to make any examination of the foundation of the Champlain Towers South building and failed to determine whether it was structurally safe.

104.    Defendant SCOTT D. DYER ARCHITECT, P.A. knew or should have known that the Champlain Towers South building had been sinking since the 1990's and that this had the potential to significantly compromise the structural stability of the building's foundation and that a failure to analyze whether the foundation was safe would unacceptably expose the residents of the building to the risk of severe harm or death.

105.    Despite this knowledge, Defendant SCOTT D. DYER ARCHITECT, P.A. never analyzed the foundation as part of its work in creating plans for the 2021 remediation work designed to address the major structural damage of the building.

106.    Just days before this unspeakable tragedy a pool contractor hired by Defendant CHAMPLAIN TOWERS SOUTH observed severe concrete spalling, exposed and rusted rebar, and standing water in the garage.



107.     The June 24, 2021 collapse of the Champlain Towers South condominium building is the most devastating building collapse in United States history. The loss of life and suffering that is only just beginning to unfold is unimaginable. It could have and should have been avoided.

## **THE TOWN OF SURFSIDE'S UNFORGIVABLE CONDUCT**

108.     The Town of Surfside bears considerable blame for the unfathomable loss of life and harm that has been inflicted.

109.     Plaintiff will provide the appropriate notice of her claims against the Town of Surfside in accordance with Florida Statute 768.28.

110.     As soon as the statutory waiting period under Florida Statute 768.28 has elapsed, it is anticipated that the Town of Surfside will be joined as a defendant and will have to answer for its conduct in causing this calamity.

111.     Town of Surfside Building Official Rosendo Prieto's utter incompetence and apathy for his safety responsibilities and duties under the Miami-Dade County Building Code is shocking, outrageous, and unforgivable.

112.    Mr. Prieto received direct notification that there was major structural damage at the Champlain Towers South building and yet did not perform a single critical action mandated by the Miami-Dade County Building Code which are designed and intended to protect the health and safety of Miami-Dade County's residents.

113.    On November 13, 2018, CHAMPLAIN TOWERS SOUTH Board Member Mara Chouela forwarded Defendant Morabito's report and accompanying estimates to Town of Surfside Building Official Rosendo Prieto. Notably, Ms. Chouela's email forwarding the Morabito Report to Mr. Prieto contained no message whatsoever and was simply an empty email with the Morabito Report attached.

| From: | Mara Chouela <mara.chouela@gmail.com> |
|---|---|
| Sent: | Tuesday, November 13, 2018 12:39 PM |
| To: | Rosendo Prieto |
| Subject: | Champlain Tower Sounth |
| Attachments: | Morabito Report Mechanical280.pdf; Morabito Report279.pdf |

114.    Miami-Dade County Building Code Section 8-5(b)(2)(ii) is clear that a building is classified as an "unsafe structure" if there is "deterioration of the structure or structural parts."

115.    The findings of the October 8, 2018 MORABITO Report unquestionably resulted in the Champlain Towers South building being classified as an "unsafe structure" under the Miami-Dade County Building Code.

116.    Upon receipt of the October 8, 2018 MORABITO Report that explicitly identified "major structural damage" and "abundant cracking and spalling" of the structural concrete and which rendered the Champlain Towers South building as an "unsafe structure" under Miami-Dade County Building Code Section 8-5(b)(2)(ii), Town of Surfside Building Official Mr. Prieto was clearly required by Building Code Section 8.5(e) to have an inspection conducted to make an

independent determination of the building's structural stability and if deemed to be unsafe, take immediate emergency action to protect the residents and community.

117.   The Town of Surfside and Mr. Prieto had a duty to protect the residents of the Champlain Towers South building upon learning of the major structural damage by immediately conducting an inspection of the building to confirm the findings of the 2018 MORABITO Report and thereafter take immediate emergency actions mandated by the Miami-Dade County Building Code.

118.   Mr. Prieto outrageously ignored his critical safety obligations and took no such action and never had the Champlain Towers South building inspected in response to the October 8, 2018 MORABITO Report despite the conclusions of major structural damage and abundant cracking and spalling in the structural concrete. This was in direct violation of the duties placed on the Town of Surfside by the Miami-Dade County Building Code and allowed the residents of Champlain Towers South to continue unknowingly living in an unsafe structure that had major structural damage.

119.   The Miami-Dade County Building Code gave the Town of Surfside and Mr. Prieto authority to order the residents of the Champlain Towers South building to evacuate the building and save their lives. Mr. Prieto chose not to do so.

120.   Mr. Prieto was either incomprehensibly incompetent, or completely apathetic towards the safety of the Champlain Towers South residents.

121.   On November 13, 2018, just hours after sending the MORABITO Report to Mr. Prieto, Ms. Chouela sent Mr. Prieto an email documenting an in-person meeting they had at Mr. Prieto's office and inviting Mr. Prieto to Defendant CHAMPLAIN TOWERS SOUTH's upcoming November 15, 2018 Board Meeting "to explain the facts of the 40 year inspection."

On Nov 13, 2018, at 3:30 PM, Mara Chouela <mara.chouela@gmail.com> wrote:

Ross

Thank you so much for having us in your office. We appreciate your time a lot.

We would like to invite you to our board meeting on Tuesday 15 at 7:30 to explain the facts of the 40 year inspection.

Thank you so much!

122.    Mr. Prieto attended the November 15, 2018 Condo Board / Unit Owner meeting where he had yet another opportunity to fulfill his responsibilities as Building Official and inform the residents that they were living in a building that was dangerous, had major structural damage, and was classified as an unsafe structure under the applicable Miami-Dade County Building Code. He rejected this opportunity.

123.    On November 16, 2018, Mr. Prieto sent an email to Town Manager Guillermo Olmedillo stating that he and Assistant Building Officer Mike Pena "were invited and attended the Condo Board / Unit Owner meeting" the night prior and that "it went very well." Mr. Prieto stated that "The response was very positive from everyone in the room" and that "All main concerns over their forty year recertification process were addressed."

| From: | Rosendo Prieto |
|---|---|
| Sent: | Friday, November 16, 2018 10:15 AM |
| To: | Guillermo Olmedillo |
| Cc: | Irina Mocanu ; Mike Pena ; Duncan Tavares |
| Subject: | Meeting Champlain South 8777 Collins Av |

Mr. Mgr.:

ABO Pena and myself were invited and attended the Condo Board / Unit Owner meeting at The Champlain Tower South last night and it went very well. The response was very positive from everyone in the room. All main concerns over their forty year recertification process were addressed. This particular building is not due to begin their forty year until 2021 but they have decided to start the process early which I wholeheartedly endorse and wish that this trend would catch on with other properties. If you have any questions please let me know. Thank you.

124.   Meeting minutes from the November 15, 2018 Condo Board / Unit Owner meeting reflect that Mr. Prieto and Defendant CHAMPLAIN TOWERS SOUTH's Board falsely and despicably assured the unit owners that the building was "in very good shape" and that the building was not in danger.

*Guest Speaker Building Official of Town of Surfside*  Mr. Ross Prieto building official of Town of Surfside is presented by Mara Chouela to discuss 40 year certification. Structural engineer report was reviewed by Mr. Prieto although report was not in the format for the 40 year certification he determined the necessary data was collected and it appears the building is in very good shape. The 40 year certification for the building will be due in 2021. Process and timeline discussed regarding the aspects of the 40 year that will

125.   The false assurances of safety given by the Town of Surfside Building Official Rosendo Prieto to the unit owners are utterly outrageous in light of the October 8, 2018 Report by Defendant MORABITO which found "major structural damage" and "abundant cracking and spalling" in the concrete columns, beams and walls—a report that Mr. Prieto received and reviewed just days before the November 15, 2018 meeting.

126.   Mr. Prieto could have saved the residents from this tragedy by informing them at the November 15, 2018 meeting that the building was dangerously unsafe and that immediate action must be taken and that he had no choice but to do so under the obligations imposed on him by the Miami-Dade County Building Code. Instead, he chose to mislead the residents into unknowingly living in a building at risk of imminent collapse.

127.   The Town of Surfside's actions, through Mr. Prieto, exhibited a complete and callous disregard for the health, safety, and lives of the Champlain Towers South residents and are completely unforgivable.

128.   As a direct and proximate result of the Defendants' careless, negligent, grossly negligent, reckless, willful and wanton, and/or intentional conduct, as described herein, the

Decedent suffered fatal injuries and as a result of the collapse her surviving family members suffered intense and unimaginable pain and suffering.

## THE CATASTROPHE

129.    On June 24, 2021, at approximately 1:30 a.m., Champlain Towers South suffered a catastrophic failure and collapsed, resulting in the deaths of at least ninety-four people, including the DECEDENT, as of the filing of this complaint. However, over twenty remain unaccounted for and the death toll will certainly rise.

130.    Surfside Mayor Charles Burkett eloquently stated the obvious when he announced the Town of Surfside's plan to relocate the remaining residents and begin a forensic investigation of the collapse. He said, "the building collapsed for inexplicable reason[s], buildings in the United States do not fall down, and something very wrong was going on."[5]

## COUNT I: NEGLIGENCE AND WRONGFUL DEATH AGAINST CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC.

131.    Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

132.    At all times material, CHAMPLAIN TOWERS SOUTH, as the owner of the property located at 8777 Collins Ave, Surfside, FL, 33154, had a non-delegable duty to maintain its property in a reasonably safe condition.

---

[5] Mayor: 'Something very wrong' at building collapse, AP. Available at: https://www.usatoday.com/videos/news/nation/2021/06/26/mayor-something-very-wrong-building-collapse/5359108001/

133.    This non-delegable duty included inspecting and maintaining the subject building so that conditions on the premises did not create a danger to the public, and their residents, including DECEDENT.

134.    Upon information and belief, at the time of the accident described above, the subject building was in a defective, weakened, and dangerous condition. Specifically, the Building's concrete, structural integrity, rebar, and other foundational materials were in deplorable condition and required remediation.

135.    Upon information and belief, at all times material, Defendant CHAMPLAIN TOWERS SOUTH had actual knowledge and notice of the defective and dangerous condition of the building, or, in the exercise of reasonable care, should and would have had known of the unsafe condition of the premises. Specifically, Defendant CHAMPLAIN TOWERS SOUTH was on notice as of October 2018, if not earlier, that the Building had major structural damage. In addition, the parking lot was noted to have abundant cracking, crumbling of columns, beams, and walls, among other areas.

136.    Notwithstanding such knowledge, Defendant CHAMPLAIN TOWERS SOUTH failed to act and continued to negligently and carelessly maintain Champlain Towers South. Defendant CHAMPLAIN TOWERS SOUTH's failures allowed the Building to remain in a dangerous and defective condition.

137.    On the above-mentioned date and place, Defendant CHAMPLAIN TOWERS SOUTH through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner through the following acts and/or omissions:

a.      Failing to appreciate the significance of the cracking, fractures, and defects in the structure brought to their attention by their residents, agents and/or employees;

b.      Permitting the water from the pool deck and other water in existence under the structure to seep and leak into the structure of the subject building causing damage to the structural integrity of the subject building;

c.      Placing DECEDENT in the zone of danger of imminent risk of death or serious bodily injury;

d.      Failing to properly analyze, review, communicate, prevent and/or eliminate the risks associated with the fractures, crack, and defects in the subject structure;

e.      Failing to disclose to DECEDENT, that the structure was weak, deficient and/or defective rendering the structure unsafe;

f.      Failing to disclose to the DECEDENT, that the cracks and defects observed on the structure created a dangerous condition and were likely to cause a collapse;

g.      Failing to disclose to the DECEDENT, that the cracks observed in the structure before its collapse were a safety concern;

h.      Failing to perform, manage, supervise, oversee, and/or inspect the repairs and/or restoration of the structure;

i.      Failing to properly hire, vet, train, instruct, and supervise personnel and contractors who participated in construction, maintenance, inspection, repair or restoration of the subject building;

j.      Failing to warn DECEDENT that the building was unsafe;

k.      Failing to notify the DECEDENT to timely evacuate the subject building;

l.      Using improper equipment and/or improperly using equipment during the repair and/or restoration of the subject building;

m.      Recklessly and carelessly not requesting the evacuation of the subject structure before attempting to perform repairs and/or restoration; and

n.      Otherwise negligently failing to disclose any dangerous condition relative to the structure in the circumstances.

138.    As a result, the subject building was unsafe, unstable and collapsed.

139.    As a foreseeable and proximate result of Defendant CHAMPLAIN TOWERS SOUTH's negligence and reckless disregard for human life, safety and property in this matter, the DECEDENT sustained injuries resulting in her death and loss of property.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendant CHAMPLAIN TOWERS SOUTH CONDOMINIUM ASSOCIATION, INC. for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate under Florida Statute Section 768.21. JUANA VILLALBA ROJAS and Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

## COUNT II: NEGLIGENCE AND WRONGFUL DEATH AGAINST SCOTT STEWART

140.    Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

141.    At all times material, SCOTT STEWART was the manager of the property located at 8777 Collins Ave, Surfside, FL, 33145, and had duty to maintain the property in a reasonably safe condition.

142.    This duty included inspecting and maintaining the subject building so that conditions on the premises did not create a danger to the public, the residents and their property, including the DECEDENT.

143.    Upon information and belief, at the time of the accident described above, the subject building was in a defective, weakened, and dangerous condition. Specifically, the Building's concrete, structural integrity, rebar, and other foundational materials were in deplorable condition and required remediation.

144.    Upon information and belief, at all times material, Defendant STEWART had actual knowledge and notice of the defective and dangerous condition of the building, or, in the exercise of reasonable care, should and would have had known of the unsafe condition of the premises.

145.    Notwithstanding such knowledge, Defendant STEWART failed to take action and continued to negligently and carelessly maintain Champlain Towers South. Defendant's failures allowed the Building to remain in a dangerous and defective condition.

146.    On the above-mentioned date and place, Defendant STEWART breached his duty to exercise reasonable care and acted in a negligent manner through the following acts and/or omissions:

a.    Failing to appreciate the significance of the cracking, fractures, and defects in the structure brought to their attention by their residents, agents and/or employees;

b.    Permitting the water from the pool deck and other water in existence under the structure to seep and leak into the structure of subject building causing damage to the structural integrity of the subject building;

c.      Placing DECEDENT in the zone of danger of imminent risk of death or serious bodily injury;

d.      Failing to properly analyze, review, communicate, prevent and/or eliminate the risks associated with the fractures, crack, and defects in the subject structure;

e.      Failing to disclose to DECEDENT, that the structure was weak, deficient and/or defective rendering the structure unsafe;

f.      Failing to disclose to the DECEDENT, that the cracks and defects observed on the structure created a dangerous condition and were likely to cause a collapse;

g.      Failing to disclose to the DECEDENT, that the cracks observed in the structure before its collapse were a safety concern;

h.      Failing to perform, manage, supervise, oversee, and/or inspect the repairs and/or restoration of the structure;

i.      Failing to properly train, instruct, and supervise personnel who participated in maintenance, inspection, repair or restoration of the subject building;

j.      Failing to warn DECEDENT that the building was unsafe;

k.      Failing to notify the DECEDENT to timely evacuate the subject building;

l.      Using improper equipment and/or improperly using equipment during the repair and/or restoration of the subject building;

m.      Recklessly and carelessly not requesting the evacuation of the subject structure before attempting to perform repairs and/or restoration; and

n. Otherwise negligently failing to disclose any dangerous condition relative to the structure in the circumstances.

147.      As a result, the subject building was unsafe, unstable and collapsed.

148.    As a foreseeable and proximate result of SCOTT STEWART'S negligence and reckless disregard for human life, safety and property in this matter, the DECEDENT sustained injuries resulting in her death and loss of property.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendant SCOTT STEWART for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate under Florida Statute Section 768.21. JUANA VILLALBA ROJAS and Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

## COUNT III: NEGLIGENCE AND WRONGFUL DEATH AGAINST MORABITO CONSULTANTS INC.

149.    Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

150.    At all relevant times, Defendant MORABITO, its agents, servants, or employees, were engaged in providing engineering, inspecting, and consulting services for the Building. Accordingly, Defendant MORABITO undertook to inspect, evaluate, and advise CHAMPLAIN TOWERS SOUTH on certain repairs and to assess the Building.

151.    Defendant MORABITO had a duty to incorporate therein nationally recognized safety standards and practices; to follow and incorporate therein the terms and provisions of the applicable building codes; to make a design, plan and specification which would not produce harm, injury or death to the public, the Building's residents and their property, including the DECEDENT, and to perform their services in a safe manner.

152.    This duty included providing accurate information as to the condition of the Building and potential safety risks and recommending timely evacuation of the Building so that conditions on the premises did not create a danger to the public, the Building's residents and their property, including the DECEDENT.

153.    Before June 24, 2021, Defendant inspected the Building on at least two separate occasions. The Building, its appurtenances, and particularly the concrete structure, pool deck, and parking garage, were all inspected and evaluated for safety under Defendant MORABITO's supervision. At both inspections, Defendant MORABITO identified several significant structural defects in the Building.

154.    At all times material, Defendant MORABITO knew, or in the exercise of reasonable care should have known that the subject building was in a defective, weakened, and dangerous condition.

155.    Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendant MORABITO and its workers, servants, agents, and employees knew or should have known that the subject building where they were performing their services was being inhabited by its residents.

156.    Nevertheless, the Defendant MORABITO negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, and the DECEDENT, from the defective condition of the building.

157.    On the above-mentioned date and place, Defendant MORABITO through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by allowing a hazardous and dangerous condition to exist in the subject building and failing to accurately disclose the inherent dangers associated with major structural damage, among others.

Defendant MORABITO failed to warn the public and among others, the DECEDENT, of the dangers outlined above.

158.    Defendant MORABITO further failed to appreciate the hazardous and dangerous condition of the Building, communicate the urgency of its condition and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation.

159.    As a foreseeable and proximate result of MORABITO's negligence and reckless disregard for human life, safety and property in this matter, DECEDENT sustained injuries resulting in her death and loss of property.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendant MORABITO CONSULTANTS, INC. for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate under Florida Statute Section 768.21. JUANA VILLALBA ROJAS and Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

## COUNT IV: NEGLIGENCE AND WRONGFUL DEATH AGAINST CONCRETE PROTECTION AND RESTORATION, INC.

160.    Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

161.    At all times material, Defendant CONCRETE PROTECTION, its agents, servants or employees, were engaged in inspecting, assessing and making restorations to the concrete of the Building and had a duty to the residents to not endanger them and to maintain the building in

a reasonably safe condition for use by the public and its residents, including the DECEDENT, and to perform its services and construction work in a safe manner.

162.    At all times material, Defendant CONCRETE PROTECTION employed a number of workers, servants, agents, and employees to perform the work incidental to the concrete restoration process. These workers, servants, agents, and employees were working within the nature, course, and scope of their employment, and were repairing the concrete foundation of the Building, the roof, and other structural components of the Building.

163.    Specifically, Defendant CONCRETE PROTECTION was negligent for failing to follow industry standards and mandatory health and safety guidelines while working on the structural aspects of the building, including the concrete, roof, and other areas.

164.    Furthermore, Defendant CONCRETE PROTECTION failed to secure the foundation of the Building.

165.    Due to the nature of the dangers potentially associated with this type of work, the Defendant CONCRETE PROTECTION and its workers, servants, agents, and employees knew or should have known that the subject building where they were performing the restoration was being inhabited by its residents. Nevertheless, the Defendant CONCRETE PROTECTION negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, including DECEDENT, from the hazards of the Building.

166.    The Defendant CONCRETE PROTECTION's activities did, in fact, constitute a known and dangerous condition to the DECEDENT, and as a result of the Defendant's conduct, the building collapsed.

167.    On the above-mentioned date and place, Defendant CONCRETE PROTECTION through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist in the subject building; failing to repair the defective condition; in failing to recommend evacuation of the residents from the subject building; and in failing to warn the public and the DECEDENT of the imminent collapse.

168.    Defendant CONCRETE PROTECTION further failed to appreciate the hazardous and dangerous condition of the Building, communicate the urgency of its condition and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation.

169.    The Defendant CONCRETE PROTECTION was also negligent, in that a contractor engaged in work of this nature, scope, and type is at all times required to institute and maintain safety precautions of a type and nature sufficient and necessary to safeguard all persons and property affected by the contractor's operations.

170.    As a foreseeable and proximate result of CONCRETE PROTECTION's negligence and reckless disregard for human life, safety and property in this matter, the DECEDENT sustained injuries resulting in her death and loss of property.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendant CONCRETE PROTECTION AND RESTORATION, INC. for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate under Florida Statute Section 768.21. JUANA VILLALBA ROJAS and Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA

VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

## COUNT V: NEGLIGENCE AND WRONGFUL DEATH AGAINST WILLCOTT ENGINEERING, INC.

171.    Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

172.    At all relevant times, Defendant WILLCOTT, its agents, servants, or employees, were engaged in providing engineering consulting services for the Building.

173.    In early 2020, Defendant WILLCOTT inspected the Building and provided their "Engineering Services Proposal" to the Champlain Towers South Condominium Association. The Building, its appurtenances, and particularly pool deck and parking garage, were all inspected and evaluated for safety under Defendant WILLCOTT's supervision. At its inspection, Defendant WILLCOTT identified several defects in the Building.

174.    Defendant WILLCOTT had a duty to incorporate therein nationally recognized safety standards and practices; to follow and incorporate therein the terms and provisions of the applicable building codes; to make a design, plan and specification which would not produce harm, injury or death to the public, the Building's residents and their property, including the DECEDENT, and to perform its services in a safe manner.

175.    This duty included providing accurate information as to the condition of the Building and potential safety risks ensuring timely evacuation of the Building so that conditions on the premises did not create a danger to the public, its residents and their property, including DECEDENT.

176.    At all times material, Defendant WILLCOTT knew, or in the exercise of reasonable care should have known that the Building was in a defective, weakened, and dangerous condition.

177.    Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendant and its workers, servants, agents, and employees knew or should have known that the Building was inhabited by its residents.

178.    Nevertheless, the Defendant WILLCOTT negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, and the DECEDENT, from the defective condition of the building.

179.    On the above-mentioned date and place, Defendant WILLCOTT through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by allowing a hazardous and dangerous condition to exist in the subject building and not accurately disclosing the inherent dangers associated with major structural damage, among others. Defendant WILLCOTT failed to warn the public and among others, the DECEDENT of the dangers of the Building.

180.    Defendant WILLCOTT further failed to appreciate the hazardous and dangerous condition of the Building, communicate the urgency of its condition and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation.

181.    As a foreseeable and proximate result of WILLCOTT's negligence and reckless disregard for human life, safety and property in this matter, DECEDENT sustained injuries resulting in her death and loss of property.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendant WILLCOTT ENGINEERING, INC. for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate

under Florida Statute Section 768.21. JUANA VILLALBA ROJAS and Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

## COUNT VI: NEGLIGENCE AND WRONGFUL DEATH AGAINST EIGHTY-SEVEN PARK, LLC

182.     Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

183.     Upon information and belief, at all times material, Defendant EIGHTY-SEVEN PARK, LLC was and is the owner, operator and/or manager of "Eighty-Seven Park", located at 8701 Collins Ave, Surfside Florida, 33154. The project is directly next door to Champlain Towers South.

184.     At all times material, Eighty-Seven Park was and is an 18-story, 66-unit condominium building, with an underground parking garage, located next door to the Building.

185.     Upon information and belief, construction of the Eighty-Seven Park condominium high rise took place between some time in 2016 and March 2020. During its construction, residents of the Building complained to Defendant EIGHTY-SEVEN PARK, LLC that the construction was causing their building and the ground inside their units to shake substantially.

186.     At all times material, Defendant EIGHTY-SEVEN PARK, LLC had a non-delegable duty to maintain its property in a reasonably safe condition.

187.     This non-delegable duty included ensuring that conditions on their premises did not create a danger to the public and their property, including the DECEDENT.

188.     The aforementioned construction process taken by Defendant EIGHTY-SEVEN PARK, LLC or at the Defendant EIGHTY-SEVEN PARK, LLC's instruction, caused the concrete

foundation of the Building to become weakened and dangerous, creating a hazard to the public and their property, including the DECEDENT.

189.    Additionally, upon information and belief, in the course of the aforesaid construction and/or development, the Defendant EIGHTY-SEVEN PARK, LLC made various excavations in the above-described area abutting the Building.

190.    Upon information and belief, in the course of the aforesaid work, the Defendant EIGHTY-SEVEN PARK, LLC excavated beneath the Eighty-Seven Park property and impacted the Building to become weakened and dangerous, creating a hazard to the public and their property, including the DECEDENT.

191.    Upon information and belief, on various occasions during 2016, 2017, 2018, 2019 and thereafter, the Defendant EIGHTY-SEVEN PARK, LLC was made aware that its construction activities were a danger to the structures surrounding the project, including the Building.

192.    Upon information and belief, the Defendant EIGHTY-SEVEN PARK, LLC failed to properly underpin or otherwise brace the Building during the construction and failed to comply with the applicable rules, codes and regulations governing undermining, underpinning, and bracing of adjacent properties, among other activities.

193.    Upon information and belief, the Defendant EIGHTY-SEVEN PARK, LLC failed to follow and abide by accepted industry standards and guidelines by not underpinning and/or bracing the Building during the project.

194.    At all material times, Defendant EIGHTY-SEVEN PARK, LLC  knew, or should have known, that the construction activities that took place on the Project were done in such a manner as to likely cause damage to the structural foundation of the Building.

195.    Further, Defendant EIGHTY-SEVEN PARK, LLC  knew or should have known that had they followed the applicable rules, codes, regulations, and industry standards they would not have caused damage to the structural foundation of the Building.

196.    Nevertheless, the construction activities on the Project were performed in a negligent and haphazard manner without regard for the safety and protection of the public, including the DECEDENT.

197.    Due to the nature of the dangers potentially associated with this type of work, the Defendant EIGHTY-SEVEN PARK, LLC and its workers, servants, agents, and employees knew or should have known that the Building next to where they were performing the construction was being inhabited by its residents. Nevertheless, the Defendant EIGHTY-SEVEN PARK, LLC negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public and their property in general, and the DECEDENT in particular, from the hazards of such work.

198.    The Defendant  EIGHTY-SEVEN PARK, LLC's activities did, in fact, constitute a known and dangerous condition to the DECEDENT, by creating severe and significant instability in the foundation and structure of the Building, and as a result, the building collapsed.

199.    On the above-mentioned date and place, Defendant EIGHTY-SEVEN PARK, LLC through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendants EIGHTY-SEVEN PARK, LLC' conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendant EIGHTY-SEVEN PARK, LLC conduct on the Eighty-Seven Park Property; and in failing to warn the public and the DECEDENT of the need to evacuate the Building and or of its imminent collapse.

200.    On the above-mentioned date and place, Defendant EIGHTY-SEVEN PARK, LLC through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist in the subject building; in failing to repair the defective condition; in failing to recommend evacuation of the residents from the Building; and in failing to warn the public and the DECEDENT of the imminent collapse.

201.    As a foreseeable and proximate result of EIGHTY-SEVEN PARK, LLC's negligence and reckless disregard for human life, safety and property in this matter, the subject building collapsed, causing the DECEDENT to sustain injuries resulting in her death and loss of property.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendant EIGHTY-SEVEN PARK, LLC for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate under Florida Statute Section 768.21. JUANA VILLALBA ROJAS and Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

**COUNT VII: NEGLIGENCE AND WRONGFUL DEATH AGAINST 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. AND 8701 COLLINS DEVELOPMENT, LLC**

202.    Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

203.    Upon information and belief, Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC owned

and/operated, constructed, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Surfside Florida, 33154. The project is directly next door to Champlain Towers South.

204.    At all times material, Eighty-Seven Park was and is an 18-story, 66-unit condominium building, with an underground parking garage, located next door to the Building.

205.    Upon information and belief, construction of the Eighty-Seven Park condominium high rise took place between 2016 and March 2020. During its construction, residents of the Building complained to Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC that the construction was causing their building and the ground inside their units to shake substantially.

206.    At all times material, Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC had a non-delegable duty to maintain their property in a reasonably safe condition.

207.    This non-delegable duty included ensuring that conditions on their premises did not create a danger to the public and their property, including DECEDENT.

208.    The aforementioned construction process taken by Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC, or at these Defendants' instruction, caused the concrete foundation of the Building to become weakened and dangerous, creating a hazard to the public and their property, including the DECEDENT.

209.    Additionally, upon information and belief, in the course of the aforesaid construction and/or development, the Defendants 8701 COLLINS AVENUE CONDOMINIUM

ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC made various excavations in the above-described area abutting the Building and impacted the foundation of the Building.

210.   Upon information and belief, in the course of the aforesaid work, the Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC excavated beneath the Eighty-Seven Park property and impacted the Building to become weakened and dangerous, creating a hazard to the public and the Building, including the DECEDENT.

211.   Upon information and belief, on various occasions during 2016, 2017, 2018, 2019 and thereafter, the Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC were made aware that their construction activities were a danger to the structures surrounding the project, including the Building.

212.   Upon information and belief, the Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC failed to properly underpin or otherwise brace the Building during the construction and failed to comply with the applicable rules, codes and regulations governing undermining, underpinning, and bracing of adjacent properties, among other activities.

213.   Upon information and belief, the Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC failed to follow and abide by accepted industry standards and guidelines by not underpinning and/or bracing the Building during the project.

214.   At all material times, Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC knew, or should have known,

that the construction activities that took place on the Project were done in such a manner as to likely cause damage to the structural foundation of the Building.

215.    Further, Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC knew or should have known that had they followed the applicable rules, codes, regulations, and industry standards they would not have caused damage to the structural foundation of the Building.

216.    Nevertheless, the construction activities on the Project were performed in a negligent and haphazard manner without regard for the safety and protection of the public, including the DECEDENT.

217.    Due to the nature of the dangers potentially associated with this type of work, the Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC and their workers, servants, agents, and employees knew or should have known that the Building next to where they were performing the construction was being inhabited by its residents. Nevertheless, the Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public and their property in general, and the DECEDENT in particular, from the hazards of such work.

218.    These Defendants' activities did, in fact, constitute a known and dangerous condition to the DECEDENT, by creating severe and significant instability in the foundation and structure of the Building, and as a result, the building collapsed.

219.    On the above-mentioned date and place, Defendants, 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC, through

their agents and/or employees, breached their duties to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from these Defendants' conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by these Defendants' conduct on the Eighty-Seven Park Property; and in failing to warn the public and the DECEDENT of the need to evacuate the Building and or of its imminent collapse.

220.    On the above-mentioned date and place, Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC, through their agents and/or employees, breached their duties to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist in the subject building; in failing to repair the defective condition; in failing to recommend evacuation of the residents from the subject building; and in failing to warn the public and the DECEDENT of the imminent collapse.

221.    As a foreseeable and proximate result of the negligence of Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC and their reckless disregard for human life, safety and property in this matter, the subject building collapsed, causing the DECEDENT to sustain injuries resulting in her death and loss of property.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendants 8701 COLLINS AVENUE CONDOMINIUM ASSOCIATION, INC. and 8701 COLLINS DEVELOPMENT, LLC for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate under

Florida Statute Section 768.21. JUANA VILLALBA ROJAS and Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

### COUNT VIII: NEGLIGENCE AND WRONGFUL DEATH AGAINST JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC.

222.     Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

223.     At all relevant times, Defendant MORIARTY, its agents, servants, or employees, were engaged in providing general contracting services for the construction of Eighty-Seven Park located next door to the Building.

224.     Defendant MORIARTY had a duty to incorporate therein nationally recognized safety standards and practices; to follow and incorporate therein the terms and provisions of the applicable building codes; to make a design, plan and specification which would not produce harm, injury or death to the public and the Building's residents, including the DECEDENT, and to perform its services in a safe manner.

225.     This duty included providing accurate information regarding the dangerous conditions and potential safety risks that existed at the Building as a result of the Eighty-Seven Park construction, including recommending safety measures and timely evacuation of the Building so that conditions created by the construction of Eighty-Seven Park did not create a danger to the Building's residents and their property, including DECEDENT.

226.     At all times material, Defendant MORIARTY knew, or in the exercise of reasonable care should have known that that Eighty-Seven Park construction would damage the Building's foundation.

227.    At all times material, Defendant knew, or in the exercise of reasonable care should have known that that as a result of the Eighty-Seven Park construction, the Building was in a defective, weakened, and dangerous condition.

228.    Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendant MORIARTY and its workers, servants, agents, and employees knew or should have known that the Building next to where they were performing their services was being inhabited by its residents.

229.    Nevertheless, the Defendant MORIARTY negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public and their property in general, and the DECEDENT, from the dangers they created.

230.    On the above-mentioned date and place, Defendant MORIARTY through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendant MORIARTY's conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendant MORIARTY conduct on the Eighty-Seven Park Property; and in failing to warn the public and the DECEDENT of the need to evacuate the Champlain Towers South building and or of its imminent collapse.

231.    Defendant MORIARTY further failed to appreciate the hazardous and dangerous conditions the Eighty-Seven Park construction created at the Building, failed to communicate the urgency of such conditions and the danger of its impending collapse, and to recommend appropriate measures including immediate repair and evacuation of the Building

232.    As a foreseeable and proximate result of JOHN MORIARTY OF FLORIDA, INC.'s negligence and reckless disregard for human life, safety and property in this matter, DECEDENT sustained injuries resulting in her death and loss of property.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendant JOHN MORIARTY OF FLORIDA, INC. for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate under Florida Statute Section 768.21. JUANA VILLALBA ROJAS and Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

## COUNT IX: NEGLIGENCE AND WRONGFUL DEATH AGAINST NV5, INC. AND NV5 GLOBAL, INC.

233.    Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

234.    At all relevant times, Defendants NV5, INC. and NV5 GLOBAL, INC., their agents, servants, or employees, were engaged in providing geotechnical engineering services for the construction of Eighty-Seven Park located next door to the Building.

235.    Defendants NV5, INC. and NV5 GLOBAL, INC. had a duty to incorporate therein nationally recognized safety standards and practices; to follow and incorporate therein the terms and provisions of the applicable building codes; to make a design, plan and specification which would not produce harm, injury or death to the public and the Building's residents, including the DECEDENT, and to perform their services in a safe manner.

236.    This duty included providing accurate information regarding the dangerous conditions and potential safety risks that existed at the Building as a result of the Eighty-Seven

Park construction, including recommending safety measures and timely evacuation of the Building so that conditions created by the construction of Eighty-Seven Park did not create a danger to the Building's residents and their property, including DECEDENT.

237.    At all times material, Defendants NV5, INC. and NV5 GLOBAL, INC. knew, or in the exercise of reasonable care should have known that Eighty-Seven Park construction would damage the Building's foundation.

238.    At all times material, Defendants NV5, INC. and NV5 GLOBAL, INC. knew, or in the exercise of reasonable care should have known that that as a result of the Eighty-Seven Park construction, the Building was in a defective, weakened, and dangerous condition.

239.    Specifically, due to the nature of the dangers potentially associated with this type of work, the Defendants NV5, INC. and NV5 GLOBAL, INC. and their workers, servants, agents, and employees knew or should have known that the Building next to where they were performing their services was being inhabited by its residents.

240.    Nevertheless, the Defendants NV5, INC. and NV5 GLOBAL, INC. negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public and their property in general, and the DECEDENT, from the dangers they created.

241.    On the above-mentioned date and place, Defendants NV5, INC. and NV5 GLOBAL, INC. through their agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendants NV5, INC.'s and NV5 GLOBAL, INC.'s conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by

Defendants conduct on the Eighty-Seven Park Property; and in failing to warn the public and the DECEDENT of the need to evacuate the Building and or of its imminent collapse.

242.    Defendants NV5, INC. and NV5 GLOBAL, INC. further failed to appreciate the hazardous and dangerous conditions the Eighty-Seven Park construction created at the Building, communicate the urgency of such conditions and the danger of its impending collapse, and recommend appropriate measures including immediate repair and evacuation of the Building.

243.    As a foreseeable and proximate result of NV5, INC. and NV5 GLOBAL, INC.'s negligence and reckless disregard for human life, safety and property in this matter, the DECEDENT sustained injuries resulting in her death and loss of property.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendants NV5, INC. and NV5 GLOBAL, INC. for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate under Florida Statute Section 768.21. JUANA VILLALBA ROJAS and Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

## COUNT X: NEGLIGENCE AND WRONGFUL DEATH AGAINST TERRA WORLD INVESTMENTS, LLC AND TERRA GROUP, LLC

244.    Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

245.    Upon information and belief, Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC owned and/operated, constructed, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Surfside Florida, 33154. The project is directly next door to the Building.

246.    At all times material, Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC owed a duty to the DECEDENT and the general public to perform their activities in a reasonably safe manner that did not harm or endanger the DECEDENT's person or property.

247.    Upon information and belief, in the course of their aforesaid construction and/or development, Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC made various excavations in the above described area abutting the premises of the DECEDENT.

248.    Upon information and belief, in the course of the aforesaid work, the Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC excavated beneath the Eighty-Seven Park property and impacted the Building to become weakened and dangerous, creating a hazard to the public and their property, including the DECEDENT.

249.    Upon information and belief, on various occasions during 2016, 2017, 2018, 2019 and thereafter, the Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC were made aware that their construction activities were a danger to the structures surrounding the project, including Champlain Towers South.

250.    Upon information and belief, the Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC failed to properly underpin or otherwise brace the Champlain Towers during the Project and failed to comply with the applicable rules, codes and regulations governing underpinning and bracing of adjacent properties.

251.    Upon information and belief, the Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC failed to follow and abide by accepted industry standards and guidelines by not underpinning and/or bracing the Building during the project.

252.     At all material times, Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC knew, or should have known, that the construction activities that took place on the Project were done in such a manner as to likely cause damage to the structural foundation of Champlain Towers South.

253.     Further, Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC knew or should have known that had they followed the applicable rules, codes, regulations and industry standards they would not have caused damaged to the structural foundation of Champlain Towers South.

254.     Nevertheless, the construction activities on the Project were performed in a negligent and haphazard manner without regard for the safety and protection of the public, including and the DECEDENT.

255.     Due to the nature of the dangers potentially associated with this type of work, the Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC and their workers, servants, agents, and employees knew or should have known that the subject building next to where they were performing the restoration was being inhabited by its residents. Nevertheless, the Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public in general, and the DECEDENT in particular, from the hazards of such work.

256.     The Defendants TERRA WORLD INVESTMENTS, LLC's and TERRA GROUP, LLC's activities did, in fact, constitute a known and dangerous condition to and the DECEDENT, by creating severe and significant instability in the foundation and structure of Champlain Towers South, and as a result, the building collapsed.

257.    On the above-mentioned date and place, Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC through their agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at Champlain Towers South that resulted from Defendants' conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendants TERRA WORLD INVESTMENTS, LLC's and TERRA GROUP, LLC's conduct on the Eighty-Seven Park Property; and in failing to warn the public and the DECEDENT of the need to evacuate the Champlain Towers South building and or of its imminent collapse.

258.    Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC were also negligent, in that a contractor engaged in work of this nature, scope, and type is at all times required to institute and maintain safety precautions of a type and nature sufficient and necessary to safeguard all persons affected by the contractor's operations.

259.    As a foreseeable and proximate result of TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC's negligence and reckless disregard for human life, safety and property in this matter, the subject building collapsed, causing and the DECEDENT to sustain injuries resulting in her death and loss of property.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendants TERRA WORLD INVESTMENTS, LLC and TERRA GROUP, LLC for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate under Florida Statute Section 768.21. JUANA VILLALBA ROJAS and Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA

VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

## COUNT XI: NEGLIGENCE AND WRONGFUL DEATH AGAINST BIZZI & PARTNERS DEVELOPMENT, LLC

260.    Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

261.    Upon information and belief, Defendant BIZZI owned and/operated, managed, supervised and/or developed a construction project known as "Eighty-Seven Park", located at 8701 Collins Ave, Surfside Florida, 33154. The project is directly next door to Champlain Towers South.

262.    At all times material, Defendant BIZZI owed a duty to DECEDENT and the general public to perform their activities in a reasonably safe manner that did not harm or endanger the DECEDENT's person or property.

263.    Upon information and belief, in the course of their aforesaid construction and/or development, the Defendant BIZZI made various excavations in the above described area abutting the premises of the DECEDENT.

264.    Upon information and belief, in the course of the aforesaid work, the Defendant BIZZI excavated beneath the Eighty-Seven Park property and impacted the Building to become weakened and dangerous, creating a hazard to the public and their property, including the DECEDENT.

265.    Upon information and belief, on various occasions during 2016, 2017, 2018, 2019 and thereafter, the Defendant BIZZI was made aware that their construction activities were a danger to the structures surrounding the project, including the Building.

266.    Upon information and belief, the Defendant BIZZI failed to properly underpin or otherwise brace the Champlain Towers during the Project and failed to comply with the applicable rules, codes and regulations governing underpinning and bracing of adjacent properties.

267.    Upon information and belief, the Defendant BIZZI  failed to follow and abide by accepted industry standards and guidelines by not underpinning and/or bracing the Building during the project.

268.    At all material times, Defendant BIZZI knew, or should have known, that the construction activities that took place on the Project were done in such a manner as to likely cause damage to the structural foundation of the Building.

269.    Further, Defendant BIZZI knew or should have known that had it followed the applicable rules, codes, regulations and industry standards it would have reduced the likelihood of causing damage the structural foundation of the Building.

270.    Nevertheless, the construction activities on the Project were performed in a negligent and haphazard manner without regard for the safety and protection of the public, including the DECEDENT.

271.    Due to the nature of the dangers potentially associated with this type of work, the Defendant BIZZI and its workers, servants, agents, and employees knew or should have known that the Building next to where they were performing the restoration was being inhabited by its residents. Nevertheless, the Defendant BIZZI negligently, carelessly, and intentionally failed or refused to take the appropriate or reasonable precautions generally recognized to protect the public and their property in general, including the DECEDENT in particular, from the hazards of such work.

272.    The Defendant BIZZI's activities did, in fact, constitute a known and dangerous condition to the DECEDENT, by creating severe and significant instability in the foundation and structure of the Building, and as a result, the Building collapsed.

273.    On the above-mentioned date and place, Defendant BIZZI through its agents and/or employees, breached its duty to exercise reasonable care and acted in a negligent manner by creating and allowing a hazardous and dangerous condition to exist at the Building that resulted from Defendant BIZZI's conduct on the Eighty-Seven Park property; in failing to repair the defective condition created by Defendant BIZZI's conduct on the Eighty-Seven Park Property; and in failing to warn the public and the DECEDENT of the need to evacuate the Building and or of its imminent collapse.

274.    The Defendant BIZZI was also negligent, in that a contractor engaged in work of this nature, scope, and type is at all times required to institute and maintain safety precautions of a type and nature sufficient and necessary to safeguard all persons affected by the contractor's operations.

275.    As a foreseeable and proximate result of BIZZI & PARTNERS DEVELOPMENT, LLC's negligence and reckless disregard for human life, safety and property in this matter, the Building collapsed, causing the DECEDENT to sustain injuries resulting in her death and loss of property.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendants BIZZI & PARTNERS DEVELOPMENT, LLC for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate under Florida Statute Section 768.21. JUANA VILLALBA ROJAS and

Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

## COUNT XII: NEGLIGENCE AND WRONGFUL DEATH AGAINST TANENBAUM HARBER OF FLORIDA, LLC

276.    Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

277.    . Upon information and belief, at all relevant times, Peter C. Catallo was and still is a licensed insurance broker in the State of Florida and is an employee or agent of Defendant TANENBAUM-HARBER.

278.    Prior to June 24, 2021, CHAMPLAIN TOWERS SOUTH engaged the services of Defendant TANENBAUM-HARBER through its agent or employee Peter Catallo to advise the Association as to its insurance needs and to obtain adequate and proper liability insurance and property damage insurance for the Building.

279.    Upon information and belief, Defendant TANENBAUM-HARBER, through Peter Catallo, agreed to obtain adequate and proper liability and property damage insurance coverage for Champlain Towers South and represented to CHAMPLAIN TOWERS SOUTH that it understood their needs and requirements for insurance.

280.    Specifically, Peter Catallo owed a duty to DECEDENT, as members of the Association, to advise and procure for the Association adequate property insurance for property damage. Pursuant to Florida Statute Section 718.111(11)(a), a residential condominium is required to obtain "Adequate property insurance, regardless of any requirement in the declaration of condominium for coverage by the association for full insurable value, replacement cost, or similar coverage, must be based on the replacement cost of the property to be insured as determined by an

independent insurance appraisal or update of a prior appraisal. The replacement cost must be determined at least once every 36 months."

281.    At some time prior to June 24, 2021, Defendant TANENBAUM-HARBER, through Peter Catallo, procured an insurance policy that grossly underinsured the Association for property damage.

282.    Peter Catallo agreed and understood CHAMPLAIN TOWERS SOUTH's request that the insurance policy should provide adequate and property insurance coverage for the Association, as defined by the statute.

283.    Upon information and belief, Peter Catallo represented to CHAMPLAIN TOWERS SOUTH that the procured liability insurance policy was adequate and proper for the Association's needs.

284.    At all times material, the Policy was in full force and effect.

285.    At all times material, the DECEDENT and the family she resided with were members of the Association and owners of condominium unit 1010.

286.    Defendant TANENBAUM-HARBER, through Peter Catallo, breached his duty to the condominium owners of the Champlain Towers South Association, including the DECEDENT, when it procured a property damage policy that was inadequate under Florida Law. The DECEDENT are/were the intended third-party beneficiaries of the agreement between the Association and Tanenbaum-Harber.

287.    Defendant TANENBAUM-HARBER , through Peter Catallo, knew or should have known, that the insurance policy that it procured for CHAMPLAIN TOWERS SOUTH was inadequate under Florida law to cover the property damage. It was also inadequate as to liability coverage.

288.    Among other things, Defendant TANENBAUM-HARBER, through Peter Catallo, knew or should have known that due to the increases in building construction and material prices, the appraisal amount of the Building was in excess of the insurable value.

289.    As a result of Peter Catallo's failure to procure adequate insurance for CHAMPLAIN TOWERS SOUTH, the Estate of the DECEDENT will not receive the benefits to which she otherwise would have been entitled.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendants TANENBAUM HARBER OF FLORIDA, LLC for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate under Florida Statute Section 768.21. JUANA VILLALBA ROJAS and Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

## COUNT XIII: NEGLIGENCE AND WRONGFUL DEATH AGAINST SCOTT D. DYER ARCHITECT, P.A.

290.    Plaintiff re-incorporates paragraphs one (1) through one hundred thirty (130) as if set forth herein.

291.    Upon information and belief, Defendant SCOTT D. DYER ARCHITECT, P.A. learned of the major structural damage that the Champlain Towers South building suffered from upon Defendant's retention to create architectural plans for the 2021 planned remediation work.

292.    Upon learning of the major structural damage, Defendant SCOTT D. DYER ARCHITECT, P.A. had a duty to determine whether the Champlain Towers South condominium building was safe for continued occupancy.

293.    Defendant SCOTT D. DYER ARCHITECT, P.A. had a duty to determine whether the Champlain Towers South building was at risk of collapse and, upon making said determination inform Defendant CHAMPLAIN TOWERS SOUTH and the residents of the risk of collapse caused by the major structural damage and/or alert officials who could take emergency action to protect the lives of the residents.

294.    Defendant SCOTT D. DYER ARCHITECT, P.A. had a duty to determine whether the sinking of the Champlain Towers South building, which Defendant knew or should have known was occurring since at least the 1990's, had structurally compromised the foundation of the building.

295.    Defendant SCOTT D. DYER ARCHITECT, P.A. had a duty to determine and analyze the risk of an imminent collapse and clearly communicate the results of such an analysis and determination to Defendant CHAMPLAIN TOWERS SOUTH.

296.    Defendant SCOTT D. DYER ARCHITECT, P.A. had a duty to take action to ensure that appropriate corrective measures were put into place after learning of the major structural damage to the Champlain Towers South building.

297.    Upon being retained in 2020 and observing that *none* of the major structural damage identified by Defendant MORABITO in 2018 had been addressed and knowing that it had only gotten exponentially worse, Defendant SCOTT D. DYER ARCHITECT, P.A. had an unquestionable duty to notify Defendant CHAMPLAIN TOWERS SOUTH and the residents that the building was at an imminent risk of collapse and immediate action needed to be taken.

298.    Defendant SCOTT D. DYER ARCHITECT, P.A. failed these aforementioned duties and as a result, the Champlain Towers South condominium building collapsed on June 24, 2021.

299.    The death and damages suffered by the DECEDENT and Plaintiff and the survivors were caused by the negligence, carelessness, gross negligence, recklessness, outrageous, willful and wanton conduct of Defendant SCOTT D. DYER ARCHITECT, P.A., acting by and through its agents, servants, workers, employees, ostensible agents, and/or alter egos, both generally and in the following particular respects:

a.    Failing to conduct a thorough and adequate structural analysis of the Champlain Towers South building;

b.    Failing to determine or analyze whether the Champlain Towers South building was safe for continued occupancy;

c.    Failing to determine or analyze whether the Champlain Towers South building was safe for continued occupancy despite knowing that such a failure would expose the residents and occupants of the building to the unreasonable and unacceptable risk of severe harm;

d.    Failing to adequately analyze the risks and dangers presented by the significant structural damage and deterioration identified by MORABITO and learned of by Defendant SCOTT D. DYER ARCHITECT, P.A. upon its retention;

e.    Failing to adequately communicate the risks and dangers presented by the significant structural damage and deterioration to Defendant CHAMPLAIN TOWERS SOUTH;

f.    Failing to recognize that the Champlain Towers South building was at an imminent risk of collapse;

g.    Failing to advise that the Champlain Towers South building was at an imminent risk of collapse;

h.      Failing to inform Defendant CHAMPLAIN TOWERS SOUTH that immediate emergency action must be taken to protect the residents from a catastrophic collapse;

i.      Failing to employ competent and sufficiently trained personnel;

j.      Failing to reach a determination as to the safety of the building's foundation;

k.      Failing to reach a determination as to the safety of the building's foundation even though Defendant knew or should have known that the building was sinking since at least the 1990's and that this sinking could significantly compromise the safety of the building;

l.      Failing to advise and/or demand that the building be evacuated until such time that the significant structural damage was repaired and/or otherwise addressed;

m.      Failing to adequately warn Defendant CHAMPLAIN TOWERS SOUTH and the residents and occupants, including Plaintiffs, of the imminent threat posed by the significant structural damage learned of upon its retention;

n.      Failing to demand and/or otherwise ensure that the structural damage was appropriately addressed and/or repaired;

o.      Failing to urgently inform Defendant CHAMPLAIN TOWERS SOUTH and the residents that immediate emergency action must be taken to protect the lives of the building's residents upon being retained again in 2020 and learning that none of the major structural damage identified by MORABITO in 2018 had been fixed;

p.      Failing to insist that the major structural damage that existed be repaired immediately or otherwise evacuate the residents of the building;

q.      Violating the Miami-Dade County Building Code;

r.      Knowingly violating the Miami-Dade County Building Code; 173.

300.     Defendant SCOTT D. DYER ARCHITECT, P.A.'s conduct, as described above, demonstrated a willful and wanton disregard for the safety and health of the residents and occupants of the Champlain Towers South condominium building, including the DECEDENT, and for the citizens of Surfside.

301.     By reason of the carelessness, negligence, carelessness, gross negligence, recklessness, outrageous, willful and wanton conduct of Defendant SCOTT D. DYER ARCHITECT, P.A., as aforesaid, Plaintiffs' decedents were caused to sustain the serious and permanent catastrophic injuries and death as set forth herein.

302.     By conducting itself as set forth above, Defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of harm to the DECEDENT.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against Defendant SCOTT D. DYER ARCHITECT, P.A. for damages, costs and such further relief as the Court deems just and proper. JUANA VILLALBA ROJAS, as the personal representative of the Estate of LEIDY VANESSA LUNA VILLALBA, seeks all compensable damages for the estate under Florida Statute Section 768.21. JUANA VILLALBA ROJAS and Osvaldo Luna Machuca, the surviving parents of LEIDY VANESSA LUNA VILLALBA, seek all compensable damages under Florida Statute Section 768.21 and property damage.

PLAINTIFF DEMANDS JURY TRIAL ON ALL COUNTS AND ALLEGATIONS.

Respectfully submitted on this 13th day of July, 2021, by:

> ROMANO LAW GROUP
> Post Office Box 21349
> West Palm Beach, FL 33416-1349
> Tel:  (561) 533-6700
> Fax: (561) 533-1285
> Hali@RomanoLawGroup.com
> John@RomanoLawGroup.com
> Todd@RomanoLawGroup.com
> Eric@RomanoLawGroup.com
> Service@RomanoLawGroup.com -
> Primary e-mail for service of pleadings only
> Attorneys for Plaintiff
>
> By:___/s/ Hali Marsocci_____
>     HALI E. MARSOCCI
>     Florida Bar No. 106091
>     JOHN F. ROMANO
>     Florida Bar No.: 175700
>     TODD ROMANO
>     Florida Bar No. 178100
>     ERIC ROMANO
>     Florida Bar No.: 120091
>
>
> By:___/s/ Thomas A. Robes_____
>     THOMAS A. ROBES, ESQUIRE
>     Florida Bar No. 0505633
>     JENNIFER H. BUCHKO, ESQUIRE
>     Florida Bar No. 118252
>     ROBES LAW GROUP, PLLC
>     117 NE 5th Avenue, Suite A
>     Delray Beach, FL, 33483
>     Telephone:    561/296-2266
>     Fax No:       561/296-2267
>     Primarye-mail:
>     eservice@robeslawgroup.com
>     TRobes@robeslawgroup.com
>     JBuchko@robeslawgroup.com
>     Attorneys for Plaintiff