# EXHIBIT 25

## CLAIMS

### Report All Claims To

GREAT AMERICAN CUSTOM INSURANCE SERVICES

c/o CLAIMS OPERATIONS
725 S. Figueroa Street, Suite 3400
Los Angeles, CA 90017

*In an effort to adhere to our paperless environment,
please e-mail claims to the following address:
claims@gamcustom.com  or  eFax: (213) 430-8459



Your Great American Insurance Policy

MEMBER OF GREAT AMERICAN. INSURANCE GROUP

Great American
Professional Risk
Insurance Services

GAIG.com

© 2016 Great American Insurance Company is an equal opportunity provider. 301 E. Fourth Street, Cincinnati, OH 45202. 0790GAPRIS-C (11/16)

Great American Insurance Co. of New York

GAI 6600 (Ed. 06/97)

| | |
|---|---|
| **Policy No.** | EXC2063550 |
| **Renewal Of** | |

## COMMERCIAL EXCESS LIABILITY DECLARATIONS PAGE

| **1. NAMED INSURED AND ADDRESS:** | **2. POLICY PERIOD:** |
|---|---|
| John Moriarty & Associates of Florida, Inc.<br>(As Per Underlying Insurance)<br>1942 Tyler St<br>Hollywood, FL 33020-4517 | 12:01 A.M. Standard Time at the address of the<br>Named Insured shown at left.<br>From 09/01/2017　　　　To 03/01/2020 |
| **IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.** | **PRODUCER'S NAME AND ADDRESS:**<br>AmWINS of NY<br>88 Pine Street, 6th Floor<br>New York, NY 10005 |

Insurance is afforded by: Great American Insurance Co. of New York

| **3. PREMIUM:** | Total Advance Premium | $ | 105,950 |
|---|---|---|---|
| | Service Charge | $ | |
| | Taxes | $ | |
| | Surcharge | $ | |
| | Total | $ | 105,950 |

**BASIS OF PREMIUM:**　　Non-Auditable　　( X )　　　　Auditable　( )

In the event of cancellation by the Named Insured, the company will receive and retain no less than $ as a policy minimum premium.

| **4. LIMITS OF INSURANCE:** | $ | 25,000,000 | Each Occurrence |
|---|---|---|---|
| | $ | 25,000,000 | Aggregate Limit (Where Applicable) |

These Limits of Insurance apply in excess of the Underlying Limits of Insurance indicated in Item **5.** of the Declarations.

**5. UNDERLYING INSURANCE:**

| Carrier Information | Type of Coverage | Limits of Insurance |
|---|---|---|
| As Per GAI6008 06/97 Attached | | |

**6. FORMS AND ENDORSEMENTS** applicable to all Coverage Forms and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule, GAI 6013 (Ed.06/97).

GAI 6600 (Ed. 06/97)　　　　　　　(Page 1 of 1)

Great American Insurance Co. of New York

GAI 6013 (Ed. 06/97)

## FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

|   | Form and Edition | ST | Date Added* or Date Deleted | Form  Description |
|---|---|---|---|---|
| 1 | GAI6600 06/97 | FL | | Commercial Excess Liability Declarations Page |
| 2 | GAI6008 06/97 | FL | | Schedule A - Schedule of Underlying Insurance (Supplemental) |
| 3 | IL7381 09/15 | FL | | Agent Countersignature |
| 4 | IL7324 08/12 | FL | | Economic and Trade Sanctions Clause |
| 5 | GAI6011 06/97 | FL | | Limitation Of Coverage To Designated Project |
| 6 | GAI6011 06/97 | FL | | Premium Payment Endorsement - Flat |
| 7 | GAI6965 10/14 | FL | | Following Form Endorsement |
| 8 | GAI6011 06/97 | FL | | Products-Completed Operations Hazard Extension - Following Form |
| 9 | GAI6709 08/12 | FL | | Florida Changes - Cancellation and Nonrenewal |
| 10 | GAI6452 04/15 | FL | | Cap On Losses From Certified Acts Of Terrorism |
| 11 | GAI6472 04/15 | FL | | Disclosure Pursuant to Terrorism Risk Insurance Act |
| 12 | GAI6524 06/97 | FL | | Excess Liability Coverage Form |
| 13 | IL7268 09/09 | FL | | In Witness Clause |

*If not at inception

Great American Insurance Co. of New York

GAI 6008 (Ed. 06/97)

## SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE (SUPPLEMENTAL)

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| 1. First Underlying Insurance<br><br>Aspen Specialty Insurance Company<br><br>CX006MW17<br>09/01/2017 - 03/01/2020 | Excess Liability | $5,000,000 Each Occurrence<br>$5,000,000 Aggregate, Where Applicable<br>In Excess of Primary Limits |
| 2. Other Underlying Insurance in Excess of Item 1. Above.<br><br>Navigators Specialty Insurance Company<br><br>NY17FXS905191IC<br>09/01/2017 - 03/01/2020 | Excess Liability | $10,000,000 Each Occurrence<br>$10,000,000 Aggregate, Where Applicable |
| 3. Other Underlying Insurance in Excess of Item 1., and 2. Above.<br><br>Gemini Insurance Company<br><br>CEX09602849-00<br>09/01/2017 - 03/01/2020 | Excess Liability | $10,000,000 Each Occurrence<br>$10,000,000 Aggregate, Where Applicable |
| 4. Other Underlying Insurance in Excess of Item 1., 2., and 3. Above.<br><br>Starr Surplus Lines Insurance Company<br><br>1000015609<br>09/01/2017 - 03/01/2020 | Excess Liability | $25,000,000 Each Occurrence<br>$25,000,000 Aggregate, Where Applicable |

GAI 6008 (Ed. 06/97)                    (Page 1 of 1)

Great American Insurance Co. of New York

IL 73 81 (Ed. 09/15)

## AGENT COUNTERSIGNATURE

The signature shown below complies with the countersignature laws and regulations of the State shown:

**Policy Number**:  EXC2063550

**State**:  FL

**Named Insured**:

John Moriarty & Associates of Florida, Inc.
(As Per Underlying Insurance)
1942 Tyler St
Hollywood, FL 33020-4517

**Agent's Name And Address**:

AmWINS of NY
88 Pine Street, 6th Floor
New York, NY 10005

_____

      **Countersigning Agent**

**Date of Countersignature**: _____

IL 73 81 (Ed. 09/15)                                        (Page 1 of 1)

Great American Insurance Co. of New York

IL 73 24 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

## ECONOMIC AND TRADE SANCTIONS CLAUSE

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

IL 73 24 (Ed. 08/12)

Great American Insurance Co. of New York

GAI 6011 (Ed. 06/97)

### GENERAL ENDORSEMENT

### Limitation Of Coverage To Designated Project

It is understood and agreed that the insurance provided by this policy shall apply only to 87 Collins Avenue Condominium as more fully described in the Aspen Specialty Insurance Company policy. Policy Number: CR006N817

Great American Insurance Co. of New York

GAI 6011 (Ed. 06/97)

## GENERAL ENDORSEMENT

### Premium Payment Endorsement - Flat

The premium for the term of this policy shall be a flat premium of $105,950. It is agreed that the premium is fully earned at the earlier of the completion of the project or the expiration date of this policy.

It is further agreed that should this policy be cancelled, the Company shall retain $21,190 as the minimum earned premium.

Great American Insurance Co. of New York

GAI 6965 (Ed. 10/14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FOLLOWING FORM ENDORSEMENT**

This endorsement modifies insurance provided under the following

EXCESS LIABILITY COVERAGE FORM

**INSURING AGREEMENTS I. COVERAGE** of this policy is deleted in its entirety and is replaced with the following:

We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item **5.** of the Declarations, subject to **INSURING AGREEMENT** Section II., **Limits of Insurance**. Except for Items **1.** through **8.** listed below, the coverage provided by this policy shall follow form and be in accordance with the insuring agreements, exclusions, definitions and conditions contained in the "first underlying insurance" identified below.

Insurance Company: Aspen Specialty Insurance Company

Policy Number:       CX006MW17

**1.** Limits of Insurance

**2.** Policy Period

**3.** Premium

**4.** Schedule of Underlying Insurance

**5.** Asbestos Exclusion

**6.** Nuclear Energy Liability Exclusion

**7.** Any other endorsement agreed upon by us and the Named Insured, and endorsed to this policy

**8.** Cancellation provision

If any provisions of the "first underlying insurance" are more restrictive than items identified as **1.** through **8.** in this Endorsement, the provisions of the "first underlying insurance" shall apply.

In addition, the coverage provided by this policy will follow form and be in accordance with the limitations, exclusions or restrictions of coverage in any other "underlying insurance" to the extent coverage is further limited or restricted by a policy or endorsement of "underlying insurance."

In no event will this policy provide broader coverage in any respect than would be provided by any of the "underlying insurance."

**This endorsement does not change any other provision of the policy.**

GAI 6965 (Ed. 10/14)                              (Page 1 of 1)

Great American Insurance Co. of New York

GAI 6011 (Ed. 06/97)

## GENERAL ENDORSEMENT

### Products-Completed Operations Hazard Extension - Following Form

The following exclusion is added to Section IV. - EXCLUSIONS:

Any liability arising out of the "Products-Completed Operations Hazard", except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

It is further understood and agreed, solely as respects the "Products-Completed Operations Hazard", that the insurance provided by this policy shall be extended:

    a.   Ten (10) years from the date that the designated project was completed; or

    b.   To the expiration of the statute of repose applicable to claims alleging defective construction; or

    c.   To the expiration of the extension period as provided by each of the underlying insurance policies,

    whichever is earlier.

This endorsement does not change any other provision of this policy.

Great American Insurance Co. of New York

GAI 6709 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FLORIDA CHANGES - CANCELLATION AND NONRENEWAL**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY COVERAGE FORM

Section **VI - CONDITIONS D. Cancellation**, Paragraph **2**, is deleted and the following condition is added to Section **VI - CONDITIONS**:

**Cancellation**

2. a. **Cancellation Of Policies In Effect 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** a material misstatement or misrepresentation; or

**(b)** a failure to comply with underwriting requirements established by the insurer.

b. **Cancellation For Policies In Effect For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** nonpayment of premium;

**(2)** the policy was obtained by a material misstatement;

**(3)** there has been a failure to comply with underwriting requirements within 90 days of the effective date of coverage;

**(4)** there has been a substantial change in the risk covered by the policy; or

**(5)** the cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if cancellation is for the reason stated in **b.(1)** above; or

Great American Insurance Co. of New York

**(b)** 45 days before the effective date of cancellation if cancellation is for the reasons stated in **b.(2)**, **(3)**, **(4)** or **(5)** above.

Section **VI - CONDITION D. Cancellation**, Paragraph **4** and **5** are deleted and replaced with the following:

If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

The following **CONDITION** is added and supersedes any provision to the contrary:

**Nonrenewal**

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**This endorsement does not change any other provision of the policy.**

Great American Insurance Co. of New York

GAI 6452 (Ed. 04/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA
EXCESS LIABILITY

The following is added to **SECTION II. LIMITS OF INSURANCE**:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**This endorsement does not change any other provision of the policy.**

Great American Insurance Co. of New York

GAI 6472 (Ed. 04/15)

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

This endorsement modifies insurance provided under the following:

> COMMERCIAL UMBRELLA
> EXCESS LIABILITY

**Schedule\***

**Terrorism Premium (Certified Acts) $** 0

\* Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.  Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B.  Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in paragraph D. below) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C.  Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D.  Federal Share of Losses Under the Terrorism Risk Insurance Act**

85% Year: 2015
84% Year: 2016
83% Year: 2017
82% Year: 2018
81% Year: 2019
80% Year: 2020

**This endorsement does not change any other provision of the policy.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GAI 6472 (Ed. 04/15)                              (Page 1 of 1)

Great American Insurance Co. of New York

**GAI 6524**
(Ed. 06 97)

## EXCESS LIABILITY COVERAGE FORM

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured. The words "we," "us" and "our" refer to the Company providing this insurance. The word Insured means any person or organization qualifying as such in the "first underlying insurance." Other words and phrases that appear in quotation marks have special meaning and can be found in the **DEFINITIONS** Section or the specific policy provision where they appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide the coverage as follows:

### INSURING AGREEMENTS

#### I. COVERAGE

We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item **5.** of the Declarations, subject to **INSURING AGREEMENT** Section **II., Limits of Insurance.** Except for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance."

#### II. LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay under the terms of this insurance regardless of the number of:

**1.** Insureds;

**2.** claims made or suits brought;

**3.** persons or organizations making claims or bringing suits.

**B.** The Limits of Insurance of this policy will apply as follows:

**1.** This policy applies only in excess of the "Underlying Limits of Insurance" shown in Item **5.** of the Declarations.

**2.** The aggregate limit shown in Item **4.** of the Declarations is the most we will

pay for all "loss" that is subject to an aggregate limit provided by the "first underlying insurance." The aggregate limit applies separately and in the same manner as the aggregate limits provided by the "first underlying insurance," provided that all "underlying insurance" applies their aggregate limit in the same manner as the "first underlying insurance."

**3.** Subject to **B.2.,** the occurrence limit stated in Item **4.** of the Declarations is the most we will pay for all "loss" arising out of any one occurrence to which this policy applies.

**4.** Subject to Paragraphs **B.2.** and **B.3.** above, if the "Underlying Limits of Insurance" described in Item **5.** of the Declarations are either reduced or exhausted solely by payment of "loss," such insurance provided by this policy will apply in excess of the reduced underlying limit or, if all underlying limits are exhausted, will apply as "underlying insurance" subject to the same terms, conditions, definitions and exclusions of the "first underlying insurance," except for the terms, conditions, definitions and exclusions of this policy.

Great American Insurance Co. of New York

However, we will not pay that portion of a "loss" that is within the "Underlying Limits of Insurance" which the Insured has agreed to fund by self-insurance or means other than insurance.

5. The limits of this policy apply separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations unless the policy period is extended after issuance for an additional period of less than 12 months. In that case the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## III. DEFENSE

A. We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

B. We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss." If we exercise such right, we will do so at our own expense, but not after the limits of this policy are exhausted.

## IV. EXCLUSIONS

This policy does not apply to:

A. Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or related in any way, either directly or indirectly, to:

1. asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, manufacture, mining, use, sale, installation, removal, or distribution activities;

2. exposure to testing for, monitoring of, cleaning up, removing, containing or treating of asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust; or

3. any obligation to investigate, settle or defend, or indemnify any person against any claim or suit arising out of or related in any way, either directly or indirectly, to asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust.

B. Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or in any way related to:

1. the actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of "pollutants," however caused;

2. any request, demand, or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, suits, orders or requests brought by any governmental entity or by any person or group of persons;

3. steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

C. Any liability excluded by the Nuclear Energy Liability Exclusion attached to this policy.

Great American Insurance Co. of New York

## V. DEFINITIONS

**A.** "First underlying insurance" means the policy or policies of insurance stated as such in Item **5.** of the Declarations.

**B.** "Loss" means those sums actually paid in the settlement or satisfaction of a claim which you are legally obligated to pay as damages after making proper deductions for all recoveries and salvage.

**C.** "Underlying insurance" means "first underlying insurance" and all policies of insurance listed in Item **5.** of the Declarations.

**D.** "Underlying Limits of Insurance" means the total sum of the limits of all applicable "underlying insurance" stated in Item **5.** of the Declarations, including self-insurance, or means other than insurance.

## VI. CONDITIONS

### A. Appeals

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the "Underlying Limits of Insurance," we may elect to appeal at our expense. If we do so elect, we will be liable for the costs and interest incidental to this appeal. In no event will this provision increase our liability beyond the applicable Limits of Insurance described in Section **II.** of this policy.

### B. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any Insured or the bankruptcy, insolvency or inability to pay of any of the underlying insurers will not relieve us from the payment of any claim or suit covered by this policy.

In the event of bankruptcy or insolvency of any underlying Insurer, the insurance afforded by this policy will not replace such "underlying insurance," but will apply as if the "underlying insurance" was available and collectible.

### C. Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

### D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item **1.** of the Declarations will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first Named Insured in Item **1.** of the Declarations will act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

Great American Insurance Co. of New York

**8.** Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

**E. First Named Insured Duties**

The person or organization first named in Item **1.** of the Declarations is responsible for the payment of all premiums. The first Named Insured will act on behalf of all other Named Insureds for the giving and receiving of notice of cancellation or the receipt of any return premium that may become payable.

We will be furnished a complete copy of the "first underlying insurance" described in Item **5.** of the Declarations and any subsequently issued endorsements which may in any way affect this insurance.

**F. Legal Actions Against Us**

There will be no right of action against us under this insurance unless:

**1.** you have complied with all the terms of this policy; and

**2.** the amount you owe has been determined by settlement with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a party in an action against you to determine your liability.

**G. Maintenance of Underlying Insurance**

During the period of this policy, you agree:

**1.** to keep the policies listed in Item **5.** of the Declarations in full force and effect;

**2.** that the Limits of Insurance of the "underlying insurance" policies listed in Item **5.** of the Declarations will be maintained except for any reduction or exhaustion of aggregate limits by payment of claims or suits for "losses" covered by "underlying insurance."

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

**H. Notice of Occurrence**

**1.** You must see to it that we are notified as soon as practicable of an occurrence which may result in a claim or suit which may involve this policy. To the extent possible, notice will include:

**a.** how, when and where the occurrence took place;

**b.** the names and addresses of any injured persons and witnesses;

**c.** the nature and location of any injury or damage arising out of the occurrence.

**2.** If a claim or suit against any Insured is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

**3.** You and any other involved Insured must:

**a.** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

**b.** authorize us to obtain records and other information;

**c.** cooperate with us in the investigation, settlement or defense of the claim or suit; and

**d.** assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

**4.** If the "Underlying Limits of Insurance" are exhausted solely by payment of "loss," no Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Great American Insurance Co. of New York

### I. Other Insurance

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

Other insurance includes any type of self-insurance or other mechanism by which an Insured arranges for funding of legal liabilities.

### J. Premium

Unless otherwise provided, the premium for this policy is a flat premium and is not subject to adjustment except as provided herein or amended by endorsement. If any additional premium charge is made to the "underlying insurance" during the policy period or if there is an increase in the risk assumed by us, our premium may be adjusted accordingly.

### K. Terms Conformed to Statute

The terms of this policy which are in conflict with the statutes of the state where this policy is issued are amended to conform to such statutes.

If we are prevented by law or statute from paying on behalf of the Insured, then we will, where permitted by law or statute, indemnify the Insured.

### L. When "Loss" is Payable

Coverage under this policy will not apply unless and until the Insured or the Insured's "underlying insurance" is obligated to pay the full amount of the "Underlying Limits of Insurance."

When the amount of "loss" has finally been determined, we will promptly pay on behalf of the Insured the amount of "loss" falling within the terms of this policy.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This policy does not apply to:

**A.** Any liability, injury or damage:

1. with respect to which any Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

2. resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** a person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** any Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement

entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material," if:

1. the "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, any Insured or **(b)** has been discharged or dispersed therefrom;

2. the "nuclear material" is contained in "spent fuel" or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any Insured; or

3. the injury or "nuclear property damage" arises out of the furnishing by any Insured of services, materials, parts of equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America,

Great American Insurance Co. of New York

its territories or possessions or Canada, this Exclusion **B.3.** applies only to "nuclear property damage" to such "nuclear facility" and any property therein.

**C.** As used in this exclusion:

1. "Hazardous properties" includes radioactive, toxic or explosive properties.

2. "Nuclear facility" means:

   a. any "nuclear reactor";

   b. any equipment or device designed or used for

      **(1)** separating the isotopes of uranium or plutonium,

      **(2)** processing or utilizing "spent fuel" or

      **(3)** handling, processing or packaging "nuclear waste";

   c. any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of any Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   d. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of, "nuclear waste," and includes the site on which

any of the foregoing is located, all operations considered on such site and all premises used for such operations.

3. "Nuclear material" means "source material," "special nuclear material" or by-product material.

4. "Nuclear property damage" includes all forms of radioactive contamination of property.

5. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

6. "Nuclear waste" means any "nuclear waste" material **(a)** containing "by-product material" other than the tailings of "nuclear waste" produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included within the definition of "nuclear facility" under Paragraph **C.2.a.** or **C.2.b.**

7. "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

8. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

This endorsement does not change any other provision of the policy.

Great American Insurance Co. of New York

**IL 72 68**
(Ed. 09 09)

### In Witness Clause

In Witness Whereof, we have caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by our authorized representative.

**President**                                    **Secretary**

Copyright Great American Insurance Co., 2009

Great American Insurance Co. of New York

## IMPORTANT NOTICE
## FLORIDA

## TO OBTAIN INFORMATION OR TO MAKE A COMPLAINT

This notice is to advise you that should any complaints arise regarding this insurance, you may contact Great American Insurance Companies at the following address:

Great American Insurance Group
Administrative Offices
301 East 4th Street
Cincinnati, OH 45202

Or you may call the toll-free telephone number for information or to make a complaint at:

**1-800-972-3008**

If you (a) need the assistance of the governmental agency that regulates insurance; or (b) have a complaint you have been unable to resolve with your insurer you may contact the Department of Insurance by mail, telephone or email:

Florida Department of Financial Services
200 East Gaines Street
Tallahassee, FL 32399-0300
(850) 413-3100

Consumer Hotline: 1-877-MY-FL-CFO (1-877-693-5236)

Complaints can be filed electronically at www.fldfs.com

### ATTACH THIS NOTICE TO YOUR POLICY

This notice is for information only and does not become a part or condition of the attached document.

SDM-715 (Ed. 02/09) XS

GAI 6012 (Ed. 06/97)

|  |  |
|---|---|
| **Policy No.** | EXC2063550 |
| **Effective Date of Change** | 03/01/2020 |

## POLICY CHANGES

| **NAMED INSURED AND ADDRESS:** | **POLICY PERIOD:** |
|---|---|
| John Moriarty & Associates of Florida, Inc. | 12:01 A.M. Standard Time at the address of the |
| (As Per Underlying Insurance) | Named Insured shown at left. |
| 1942 Tyler St | From 09/01/2017 To  04/01/2020 |
| Hollywood, FL 33020-4517 | |

| | |
|---|---|
| **THIS ENDORSEMENT CHANGES THE POLICY.** | **AGENT'S NAME AND ADDRESS:** |
| | AmWINS Brokerage of New York, Inc. |
| **PLEASE READ IT CAREFULLY.** | 88 Pine St., 6th Floor |
| | New York, NY 10005 |

Insurance is afforded by company indicated below:

Great American Insurance Co. of New York
(A capital stock corporation)

In consideration for an additional premium of $500 it is hereby understood and agreed that this policy is extended to expire on April 1, 2020.

Change Endorsement No.: 1

**FORMS AND ENDORSEMENTS** hereby added:

**FORMS AND ENDORSEMENTS** hereby amended:

**FORMS AND ENDORSEMENTS** hereby deleted:

Countersigned _____   By _____

Date                                      Authorized Representative