# EXHIBIT 27

**BROKER –** Alliant Insurance Services, Inc.

# John Moriarty & Associates, Inc.

**POLICY NUMBER -** 11PKG8931805

**POLICY PERIOD -** 10/31/2020 to 10/31/2021



a member of Arch Insurance Group

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Includes copyright material of Insurance Services Office, Inc. with its permission.

# FLORIDA COUNTERSIGNATURE FORM

This form must be attached to the policy as part of the insurance contract.


Producer Signature: _____


Date Policy Signed by Producer: _____

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PREMIUM COMPUTATION**

This endorsement modifies insurance provided as follows:

1.  This endorsement applies to the lines of business indicated below:

    _____X_____   Commercial General Liability

    _____X_____   Business Auto Covered Autos Liability

    _____X_____   Business Auto Physical Damage

2.  Your premium will be computed as follows:  Audit  10/31/20  through 10/31/21

    ☒ Annual   ☐ Semi-annual   ☐ Monthly  _____   Other

3.  If Commercial General Liability is indicated in Item 1 above, the deposit premium set forth in the Declarations is adjustable, and is only an estimated premium for the Audit Period shown in 2. above.  The final earned premium for the Audit Period will be determined as specified in Condition 5**. Premium Audit** of **SECTION IV – COMMERCIAL GENERAL LIABLITY CONDITIONS**.  The Audit Premium will be computed by applying the Composite Rate(s) against the Audited Exposure and Exposure Reporting Basis listed in the Premium Adjustment Table below.  Such rates are prior to any applicable taxes, licenses or fees.  The final premium calculation is subject to the Minimum Earned Premium listed in 6. below.

    The deposit premium set forth in the Declarations includes premium for subcontractors hired by you.  The rate charged for the subcontracted work will be listed in the Premium Adjustment Table below and will depend on whether or not the subcontractor shows evidence of an insurance program that contains:

        a.    Workers Compensation/Employers Liability;

        b.    All coverages included in the general contractors General Liability policy; and

        c.    Limits of liability at least equal to the primary limit of the general contractor.

    If the subcontractor(s) insurance meets our requirements, the total cost of the subcontracted work will be applied to the rate shown in the Premium Adjustment Table for the appropriate Contractor/Subcontracted Work classifications.

    If the subcontractor(s) insurance does not meet our requirements, premium will be based on the payroll portion of the total cost of the subcontracted work.  If your records do not accurately reflect the payroll portion of the contract, the entire cost of the contract may be deemed payroll.  These subcontractors will be classified and rated as though they were your employees.  Classifications used and rates charged will be shown in the Premium Adjustment Table below.

4.  If Business Auto Covered Autos Liability or Business Auto Physical Damage is indicated in Item 1. above, the deposit premium set forth in the Declarations is adjustable, and is only an estimated premium for the Audit Period shown in 2. above.  The final earned premium for the Audit Period will be determined as specified in Condition **6.** Premium **Audit** of **SECTION IV – BUSINESS AUTO CONDITIONS**.  The final premium will be computed by taking the number of "autos" at the beginning of the Audit Period, adding the number of "autos" determined at the time of Audit and dividing by two to get an average number of "autos".  The average number of "autos" will then be applied against the Composite Rate(s) listed in the Premium Adjustment Table below.  Such rates are prior to any applicable surplus lines taxes, licenses or fees.  The final premium calculation is subject to the Minimum Earned Premium listed in 6. below.  Information from a prior audit completed by us will be used as the number of "autos" at the beginning of the Audit Period if available.

If Business Auto Covered Autos Liability or Physical Damage is applicable, you will not be required to report replacement autos or newly acquired autos within 30 days to us. Premium adjustments for these autos will be calculated as described above.

5.   Premium Adjustment Table

| LOB | Class Code | Class Description | Estimated Exposure | Exposure Reporting Basis | Composite Rate | Estimated Premium |
|-----|-----------|-------------------|--------------------|--------------------------|----------------|-------------------|
| GL | 15250 | COMPOSITE | 400,000,000 | PER 1,000 REVENUE | 1.5581 | $623,240 |
| AL | 4514 | COMPOSITE | 16 | PER POWER UNIT | 1,774 | $28,384 |
| APD | 4514 | COMPOSITE | 16 | PER COVERED UNIT | 873 | $13,968 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Additional Notes:

6.  Minimum Earned Premiums

$529,754    Commercial General Liability

$24,126    Business Auto Covered Auto Liability

$11,873    Business Auto Physical Damage

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10/31/2020



Florida Signature Page

IN WITNESS WHEREOF, Arch Insurance Company has caused this policy to be executed and attested.

_____
John Mentz
President

_____
Regan Shulman
Secretary

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**KNOWLEDGE OF OCCURRENCE ENDORSEMENT**

As respects any loss reporting requirements under this policy, it is understood and agreed that knowledge of any accident or incident by an agent, servant or employee of yours or any other person shall not in itself constitute knowledge by you, unless a corporate officer of yours, principal, partner, owner, or the person or persons responsible for insurance matters listed below shall have received notice from said agent, servant, employee or any other person.

Name: ANY CORPORATE OFFICER OF YOURS, PRINCIPAL, OWNER OR THE
      PERSON OR PERSONS RESPONSIBLE FOR INSURANCE MATTERS.

All other terms and conditions of this Policy remain unchanged.

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date:

_____
                    Authorized Representative

00 ML0020 00 11 03                                                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**UNINTENTIONAL ERRORS AND OMISSIONS ENDORSEMENT**

It is hereby agreed that your failure to disclose all hazards existing as of the inception date of this policy shall not prejudice you with respect to the coverage afforded by this policy provided such failure or omission is not intentional or grossly negligent.

All other terms and conditions of this Policy remain unchanged.

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date:

_____
Authorized Representative

00 ML0021 00 11 03                                                          Page 1 of 1

POLICY NUMBER: 11PKG8931805

IL 09 85 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| |
|---|
| **SCHEDULE – PART I** |
| **Terrorism Premium (Certified Acts)** $27,641 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| GENERAL LIABILITY |
| **Additional information, if any, concerning the terrorism premium:** |
| **SCHEDULE – PART II** |
| **Federal share of terrorism losses** _80%_ **Year: 20** _20_ |
| (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses** _80%_ **Year: 20** _21_ |
| (Refer to Paragraph **B.** in this endorsement.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

© Insurance Services Office, Inc., 2015

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015

**IL 09 85 01 15**

**Policy Number**
**11PKG8931805**

**COMMON POLICY DECLARATIONS**

# ARCH INSURANCE COMPANY

Named Insured    JOHN MORIARTY & ASSOCIATES,      Effective Date: 10-31-20

12:01 A.M., Standard Time

Agent Name    ALLIANT INSURANCE SERVICES, INC.      Agent No.   18921

| Item 1. | Named Insured and Mailing Address | Agent Name and Address |
|---|---|---|
| | JOHN MORIARTY & ASSOCIATES, INC.<br>3 CHURCH STREET<br>WINCHESTER MA 01890 | ALLIANT INSURANCE SERVICES, INC.<br>10320 LITTLE PATUXENT PARKWAY<br>SUITE 560<br>COLUMBIA MD 21044<br><br>Agent No. 18921 |

| Item 2. | Policy Period | From: 10-31-2020 | To: 10-31-2021 |
|---|---|---|---|

**at 12:01 A.M., Standard Time at your mailing address shown above.**

| Item 3. | Business Description: |
|---|---|
| | Form of Business:    CORPORATION |

| Item 4. | In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. |
|---|---|

This policy consists of the following coverage parts for which a premium is indicated.  Where no premium is shown, there is no coverage.  This premium may be subject to adjustment.

| Coverage Part(s) | | Premium |
|---|---|---|
| Commercial Property Coverage Part | | NOT COVERED |
| Commercial General Liability Coverage Part | $ | 623,240.00 |
| Commercial Crime Coverage Part | | NOT COVERED |
| Commercial Inland Marine Coverage Part | | NOT COVERED |
| Commercial Auto (Business or Truckers) Coverage Part | $ | 42,352.00 |
| Commercial Garage Coverage Part | | NOT COVERED |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Policy Premium** | $ | 665,592.00 |

| Item 5. | Forms and Endorsements |
|---|---|

Forms(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

Countersigned:

Date: 12-11-20 _____    By: _____

Authorized Representative

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

**FAIC-SKLBUS-CPD (6/01)**

**Policy Number**
**11PKG8931805**

### SCHEDULE OF FORMS AND ENDORSEMENTS

## ARCH INSURANCE COMPANY

Named Insured   JOHN MORIARTY & ASSOCIATES,                Effective Date: 10-31-20

                                                           12:01 A.M., Standard Time

Agent Name   ALLIANT INSURANCE SERVICES, INC.              Agent No.  18921

COMMON POLICY FORMS AND ENDORSEMENTS

| | | | |
|---|---|---|---|
| 00 ML0065 00 | 06-07 | U.S. TREASURY DEPARTMENT'S OFFICE | |
| 00 ML0246 10 | 11-14 | FLORIDA COUNTERSIGNATURE FORM | |
| 00 ML0039 00 | 10-13 | PREMIUM COMPUTATION | |
| 05 ML0002 10 | 09-12 | FLORIDA SIGNATURE PAGE | |
| 00 ML0020 00 | 11-03 | KNOWLEDGE OF OCCURRENCE ENDORSEMENT | |
| 00 ML0021 00 | 11-03 | UNINTENTIONAL ERRORS & OMISSIONS  ENDT | |
| IL 09 85 | 01-15 | DISCLOSURE PURSUANT/TERROR RISK INS ACT | |
| FAIC-SKLBUS-CPD | 06-01 | COMMON POLICY DECLARATIONS | |
| FAIC-SKLBUS-FE | 06-01 | SCHEDULE OF FORMS AND ENDORSEMENTS | |
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS | |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT | |
| IL 00 44 | 06-90 | VIRGINIA CHANGES-POLICY PERIOD | |
| IL 01 38 | 10-15 | VIRGINIA CHANGES | |
| IL 01 40 | 09-08 | CONNECTICUT CHANGES - CIVIL UNION | |
| IL 02 60 | 01-19 | CONNECTICUT CHANGES-CANC & NONRENL | |
| 00 ML0087 00 | 11-10 | NOTICE OF CANC - SPECIFIED DAYS | |

GENERAL LIABILITY FORMS AND ENDORSEMENTS

| | | | |
|---|---|---|---|
| FAIC-SKLBUS-CGLDEC | 06-01 | COMM GENERAL LIABILITY COVERAGE SUPP DEC | |
| 00 GL0045 00 | 12-03 | GENERAL LIABILITY ASBESTOS EXCLUSION | |
| 00 GL0173 00 | 04-04 | LEAD CONTAMINATION EXCLUSION | |
| 00 GL0356 00 | 10-11 | CGL DEDUCTIBLE ENDORSEMENT | |
| 00 GL0473 00 | 06-08 | CONTRACTORS GENERAL LIABILITY | |
| 00 GL0474 00 | 06-08 | ANTI STACKING ENDORSEMENT | |
| 00 GL0539 00 | 01-09 | WRAP-UP EXCESS & DIFF IN COND ENDT | |
| 00 GL0588 00 | 04-10 | BODILY INJURY DEFINITION EXTENSION ENDT | |
| 00 GL0591 00 | 04-10 | FELLOW EMPLOYEE COVERAGE FOR DESIGNATED | |
| 00 GL0593 00 | 04-10 | INCIDENTAL MED MALPRACTICE LIAB COV ENDT | |
| 00 GL0595 00 | 04-10 | WHEN WE DO NOT RENEW EXTENDED NOTICE END | |
| 00 GL0599 00 | 04-10 | BI OR PD EXPECTED OR INTENDED END | |
| CG 00 01 | 04-13 | COMMERCIAL GENERAL LIABILITY COV FORM | |
| 00 GL0042 00 | 09-03 | NON-OWNED WATERCRAFT ENDORSEMENT | |
| 00 GL0172 00 | 03-04 | LIMITED CROSS SUITS EXCLUSION | |
| CG 02 20 | 03-12 | FL CHANGES - CANCELLATION & NONRENEWAL | |
| 00 GL0472 00 | 06-14 | BROAD FORM NAMED INSURED-DESIGNATED END | |
| 00 GL0540 00 | 02-11 | WRAP-UP EXCL W/LMTD EXCPT FOR EXCESS COV | |
| 00 GL0670 00 | 02-11 | CONTRACTUAL LIABILITY EXCLUSION ENDT | |
| CG 02 24 | 10-93 | EARLIER NOTICE OF CANC PROVIDED BY US | |
| CG 04 24 | 10-93 | COVERAGE FOR INJURY TO LEASED WORKERS | |
| CG 04 35 | 12-07 | EMPLOYEE BENEFITS LIABILITY COVERAGE | |
| CG 20 01 | 04-13 | PRIMARY AND NONCONTRIBUTORY - OTHER INSD | |
| CG 20 10 | 07-04 | ADDL INSD - OWNERS/LESSEES/CONTRACTORS | |
| CG 20 10 | 10-01 | ADDL INSD - OWNERS/LESSEES/CONTRACTORS | |
| CG 20 10 | 04-13 | ADDL INSD - OWNERS/LESSEES/CONTRACTORS | |

**Policy Number**
**11PKG8931805**

### SCHEDULE OF FORMS AND ENDORSEMENTS

## ARCH INSURANCE COMPANY

Named Insured   JOHN MORIARTY & ASSOCIATES,          Effective Date: 10-31-20

12:01 A.M., Standard Time

Agent Name   ALLIANT INSURANCE SERVICES, INC.          Agent No.  18921

| | | |
|---|---|---|
| CG 20 12 | 04-13 | ADDL INS-ST, GOV AGY, SUB, POL SUB-PERM |
| CG 20 18 | 04-13 | ADDL INSD-MORTGAGEE ASSIGNEE OR RECEIVER |
| CG 20 26 | 04-13 | ADDL INSD-DESIGNATED PERSON/ORGANIZATION |
| CG 20 28 | 04-13 | ADDL INSD-LESSOR OF LEASED EQUIPMENT |
| CG 20 37 | 10-01 | ADDL INSD-OWNERS/LESSEES/CONTR-COMP OPS |
| CG 20 37 | 07-04 | ADDL INSD-OWNERS/LESSEES/CONTR-COMP OPS |
| CG 20 37 | 04-13 | ADDL INSD-OWNERS/LESSEES/CONTR-COMP OPS |
| CG 20 38 | 04-13 | ADDL INSD - OWNERS/LESSEES/CONTRACTORS |
| CG 21 06 | 05-14 | EXCL-ACC/DISCL OF CONFI OR PERSONAL INFO |
| CG 21 35 | 10-01 | EXCL-COV C-MEDICAL PAYMENTS |
| CG 21 47 | 12-07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 65 | 12-04 | TOTAL POLLUTION EXCL-WITH EXCEPTIONS |
| CG 21 67 | 12-04 | FUNGI OR BACTERIA EXCLUSION |
| CG 21 70 | 01-15 | CAP LOSSES FROM CERTIF ACTS OF TERRORISM |
| CG 21 86 | 12-04 | EXCL-EXTERIOR INSULATION & FINISH SYSTEM |
| CG 21 96 | 03-05 | SILICA OR SILICA-RELATED DUST EXCLUSION |
| CG 22 74 | 10-01 | LIMITED CONTR LIABILITY COV FOR PERS/ADV |
| CG 24 04 | 05-09 | WAIVER OF TRANSFER RIGHTS OF RECOVERY |
| CG 24 17 | 10-01 | CONTRACTUAL LIABILITY - RAILROADS |
| CG 24 22 | 04-13 | AMEND OF COV TERR-WORLDWIDE COVERAGE |
| CG 25 03 | 05-09 | DESIGNATED CONSTRUCTION PROJECTS GENERAL |
| CG 25 04 | 05-09 | DESIGNATED LOCATIONS GENERAL AGGREGATE |
| 00 ML0207 00 | 11-03 | MODIFIED EXCL - CONTRACTORS - PROF LIAB |

AUTOMOBILE FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| 00 CA0142 00 | 10-13 | COVERAGE FORM REFERENCES |
| 00 CA0150 00 | 09-14 | COMMERCIAL AUTO BROADENING ENDORSEMENT |
| AU-DEC C/W | 10-13 | BUSINESS AUTO COVERAGE FORM DECLARATIONS |
| 00 CA0039 00 | 10-13 | EARLIER NOTICE OF CANCLLTION BY US ENDT |
| 00 CA0089 00 | 10-13 | ANTI STACKING ENDORSEMENT |
| 00 CA0112 00 | 10-13 | BODILY INJURY DEFINITION EXTENSION ENDT |
| 00 CA0116 00 | 04-10 | PRIMARY AND NON-CONTRIBUTING INS ENDT- |
| 00 CA0087 00 | 06-08 | BROAD FORM NAMED INSURED - DESIGNATED |
| 00 CA0090 00 | 06-08 | BODILY INJURY OR PROPERTY DAMAGE |
| 00 CA0115 00 | 10-13 | ADDITIONAL INSURED-BLANKET |
| CA 00 01 | 10-13 | BUSINESS AUTO COVERAGE FORM |
| CA 20 01 | 10-13 | ADDL INSD-LESSOR |
| MCS 90 | 03-20 | MOTOR CARRIER PUBLIC LIABILITY |
| CA 01 07 | 10-13 | CONNECTICUT CHANGES |
| CA 01 16 | 02-18 | VA CHANGES BUSINESS AUTO COVERAGE FORM |
| CA 01 28 | 06-17 | FLORIDA CHANGES |
| CA 02 67 | 06-17 | FL CHANGES - CANCELLATION AND NONRENEWAL |
| CA 02 68 | 02-18 | VA CHANGES CANCELLATION AND NONRENEWAL |
| CA 99 52 | 02-18 | VA LIMITED SUBROGATION RIGHTS |
| CA 99 63 | 02-18 | VA DC EMPLOYEES AUTOS IN GOVT BUSINESS |
| CA 21 21 | 11-02 | VA UNINSURED MOTORIST ENDORSEMENT |
| CA 21 57 | 03-16 | CT UM AND UIM COVERAGE |

**Policy Number**
**11PKG8931805**

**SCHEDULE OF FORMS AND ENDORSEMENTS**

# ARCH INSURANCE COMPANY

Named Insured   JOHN MORIARTY & ASSOCIATES,          Effective Date: 10-31-20

12:01 A.M., Standard Time

Agent Name   ALLIANT INSURANCE SERVICES, INC.          Agent No.   18921

| | | |
|---|---|---|
| CA 22 10 | 02-18 | FL PERSONAL INJURY PROTECTION |
| CA 04 44 | 10-13 | WVR OF TRNSFR OF RGHTS OF RCVRY AGNST |
| CA 04 49 | 11-16 | PRIMARY NONCONTRIBUTORY - OTHER INS COND |
| CA 20 54 | 10-13 | EMPLOYEE HIRED AUTOS |
| CA 20 56 | 10-13 | FELLOW EMPLOYEE COV FOR DESIG EMPLOYEES |
| CA 20 70 | 10-13 | COVERAGE FOR CERTAIN OPERATIONS RAILROAD |
| CA 20 71 | 10-13 | AUTO LOAN/LEASE GAP COVERAGE |
| CA 22 46 | 11-16 | VA MEDICAL EXPENSE & INCOME LOSS BENEFIT |
| CA 23 25 | 10-13 | COVERAGE FOR INJURY TO LEASED WORKERS |
| CA 23 84 | 10-13 | EXCLUSION OF TERRORISM |
| CA 23 94 | 10-13 | SILICA/SILICA-RELATED EXCL FOR COVRD AU |
| CA 99 03 | 10-13 | AUTO MEDICAL PAYMENTS COVERAGE |
| CA 99 10 | 10-13 | DRIVE OTHER CAR COV-BROAD COV NAMED IND |
| CA 99 16 | 10-13 | HIRED AUTO SPECIFIED AS COV AUTO YOU OWN |
| CA 99 23 | 10-13 | RENTAL REIMBURSEMENT COVERAGE |
| CA 99 33 | 10-13 | EMPLOYEES AS INSUREDS |
| CA 99 40 | 10-13 | EXCL OR EXCESS COV HAZARD OTHERWISE INSD |
| CA 99 44 | 10-13 | LOSS PAYABLE CLAUSE |
| CA 99 48 | 10-13 | POLLUTION LIAB BROAD COV FOR COV AUTO |

**FAIC-SKLBUS-FE (6/01)**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007
IL 00 21 09 08   ☐

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES – POLICY PERIOD

Coverage under this policy begins at 12:01 A.M. (Standard Time) at the mailing address shown in the Declarations. However, to the extent that this policy replaces coverage in other policies terminating at 12:01 A.M. (Standard Time) on the inception date of this policy at the location of the property involved, coverage under this policy, at each location, becomes effective when such other coverage terminates.

IL 01 38 10 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.**, **3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.** We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least:

**a.** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 45 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will send written notice in accordance with Virginia Law or deliver written notice to the first Named Insured's last mailing address known to us.

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund. The following provisions govern calculation of return premium.

**a.** We will compute return premium pro rata and round to the next higher whole dollar when this Policy is cancelled:

**(1)** At our request;

**(2)** Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

**(3)** And rewritten by us or a member of our company group; or

**(4)** After the first year, if it is a prepaid policy written for a term of more than one year.

**b.** When this Policy is cancelled at your request (except when Paragraph **a.(2), a.(3)** or **a.(4)** applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

**B.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** If we elect not to renew this Policy, we will mail or deliver a notice of nonrenewal to the first Named Insured shown in the Declarations, stating the reason for nonrenewal, at least:

**a.** 15 days before the expiration date if the nonrenewal is due to nonpayment of premium; or

**b.** 45 days before the expiration date if the nonrenewal is for any other reason.

**2.** We will send written notice in accordance with Virginia Law or deliver written notice of nonrenewal to the first Named Insured's last mailing address known to us.

**3.** If notice is mailed, proof of mailing will be sufficient proof of notice.

 © Insurance Services Office, Inc., 2015

IL 01 40 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Connecticut law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage — Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, or Farm Umbrella Liability Policy, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of your household, including a ward or foster child.

© ISO Properties, Inc., 2007

IL 02 60 01 19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** Cancellation of policies in effect for less than 60 days.

If this policy has been in effect for less than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** Cancellation of policies in effect for 60 days or more.

**a.** If this policy has been in effect for 60 days or more or this is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

**(a)** Nonpayment of premium;

**(b)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(c)** Discovery of fraud or material misrepresentation by you in obtaining the policy or in perfecting any claim thereunder;

**(d)** Discovery of any willful or reckless act or omission by you increasing the hazard insured against; or

**(e)** A determination by the Commissioner that continuation of the policy would violate or place us in violation of the law; or

**(2)** 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:

    **(a)** Physical changes in the property which increase the hazard insured against;

    **(b)** A material increase in the hazard insured against; or

    **(c)** A substantial loss of reinsurance by us affecting this particular line of insurance.

**b.** We may not cancel policies in effect for 60 days or more or renewal policies for any reason other than the reasons described in Paragraph **3.a.** above.

**c.** If we cancel for nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation.

**d.** Notice of cancellation will be delivered or sent by:

    **(1)** Registered mail;

    **(2)** Certified mail; or

    **(3)** Mail evidenced by a United States Post Office certificate of mailing.

**4.** We will give notice to you at your last mailing address known to us.

**5.** Notice of cancellation will state the specific reason for the cancellation and the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following conditions are added and supersede any other provision to the contrary:

  **1. Nonrenewal**

    If we decide not to renew this policy, we will send notice as provided in Paragraph **B.3.** of this endorsement.

With respect to automobile liability insurance policies only, your policy shall terminate on the effective date of any other insurance policy you purchase with respect to any automobile designated in both policies.

  **2. Conditional Renewal**

    **a.** If we conditionally renew this policy under terms or conditions less favorable to the insured than currently provided under this policy, then we will send notice as provided in Paragraph **B.3.** of this endorsement.

    **b.** The conditional renewal notice shall clearly state or be accompanied by a statement clearly identifying any:

      **(1)** Reduction in coverage limits;

      **(2)** Coverage provisions added or revised that reduce coverage; or

      **(3)** Increases in deductibles.

  **3. Notices Of Nonrenewal And Conditional Renewal**

    **a.** If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs **B.1.** and **B.2.** of this endorsement, we will mail or deliver to you a written notice of nonrenewal or conditional renewal, stating the specific reason for nonrenewal or conditional renewal, at least 60 days before the expiration date of this policy. The notice will be sent to your address last known to us.

    **b.** This notice will be delivered or sent by:

      **(1)** Registered mail;

      **(2)** Certified mail; or

      **(3)** Mail evidenced by a certificate of mailing.

      If notice is mailed, proof of mailing is sufficient proof of notice.

    **c.** However, we are not required to send notice of nonrenewal if nonrenewal is due to your failure to pay any advance premium required for renewal.

**C.** The **When We Do Not Renew** Condition of the Commercial General Liability Coverage Part, Commercial Liability Umbrella Coverage Part and Employment-Related Practices Liability Coverage Part does not apply.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NOTICE OF CANCELLATION – CERTIFICATE HOLDERS
(SPECIFIED DAYS)**

The person(s) or organization(s) listed or described in the Schedule below have requested that they receive written notice of cancellation when this policy is cancelled by us.  We will mail or deliver to the Person(s) or Organization(s) listed or described in the Schedule a copy of the written notice of cancellation that we sent to you.  If possible, such copies of the notice will be mailed at least **30**    days, except for cancellation for non-payment of premium which will be mailed 10 days, prior to the effective date of the cancellation, to the address or addresses of certificate holders as provided by your broker or agent.

**Schedule**

Person(s) or Organization(s) including mailing address:

All certificate holders where written notice of the cancellation of this policy is required by written contract, permit or agreement with the Named Insured and whose names and addresses will be provided by the broker or agent listed in the Declarations Page of this policy for the purposes of complying with such request.

This notification of cancellation of the policy is intended as a courtesy only.  Our failure to provide such notification to the person(s) or organization(s) shown in the Schedule will not extend any policy cancellation date nor impact or negate any cancellation of the policy.  This endorsement does not entitle the person(s) or organization(s) listed or described in the Schedule above to any benefit, rights or protection under this policy.

Any provision of this endorsement that is in conflict with a statute or rule is hereby amended to conform to that statute or rule.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10-31-20

**Policy Number**
**11PKG8931805**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**SUPPLEMENTAL DECLARATIONS**

# ARCH INSURANCE COMPANY

Named Insured   JOHN MORIARTY & ASSOCIATES,            Effective Date: 10-31-20

12:01 A.M., Standard Time

Agent Name   ALLIANT INSURANCE SERVICES, INC.            Agent No.  18921

**Item 1.** Business Description:

**Item 2.** Limits of Insurance

| Coverage | Limit of Liability | |
|---|---|---|
| Aggregate Limits of Liability | $    4,000,000 | Products/Completed Operations Aggregate |
| | $    4,000,000 | General Aggregate (other than Products/Completed Operations) |
| Coverage A -   Bodily Injury and Property Damage Liability | $    2,000,000 | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage To Premises Rented To You | $      300,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B -   Personal and Advertising Injury Liability | $    2,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C -   Medical Payments | NOT COVERED | any one person subject to the Coverage A occurrence and the General Aggregate Limits of Liability |

**Item 3.** Retroactive Date

Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the

Retroactive Date, if any, shown here: _____

(Enter Date or "None" if no Retroactive Date applies)

**Item 4.** Form of Business and Location of Premises

Forms of Business: CORPORATION
Location of All Premises You Own, Rent or Occupy:
   **See Schedule of Locations**

**Item 5.** Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:
   **See Schedule of Forms and Endorsements**

**Item 6.** Premiums

| | |
|---|---|
| Coverage Part Premium: | $      623,240.00 |
| Other Premium: | |
| Total Premium: | $      623,240.00 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

**FAIC-SKLBUS-CGLDEC (6/01)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**ASBESTOS EXCLUSION**

This policy does not apply to:

Any claim, "suit," demand or loss that alleges "bodily injury," "property damage," or "personal and advertising injury," (including but not limited to, compliance with any request, demand, order, or statutory or regulatory requirement or any other action authorized or required by law) including any costs, fees, expenses, penalties, judgments, fines, or sanctions arising there from, which arises out of, or would not have occurred, in whole or in part, but for the "asbestos hazard."

As used in this exclusion, "asbestos hazard" means:

(1)     actual, alleged or threatened exposure to asbestos in any manner or form whatsoever, either directly or indirectly, or

(2)     the failure to warn, advise or instruct related to asbestos in any manner or form whatsoever, or

(3)     the failure to prevent exposure to asbestos in any manner or form whatsoever, or

(4)     the presence of asbestos in any place whatsoever, whether or not within a building or structure.


All other terms and conditions of this Policy remain unchanged.

Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

Endorsement Effective Date:

00 GL0045 00 12 03                                                                                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LEAD CONTAMINATION EXCLUSION**

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of:  the ingestion, inhalation or absorption of lead in any form.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

Endorsement Effective Date: 10-31-20

00 GL0173 00 04 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL GENERAL LIABILITY DEDUCTIBLE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**PRODUCTS AND COMPLETED OPERATIONS LIABILITY COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE FORM**
**EMPLOYEE BENEFITS LIABILITY COVERAGE FORM**
**PROFESSIONAL LIABILITY COVERAGE FORM**

**Schedule**

An "X" in the table below indicates how a Deductible(s) applies to your policy or coverage form:

| Indicate below | Coverage | Deductible Amount | Each Occurrence | Per Claim |
|---|---|---|---|---|
| [X] | Bodily Injury Liability and Property Damage Liability* | 500,000 | [X] | [ ] |
| [ ] | Bodily Injury Liability and Property Damage Liability* — Other than Products - Completed Operations | | [ ] | [ ] |
| [ ] | Bodily Injury Liability and Property Damage Liability* — Products - Completed Operations | | [ ] | [ ] |
| [X] | Personal and Advertising Injury | 500,000 | Each Person or Organization | |
| [X] | Employee Benefits Liability | 1,000 | Each Employee | |
| [ ] | Liquor Liability | | [ ] Per Common Cause | [ ] Per Claim |
| [ ] | Other: | | | |
| [ ] | Other: | | | |

**Deductible Aggregate:**

*Medical Payments: Included [ ] Excluded [X]

**A.    DEDUCTIBLE**

Our obligation to pay damages, costs, benefits, or medical payments, subject to the Limit of Insurance as shown in the Declarations, will be reduced by the **Deductible** shown in the Schedule. Our Limit of Insurance includes, and is not in addition to, the **Deductible**. This deductible cannot be satisfied by the payment of any other deductible as required by any other insurance issued by us or any other carrier that may also apply to our obligation to pay damages, costs, benefits or medical payments.

**B.**   **DEDUCTIBLE AGGREGATE** (this provision applies only if an amount is shown as the **Deductible Aggregate** in the Schedule)

Subject to the applicable Limit of Insurance and related policy provisions, we will pay for all damages, costs, benefits, or medical payments payable under the policy without reduction by the **Deductible** when, as a result of the application of the **Deductibles** to damages, costs, benefits, or medical payments payable under the policy, the sum of all **Deductibles** paid by you exceeds the amount shown in the Schedule as the **Deductible Aggregate.**

If the policy period is longer than one year, the **Deductible Aggregate** amount applies separately to each policy year. Each policy year begins with the inception or anniversary date of the policy and ends at the earlier of the next anniversary date or the expiration of the policy.

The **Deductible Aggregate** amount shown above is not subject to adjustment unless a basis of adjustment is shown below.

The **Deductible Aggregate** is adjustable at the rate of                              per however the minimum amount of the aggregate deductible will be no less than the **Deductible Aggregate** amount shown above.

The adjustment basis is                              and is estimated at the inception of this policy as the amount of                    .

If any payments are made by us under this policy for damages or "Allocated Loss Adjustment Expenses", the Deductible(s) shown in this endorsement applies regardless of whether any other policies issued by us or any other carrier also apply.

**C.**   **ALLOCATED LOSS ADJUSTMENT EXPENSES**

You must reimburse us for "Allocated Loss Adjustment Expenses" incurred by us as part of Supplementary Payments in defending a claim or "suit" as indicated by one of the options below:

[X] 1. Option I - "Allocated Loss Adjustment Expenses" Are Included In The **Deductible** Shown In The Schedule. Your total reimbursement for damages, costs, benefits, medical payments and "Allocated Loss Adjustment Expenses" combined shall not exceed the **Deductible** shown in the Schedule.

[ ] 2. Option II - "Allocated Loss Adjustment Expenses" Are Payable In Addition To The **Deductible** Shown In The Schedule On A Shared Basis. The portion of "Allocated Loss Adjustment Expenses" that you must pay will be calculated by dividing the smaller of: (a) the **Deductible** shown in the Schedule; or (b) the damages, costs, benefits, and medical payments we pay; by (c) the damages, costs, benefits, and medical payments we pay.

If we pay no damages, costs, benefits, and medical payment, you must reimburse us for all "Allocated Loss Adjustment Expenses" up to the **Deductible** shown in the Schedule and _____ % (if no amount is shown, 50% will apply) of all remaining "Allocated Loss Adjustment Expenses". Your combined reimbursement for damages, costs, benefits, medical payments and "Allocated Loss Adjustment Expenses" under this option may exceed the **Deductible** shown in the Schedule.

[ ] 3. Option III - "Allocated Loss Adjustment Expenses" Are Payable In Addition To The **Deductible** Shown In The Schedule And Are Your Full Responsibility. You must pay all "Allocated Loss Adjustment Expenses" attributed to all damages, costs, benefits, and medical payments paid by us. Your total reimbursement for damages, costs, benefits, medical payments and "Allocated Loss Adjustment Expenses" under this option may exceed the **Deductible** shown in the Schedule.

☐ 4. Option IV - "Allocated Loss Adjustment Expenses" Are Payable By Us. We will pay all "Allocated Loss Adjustment Expenses" attributed to all damages, costs, benefits, and medical payments paid by us.

Your obligation to reimburse us for "Allocated Loss Adjustment Expense" applies separately to each occurrence, claim, "employee", common cause or person or organization.

"Allocated Loss Adjustment Expenses" means such claim adjustment expenses directly allocated by us to a particular claim. Such expenses shall include, but not be limited to, attorney's fees for claims in suit; court costs; pre- and post judgment interest; undercover operatives and detective services; employing experts; medical examination, medical cost containment expenses, laboratory, x-ray, and autopsy; stenographic, witnesses, summons, and copies of documents and transcripts; or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of any claim or "suit" against you or for the protection and perfection of your or our subrogation rights.

"Allocated Loss Adjustment Expenses" does not include our general overhead, the salary and benefits of any our "employees", nor the fees of any attorney who is our "employee" or under our permanent retainer; nor the fees of any attorney we retain to provide counsel to us about our obligations, if any, under any policy issued by us with respect to a claim or "suit" against you.

**D.    OUR RIGHT TO REIMBURSEMENT**

When we pay all or any part of any **Deductible** shown in the Schedule, you must promptly reimburse us for: a) the **Deductible** or the part of the **Deductible** paid by us, and b) all "Allocated Loss Adjustment Expenses" incurred by us in defending a claim or "suit" according to the option selected in Section **C.**, above.

If we require collateral or other security to secure the **Deductible** and other obligations under this Commercial General Liability Deductible Endorsement, you shall provide such collateral or other security in an amount and form as we may determine.

Upon notification of payment by us, you will promptly reimburse us for any such amounts that we have paid. If you fail to reimburse us, or fail to provide us with any security or collateral in an amount or form as we may require, we may treat such failure as non-payment of premium and we may, at our option, cancel this policy by mailing or delivering to you advance written notice in accordance with the CANCELLATION Common Policy Condition. Any resulting return premium may be applied to the reimbursement amounts due.

We may mutually agree upon a final payment amount to satisfy your present and future payment obligations under this Commercial General Liability Deductible Endorsement. Payment by you of such amount will end your obligations to make payments to us under this endorsement.

All other terms and conditions of this policy remain unchanged.

Endorsement Number;

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10-31-20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CONTRACTORS GENERAL LIABILITY ENDORSEMENT**

This endorsement changes coverage under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

1.  The second paragraph following Exclusion **2. j. (6)** is deleted and replaced by the following

    Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by "specific perils") to premises including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **Section III — LIMITS OF INSURANCE**.

2.  The last paragraph of **2.Exclusions** under **SECTION I COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted and replaced with the following paragraph as follows:

    Exclusions c. through n. do not apply to damage by "specific perils" to premises while rented to you or temporarily occupied by you with the permission of the owner. A separate limit of insurance applies to this coverage as described in **SECTION III — LIMITS OF INSURANCE**.

3.  Paragraph **1.b.** under **SUPPLEMENTARY PAYMENTS — COVERAGES A AND B** is deleted and replaced by the following:

    The cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

4.  Paragraph **1.b** of **COVERAGE C MEDICAL PAYMENTS** is deleted in it's entirely.

5.  The following is added to paragraph **2** of **SECTION II — WHO IS AN INSURED**.

    e.  Your subsidiaries will be considered Named Insureds if shown as a Named Insured in the Declarations or, if not shown as a Named Insured in the Declarations:

        (1)  Such entity has been incorporated or organized prior to the effective date of this policy, under the laws of the United States of America (including any state thereof), its territories or possessions or Canada (including any province thereof): and

        (2)  You currently own an interest in such entity of more than 50%.

6.  Paragraph **3.a**. of **SECTION II — WHO IS AN INSURED** is deleted and replaced by the following:

    a.  Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

7.   The last paragraph of **SECTION II — WHO IS AN INSURED** is deleted and replaced by the following paragraphs:

   **4.**   With respect to the "product-completed operations hazard" only, you are an insured for your "bodily injury" and "property damage" liability arising out of a terminated partnership or joint venture. Coverage is excess over any available liability insurance purchased specifically to insure the partnership or joint venture. The insurance provided by this provision will not inure to the benefit of any party except you.

   However no person or organization is an insured with respect to the conduct of any:

   a.   Current or past partnership or joint venture, except as provided in 4. above, that is not shown as  a Named Insured in the Declarations; or

   b.   Current or past limited liability company that is not shown as a Named Insured in the Declarations.

8.   Paragraph **6.** of **SECTION III-LIMITS OF INSURANCE** is deleted and replaced with the following:

   **6.**   Subject to 5. above, the Damage to Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by "specific perils", while rented to you or temporarily occupied by you with permission of the owner.

9.   Paragraph **b. (1) (a) (ii)** of item **4. Other Insurance** under **SECTION — IV — COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted and replaced with the following:

   **(ii)**   That is property insurance for premises rented to you or temporarily occupied by you with permission of the owner;

10.   The following is added to paragraph **b** — Excess Insurance of **4. Other Insurance** under **SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS**

   **(5)**   Any other insurance that is or was purchased to insure:

   (a)   Your participation in a partnership or joint venture which terminated or ended prior to the effective date of this policy; or

   (b)   A subsidiary not shown as a Named Insured to the extent such subsidiary is an insured as described in paragraph **2.e.** of **SECTION II — WHO IS AN INSURED.**

11.   Item **a.** "Insured Contract" of **9.** under **SECTION V — DEFINITIONS** is deleted and replaced with the following:

   **a.**   A contract for a lease of premises. However that portion of the contract for a lease of premises that indemnifies any person or organization for damage by "specific perils" to premises while rented to you or temporarily occupied by you with the permission of the owner is not an "insured contract";

12.   Item **a. (1)** of **22.** "Your work" under **SECTION V — DEFINITIONS** is deleted and replaced with the following:

   **(1)**   Work or operations performed by you or on your behalf, but does not include work or operations performed by another entity who joined with you in a partnership or joint venture

00 GL0473 00 06 08                                                         Page 2 of 3

not shown as a Named Insured in the Declarations, which terminated or ended prior to the effective date of this policy; and

13.     The following are added to **SECTION V – DEFINITIONS:**

**23**.     "Specific perils" means:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; weight of snow, ice or sleet;

All other terms and conditions of this Policy remain unchanged.

Endorsement Number;

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10-31-20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ANTI STACKING ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**EMPLOYEE BENEFITS LIABILITY COVERAGE**
**LIQUOR LIABILITY COVERAGE FORM**
**STOP GAP - EMPLOYERS LIABILITY COVERAGE ENDORSEMENT**

Under **SECTION IV- COMMERCIAL GENERAL LIABILITY CONDITIONS** and **SECTION IV- LIQUOR LIABILITY CONDITIONS**, the following condition is added:

**Two Or More Coverage Forms Or Policies Issued By Us**

If any "occurrence" or offense covered under this policy is also covered in whole or in part under any other coverage form or policy issued to you by us (or by any of our related or affiliated companies) including but not limited to prior policies issued to you by us, (or by any of our related or affiliated companies), the most that will be paid under all such coverage forms and policies covering the "occurrence" or offense is the single highest applicable limit of liability of one of the policies which cover the "occurrence" or offense. This provision does not apply to policies written by us (or by any of our related or affiliated companies) as insurance that specifically applies in excess of this insurance.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10-31-20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**WRAP- UP EXCESS AND DIFFERENCE IN CONDITIONS ENDORSEMENT**

This endorsement changes coverage under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

    **1.**    The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2., Exclusions of Coverage B – Personal and Advertising Injury Liability:**

**Wrap-up Insurance Programs**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of either your ongoing operations or operations included in the "products-completed operations hazard" at or from any project for which a "wrap-up insurance program" has been provided, except as follows:

    A.    This insurance coverage will pay on your behalf any "wrap-up insurance program" related claims, or defend any such "suits" covered by this endorsement, but only with respect to a "wrap-up insurance program" listed in the Schedule below.  However, we will have no duty to pay such claims or defend such "suits" until after:

        1.    All separate "wrap-up insurance program" insurers have paid the full amount of the Limits of Liability for all of their policies, whether primary or excess, providing coverage for the project subject to the "wrap-up insurance program", in settlement of claims or "suits"; and

        2.    You have paid any applicable deductibles or self insured retentions for which you are responsible to pay in the separate "wrap-up insurance program" providing coverage for the project subject to the "wrap-up insurance program";

    B.    This coverage is also contingent on the following conditions:

        1.    The limits of the "wrap up insurance program" at its inception are at least:

            a.    $50,000,000 per occurrence,
            b.    $50,000,000 aggregate; and
            c.    $50,000,000 for "products-completed operations hazards"; and

        2.    The limits of the "wrap-up insurance program" have not been reduced by any cause other than the payment of covered claims; and

        3.    The insurance carriers(s) providing the "wrap-up insurance program" are not declared to be in bankruptcy or in default and unable to meet their claim or defense obligations.

    C.    Failure to comply with any of the conditions listed in (1),(2) or (3) above will not invalidate this insurance. However in the event of any such failure, this insurance shall only apply as if the Limits of Liability of the "wrap up insurance program" were in full effect. You are responsible for the payment of such Limits of Liability before this insurance becomes applicable.

    D.    If this Insurance provides broader coverage for any exposures at or from a "wrap-up insurance program" project(s), and such broader coverage is not provided by a separate

"wrap-up insurance program", then this policy will provide primary coverage as respects those exposures.

E.      Limits of Insurance provided by this policy are excess of the total limits of the "wrap-up insurance program", or the remaining available limits of insurance, if any, for the "wrap-up insurance program if they have been reduced or exhausted by the payment of covered damages. However, in no situation will our Limits of Insurance exceed those listed in the Declarations of this policy.

F.      As respects any claim or "suit" to which coverage under this endorsement applies, any existing provisions of Condition 4. **Other Insurance** that may be contrary to the provision of this endorsement are amended to comply with the changes in our coverage as stated above in sections A through F.

G.      The coverage provided by this insurance will not inure to the benefit of any other party.

"Wrap-up insurance program" means an insurance program, whether primary or excess, that:

1.      requires some or all of the contractors working on the project to participate;
2.      is purchased by you or is purchased for you by the owner of the project or by another contractor; and
3.      is limited to a specific construction project, joint venture, or all work for another contractor under a controlled insurance program.

**Schedule**

**Project:**

345 HARRISON PROJECT - 345 HARRISON AVENUE, BOSTON MA 02118

All other terms and conditions of this Policy remain unchanged

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10-31-2020

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**BODILY INJURY DEFINITION EXTENSION  ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

Under the:

1.   **COMMERCIAL GENERAL LIABILITY COVERAGE FORM SECTION V – DEFINITIONS**, Definition **3**. "Bodily injury";

2.   **LIQUOR LIABILITY COVERAGE FORM SECTION V - DEFINITIONS**, Definition **1**. "Bodily injury"; or

3.   **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM SECTION V - DEFINITIONS**, Definition **2**. "Bodily injury"

is deleted and replaced by the following definition:

"Bodily injury" means physical injury, sickness or disease sustained by a person including death resulting from any of these. "Bodily injury" includes mental anguish, shock, or emotional distress when accompanied by physical injury, sickness or disease.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number;

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10-31-20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FELLOW EMPLOYEE COVERAGE FOR DESIGNATED EMPLOYEE(S)/POSITION(S) ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM

**SCHEDULE**

Name of Employee(s), Job Title(s) or Position(s):

ALL EMPLOYEES AT THE LEVEL OF SUPERVISOR AND ABOVE.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Under **Section II – WHO IS AN INSURED**, paragraphs **2.a.(1)(a)**, **2.a(1)(b)** and **2.a(1)(c)** do not apply to the "employee(s)", job title(s) or position(s) named or listed in the Schedule.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10-31-20

00 GL0591 00 04 10                                                                                           Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.**     **SECTION V – DEFINITIONS** is amended by the addition of the following definition:

"Incidental medical malpractice injury" means "bodily injury" arising out of the rendering of or failure to render the following services:

a.     Medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith, or

b.     The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

**B.**     Under **Section II – WHO IS AN INSURED**, Paragraph **2. a. (1)(d**) is deleted in its entirety and replaced with the following:

**d.**     Arising out of his or her providing or failing to provide professional health care, except for "bodily injury" arising out of "incidental medical malpractice injury" by any physician, dentist, emergency medical technician, nurse or other medical practitioner employed or retained by you. However, the insurance provided hereunder to such persons will not apply to liability arising out of services performed outside of the scope of their duties as your "employees." Any series of continuous, repeated or related acts will be treated as the occurrence of a single negligent professional healthcare service.

The Coverage provided by this endorsement does not apply to you or any insured if you are engaged in the business or occupation of providing any of the services described in the definition of "incidental medical malpractice injury."

The Coverage provided by this endorsement will be excess over any other insurance available to you or any insured.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10-31-2020

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WHEN WE DO NOT RENEW EXTENDED NOTICE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

Under **Section IV, Condition 9. When We Do Not Renew** is deleted in its entirety and replaced by the following:

    **9.**    **When We Do Not Renew**

        If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 90 days before the expiration date.

        If notice is mailed, proof of mailing will be sufficient proof of notice.

        If the state nonrenewal endorsement provides for more than the number of days notice of nonrenewal shown above, this provision does not apply.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10-31-2020

00 GL0595 00 04 10                                                                                               Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**BODILY INJURY OR PROPERTY DAMAGE EXPECTED OR INTENDED ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Under **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Exclusion **2.a**. **Expected or Intended Injury** is deleted in its entirety and replaced by the following exclusion:

    **a.**   **Expected or Intended Injury**

       "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10/31/2020

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

     © Insurance Services Office, Inc., 2012     CG 00 01 04 13

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012

**COVERAGE C — MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS — COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I — Coverage **A** — Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II — WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © Insurance Services Office, Inc., 2012

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III — LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

  **a.** Damages under Coverage **A;** and

  **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    **(1)** How, when and where the "occurrence" or offense took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

    **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

  **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

  **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I —** Coverage **A — Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

© Insurance Services Office, Inc., 2012

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012      CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NON-OWNED WATERCRAFT ENDORSEMENT**

This endorsement makes the following modification to this insurance.

1.      Section I — Exclusions — g. (2) (a) is deleted and replaced with the following:

        (a)      Less than 75 feet long.

All other terms and conditions of this Policy remain unchanged.

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date:

_____

                        Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**LIMITED CROSS SUITS EXCLUSION**

This insurance does not apply to and we will not have the duty to investigate or defend any suit brought against you, or pay any costs or expenses of such investigation and defense for liability, claims, damage or loss arising out of damages of one insured against another insured.

However this exclusion does not apply to parties added as additional insureds via the use of an additional insured endorsement.

All other terms and conditions of this Policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

Endorsement Effective Date: 10-31-20

00 GL0172 00 03 04                                                                                           Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 02 20 03 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

**(a)** A material misstatement or misrepresentation; or

**(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

**B.** Paragraph **3.** of the **Cancellation** Common Policy Condition is replaced by the following:

**3.** We will mail or deliver our notice to the first Named Insured at the last mailing address known to us.

**C.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

  If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

  The cancellation will be effective even if we have not made or offered a refund.

**D.** The following is added and supersedes any other provision to the contrary:

  **Nonrenewal**

  **1.** If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

  **2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© Insurance Services Office, Inc., 2011

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## BROAD FORM NAMED INSURED - DESIGNATED ENDORSEMENT

This Endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

It is hereby agreed that Item 1. of the Declarations is amended to include the following entity as a Named Insured:

```
JOHN MORIARTY & ASSOCIATES OF VIRGINIA LLC
WINCHESTER CONCRETE & CARPENTRY, INC.
WINCHESTER CHURCH STREET LIMITED PARTNERSHIP
BRAMHALL PARTNERS, LIMITED PARTNERSHIP
BRAMHALL COMPANY, INC.
MORIARTY HOLDINGS, INC.
JMA COMPANY
JOHN MORIARTY & ASSOCIATES SOUTHEAST, LLC
AMERICARIBE-MORIARTY JV
MCT PARK STREET, LLC
WINCHESTER MECHANICAL CORPORATION, INC.
WINCHESTER AIR, INC.
584 MAIN STREET LLC
585 MAIN STREET LLC
JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC.
JOHN MORIARTY & ASSOCIATES, INC. 401K RETIREMENT PLAN
```

And all subsidiary corporations and all affiliated or subsidiary companies now existing or hereinafter acquired or formed and any other legal entity in which you have more than fifty percent (50%) ownership or over which you exercise management or financial control and all partnerships in which the named insured or its subsidiaries have more than fifty percent (50%) ownership interest.

The person or organization first named in Item 1 of the Declarations, by acceptance of this policy, is authorized to act and agrees to act on behalf of all persons or organizations insured under the policy with respect to all matters pertaining to the insurance afforded by the policy, including the giving or receipt of notice of cancellation, the payment of premiums and deductibles, and the receiving of return premiums, if any.

The insurance provided by this endorsement remains subject to paragraph **3.** under **SECTION II – WHO IS AN INSURED** regarding newly acquired or formed organizations.  Further, nothing in this endorsement shall be construed to affect any of our rights to amend the policy premium during the policy period upon the acquisition of a new subsidiary or other entity by the Named Insured.  The first Named Insured shall report to us, as soon as practicable, any acquisitions, dissolution, mergers or ownership changes that occur at any time throughout the policy period.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless

otherwise stated herein: Endorsement Effective Date: 10-31-2020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

**WRAP-UP EXCLUSION WITH LIMITED EXCEPTION FOR EXCESS COVERAGE ENDORSEMENT**

This endorsement changes coverage under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of either your ongoing operations or operations included in the "products-completed operations hazard" at or from any project for which a "wrap-up insurance program" in which you have been enrolled, except as follows:

This insurance will be excess for the conduct of your business in a construction project which is the subject of a "wrap-up insurance program" in which you are or were a participant.

However, this coverage is contingent upon all of the following conditions:

    1.    The limits of the "wrap up insurance program" at its inception are at least:

        a.    $50,000,000    Each Occurrence,

        b.    $50,000,000    General Aggregate; and

        c.    $50,000,000    Product-Completed Operations Aggregate; and

        The above Limits of Insurance are minimal limits.  If the actual Limits of Insurance are greater, this policy is excess over the greater limits; and

    2.    The Limits of Insurance of the "wrap-up insurance program" have not been reduced or exhausted by any cause other than the payment of covered damages only.

Failure of any of the conditions listed in 1. or 2. above will not invalidate this insurance. However in the event of any such failure, or if the insurance for the "wrap-up insurance program" is not valid or collectible for any reason, this insurance shall only apply as if the Limits of Insurance of the "wrap up insurance program" were in full effect.  You are responsible for the payment of such amounts equal to the Limits of Insurance, and the satisfaction of any deductible or retention for the "wrap-up insurance program" before this insurance becomes applicable.

Limits of Insurance provided by this policy are excess of the total limits of the "wrap-up insurance program" but no less than the Limits of Liability shown in Item (1) above, or the remaining available limits of insurance, if any, for the "wrap-up insurance program if they have been reduced or exhausted by the payment of covered damages. However, under no circumstances will our Limits of Insurance exceed those listed in the Declarations of this policy.

The coverage provided by this insurance is solely for the benefit of you alone and will not inure to the benefit of any other party.

When this coverage applies as excess, we will have the right, but not the duty, to defend the insured against any "suit".

"Wrap-up insurance program" means an insurance program, whether primary or excess, that:

    1.    requires some or all of the contractors working on the project to participate;

2.      is purchased by you or is purchased for you by the owner of the project or by another contractor; and

3.      is limited to a specific construction project, joint venture, or all work for another contractor under a controlled insurance program.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number;

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10-31-20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CONTRACTUAL LIABILITY EXCLUSION ENDORSEMENT**

This endorsement changes coverage under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Under **Section I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, Exclusion **b. Contractual Liability** is deleted in its entirety and replaced by the following:

    **b.    Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of the liability of others in a contract or agreement. This exclusion does not apply to liability for damages:

    (1)    That the insured would have in the absence of the contract or agreement; or

    (2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

        (a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        (b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number;

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10-31-20

00 GL0670 00 02 11

POLICY NUMBER: 11PKG8931805

COMMERCIAL GENERAL LIABILITY
CG 02 24 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EARLIER NOTICE OF CANCELLATION PROVIDED BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Number of Days' Notice** 60

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph **2.** of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

COMMERCIAL GENERAL LIABILITY
CG 04 24 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COVERAGE FOR INJURY TO LEASED WORKERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

With respect to the Employer's Liability exclusion (Section I) only, the definition of "employee" in the DEFINITIONS Section is replaced by the following:

"Employee" does not include a "leased worker" or a "temporary worker".

POLICY NUMBER: 11PKG8931805

COMMERCIAL GENERAL LIABILITY
CG 04 35 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Limit Of Insurance | | Each Employee Deductible | Premium |
|---|---|---|---|---|
| Employee Benefits Programs | $   1,000,000 | **each employee** | $        1,000 | INCLUDED |
| | $   2,000,000 | **aggregate** | | |
| **Retroactive Date:** | 10-31-2014 | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   **b.** This insurance applies to damages only if:

   **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

   **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

   **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

   **c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

   **(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

© ISO Properties, Inc., 2006

**(2)** When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments — Coverages **A** and **B** are replaced by Supplementary Payments — Coverages **A, B** and **Employee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II — Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

     © ISO Properties, Inc., 2006     CG 04 35 12 07     □

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

**b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III — Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

**a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought;

**(3)** Persons or organizations making "claims" or bringing "suits";

**(4)** Acts, errors or omissions; or

**(5)** Benefits included in your "employee benefit program".

**b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(1)** An act, error or omission; or

**(2)** A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

**a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**b.** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**c.** The terms of this insurance, including those with respect to:

**(1)** Our right and duty to defend any "suits" seeking those damages; and

**(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the deductible amount.

**d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV — Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

© ISO Properties, Inc., 2006

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

 © ISO Properties, Inc., 2006 CG 04 35 12 07   ☐

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

   **a.** This endorsement is canceled or not renewed; or

   **b.** We renew or replace this endorsement with insurance that:

     **(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

     **(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   **a.** The "employee benefit programs" insured;

   **b.** Previous types and amounts of insurance;

   **c.** Limits of insurance available under this endorsement for future payment of damages; and

   **d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

   **a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   **b.** Handling records in connection with the "employee benefit program"; or

   **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

a. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

H. For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

     © ISO Properties, Inc., 2006     CG 04 35 12 07     □

**COMMERCIAL GENERAL LIABILITY**
**CG 20 01 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY —
# OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

POLICY NUMBER:   11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| GA/Maple Clarendon LLC, a Delaware limited liability company, GA Clarendon, LLC, a Delaware limited liability company, Maple Multi-Family Development, L.L.C., a Texas limited liability company, Maple Residential, L.P., a Delaware limited partnership, MACH 100 Clarendon, L.P., a Delaware limited partnership, The Prudential Insurance Company of America, a New Jersey corporation property. | Any Location other than: Project #3611 Clarendon West 1122 N. Hudson Street & 3101 12th Street, Arlington, VA 22201 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

POLICY NUMBER:  11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
CG 20 10 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Name of Person or Organization:** |
| --- |
| ALL PARTIES WHERE REQUIRED BY A CONTRACT OR AGREEMENT |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Section II – Who Is An Insured**  is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

**B.** With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2. Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc.,  2000

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| UNION MARKET APARTMENTS, L.L.C., MAPLE MULTI-FAMILY SE CONTRACTOR, L.L.C. | UNION MARKET – JMAV JOB #3341, TCR JOB #33-127 – 1270 4TH STREET NE, WASHINGTON DC 20002 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**CG 20 10 04 13**

© Insurance Services Office, Inc., 2012

**Page 1 of 2**

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

  **1.** Your acts or omissions; or

  **2.** The acts or omissions of those acting on your behalf.

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

  **1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

  **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

  **1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

  **2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

  **1.** Required by the contract or agreement; or

  **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

    © Insurance Services Office, Inc., 2012    **CG 20 10 04 13**

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| ALL PARTIES WHERE REQUIRED BY A WRITTEN CONTRACT. | WHERE REQUIRED BY A CONTRACT OR AGREEMENT |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

© Insurance Services Office, Inc., 2012

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf.

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

CG 20 10 04 13

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 12 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| State Or Governmental Agency Or Subdivision Or Political Subdivision: |
|---|
| ALL PARTIES WHERE REQUIRED BY A WRITTEN CONTRACT. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| ALL PARTIES WHERE REQUIRED BY A WRITTEN CONTRACT. | WHERE REQUIRED BY CONTRACT OR AGREEMENT |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II — Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III — Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED -- DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Name Of Additional Insured Person(s) Or Organization(s):** |
|---|
| ALL LENDERS WHERE REQUIRED BY A WRITTEN CONTRACT. |
| ALL PROJECTS WHERE REQUIRED BY WRITTEN CONTRACT. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II — Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III — Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 28 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| ALL PARTIES WHERE REQUIRED BY A WRITTEN CONTRACT. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 28 04 13 © Insurance Services Office, Inc., 2012 Page 1 of 1

POLICY NUMBER:  11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name of Person or Organization:** |
| ALL PARTIES WHERE REQUIRED BY A CONTRACT OR AGREEMENT |
| **Location And Description of Completed Operations:** <br> WHERE REQUIRED BY CONTRACT OR AGREEMENT |
| **Additional Premium:** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

POLICY NUMBER:  11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 07 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| GA/Maple Clarendon LLC, a Delaware limited liability company, GA Clarendon, LLC, a Delaware limited liability company, Maple Multi-Family Development, L.L.C., a Texas limited liability company, Maple Residential, L.P., a Delaware limited partnership, MACH 100 Clarendon, L.P., a Delaware limited partnership, The Prudential Insurance Company of America, a New Jersey corporation property. | Any Location other than: Project #3611 Clarendon West 1122 N. Hudson Street & 3101 12th Street, Arlington, VA 22201. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| ALL PARTIES WHERE REQUIRED BY A WRITTEN CONTRACT. | WHERE REQUIRED BY CONTRACT OR AGREEMENT |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 **CG 20 37 04 13**

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| UNION MARKET APARTMENTS, L.L.C., MAPLE MULTI-FAMILY SE CONTRACTOR, L.L.C. | UNION MARKET – JMAV JOB #3341, TCR JOB #33-127 – 1270 4TH STREET NE, WASHINGTON DC 20002 |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**CG 20 37 04 13**                    © Insurance Services Office, Inc., 2012                    **Page 1 of 2**

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012
CG 20 37 04 13

COMMERCIAL GENERAL LIABILITY
CG 20 38 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS FOR OTHER PARTIES WHEN REQUIRED IN WRITTEN CONSTRUCTION AGREEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured:

**1.** Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy; and

**2.** Any other person or organization you are required to add as an additional insured under the contract or agreement described in Paragraph **1.** above.

Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**a.** Your acts or omissions; or

**b.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured described above:

**a.** Only applies to the extent permitted by law; and

**b.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for the person or organization described in Paragraph **1.** above are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of, or the failure to render, any professional architectural, engineering or surveying services.

**2.** "Bodily injury" or "property damage" occurring after:

**a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

CG 20 38 04 13                    © Insurance Services Office, Inc., 2012                    Page 1 of 2

**b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III — Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement described in Paragraph **A.1.;** or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

            © Insurance Services Office, Inc., 2012            CG 20 38 04 13

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

POLICY NUMBER:  11PKG8931805

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION -  COVERAGE C -  MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description And Location Of Premises Or Classification: |
|---|
| ALL LOCATIONS<br>ALL PROJECTS |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section **I** - Coverage **C** - Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section **I** - Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

© ISO Properties, Inc.,  2000

☐

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I — Coverage A — Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I — Coverage B — Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I — Coverage A — Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.  Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc.,  2003

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Silica Or Silica-Related Dust**

   **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

   **b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

   **c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Silica Or Silica-Related Dust**

   **a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

   **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

   **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

   **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

POLICY NUMBER:   11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 22 74 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED CONTRACTUAL LIABILITY COVERAGE FOR PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| Designated Contract Or Agreement: |
| ALL WRITTEN CONTRACTS WHERE THE INSURED IS SPECIFICALLY REQUIRED TO INDEMNIFY ANOTHER PARTY FOR PERSONAL AND ADVERTISING INJURY DAMAGES. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** With respect to the contract or agreement designated in the Schedule above, Subparagraph **e.** of Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

This exclusion does not apply to:

**(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

**(2)** Liability for "personal and advertising injury" if:

**(a)** The liability pertains to your business and is assumed in the designated contract or agreement shown in the Schedule in which you assume the tort liability of another. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**(b)** The "personal and advertising injury" occurs subsequent to the execution of the designated contract or agreement shown in the Schedule; and

**(c)** The "personal and advertising injury" arises out of the offenses of false arrest, detention or imprisonment.

**CG 22 74 10 01**

© ISO Properties, Inc.,  2001

Solely for the purposes of liability so assumed in such designated contract or agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal injury" described in Paragraph **A.2.e.(2)(c)** above, provided:

    **(i)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same designated contract or agreement; and

    **(ii)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**B.** With respect to the contract or agreement designated in the Schedule above, the following is added to **Section I - Supplementary Payments - Coverages A And B:**

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**1.** The "suit" against the indemnitee seeks damages for which the insured has assumed tort liability of the indemnitee in a designated contract or agreement shown in the Schedule, if such liability pertains to your business. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**2.** This insurance applies to such liability assumed by the insured;

**3.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same designated contract or agreement;

**4.** The allegations in the "suit" and the information we know about the offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**5.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**6.** The indemnitee:

    **a.** Agrees in writing to:

        **(1)** Cooperate with us in the investigation, settlement or defense of the "suit";

        **(2)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

        **(3)** Notify any other insurer whose coverage is available to the indemnitee; and

        **(4)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

    **b.** Provides us with written authorization to:

        **(1)** Obtain records and other information related to the "suit"; and

        **(2)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **A.2.e.(2)** of this endorsement, such payments will not be deemed to be damages for "personal and advertising injury" as described in Paragraph **A.2.e.(2)(c)** above and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

**1.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**2.** The conditions set forth above, or the terms of the agreement described in Paragraph **6.** above, are no longer met.

 © ISO Properties, Inc., 2001 ☐

POLICY NUMBER: 11PKG8931805

COMMERCIAL GENERAL LIABILITY
CG 24 04 05 09

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person Or Organization: |
| --- |
| ANY PERSON OR ORGANIZATION WHERE WAIVER OF OUR RIGHT TO RECOVER IS PERMITTED BY LAW AND IS REQUIRED BY WRITTEN CONTRACT PROVIDED SUCH CONTRACT WAS EXECUTED PRIOR TO THE LOSS. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 05 09                    © Insurance Services Office, Inc., 2008                    **Page 1 of 1**    □

POLICY NUMBER:   11PKG8931805

COMMERCIAL GENERAL LIABILITY
CG 24 17 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY -  RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Scheduled Railroad: | Designated Job Site:<br>ALL OPERATIONS WITHIN 50' OF A<br>RAILROAD PROPERTY |
|---|---|

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the Definitions section is replaced by the following:

**9.** "Insured Contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

CG 24 17 10 01

© ISO Properties, Inc.,  2000

Page 1 of 1   □

COMMERCIAL GENERAL LIABILITY
CG 24 22 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE TERRITORY – WORLDWIDE COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to **Section IV — Conditions:**

**Expanded Coverage Territory**

**1.** If a "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from defending the insured, the insured will initiate a defense of the "suit". We will reimburse the insured, under Supplementary Payments, for any reasonable and necessary expenses incurred for the defense of a "suit" seeking damages to which this insurance applies, that we would have paid had we been able to exercise our right and duty to defend.

If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from paying such sums on the insured's behalf, we will reimburse the insured for such sums.

**2.** All payments or reimbursements we make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

**3.** Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Puerto Rico or Canada.

**4.** The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

**B.** The following is added to Paragraph **4.b.(1)** under the **Conditions** section:

**4. Other Insurance**

**b. Excess Insurance**

This insurance is excess over:

**(c)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** If the insured's liability to pay damages is determined in a "suit" brought outside the United States of America (including its territories and possessions), Puerto Rico or Canada; or

**(ii)** That is coverage required by law, regulation or other governmental authority in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada.

**C.** The definition of "coverage territory" in the **Definitions** section is replaced by the following:

"Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

CG 24 22 04 13 © Insurance Services Office, Inc., 2012 Page 1 of 1

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 25 03 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Designated Construction Project(s): |
|---|
| APPLIES TO ALL CONSTRUCTION PROJECTS OF THE INSURED UNLESS OTHERWISE EXCLUDED. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** — Coverage **A,** and for all medical expenses caused by accidents under Section **I** — Coverage **C,** which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

   **1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

   **2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

     **a.** Insureds;

     **b.** Claims made or "suits" brought; or

     **c.** Persons or organizations making claims or bringing "suits".

   **3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

   **4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

© Insurance Services Office, Inc., 2008

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** — Coverage **A,** and for all medical expenses caused by accidents under Section **I** — Coverage **C,** which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Section **III** — Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2008
**CG 25 03 05 09**   ☐

POLICY NUMBER: 11PKG8931805

COMMERCIAL GENERAL LIABILITY
CG 25 04 05 09

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Designated Location(s): |
| --- |
| APPLIES TO ALL LOCATIONS OCCUPIED BY THE INSURED UNLESS OTHERWISE EXCLUDED. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I — Coverage **A,** and for all medical expenses caused by accidents under Section I — Coverage **C,** which can be attributed only to operations at a single designated "location" shown in the Schedule above:

 **1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

 **2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

 **a.** Insureds;

 **b.** Claims made or "suits" brought; or

 **c.** Persons or organizations making claims or bringing "suits".

 **3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

 **4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** — Coverage **A,** and for all medical expenses caused by accidents under Section **I** — Coverage **C,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

1. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section **III** — Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2008
CG 25 04 05 09   □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MODIFIED EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

  **a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

  **b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

  This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

**2.** Subject to Paragraph **3.** below, professional services include:

  **a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

  **b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**3.** Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor. However any coverage under this policy that results from this exception is excess over any other available insurance.

All other terms and conditions of this Policy remain unchanged.

Issued By:  ARCH INSURANCE GROUP

Endorsement Number:

Policy Number:  11PKG8931805

Named Insured:  John Moriarty & Associates, Inc.

Endorsement Effective Date:  10/31/2020

President

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COVERAGE FORM REFERENCES**

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIERS COVERAGE FORM

It is agreed the following coverage form references are amended as follows if appearing in any endorsements to this policy:

Reference to:

**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM** is deleted.

**GARAGE COVERAGE FORM** is replaced with **AUTO DEALERS COVERAGE FORM**

**TRUCKERS COVERAGE FORM** is deleted.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10/31/2020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COMMERCIAL AUTO BROADENING ENDORSEMENT**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

**A.**   **SECTION II - LIABILITY COVERAGE**, Paragraph **2.a. Supplementary Payments** of the Business Auto Coverage Form, the Motor Carrier Coverage Form and the Truckers Coverage Form are amended as follows:

    **1.**   Subparagraph **(2)** is amended to increase the amount we will pay from $2,000 to $2,500.

    **2.**   Subparagraph **(4)** is amended to increase the amount we will pay from $250 a day to $500 a day.

**B.**   **SECTION III – PHYSICAL DAMAGE COVERAGE** of the Business Auto Coverage Form and **SECTION IV - PHYSICAL DAMAGE COVERAGE** of the Motor Carrier Coverage Form and Truckers Coverage Form are amended as follows:

    **1.**   Paragraph **A.2. Towing**, is deleted and replaced by the following:

        We will pay up to $250 for towing and labor costs incurred each time a covered "auto" is disabled.  However, the labor must be performed at the place of disablement.

    **2.**   Paragraph **4.a. Transportation Expenses** is amended to increase the most we will pay from $20 per day to $75 per day and the maximum we will pay from $600 to $2,500.

    **3.**   Paragraph **4. Coverage Extensions** is amended to add the following:

        **c.**   Return of Stolen Vehicle Expenses

           We will pay up to $2,500 for the expenses you incur for the return of each covered "auto" that was reported to the police as stolen.  This coverage extension does not apply to Hired Autos.

        **d.**   Personal Effects

           We will pay up to $400 for the "loss" of wearing apparel and other personal effects which are:

           **(1)**   Owned by an "insured"; and

           **(2)**   In or on your covered "auto".

           This coverage applies only in the event of a theft of your covered "auto" that has been reported to the police.  The limit of insurance applies to each theft of a covered "auto".

           This insurance is excess over any other collectible insurance and no deductible applies.

    **4.**   Paragraph **D. Deductible** is amended to add the following:

    **a.**    If another policy, that is not an "auto" policy or "auto" coverage form issued by us, applies to the same "accident" the following conditions apply:

        **(1)**    If the deductible under this Coverage Form is the smaller or smallest deductible, it will be waived.

        **(2)**    If the deductible under this Coverage Form is not the smaller or smallest deductible, it will be reduced by the amount of the smaller or smallest deductible.

    **b.**    A deductible does not apply to glass damage if the glass is repaired rather than replaced.

**C.**    **SECTION III – PHYSICAL DAMAGE COVERAGE** Paragraph **B. Exclusions**, Subparagraph **3.a.** of the Business Auto Coverage Form and **SECTION IV – PHYSICAL DAMAGE COVERAGE**, Paragraph **B. Exclusions**, Subparagraph **4.a.** of the Motor Carrier Coverage Form and the Truckers Coverage Form are deleted and replaced with the following:

    Wear and tear, freezing, mechanical or electrical breakdown.  However, mechanical breakdown does not include the accidental discharge of an airbag.

**D.**    **SECTION IV – BUSINESS AUTO CONDITIONS**, Paragraph **B. General Conditions**, Subparagraph **5. Other Insurance**, Item **c.** of the Business Auto Coverage Form is deleted and replaced with the following:

    Regardless of the provisions of a. immediately above, this Coverage Form's Auto Liability Coverage is primary for any covered liability assumed under an "insured contract" and other auto liability insurance available to an "insured" shall be considered excess and non-contributory when required by an "insured contract".

**E.**    **SECTION V – MOTOR CARRIER CONDITIONS**, Paragraph **B. General Conditions**, Subparagraph 5. **Other Insurance – Primary And Excess Insurance Provisions**, Item g. of the Motor Carrier Coverage Form is deleted and replaced with the following:

    Regardless of the provisions of a., b., c., d., and e. immediately above, this Coverage Form's Motor Carrier Liability Coverage is primary for any covered liability assumed under an "insured contract" and other motor carrier liability insurance available to an "insured' shall be considered excess and non-contributory when required by an "insured contract".

**F.**    **SECTION V- TRUCKERS CONDITIONS**, Paragraph **B. General Conditions**, Subparagraph **5. Other Insurance – Primary And Excess Insurance Provisions**, Item e. of the Truckers Coverage Form is deleted and replaced with the following:

Regardless of the provisions of **a., b.,** and **c.** immediately above, this Coverage Form's Truckers Liability Coverage is primary for any covered liability assumed under an "insured contract" and other liability insurance available to an "insured' shall be considered excess and non-contributory when required by an "insured contract".

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10/31/2020

**POLICY NUMBER:**     11PKG8931805                                      **COMMERCIAL AUTO**

# ARCH INSURANCE COMPANY
# BUSINESS AUTO DECLARATIONS

**ITEM ONE**

---

**PRODUCER:**
ALLIANT INSURANCE SERVICES, INC.

---

**NAMED INSURED:**     JOHN MORIARTY & ASSOCIATES, INC.

**MAILING ADDRESS:**     3 CHURCH STREET
                                   WINCHESTER, MA 01890

**POLICY PERIOD:**     From  _10-31-2020_  to  _10-31-2021_  at 12:01 A.M. Standard Time at your
                                                                                              mailing address shown above

**PREVIOUS POLICY NUMBER:**     11PKG8931804

**FORM OF BUSINESS:**

[X] CORPORATION          [ ] LIMITED LIABILITY COMPANY          [ ] INDIVIDUAL
[ ] PARTNERSHIP          [ ] OTHER  _____

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

---

| Premium shown is payable at inception:   $      42,352 | | | | |
|---|---|---|---|---|
| AUDIT PERIOD (IF APPLICABLE) | X | ANNUALLY | SEMI-ANNUALLY | QUARTERLY | MONTHLY |

**ENDORSEMENTS ATTACHED TO THIS POLICY:**
   **IL 00 17 –** Common Policy Conditions (**IL 01 46** in Washington)
   **IL 00 21 –** Broad Form Nuclear Exclusion (not Applicable in New York) (**IL 01 98** in Washington)

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

---

COUNTERSIGNED  _____  BY  _____
                                      (Date)                                                            (Authorized Representative)

**AU-DEC C/W  10 13**                                                                            **Page  1**

**ITEM TWO**

**Schedule Of Coverages And Covered Autos**
This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos section of the Business Auto Coverage Form next to the name of the coverage.**

| COVERAGES | COVERED AUTOS | LIMIT | PREMIUM |
|---|---|---|---|
| COVERED AUTOS LIABILITY | 1 | $2,000,000 | SEE |
| PERSONAL INJURY PROTECTION (or equivalent No-fault Coverage) | 5 | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS DEDUCTIBLE. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent Added No-fault Coverage) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT. | PREMIUM |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | SEPARATELY STATED IN THE PROPERTY PROTECTION INSURANCE ENDORSEMENT MINUS                            DEDUCTIBLE FOR EACH ACCIDENT. | |
| AUTO MEDICAL PAYMENTS | 2 | $          10,000   EACH INSURED | COMPUTATION |
| MEDICAL EXPENSE AND INCOME LOSS BENEFITS (Virginia only) | 2 | SEPARATELY STATED IN THE MEDICAL EXPENSE AND INCOME LOSS BENEFITS ENDORSEMENT. | |
| UNINSURED MOTORISTS | 2 | $  1,000,000 | ENDORSEMENT |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2 | $  1,000,000 | |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 2, 8 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS  $          1,000 DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. See ITEM FOUR For Hired or Borrowed Autos. | FOR PREMIUM |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. See ITEM FOUR For Hired Or Borrowed Autos. | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 2, 8 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS  $      1,000 DEDUCTIBLE, FOR EACH COVERED AUTO. See ITEM FOUR For Hired Or Borrowed Autos. | DETAILS |
| PHYSICAL DAMAGE TOWING AND LABOR | 3 | $250          FOR EACH DISABLEMENT OF A PRIVATE PASSENGER AUTO. | |
| TAX/SURCHARGE/FEE | | | |
| PREMIUM FOR ENDORSEMENTS | | | |
| *ESTIMATED TOTAL PREMIUM | | | |

*This policy may be subject to final audit.

**AU-DEC C/W  10 13**                                                                                                    **Page  2**

**ITEM THREE**

**SCHEDULE OF COVERED AUTOS YOU OWN**

| Covered Auto No. | DESCRIPTION | | TERRITORY | Original Cost New |
|---|---|---|---|---|
| | Year, Model, Trade Name, Body Type Serial Number (S) Vehicle Identification Number (VIN) | | Town & State Where The Covered Auto Will Be Principally Garaged | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| Covered Auto No. | CLASSIFICATION | | | | | | EXCEPT For Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named Below According To Their Interests In The Auto At The Time Of The Loss: |
|---|---|---|---|---|---|---|---|
| | Radius Of Operation | Business Use s=service r=retail c=commercial | Size GVW, GCW Or Vehicle Seating Capacity | Age Group | Secondary Rating Classification | Code | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| Covered Auto No. | COVERAGES – PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.) | | | | | | |
|---|---|---|---|---|---|---|---|
| | COVERED AUTOS LIABILITY | | PERSONAL INJURY PROTECTION | | ADDED P.I.P. | PROPERTY PROTECTION (Michigan Only) | |
| | Limit | Premium | Limit Stated In Each P.I.P. Endt. Minus Deductible Shown Below | Premium | Premium For Limit Stated In Each Added P.I.P. Endt. | Limit Stated In P.P.I. Endt. Minus Deductible Shown Below | Premium |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Total Premium | | | | | | | |

**ITEM THREE**

**SCHEDULE OF COVERED AUTOS YOU OWN (Continued)**

| Covered Auto No. | COVERAGES – PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | AUTO MEDICAL PAYMENTS | | MEDICAL EXPENSE AND INCOME LOSS BENEFITS (Virginia Only) | | UNINSURED MOTORISTS | | UNDERINSURED MOTORISTS | |
| | Limit Each Insured | Premium | Limit Stated In The Medical Expense and Income Loss Benefits Endorsement For Each Person | Premium | Limit | Premium | Premium | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| Total Premium | | | | | | | | |

| Covered Auto No. | COVERAGES – PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | COMPREHENSIVE | | SPECIFIED CAUSES OF LOSS | | COLLISION | | TOWING & LABOR | |
| | Limit Stated In ITEM TWO Minus Deductible Shown Below | Premium | Limit Stated In ITEM TWO Minus Deductible Shown Below | Premium | Limit Stated In ITEM TWO Minus Deductible Shown Below | Premium | Limit Per Disablement | Premium |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| Total Premium | | | | | | | | |

**AU-DEC C/W 10 13**

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS**

| COVERED AUTOS LIABILITY COVERAGE – Cost Of Hire Rating Basis for Autos Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | PREMIUM |
| Primary Coverage | | | |
| Excess Coverage | | | |
| | | TOTAL HIRED AUTO PREMIUM | |

For "autos" used in your motor carrier operations, cost of hire means:

1. The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers), and if not included therein,
2. The total remunerations of all operators and drivers' helpers, of hired automobiles whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and
3. The total dollar amount of any other costs (*i.e.*, repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

| COVERED AUTOS LIABILITY COVERAGE – Cost Of Hire Rating Basis for Autos NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | STATE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE | PREMIUM |
| Primary Coverage | | | |
| Excess Coverage | | IF ANY | INCL |
| | | TOTAL HIRED AUTO PREMIUM | INCL |

For "autos" **NOT** used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)**

| Physical Damage Coverages – Cost Of Hire Rating Basis For All Autos (Other Than Mobile or Farm Equipment) | | | | |
|---|---|---|---|---|
| COVERAGE | STATE | LIMIT OF INSURANCE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE (Excluding Autos Hired With A Driver) | PREMIUM |
| COMPREHENSIVE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000 DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | IF ANY | INCL |
| SPECIFIED CAUSES OF LOSS | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | | |
| COLLISION | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000 DEDUCTIBLE FOR EACH COVERED AUTO. | IF ANY | INCL |
| | | | TOTAL HIRED AUTO PREMIUM | INCL |
| For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver. | | | | |

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)**

| Cost Of Hire Rating Basis For Mobile Or Farm Equipment — Other Than Physical Damage Coverages | | | | | |
|---|---|---|---|---|---|
| **COVERAGE** | **STATE** | **ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE** | | **PREMIUM** | |
| | | **Mobile Equipment** | **Farm Equipment** | **Mobile Equipment** | **Farm Equipment** |
| Covered Autos Liability – Primary Coverage | | | | | |
| Covered Autos Liability – Excess Coverage | | | | | |
| Personal Injury Protection | | | | | |
| Medical Expense Benefits (Virginia Only) | | | | | |
| Income Loss Benefits (Virginia Only) | | | | | |
| Auto Medical Payments | | | | | |
| **TOTAL HIRED AUTO PREMIUM** | | | | | |
| Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers. | | | | | |

**AU-DEC C/W  10 13**

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)**

| Cost Of Hire Rating Basis For Mobile or Farm Equipment — Physical Damage Coverages | | | | | | |
|---|---|---|---|---|---|---|
| | | | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE (Excluding Autos Hired With A Driver) | | PREMIUM | |
| **COVERAGE** | **STATE** | **LIMIT OF INSURANCE** | **Mobile Equipment** | **Farm Equipment** | **Mobile Equipment** | **Farm Equipment** |
| **COMPREHENSIVE** | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE  FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | | | | |
| **SPECIFIED CAUSES OF LOSS** | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY  MISCHIEF OR VANDALISM. | | | | |
| **COLLISION** | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO. | | | | |
| **TOTAL HIRED AUTO PREMIUM** | | | | | | |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any auto that is leased, hired, rented or borrowed with a driver.

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)**

| | | ESTIMATED NUMBER OF DAYS EQUIPMENT WILL BE RENTED | | PREMIUM | |
|---|---|---|---|---|---|
| **COVERAGE** | **TOWN AND STATE WHERE THE JOB SITE IS LOCATED** | **Mobile Equipment** | **Farm Equipment** | **Mobile Equipment** | **Farm Equipment** |
| Covered Autos Liability – Primary Coverage | | | | | |
| Covered Autos Liability – Excess Coverage | | | | | |
| Personal Injury Protection | | | | | |
| Medical Expense Benefits  (Virginia Only) | | | | | |
| Income Loss Benefits (Virginia Only) | | | | | |
| Auto Medical Payments | | | | | |
| **TOTAL HIRED AUTO PREMIUMS** | | | | | |

*(Table header spanning title: Rental Period Rating Basis For Mobile Or Farm Equipment)*

**ITEM FIVE**

**SCHEDULE FOR NON-OWNERSHIP COVERED AUTOS LIABILITY**

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other Than Garage Service Operations And Other Than Social Service Agencies | Number Of Employees | IF ANY | INCL |
| | Number Of Partners (Active and Inactive) | | |
| Garage Service Operations | Number Of Employees Whose Principal Duty Involves The Operation Of Autos | | |
| | Number Of Partners (Active and Inactive) | | |
| Social Service Agencies | Number Of Employees | | |
| | Number Of Volunteers Who Regularly Use Autos To Transport Clients | | |
| | Number Of Partners (Active and Inactive) | | |
| **TOTAL NON-OWNERSHIP COVERED AUTOS LIABILITY PREMIUM** | | | INCL |

**ITEM SIX**
**SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS**

| | | |
|---|---|---|
| **Type Of Risk** (Check one): | ☐ **Public Autos** | ☐ **Leasing Or Rental Concerns** |
| **Rating Basis** (Check one): | ☐ **Gross Receipts (Per $100)** | ☐ **Mileage (Per Mile)** |
| **Estimated Yearly** (Check One): | ☐ **Gross Receipts (Per $100)** | ☐ **Mileage** |

| Premiums | |
|---|---|
| **Covered Autos Liability** | |
| **Personal Injury Protection** | |
| **Added Personal Injury Protection** | |
| **Property Protection Insurance (Michigan Only)** | |
| **Auto Medical Payments** | |
| **Medical Expense And Income Loss Benefits (Virginia Only)** | |
| **Comprehensive** | |
| **Specified Causes Of Loss** | |
| **Collision** | |
| **Towing And Labor** | |

When used as a premium basis:

**FOR PUBLIC AUTOS**

Gross receipts means the total amount earned by the named insured for transporting passengers, mail and merchandise.

Gross receipts does not include:

1. Amounts paid to air, sea or land carriers operating under their own permits.
2. Advertising revenue.
3. Taxes collected as a separate item and paid directly to the government.
4. C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing "autos" during the policy period.

**FOR RENTAL OR LEASING CONCERNS**

Gross receipts means the total amount earned by the named insured for the leasing or renting of "autos" to others without drivers.

Mileage means the total live and dead mileage of all "autos" you leased or rented to others without drivers.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EARLIER NOTICE OF CANCELLATION PROVIDED BY US**

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

**SCHEDULE**

Number of Days' Notice 60

 (If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph 2. of either the CANCELLATION Common Policy Condition or as amended by applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10/31/2020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ANTI STACKING ENDORSEMENT**

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

Under paragraph **B. General Conditions** in the Conditions Section, condition **8. Two Or More Coverage Forms Or Policies Issued By Us** is deleted and replaced by the following:

If any "accident" or "loss" covered under this policy is also covered in whole or in part under any other coverage form or policy issued to you by us (or by any of our related or affiliated companies) including but not limited to prior policies issued to you by us, (or by any of our related or affiliated companies), the most that will be paid under all such coverage forms and policies covering the  "accident" or "loss" is the single highest applicable limit of liability of one of the policies which cover the "accident" or "loss". This provision does not apply to policies written by us (or by any of our related or affiliated companies) as insurance that specifically applies in excess of this insurance.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10/31/2020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**BODILY INJURY DEFINITION EXTENSION**

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

Under the Definition Section, the definition of "**Bodily injury"** is deleted and replaced by the following:

"Bodily injury" means physical injury, sickness or disease sustained by a person including death resulting from any of these. "Bodily injury" includes mental anguish, shock, or emotional distress when accompanied by physical injury, sickness or disease.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10/31/2020

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PRIMARY AND NON-CONTRIBUTING INSURANCE ENDORSEMENT - DESIGNATED CONTRACT(S)**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM

**SCHEDULE**

**Designated Contract(s):**

With respect to the contract(s) designated in the Schedule above, it is agreed that the following subparagraph **e.** is added to **SECTION IV - BUSINESS AUTO CONDITIONS**, Paragraph **B. 5.** and **SECTION V – GARAGE CONDITIONS,** Paragraph **B. 5.**

    **5.**    **Other Insurance**

        **e.**    With respect to **SECTION II - LIABILITY COVERAGE**, where you are specifically required by a written contract designated in the Schedule above to provide insurance that is primary and non-contributory, and the written contract designated in the Schedule above so requiring is executed by you before any "accident", this insurance will be primary and the other insurance will not contribute with this insurance, but only to the extent required by that written contract.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

Endorsement Effective Date: 10/31/2020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## BROAD FORM NAMED INSURED - DESIGNATED ENDORSEMENT

This Endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

It is hereby agreed that Item 1. of the Declarations is amended to include the following entity as a Named Insured:

```
JOHN MORIARTY & ASSOCIATES OF VIRGINIA LLC
WINCHESTER CONCRETE & CARPENTRY, INC.
WINCHESTER CHURCH STREET LIMITED PARTNERSHIP
BRAMHALL PARTNERS, LIMITED PARTNERSHIP
BRAMHALL COMPANY, INC.
MORIARTY HOLDINGS, INC.
JMA COMPANY
JOHN MORIARTY & ASSOCIATES SOUTHEAST, LLC
AMERICARIBE-MORIARTY JV
MCT PARK STREET, LLC
WINCHESTER MECHANICAL CORPORATION, INC.
WINCHESTER AIR, INC.
JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC.
```

And all subsidiary corporations and all affiliated or subsidiary companies now existing or hereinafter acquired or formed and any other legal entity in which you have more than fifty percent (50%) ownership or over which you exercise management or financial control and all partnerships in which the named insured or its subsidiaries have more than fifty percent (50%) ownership interest.

The person or organization first named in Item 1 of the Declarations, by acceptance of this policy, is authorized to act and agrees to act on behalf of all persons or organizations insured under the policy with respect to all matters pertaining to the insurance afforded by the policy, including the giving or receipt of notice of cancellation, the payment of premiums and deductibles, and the receiving of return premiums, if any.

Nothing in this endorsement shall be construed to affect any of our rights to amend the policy premium during the policy period upon the acquisition of a new subsidiary or other entity by the Named Insured. The first Named Insured shall report to us, as soon as practicable, any acquisitions, dissolution, mergers or ownership changes that occur at any time throughout the policy period.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this policy unless otherwise stated

herein. Endorsement Effective Date: 10-31-20

00 CA0087 00 06 08                                                                                                              Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**BODILY INJURY OR PROPERTY DAMAGE EXPECTED OR INTENDED
ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM**

Under **SECTION II – LIABILITY COVERAGE**, Exclusion **B.1. Expected Or Intended Injury** is deleted and replaced by the following:

1.   **Expected Or Intended Injury**
     "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This Exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES,

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10-31-20

00 CA0090 00 06 08                                                                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED - BLANKET**

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

Under **Covered Autos Liability Coverage**, the **Who is An Insured** provision is amended to include as an "insured" the person or organization who is required under a written contract to be included as an "insured" under this policy, but only with respect to their legal liability for your acts or omissions or the act or omissions of a person for whom **Covered Autos Liability Coverage** is afforded under this policy.

All other terms and conditions of this policy remain unchanged.

Endorsement Number:

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 10/31/2020

**COMMERCIAL AUTO**
**CA 00 01 10 13**

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

**B. Owned Autos You Acquire After The Policy Begins**

   **1.** If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

   **2.** But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   **a.** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   **b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

   If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

   **1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

   **2.** "Mobile equipment" while being carried or towed by a covered "auto".

   **3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   **a.** Breakdown;

   **b.** Repair;

   **c.** Servicing;

   **d.** "Loss"; or

   **e.** Destruction.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

   We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

   We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

   We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

   **1. Who Is An Insured**

   The following are "insureds":

   **a.** You for any covered "auto".

   **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   **(1)** The owner or anyone else from whom you hire or borrow a covered "auto".

   This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

   **(1)** Employment by the "insured"; or

   **(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

   **(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

   **(1)** When all of the work called for in your contract has been completed;

   **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

   **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

 © Insurance Services Office, Inc., 2011

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

**1.** We will pay for "loss" to a covered "auto" or its equipment under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft;

**(3)** Windstorm, hail or earthquake;

**(4)** Flood;

**(5)** Mischief or vandalism; or

**(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

**c. Collision Coverage**

Caused by:

**(1)** The covered "auto's" collision with another object; or

**(2)** The covered "auto's" overturn.

**2. Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

**3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

**a.** Glass breakage;

**b.** "Loss" caused by hitting a bird or animal; and

**c.** "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

**4. Coverage Extensions**

**a. Transportation Expenses**

We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

**b. Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" due and confined to:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto";

**b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

**c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

**d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

**1.** The most we will pay for:

**a.** "Loss" to any one covered "auto" is the lesser of:

**(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

**(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own; or

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

 © Insurance Services Office, Inc., 2011

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to**.**

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V – DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

 © Insurance Services Office, Inc., 2011 **CA 00 01 10 13**

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

**6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **a.** Power cranes, shovels, loaders, diggers or drills; or

   **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   **b.** Cherry pickers and similar devices used to raise or lower workers; or

**6.** Vehicles not described in Paragraph **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **a.** Equipment designed primarily for:

      **(1)** Snow removal;

      **(2)** Road maintenance, but not construction or resurfacing; or

      **(3)** Street cleaning;

   **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

   **1.** Damages because of "bodily injury" or "property damage"; or

   **2.** A "covered pollution cost or expense";

   to which this insurance applies, are alleged.

   "Suit" includes:

      **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

      **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

POLICY NUMBER: 11PKG8931805

**COMMERCIAL AUTO**
**CA 20 01 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LESSOR – ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| | |
|---|---|
| **Insurance Company:** | ARCH INSURANCE COMPANY |

| | | |
|---|---|---|
| **Policy Number:** | 11PKG8931805 | **Effective Date:** 10-31-2020 |

| | |
|---|---|
| **Expiration Date:** | 10-31-2021 |

| | |
|---|---|
| **Named Insured:** | JOHN MORIARTY & ASSOCIATES, |

| | |
|---|---|
| **Address:** | 3 CHURCH STREET<br>WINCHESTER                              MA       01890- |
| **Additional Insured (Lessor):**<br>**Address:** | ANY PERSON OR ORGANIZATION WHERE REQUIRED IN A WRITTEN CONTRACT THAT SUCH PERSON OR ORGANIZATION IS AN ADDITIONAL INSURED ON THIS POLICY. |
| **Designation Or Description Of "Leased Autos":** | ANY LEASED AUTO AS DEFINED IN E. ADDITIONAL DEFINITION BELOW. |

---

**CA 20 01 10 13**  © Insurance Services Office, Inc., 2011  **Page 1 of 2**

| Coverages | Limit Of Insurance |
|---|---|
| **Covered Autos Liability** | $  1,000,000              Each "Accident" |
| **Comprehensive** | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus<br>$        1,000            Deductible For Each Covered "Leased Auto" |
| **Collision** | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus<br>$        1,000            Deductible For Each Covered "Leased Auto" |
| **Specified<br>Causes Of Loss** | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus<br>                        Deductible For Each Covered "Leased Auto" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, the **Who Is An Insured** provision under **Covered Autos Liability Coverage** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

**FORM MCS-90** Revised 3/31/2020                                      OMB No. 2126-0008 Expiration: 3/31/2021

USDOT Number:_____ Date Received: _____

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this information collection is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.



United States Department of Transportation
**Federal Motor Carrier Safety Administration**

**Endorsement for Motor Carrier Policies of Insurance for Public Liability**

**under Sections 29 and 30 of the Motor Carrier Act of 1980**

# FORM MCS-90

Issued to JOHN MORIARTY & ASSOCIATES, INC. of          FLORIDA
*(Motor Carrier name)*                                                   *(Motor Carrier state or province)*

**Dated at** 12:00 NOON  **on this** 11TH **day of** DECEMBER , 2020

**Amending Policy Number:** 11PKG8931805 **Effective Date:** 10-31-2020

**Name of Insurance Company:** ARCH INSURANCE COMPANY

                                             *Linda E Kruze*

                **Countersigned by:** _____
                                              *(authorized company representative)*

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown *(check only one)*:

☒ *This insurance is primary and the company shall not be liable for amounts in excess of*   $2,000,000   *for each accident.*

☐ *This insurance is excess and the company shall not be liable for amounts in excess of*       *for each accident in excess of the underlying limit of*
*for each accident.*

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA , to verify that the policy is in force as of a particular date. The telephone number to  call is:   .

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington,  DC).

*(continued on next page)*

**FORM MCS-90** Revised 3/31/2020                                    OMB No.: 2126-0008 Expiration: 3/31/2021

## DEFINITIONS AS USED IN THIS ENDORSEMENT

*Accident* includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

*Motor Vehicle* means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

*Bodily Injury* means injury to the body, sickness, or disease to any person, including death resulting from any of these.

*Property Damage* means damage to or loss of use of tangible property.

*Environmental Restoration* means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

*Public Liability* means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed  that no condition, provision, stipulation, or limitation  contained  in the policy, this endorsement, or any other endorsement thereon,

or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

*(continued on next page)*

## SCHEDULE OF LIMITS — PUBLIC LIABILITY

| Type of carriage | Commodity transported | January 1, 1985 |
|---|---|---|
| **(1)** For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous) | $750,000 |
| **(2)** For-hire and Private (in interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| **(3)** For-hire and Private (in interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| **(4)** For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

*The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

COMMERCIAL AUTO
CA 01 07 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Connecticut, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

   **1.** The following is added to **Who Is An Insured:**

   If you are an individual, your "family member" is an "insured" while using any covered "auto" you own.

   **2. Coverage Extensions** is amended as follows:

   **a.** Paragraph **a.(2)** of **Supplementary Payments** is replaced by the following:

   **(2)** Up to $250 for the cost of bail bonds (including bonds for related traffic law violations). We do not have to furnish these bonds.

   **b. Supplementary Payments** is amended by the addition of the following:

   **(7)** We will pay all expenses incurred by an "insured" for first aid to others at the time of an "accident".

   **(8)** At your request we will issue (or arrange for the issuance of) a bond to release attachments. The amount of the bond will not exceed the limit of liability stated in the policy.

   **3.** The **Fellow Employee** Exclusion is replaced by the following:

   **Fellow Employee**

   "Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business. However, we will cover "bodily injury" caused by your "employee" to his fellow "employee".

   **4.** The **Care, Custody Or Control** Exclusion does not apply to "property damage" to a residence or private garage caused by a covered "auto" of the private passenger type.

**B. Changes In Conditions**

   **Other Insurance** is changed as follows:

   **a.** If you are other than an "auto" dealer or repairer, Covered Autos Liability Coverage applies to and is primary for any temporary substitute for an "auto" you own if the substitute "auto" is operated by an "insured" and owned by an "auto" dealer or repairer.

   **b.** If you are an "auto" dealer or repairer, Covered Autos Liability Coverage is excess for an "auto" you own if operated by a customer to whom you have loaned the "auto".

**C. Changes In Auto Medical Payments Coverage**

   Exclusion **C.8.** does not apply.

© Insurance Services Office, Inc., 2012

**COMMERCIAL AUTO**
**CA 01 16 02 18**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES – BUSINESS AUTO COVERAGE FORM

For a covered "auto" licensed or principally garaged in Virginia, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraph **A. Coverage** of **Section II – Covered Autos Liability Coverage** is replaced by the following:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We have the right and duty to defend any "suit" for such damages, even if the "suit" is groundless, false or fraudulent. However, we have no duty to defend "suits" for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**B.** Paragraph **A.1.b.** of **Section II – Covered Autos Liability Coverage** is amended by the addition of the following:

**1. Who Is An Insured**

The following are "insureds":

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(6)** Your customers, if you are in the motor vehicle business. However, if a customer of yours:

**(a)** Has no other valid and collectible insurance applicable to the same "accident", they are an "insured" but only up to the financial responsibility limits specified in Section 46.2-472 of the Code of Virginia.

**(b)** Has other valid and collectible insurance applicable to the same "accident" less than the financial responsibility limits specified in Section 46.2-472, they are an "insured" only for the amount by which the financial responsibility law limits exceed the limits of their other insurance.

Motor vehicle business means the business of selling, leasing, repairing, servicing, storing or parking motor vehicles which are:

**(a)** Used for demonstration purposes by a prospective purchaser;

**(b)** Loaned or leased to another as a temporary substitute while such person's "auto" is being repaired or serviced; or

**(c)** Leased to another for a period of six months or more.

**C.** Paragraph **A.2. Coverage Extensions** of **Section II – Covered Autos Liability Coverage** is amended as follows:

**1.** Paragraphs **a.(3), a.(5)** and **a.(6)** of **Supplementary Payments** are replaced by the following:

We will pay for the "insured":

**(3)** The cost of bonds to release attachments in any "suit" we defend, but only for bond amounts within our Limit of Insurance.

 © Insurance Services Office, Inc., 2017

**(5)** All court costs taxed against the "insured" in any "suit" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of judgment in any "suit" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

**2.** Paragraph **a. Supplementary Payments** is amended by the addition of the following:

We will pay for the "insured":

**(7)** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**D.** Paragraph **A.2.b.(1)** of **Section II – Covered Autos Liability Coverage** is replaced by the following:

**2. Coverage Extensions**

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used.

**E.** Paragraph **B. Exclusions** of **Section II – Covered Autos Liability Coverage** is amended as follows:

**1.** Paragraph **B.4. Employee Indemnification And Employer's Liability** Exclusion is replaced by the following:

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of employment by the "insured"; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract".

**2.** Paragraph **B.5. Fellow Employee** Exclusion is deleted.

**3.** Paragraph **B.6. Care, Custody Or Control** Exclusion is replaced by the following:

"Property damage" to property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**4.** Paragraph **B.11. Pollution** Exclusion is replaced by the following:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants". This exclusion does not apply if the discharge is sudden and accidental.

**5.** Paragraph **B.12. War** Exclusion is replaced by the following:

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**F.** Paragraph **C. Limit Of Insurance** of **Section II – Covered Autos Liability Coverage** is replaced by the following:

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

**2.** We will apply the limit shown in the Declarations to first provide the separate limits required by Virginia law as follows:

**a.** $25,000 for "bodily injury" to any one person caused by any one "accident"; and

   **b.** Subject to **2.a.** above, $50,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   **c.** $20,000 for "property damage" caused by any one "accident".

This provision will not change the Limit of Insurance.

**G.** The **Business Auto Conditions** of Section **IV** are amended as follows:

  **1.** Paragraph **A.2.b.(3)** of the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition is replaced by the following:

   **b.** Additionally, you and any other involved "insured" must:

    **(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit". The "insured" will be deemed not to have cooperated with us only if his or her failure or refusal to do so harms our defense of an action for damages.

  **2.** Paragraph **A.2.c.** of the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition is replaced by the following:

   **c.** If there is a "loss" to a covered "auto" or its equipment, you must also do the following, but only with respect to a Physical Damage claim:

    **(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

    **(2)** Do what is reasonably necessary to protect the covered "auto" from further damage. Also keep a record of your expenses for payment in the settlement claim.

    **(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

    **(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

  **3.** Paragraph **A.4.** of the **Loss Payment – Physical Damage Coverages** Condition is replaced by the following:

At our option, we may:

   **a.** Pay for, repair or replace damaged or stolen property;

   **b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

   **c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include:

   **(1)** The applicable sales and use tax for the damaged or stolen property;

   **(2)** Any applicable titling and license transfer fees incurred in obtaining a replacement vehicle in the event of a total "loss" to a covered "auto"; and

   **(3)** Any applicable general average, salvage or disposal charges.

  **4.** Paragraph **B.2. Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

Coverage for your claim under this Coverage Form is void in any case of fraud by you at any time as it relates to the Coverage Form. It is also void if you, at any time, intentionally conceal or misrepresent a material fact concerning:

   **a.** This Coverage Form;

   **b.** The covered "auto";

   **c.** Your interest in the covered "auto"; or

   **d.** A claim under this Coverage Form.

  **5.** Paragraph **B.5.b.** of the **Other Insurance** Condition is replaced by the following:

   **b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is deemed to be a covered "auto" you don't own.

  **6.** Paragraph **B.6. Premium Audit** Condition is replaced by the following:

The estimated premium for this Coverage Form is based on the exposures you told us you would have when this Policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

  **7.** Paragraph **B.8.** of the **Two Or More Coverage Forms Or Policies Issued By Us** Condition is deleted.

 © Insurance Services Office, Inc., 2017

**8.** Paragraph **B. General Conditions** is amended by the addition of the following:

In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance as stated in this Policy.

**H. Section V – Definitions** is amended as follows:

**1.** The "covered pollution cost or expense" definition is deleted.

**2.** Exceptions **b.** and **c.** to the "insured contract" definition are deleted.

**3.** The definition of "suit" is replaced by the following:

"Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage", to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

**I. Changes In Endorsements**

**1.** All references to Auto Medical Payments are replaced in the endorsements by Medical Expense Benefits.

**2.** All references to personal injury protection (no-fault) and "covered pollution cost or expense" in any endorsement do not apply.

COMMERCIAL AUTO
CA 01 28 06 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Covered Autos Liability Coverage** is changed as follows:

Paragraph **(5)** of **a. Supplementary Payments** under **Coverage Extensions** in the Auto Dealers, Business Auto and Motor Carrier Coverage Forms is replaced by the following:

    We will pay for the "insured":

    **(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**B. Physical Damage Coverage** is changed as follows:

    **1.** No deductible applies under Specified Causes Of Loss or Comprehensive Coverage for "loss" to glass used in the windshield.

    **2.** All other **Physical Damage Coverage** provisions will apply.

**C.** Paragraph **1.** of **Loss Conditions, Appraisal For Physical Damage Loss,** is replaced by the following:

    **1. Appraisal For Physical Damage Loss**

    If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". Upon notice of a demand for appraisal, the opposing party may, prior to appraisal, demand mediation of the dispute in accordance with the Mediation provision contained in this endorsement. The mediation must be completed before a demand for appraisal can be made. In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    **a.** Pay its chosen appraiser; and

© Insurance Services Office, Inc., 2016

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**D.** The **General Conditions** are amended as follows:

**1.** The following is added to the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms, and **Other Insurance – Primary And Excess Provisions** Condition in the Motor Carrier Coverage Form:

**a.** When this Coverage Form and any other Coverage Form or policy providing liability coverage applies to an "auto" and:

**(1)** One provides coverage to a lessor of "autos" for rent or lease; and

**(2)** The other provides coverage to a person not described in Paragraph **D.1.a.(1);**

then the Coverage Form or policy issued to the lessor described in Paragraph **D.1.a.(1)** is excess over any insurance available to a person described in **D.1.a.(2)** if the face of the lease or rental agreement contains, in at least 10 point type, the following language:

The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by FLA. STAT. SECTION 324.021(7) and FLA. STAT. SECTION 627.736.

**2.** The following condition is added to the Auto Dealers, Business Auto and Motor Carrier Coverage Forms:

**Mediation**

**1.** In any claim filed by an "insured" with us for:

**a.** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

**b.** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

**c.** "Loss" to a covered "auto" or its equipment, in any amount;

either party may make a written demand for mediation of the claim prior to the institution of litigation.

**2.** A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

**3.** The request must state:

**a.** Why mediation is being requested.

**b.** The issues in dispute, which are to be mediated.

**4.** The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

**5.** Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

**6.** The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

 © Insurance Services Office, Inc., 2016 CA 01 28 06 17

COMMERCIAL AUTO
CA 02 67 06 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** Paragraph **A.2.b.** of the Common Policy Conditions, **Cancellation,** is replaced by the following:

**b.** 45 days before the effective date of cancellation if we cancel for any other reason.

**B.** Paragraphs **A.4.** and **A.5.** of the Common Policy Conditions, **Cancellation,** are replaced by the following:

**4.** Notice of cancellation will state the effective date of, and reason(s) for, the cancellation. The policy period will end on that date.

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect, unless this is an audit policy.

If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will return any premium refund due within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit.

The cancellation will be effective even if we have not made or offered a refund.

**C.** The following is added to Paragraph **A.** of the Common Policy Conditions, **Cancellation:**

**7.** If this Policy provides Personal Injury Protection, Property Damage Liability Coverage or both and:

**a.** It is a new or renewal policy, it may not be cancelled by the first Named Insured during the first 60 days immediately following the effective date of the Policy or renewal, except for one of the following reasons:

**(1)** The covered "auto" is completely destroyed such that it is no longer operable;

© Insurance Services Office, Inc., 2016

**(2)** Ownership of the covered "auto" is transferred; or

**(3)** The Named Insured has purchased another policy covering the motor vehicle insured under this Policy.

**b.** It is a new policy, we may not cancel it during the first 60 days immediately following the effective date of the Policy for nonpayment of premium unless a check used to pay us is dishonored for any reason or any other type of premium payment is subsequently determined to be rejected or invalid.

**D.** The following condition is added:

**Nonrenewal**

**1.** If we decide not to renew or continue this Policy, we will mail you notice at least 45 days before the end of the policy period. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**2.** If we fail to mail proper notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

**3.** Notice of nonrenewal will state the reason(s) for the nonrenewal and the effective date of nonrenewal. The policy period will end on that date.

 © Insurance Services Office, Inc., 2016 **CA 02 67 06 17**

COMMERCIAL AUTO
CA 02 68 02 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES IN POLICY – CANCELLATION AND NONRENEWAL

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Virginia, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** If you are an individual and a covered "auto" you own is of the private passenger type and not used in your occupation, profession or business, other than farming, and is not used as a public or livery conveyance including, but not limited to, any period of time a covered "auto" is being used by an insured ("insured") who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto"; and your business shown in the Declarations is not a garage, sales agency, repair shop, service station or public parking place, then the **Cancellation** Common Policy Condition does not apply. The following conditions apply instead:

**1. Cancellation**

**a.** You or your attorney-in-fact may cancel the Policy by returning to us or by mailing to us advance written notice of the date cancellation is to take effect.

**b.** We may cancel this Policy by mailing or delivering to the first Named Insured shown in the Declarations written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 45 days before the effective date of cancellation if we cancel for any other reason.

**c.** When this Policy is in effect 60 days or more or is a renewal or continuation policy, we may only cancel for one or more of the following reasons:

**(1)** Nonpayment of premium.

**(2)** Your driver's license or that of a driver who lives with you or customarily uses the covered "auto" has been suspended or revoked during the policy period or, if the Policy is a renewal, during its policy period or the 90 days immediately preceding the last effective date.

**(3)** You or your attorney-in-fact has notified us that you have changed your legal residence to a state other than Virginia and your covered "auto" will be principally garaged in your new state.

**(4)** We replace this Policy with another one providing similar coverages and the same limits for the covered "auto". The replacement policy will take effect when this Policy is cancelled and will end a year after this Policy begins or on this Policy's expiration date, whichever is earlier.

**d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    © Insurance Services Office, Inc., 2016

**e.** If this Policy is cancelled, you may be entitled to a premium refund. If so, we will send the first Named Insured the refund. However, making or offering to make the refund is not a condition of cancellation. If you or your attorney-in-fact cancels, the refund, if any, will be computed in accordance with the procedure described in Paragraph **C.** of this endorsement.

**f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**2. Nonrenewal**

**a.** If we decide not to renew or continue this Policy, we will mail the first Named Insured shown in the Declarations notice at least 45 days before the end of the policy period. If the Policy is written for a period of less than one year or without a fixed expiration date, we will have the right not to renew or continue a particular coverage only at the end of any six-month period following its original effective date.

**b.** If we or our agent offers to renew or continue this Policy and you or your attorney-in-fact does not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you or your attorney-in-fact has not accepted our offer.

**3. Mailing Of Notices**

**a.** Any notice of cancellation or nonrenewal will be mailed to the first Named Insured's last known address in accordance with Virginia Law. However, we may deliver any notice instead of mailing it.

**b.** The notice of cancellation or nonrenewal will state the specific reason(s) for cancellation or nonrenewal, except when a policy is being cancelled or nonrenewed for nonpayment of premium.

**B.** For all other risks not described in Paragraph **A.** above:

**1.** Paragraphs **1.** and **2.** of the **Cancellation** Common Policy Condition are replaced by the following:

**a.** You or your attorney-in-fact may cancel the Policy by mailing or delivering to us advance written notice of the date cancellation is to take effect.

**b.** We may cancel the Policy by mailing or delivering to the first Named Insured shown in the Declarations written notice of cancellation, stating the reason(s) for cancellation, at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 45 days before the effective date of cancellation if we cancel for any other reason.

**2.** Paragraph **3.** of the **Cancellation** Common Policy Condition does not apply.

**3.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this Policy is cancelled, you may be entitled to a premium refund. If so, we will send the first Named Insured the refund. However, making or offering to make the refund is not a condition of cancellation. If you or your attorney-in-fact cancels, the refund, if any, will be computed in accordance with the procedure described in Paragraph **C.** of this endorsement.

**4.** The following conditions are added:

**a. Nonrenewal**

**(1)** We may nonrenew the Policy by mailing or delivering to the first Named Insured shown in the Declarations written notice of nonrenewal, stating the reason for nonrenewal, at least:

**(a)** 15 days before the expiration date of the Policy if we nonrenew for nonpayment of premium; or

**(b)** 45 days before the expiration date of the Policy if we nonrenew for any other reason.

**(2)** If we or our agent offers to renew or continue this Policy and you or your attorney-in-fact does not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you or your attorney-in-fact has not accepted our offer.

**b. Mailing Of Notices**

Any notice of cancellation or nonrenewal will be mailed to the first Named Insured's last known address in accordance with Virginia Law. However, we may deliver any notice instead of mailing it.

**C.** The following provisions govern the calculation of return premium for all risks:

**1.** We will compute return premium pro rata and round to the next higher whole dollar when a policy is cancelled:

**a.** At our request;

**b.** Because you no longer have a financial or insurable interest in the property or business operation that is the subject of insurance;

**c.** And rewritten by us or a member of our company group; or

**d.** After the first year, if it is a prepaid policy written for a term of more than one year.

**2.** When this Policy is cancelled at your request (except when Paragraph **1.b.**, **1.c.** or **1.d.** applies), we will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar. However, when such cancellation takes place during the first year of a multiyear prepaid policy, we will return the full annual premium for the subsequent years. In addition, earned premium will not be less than our policywriting minimum premium.

**3.** When this Policy is cancelled at your request and is an auto dealer's policy written on a reporting form basis, we will calculate the return or additional premium as follows:

**a.** Final annual premium will be determined on the basis of the average value reported during the period in which the Policy was in effect.

**b.** Pro rata earned premium will be determined based on the final annual premium for the number of days the Policy was in force, as determined by Paragraph **3.a.**, rounded to the next higher whole dollar.

**c.** Pro rata unearned premium will be determined by subtracting Paragraph **3.b.** from Paragraph **3.a.**

**d.** The short rate surcharge will be determined by multiplying the unearned premium by 10% and rounding to the next higher whole dollar.

**e.** Calculate the short rate earned premium by adding Paragraphs **3.b.** and **3.d.**

**f.** If the short rate earned premium is less than the sum of all payments (including any deposit premium), the difference is the return premium.

**g.** If the short rate earned premium is greater than the sum of all payments (including any deposit premium), the difference is the additional premium due.

However, earned premium will not be less than our policywriting minimum premium.

**D. Additional Definitions**

As used in this endorsement:

**1.** "Occupying" means in, upon, getting in, on, out or off.

**2.** "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

**COMMERCIAL AUTO**
**CA 99 52 02 18**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA LIMITED SUBROGATION RIGHTS

This endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

If Collision Coverage is afforded under this Policy and you are:

**a.** A seller of "autos"; or

**b.** In the business of leasing, repairing, servicing, storing or parking "autos"; and

an "auto" you own is used for the purpose of demonstration, or is loaned or leased to a person while that person's own vehicle is being repaired or serviced, or that "auto" you own is leased to another person for a period of six months or more, the **Transfer Of Rights Of Recovery Against Others To Us** Condition is revised by adding the following:

If there is no other valid and collectible collision insurance available to a person to whom you demonstrate, lend or lease an auto, we shall have no right of subrogation against that person unless, in the case of a leased vehicle, that person has received a conspicuous written notice at the start of the lease that subrogation rights exist.

**CA 99 52 02 18**          © Insurance Services Office, Inc., 2016          **Page 1 of 1**

**COMMERCIAL AUTO**
**CA 99 63 02 18**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DISTRICT OF COLUMBIA EMPLOYEES USING AUTOS IN GOVERNMENT BUSINESS – VIRGINIA

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following are not "insureds" under Covered Autos Liability Coverage:

**A.** The District of Columbia or any of its agencies.

**B.** Any District of Columbia "employee", including you, for "bodily injury" or "property damage" resulting from the operation of an "auto", if:

    **1.** The "bodily injury" or "property damage" results while the "employee" is acting as an "employee"; and

**2.** The "employee" is exempt from liability because of the District Of Columbia Employee Non-liability Act.

---

**CA 99 63 02 18**           © Insurance Services Office, Inc., 2016          **Page 1 of 1**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UNINSURED MOTORISTS ENDORSEMENT

## (VIRGINIA)

**A. Words And Phrases With Special Meaning**

The following words and phrases have special meaning throughout this endorsement and appear in quotation marks when used:

1. "You" and "your" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

2. "We", "us", and "our" mean the company providing insurance.

3. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage" the "insured" neither expected nor intended.

4. "Available for payment" means the amount of liability insurance coverage applicable to the claim of the injured person for "bodily injury" or "property damage" reduced by the payment of any other claims arising out of the same "accident".

5. "Bodily injury" means bodily injury, sickness or disease including death resulting from any of these.

6. "Covered auto" means a motor vehicle, or a "temporary substitute", with respect to which the "bodily injury" or "property damage" liability coverage of the policy applies.

7. "Family member" means a person related to "you" by blood, marriage or adoption who is a resident of "your" household, including a ward or foster child.

8. "Insured" means any person or organization qualifying as an insured in the **Who Is An Insured** section of this endorsement, including the personal representative of any insured. Except with respect to "our" Limit Of Liability, the insurance afforded applies separately to each insured who is seeking coverage under this endorsement.

9. "Loss" means direct and accidental damage or loss.

10. "Property damage" means damage to or loss of use of tangible property.

11. "Occupying" means in, upon, using, getting in, on, out of or off.

12. "Temporary substitute" means a motor vehicle that is being used in place of a "covered auto". The "covered auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

13. "Underinsured motor vehicle" means a motor vehicle, when, and to the extent that, the total amount of "bodily injury" and "property damage" coverage applicable to the operation or use of the motor vehicle and "available for payment" for such "bodily injury" or "property damage", including all bonds or deposits of money or securities made pursuant to Article 15 (Section 46.2-435 et seq.) of Chapter 3 of Title 46.2 of the Code of Virginia, is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the motor vehicle.

14. "Uninsured motor vehicle" means a motor vehicle:

    a. For which:

       1. There is no "bodily injury" liability insurance and "property damage" liability insurance in the amounts specified by Section 46.2-472 of the Code of Virginia.

       2. There is such insurance but the insurer writing the insurance denies coverage for any reason whatsoever, including failure or refusal of the insured to cooperate with the insurer.

       3. There is no bond or deposit of money or securities in lieu of such insurance.

       4. The owner of the vehicle has not qualified as a self-insurer under the provisions of Section 46.2-368, or

       5. The owner or operator of the motor vehicle is immune from liability for negligence under the laws of the Commonwealth or the United States. A motor vehicle shall be deemed uninsured if its owner or operator is unknown.

   © ISO Properties, Inc.,  2002

If the owner or operator of any motor vehicle that causes "bodily injury" or "property damage" to the "insured" is unknown, and if the damage or injury results from an "accident" where there has been no contact between that motor vehicle and the motor vehicle occupied by the "insured", or where there has been no contact with the person of the "insured" if the "insured" was not "occupying" a motor vehicle, then for the "insured" to recover under this endorsement pursuant to Paragraph **a.** of this definition, the "accident" shall be reported promptly to either:

1. The insurer or;
2. A law-enforcement officer having jurisdiction in the county or city in which the "accident" occurred. If it is not reasonably practicable to make the report promptly, the report shall be made as soon as reasonably practicable under the circumstances.

**b.** Which is an "underinsured motor vehicle".

## B. We Will Pay

"We" will pay in accordance with the Virginia Uninsured Motorists Law, all sums the "insured" is legally entitled to recover as damages from the owner or operator of an "uninsured motor vehicle".

## C. We Will Not Cover - Exclusions

This insurance does not apply to:

1. A "bodily injury" or "property damage" claim settled by the "insured" without "our" consent with anyone who may be legally liable.
2. The direct or indirect benefit of any insurer of property.
3. The first $200 of the total amount of "property damage" as the result of any one "accident" involving an unidentifiable driver or owner of an "uninsured motor vehicle". This exclusion does not apply if the owner or operator of the "uninsured motor vehicle" causing the damage can be identified.
4. Anyone using the "covered auto" without a reasonable belief that the person is entitled to do so.

## D. Who Is Insured

1. "You" or any "family member".
2. Anyone else "occupying" a "covered "auto".
3. Anyone for damages he or she is entitled to recover because of "bodily injury" to which this coverage applies, sustained by another "insured" under **1.** or **2.** above.

## E. Our Limit Of Liability

1. Regardless of the number of "covered autos", "insureds", claims made or motor vehicles involved in the "accident", the most "we" will pay for all damages resulting from any one "accident" is the limit of **Uninsured Motorists Insurance** shown in the Schedule or Declarations. However, if more than one "covered auto" is involved in the same "accident", the limit of Uninsured Motorists Insurance shown in the Schedule or Declarations will apply separately to each of these "covered autos". Such limit of insurance shall first provide the separate limits required by the Virginia Motor Vehicle Safety Responsibility Act.
2. Except with respect to an "underinsured motor vehicle", damages otherwise payable under this coverage:
   **a.** Shall be reduced by all sums paid because of "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible.
   **b.** With respect to an employee of a self-insured employer, shall be reduced by all sums paid or payable because of "bodily injury" under a workers' compensation law.

## F. Conditions

The conditions applicable to this coverage are as follows:

1. **Other Insurance**
   **a.** For "bodily injury" to an "insured" while "occupying" a motor vehicle that is not a "covered auto", this coverage shall apply only as excess insurance over any other similar insurance available to that "insured" and applicable to that motor vehicle as primary insurance. However, this paragraph does not apply to an "underinsured motor vehicle".
   **b.** Except as provided in Paragraph **a.** above, if the "insured" has other similar "bodily injury" insurance available to him or her and applicable to the "accident", "we" shall not be liable for a greater proportion of any "loss" to which this coverage applies than the limit of liability for this coverage bears to the sum of the applicable limits of liability of this insurance and such other insurance. However, this provision does not apply to an "underinsured motor vehicle".
   **c.** For "property damage", **Uninsured Motorists Insurance** is excess over all other collectible insurance of any kind applicable to the "property damage".

**d.** If the injured person is entitled to underinsured motorists coverage under more than one policy, the following order of priority applies and any amount "available for payment" shall be credited against such policies in the following order of priority:

   **(1)** The policy covering a motor vehicle "occupied" by the injured person at the time of the "accident".

   **(2)** The policy covering a motor vehicle not involved in the "accident" under which the injured person is a named insured.

   **(3)** The policy covering a motor vehicle not involved in the "accident" under which the injured person is other than a named insured.

If there is more than one insurer providing coverage under one of the payment priorities set forth in Paragraph **d.** above, we will pay only "our" share of the "loss". "Our" share is the proportion that "our" limit of liability bears to the total of all limits applicable on the same level of priority.

**2.   Our Right To Recover From Others**

If "we" make any payment, "we" are entitled to recover what "we" paid from other parties. Any person to or for whom "we" make payment must transfer to "us" his or her rights of recovery against any other party. The person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

**3.   Legal Action Against Us**

No legal action may be brought against "us" until there has been full compliance with all the terms of the policy.

**4.   Changes**

If a change requires a premium adjustment, "we" will adjust the premium as of the effective date of the change.

**5.   Transfer Of Rights And Duties**

"Your" rights and duties under this endorsement may not be assigned without "our" written consent.

**6.   Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate shall not relieve "us" of any obligations under this endorsement.

**7.   Policy Period, Coverage Territory**

Under this endorsement, "we" cover "accidents" and "losses" occurring:

  **a.** During the policy period shown in the Declarations; and

  **b.** Within the coverage territory.

The coverage territory is:

  **a.** The United States of America

  **b.** The territories and possessions of the United States of America.

  **c.** Puerto Rico; and

  **d.** Canada

"We" also cover "loss" to, or "accidents" involving, a "covered auto" while being transported between any of these places.

**8.   Concealment, Misrepresentation, Or Fraud**

Coverage for "your" claim under this endorsement is void in any case of fraud by "you" at any time as it relates to this coverage. It is also void if "you", at any time, intentionally conceal or misrepresent a material fact concerning:

  **a.** This endorsement;

  **b.** The "covered auto";

  **c.** "Your" interest in the "covered auto"; or

  **d.** A claim under this coverage.

**9.   Premium Audit**

  **a.** The estimated premium for this endorsement is based on the exposures "you" told "us" "you" would have when this policy began. "We" will compute the final premium due when "we" determine "your" actual exposures. The estimated total premium will be credited against the final premium due and the First Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the First Named Insured will get a refund.

  **b.** If this policy is issued for more than one year, the premium for this endorsement will be computed annually, based on "our" rates or premiums in effect at the beginning of each year of the policy.

**10.  Arbitration**

  **a.** If "we" and an "insured" disagree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

"You" are not required to arbitrate; however, if both parties agree to arbitrate, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. "We" will pay all arbitration expenses if "we" request arbitration. If an "insured" requests the arbitration, each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision can be reached by two of the arbitrators but will not be binding.

POLICY NUMBER:11PKG8931805

COMMERCIAL AUTO
CA 21 57 03 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CONNECTICUT UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Connecticut, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| **Named Insured:**  JOHN MORIARTY & ASSOCIATES, INC. |
| **Endorsement Effective Date:**  10-31-20 |

**SCHEDULE**

| Limit Of Insurance | | |
|---|---|---|
| **Uninsured Motorists Coverage:** | $50,000 | **Each "Accident"** |
| **Underinsured Motorists Coverage:** | $50,000 | **Each "Accident"** |
| ☐ If indicated by an "X" in the box to the left or in the Declarations, Underinsured Motorists Conversion Coverage applies. | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

2. We will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of an "underinsured motor vehicle".

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

6. Punitive or exemplary damages.

7. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Or Underinsured Motorists Coverage shown in the Schedule or Declarations.

   The coverage limit for Uninsured And Underinsured Motorists Coverage applies separately to damages caused by an "accident" with an "uninsured motor vehicle" and an "underinsured motor vehicle".

2. The Limit of Insurance shall be reduced by:

   a. All sums paid or payable under any workers' compensation or similar law.

   b. All sums paid to "insureds" because of "bodily injury" by or for anyone who is legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

## E. Changes In Conditions

The Conditions are changed for Connecticut Uninsured And Underinsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   If there is other applicable similar insurance available under one or more policies or provisions of coverage:

   a. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary, secondary or excess basis.

   b. Subject to Paragraph **1.a.** above, with respect to "bodily injury" to an "insured" while:

      (1) "Occupying" a vehicle owned by that "insured", only the Uninsured/Underinsured Motorists Coverage applicable to that vehicle will apply, and no other policies or provisions of coverage will apply.

      (2) "Occupying" a vehicle not owned by that "insured", or while not "occupying" any vehicle, the following priorities of recovery apply:

| First | The Uninsured/Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident". |
|---|---|
| Second | Any Coverage Form or policy affording Uninsured/Underinsured Motorists Coverage to the "insured" as an individual Named Insured. |
| Third | Any Coverage Form or policy affording Uninsured/Underinsured Motorists Coverage to the "insured" as a "family member". |

**c.** With respect to the second and third priorities, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all limits applicable on the same level of priority.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved; and

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**3. Legal Action Against Us** is replaced by the following:

**Legal Action Against Us**

**a.** No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

**b.** Any legal action against us under this Coverage Form must be brought within three years after the date of the "accident".

**c.** Paragraph **3.b.** above of this condition does not apply if, within three years after the date of the "accident", we and the "insured" agree to arbitration in accordance with the provisions of this Coverage Form.

**4. Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

**Transfer Of Rights Of Recovery Against Others To Us**

**a.** With respect to damages caused by an "accident" with an "uninsured motor vehicle":

**(1)** If any person or organization has rights to recover damages from another, that person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**(2)** If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**(3)** If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**b.** With respect to damages caused by an "accident" with an "underinsured motor vehicle", the **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply.

**5.** The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle", or do not agree as to the amount of damages, then the matter may be arbitrated. Both parties must agree to arbitration. If the amount of damages the "insured" demands is $40,000 or less, both parties will select a single arbitrator. Each party will pay the expenses it incurs and bear the expenses of the arbitrator equally. If the amount of damages the "insured" demands is more than $40,000, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by the arbitrator(s) will be binding.

**F. Underinsured Motorists Conversion Coverage**

If the Schedule or Declarations indicates that Underinsured Motorists Conversion Coverage applies, the following provisions apply:

**1.** The definition of "underinsured motor vehicle" is replaced by the following:

"Underinsured motor vehicle" means a land motor vehicle or "trailer" for which the sum of all payments received by or on behalf of the "insured", from or on behalf of anyone who is legally responsible, is less than the fair, just and reasonable damages of the "insured".

**2.** With respect to coverage provided under the above definition of "underinsured motor vehicle", Paragraph **2.** of the **Limit Of Insurance** Provision does not apply.

© Insurance Services Office, Inc., 2015

CA 21 57 03 16

**G. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

  **a.** To which no bodily injury liability bond or policy applies at the time of the "accident";

  **b.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

  **c.** That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must either:

   **(1)** Hit an "insured", a covered "auto" or a vehicle the "insured" is "occupying"; or

   **(2)** Cause "bodily injury" to the "insured" without physical contact with the "insured", a covered "auto" or a vehicle the "insured" is "occupying". However, in such cases, the "insured" must prove by a fair preponderance of the evidence that the "bodily injury" resulted from the negligence of an unidentified motorist.

However, "uninsured motor vehicle" does not include any vehicle:

  **a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or who becomes insolvent and cannot provide the amounts required by that motor vehicle law;

  **b.** Owned by a governmental unit or agency; or

  **c.** Designed for use mainly off public roads while not on public roads.

**4.** "Underinsured motor vehicle" means a land motor vehicle or "trailer" for which the sum of all bodily injury liability bonds or policies applicable at the time of the "accident" is less than the Limit of Insurance of this coverage.

However, "underinsured motor vehicle" does not include any vehicle:

  **a.** Owned or operated by a self-insurer under any applicable motor vehicle law;

  **b.** Owned by a governmental unit or agency;

  **c.** Designed for use mainly off public roads while not on public roads; or

  **d.** For which an insuring or bonding company denies coverage or is or becomes insolvent.

POLICY NUMBER:11PKG8931805

COMMERCIAL AUTO
CA 22 10 02 18

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA PERSONAL INJURY PROTECTION

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** | JOHN MORIARTY & ASSOCIATES, INC. |
| **Endorsement Effective Date:** | 10/31/2020 |

We agree with the "named insured", subject to all the provisions of this endorsement and to all of the provisions of the Policy except as modified herein, as follows that:

## SCHEDULE

Any Personal Injury Protection deductible shown in the Declarations of

is applicable to ☐ the following "named insured" only:

☐ each "named insured" and each dependent "family member".

☐ Work loss for "named insured" does not apply.

☐ Work loss for "named insured" and dependent "family member" does not apply.

| Benefits | Limit Per Person |
|---|---|
| Total Aggregate Limit for all Personal Injury Protection Benefits, except Death Benefits | $10,000 |
| Death Benefits | $5,000 |
| Medical Expenses | 80% of medical expenses subject to the total aggregate limit and the provisions of Paragraphs **D.2.a.** and **b.** under Limit Of Insurance. |
| Work Loss | 60% of work loss subject to the total aggregate limit |
| Replacement Services Expenses | subject to the total aggregate limit |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Coverage

We will pay Personal Injury Protection benefits in accordance with the Florida Motor Vehicle No-fault Law to or for an "insured" who sustains "bodily injury" in an "accident" arising out of the ownership, maintenance or use of a "motor vehicle". Subject to the limits shown in the Schedule, these Personal Injury Protection benefits consist of the following:

**1. Medical Expenses**

  **a.** All reasonable "medically necessary" expenses for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and rehabilitative services, including prosthetic devices. However, we will pay for these benefits only if the "insured" receives initial services and care within 14 days after the "motor vehicle" "accident" that are:

    **(1)** Lawfully provided, supervised, ordered or prescribed by a licensed physician, dentist or chiropractic physician;

    **(2)** Provided in a hospital or in a facility that owns, or is wholly owned by, a hospital; or

    **(3)** Provided by a person or entity licensed to provide emergency transportation and treatment;

    as authorized by the Florida Motor Vehicle No-fault Law.

  **b.** Upon referral by a licensed health care provider described in Paragraph **A.1.a.(1), (2)** or **(3),** follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to Paragraph **A.1.a.,** if provided, supervised, ordered or prescribed only by a licensed:

    **(1)** Physician, osteopathic physician, chiropractic physician or dentist; or

    **(2)** Physician assistant or advanced registered nurse practitioner, under the supervision of such physician, osteopathic physician chiropractic physician or dentist;

    as authorized by the Florida Motor Vehicle No-fault Law.

  Follow-up services and care may also be provided by:

    **(3)** A licensed hospital or ambulatory surgical center;

    **(4)** An entity wholly owned by one or more licensed physicians, osteopathic physicians, chiropractic physicians or dentists; or by such practitioners and the spouse, parent, child, or sibling of such practitioners;

    **(5)** An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals;

    **(6)** A licensed physical therapist, based upon referral by a provider described in Paragraph **A.1.b.;** or

    **(7)** A health care clinic licensed under the Florida Health Care Clinic Act:

      **(a)** Which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities or the Accreditation Association for Ambulatory Health Care, Inc.; or

      **(b)** Which:

        **(i)** Has a licensed medical director;

        **(ii)** Has been continuously licensed for more than three years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

        **(iii)** Provides at least four of the following medical specialties:

          **i.** General medicine;

          **ii.** Radiography;

          **iii.** Orthopedic medicine;

          **iv.** Physical medicine;

          **v.** Physical therapy;

          **vi.** Physical rehabilitation;

          **vii.** Prescribing or dispensing outpatient prescription medication; or

          **viii.** Laboratory services;

    as authorized by the Florida Motor Vehicle No-fault Law.

However, with respect to Paragraph **A.1.,** medical expenses do not include massage or acupuncture, regardless of the person, entity or licensee providing the massage or acupuncture;

**2. Replacement Services Expenses**

With respect to the period of disability of the injured person, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his or her household;

**3. Work Loss**

With respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person; and

**4. Death Benefits**

**B. Who Is An Insured**

1. The "named insured".

2. If the "named insured" is an individual, any "family member".

3. Any other person while "occupying" a covered "motor vehicle" with the "named insured's" consent.

4. A "pedestrian" if the "accident" involves the covered "motor vehicle".

**C. Exclusions**

We will not pay Personal Injury Protection benefits for "bodily injury":

1. Sustained by the "named insured" or any "family member" while "occupying" any "motor vehicle" owned by the "named insured" that is not a covered "motor vehicle";

2. Sustained by any person while operating the covered "motor vehicle" without the "named insured's" expressed or implied consent;

3. Sustained by any person, if such person's conduct contributed to his or her "bodily injury" under any of the following circumstances:

    **a.** Causing "bodily injury" to himself or herself intentionally; or

    **b.** While committing a felony;

4. To the "named insured" or any "family member" for work loss if an entry in the Schedule or Declarations indicates that coverage for work loss does not apply;

5. To any "pedestrian", other than the "named insured" or any "family member", not a legal resident of the state of Florida;

6. To any person, other than the "named insured", if that person is the "owner" of a "motor vehicle" for which security is required under the Florida Motor Vehicle No-fault Law;

7. To any person, other than the "named insured", or any "family member", who is entitled to personal injury protection benefits from the owner of a "motor vehicle" that is not a covered "motor vehicle" under this insurance or from the "owner's" insurer; or

8. To any person who sustains "bodily injury" while "occupying" a "motor vehicle" located for use as a residence or premises.

**D. Limit Of Insurance**

1. Regardless of the number of persons insured, policies or bonds applicable, premiums paid, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits, available under the Florida Motor Vehicle No-fault Law from all sources combined, including this Policy, for or on behalf of any one person who sustains "bodily injury" as the result of any one "accident", shall be:

    **a.** $10,000 for medical expenses, work loss and replacement services; and

    **b.** $5,000 for death benefits.

2. Subject to Paragraph **D.1.a.**, we will pay:

    **a.** Up to $10,000 for medical expenses, if a licensed physician, dentist, physician assistant or an advanced registered nurse practitioner authorized by the Florida Motor Vehicle No-fault Law has determined that the "insured" had an "emergency medical condition"; or

    **b.** Up to $2,500 for medical expenses, if any health care provider described in Paragraph **A.1.a.** or **A.1.b.** has determined that the "insured" did not have an "emergency medical condition".

3. Any amount paid under this coverage will be reduced by the amount of benefits an injured person has been paid or is entitled to be paid for the same elements of "loss" under any workers' compensation law.

4. If personal injury protection benefits, under the Florida Motor Vehicle No-fault Law, have been received from any insurer for the same elements of loss and expense benefits available under this Policy, we will not make duplicate payments to or for the benefit of the injured person. The insurer paying the benefits shall be entitled to recover from us its pro rata share of the benefits paid and expenses incurred in handling the claim.

5. The deductible amount shown in the Schedule will be deducted from the total amount of expenses and losses listed in Paragraphs **A.1.**, **A.2.** and **A.3.** of this endorsement before the application of any percentage limitation for each "insured" to whom the deductible applies. The deductible does not apply to the death benefit.

6. Any amount paid under this coverage for medical expenses shall be limited by the medical fee schedule prescribed by the Florida Motor Vehicle No-fault Law.

**E. Changes In Conditions**

The **Conditions** are changed for **Personal Injury Protection** as follows:

1. **Duties In The Event Of Accident, Claim, Suit Or Loss** is replaced by the following:

Compliance with the following duties is a condition precedent to receiving benefits:

In the event of an "accident", the "named insured" must give us or our authorized representative prompt written notice of the "accident".

If any injured person or his or her legal representative institutes a legal action to recover damages for "bodily injury" against a third party, a copy of the summons, complaint or other process served in connection with that legal action must be forwarded to us as soon as possible by the injured person or his or her legal representative.

A person seeking personal injury protection benefits must, as soon as possible, give us written proof of claim, under oath if required, containing full particulars concerning the injuries and treatment received and/or contemplated, and send us any other information that will assist us in determining the amount due and payable.

A person seeking personal injury protection benefits must submit to an examination under oath. The scope of questioning during the examination under oath is limited to relevant information or information that could reasonably be expected to lead to relevant information.

2. **Legal Action Against Us** is replaced by the following:

**Legal Action Against Us**

a. No legal action may be brought against us until there has been full compliance with all terms of this Policy. In addition, no legal action may be brought against us:

(1) Until the claim for benefits is overdue in accordance with Paragraph **F.2.** of this endorsement; and

(2) Until we are provided with a demand letter in accordance with the Florida Motor Vehicle No-fault Law sent to us via U.S. certified or registered mail; and

(3) With respect to the overdue claim specified in the demand letter, if, within 30 days of receipt of the demand letter, we:

(a) Pay the overdue claim; or

(b) Agree to pay for future treatment not yet rendered;

in accordance with the requirements of the Florida Motor Vehicle No-fault Law.

b. If legal action is brought against us, all claims related to the same health care provider or facility shall be brought in a single action, unless good cause can be shown why such claims should be brought separately.

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

**Transfer Of Rights Of Recovery Against Others To Us**

Unless prohibited by the Florida Motor Vehicle No-fault Law, in the event of payment to or for the benefit of any injured person under this coverage:

a. We will be reimbursed for those payments, not including reasonable attorneys' fees and other reasonable expenses, from the proceeds of any settlement or judgment resulting from any right of recovery of the injured person against any person or organization legally responsible for the "bodily injury" from which the payment arises. We will also have a lien on those proceeds.

b. If any person to or for whom we pay benefits has rights to recover benefits from another, those rights are transferred to us. That person must do everything necessary to secure our rights and must do nothing after loss to impair them.

c. The insurer providing personal injury protection benefits on a private passenger "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the "owner" or the insurer of the "owner" of a commercial "motor vehicle", as defined in the Florida Motor Vehicle No-fault Law, if such injured person sustained the injury while "occupying", or while a "pedestrian" through being struck by, such commercial "motor vehicle". However, such insurer's right of reimbursement under this Paragraph **c.** does not apply to an "owner" or registrant of a "motor vehicle" used as a taxicab.

4. **Concealment, Misrepresentation Or Fraud** is replaced by the following:

**Concealment, Misrepresentation Or Fraud**

We do not provide coverage under this endorsement for an "insured" if that "insured" has committed, by a material act or omission, insurance fraud relating to personal injury protection coverage under this form, if fraud is admitted to in a sworn statement by the "insured" or if the fraud is established in a court of competent jurisdiction. Any insurance fraud voids all personal injury protection coverage arising from the claim with respect to the "insured" who committed the fraud. Any benefits paid prior to the discovery of the fraud are recoverable from that "insured".

5. **Policy Period, Coverage Territory** is replaced by the following:

**Policy Period, Coverage Territory**

The insurance under this section applies only to "accidents" which occur during the policy period:

a. In the state of Florida;

b. As respects the "named insured" or any "family member", while "occupying" the covered "motor vehicle" outside the state of Florida but within the United States of America, its territories or possessions or Canada; and

c. As respects the "named insured", while "occupying" a "motor vehicle" of which a "family member" is the "owner" and for which security is maintained under the Florida Motor Vehicle No-fault Law outside the state of Florida but within the United States of America, its territories or possessions or Canada.

## F. Additional Conditions

The following conditions are added:

**1. Mediation**

**a.** In any claim filed by an "insured" with us for:

**(1)** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

**(2)** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

**(3)** "Loss" to a covered "auto" or its equipment, in any amount,

either party may make a written demand for mediation of the claim prior to the institution of litigation.

**b.** A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

**c.** The request must state:

**(1)** Why mediation is being requested.

**(2)** The issues in dispute, which are to be mediated.

**d.** The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

**e.** Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

**f.** The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

**2. Payment Of Benefits**

Personal injury protection benefits payable under this Coverage Form, whether the full or partial amount, may be overdue if not paid within 30 days after we are furnished with written notice of the covered loss and the amount of the covered loss in accordance with the Florida Motor Vehicle No-fault Law.

However, if we have a reasonable belief that a fraudulent insurance act has been committed relating to personal injury protection coverage under this Coverage Form, we will notify the "insured" in writing, within 30 days after the submission of the claim, that the claim is being investigated for suspected fraud. No later than 90 days after the submission of the claim, we will either deny or pay the claim, in accordance with the Florida Motor Vehicle No-fault Law.

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, will provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment, has 15 days to submit a revised claim, which will be considered a timely submission of written notice of a claim.

**3. Modification Of Policy Coverages**

Any Automobile Medical Payments Coverage and any Uninsured Motorists Coverage afforded by the Policy shall be excess over any personal injury protection benefits paid or payable.

Regardless of whether the full amount of personal injury protection benefits has been exhausted, any Medical Payments Coverage afforded by the Policy shall pay the portion of any claim for personal injury protection medical expenses which are otherwise covered but not payable due to the limitation of 80% of medical expense benefits but shall not be payable for the amount of the deductible selected.

 © Insurance Services Office, Inc., 2017

**4. Medical Reports And Examinations; Payment Of Claim Withheld**

As soon as practicable, the person making the claim shall submit to mental and physical examinations at our expense when and as often as we may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If the person unreasonably refuses to submit to, or fails to appear at, an examination, we will not be liable for subsequent personal injury protection benefits. Such person's refusal to submit to, or failure to appear at, two examinations, raises a rebuttable presumption that such person's refusal or failure was unreasonable.

Whenever a person making a claim as a result of an injury sustained while committing a felony is charged with committing that felony, we shall withhold benefits until, at the trial level, the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

**5. Provisional Premium**

In the event of any change in the rules, rates, rating plan, premiums or minimum premiums applicable to the insurance afforded, because of an adverse judicial finding as to the constitutionality of any provisions of the Florida Motor Vehicle No-fault Law providing for the exemption of persons from tort liability, the premium stated in the Declarations for any Liability, Medical Payments and Uninsured Motorists insurance shall be deemed provisional and subject to recomputation. If this Policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to the "named insured" pursuant to the Florida Motor Vehicle No-fault Law with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium shown in the Declarations, the "named insured" shall pay to us the excess as well as the amount of any return premium previously credited or refunded.

**6. Special Provisions For Rented Or Leased Vehicles**

Notwithstanding any provision of this coverage to the contrary, if a person is injured while "occupying", or through being struck by, a "motor vehicle" rented or leased under a rental or lease agreement which does not specify otherwise in language required by FLA. STAT. SECTION 627.7263(2) in at least 10-point type on the face of the agreement, the personal injury protection benefits available under the Florida Motor Vehicle No-fault Law and afforded under the lessor's policy shall be primary.

**7. Insured's Right To Personal Injury Protection Information**

**a.** In a dispute between us and an "insured", or between us and an assignee of the "insured's" personal injury protection benefits, we will, upon request, notify such "insured" or assignee that the limits for Personal Injury Protection have been reached. We will provide such information within 15 days after the limits for Personal Injury Protection have been reached.

**b.** If legal action is commenced, we will, upon request, provide an "insured" with a copy of a log of personal injury protection benefits paid by us on behalf of the "insured". We will provide such information within 30 days of receipt of the request for the log from the "insured".

**G. Additional Definitions**

As used in this endorsement:

**1.** "Emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

**a.** Serious jeopardy to "insured's" health;

**b.** Serious impairment to bodily functions; or

**c.** Serious dysfunction of any bodily organ part.

© Insurance Services Office, Inc., 2017

**2.** "Motor vehicle" means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any trailer or semitrailer designed for use with such vehicle.

However, "motor vehicle" does not include:

**a.** A mobile home;

**b.** Any "motor vehicle" which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the motor vehicle and which is owned by a municipality, a transit authority or a political subdivision of the state.

**3.** "Family member" means a person related to the "named insured" by blood, marriage or adoption, including a ward or foster child, who is a resident of the same household as the "named insured".

**4.** "Named insured" means the person or organization named in the Declarations of the Policy and, if an individual, shall include the spouse if a resident of the same household.

**5.** "Occupying" means in or upon or entering into or alighting from.

**6.** "Owner" means a person or organization who holds the legal title to a "motor vehicle" and also includes:

**a.** A debtor having the right to possession, in the event a "motor vehicle" is the subject of a security agreement;

**b.** A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and

**c.** A lessee having the right to possession, in the event a "motor vehicle" is the subject of a lease without option to purchase, and such lease is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

**7.** "Pedestrian" means a person while not an occupant of any self-propelled vehicle.

**8.** "Medically necessary" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing or treating an illness, injury, disease or symptom in a manner that is:

**a.** In accordance with generally accepted standards of medical practice;

**b.** Clinically appropriate in terms of type, frequency, extent, site and duration; and

**c.** Not primarily for the convenience of the patient, physician or other health care provider.

© Insurance Services Office, Inc., 2017

**CA 22 10 02 18**

POLICY NUMBER: 11PKG8931805

**COMMERCIAL AUTO**
**CA 04 44 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| |
|---|
| **Name(s) Of Person(s) Or Organization(s):**<br>ANY PERSON OR ORGANIZATION WHERE WAIVER OF OUR RIGHT TO RECOVER IS PERMITTED BY LAW AND IS REQUIRED BY WRITTEN CONTRACT PROVIDED SUCH CONTRACT WAS EXECUTED PRIOR TO THE LOSS |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The **Transfer Of Rights Of Recovery Against Others To Us** condition does not apply to the person(s) or organization(s) shown in the Schedule, but only to the extent that subrogation is waived prior to the "accident" or the "loss" under a contract with that person or organization.

CA 04 44 10 13                    © Insurance Services Office, Inc., 2011                    **Page 1 of 1**

COMMERCIAL AUTO
CA 04 49 11 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following is added to the **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form and supersedes any provision to the contrary:

This Coverage Form's Covered Autos Liability Coverage is primary to and will not seek contribution from any other insurance available to an "insured" under your policy provided that:

**1.** Such "insured" is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to such "insured".

**B.** The following is added to the **Other Insurance** Condition in the Auto Dealers Coverage Form and supersedes any provision to the contrary:

This Coverage Form's Covered Autos Liability Coverage and General Liability Coverages are primary to and will not seek contribution from any other insurance available to an "insured" under your policy provided that:

**1.** Such "insured" is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to such "insured".

COMMERCIAL AUTO
CA 20 54 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE HIRED AUTOS

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The following is added to the **Who Is An Insured** Provision:

An "employee" of yours is an "insured" while operating an "auto" hired or rented under a contract or agreement in an "employee's" name, with your permission, while performing duties related to the conduct of your business.

**B. Changes In General Conditions**

Paragraph **5.b.** of the **Other Insurance** Condition in the Business Auto and Auto Dealers Coverage Forms and Paragraph **5.f.** of the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are replaced by the following:

For Hired Auto Physical Damage Coverage, the following are deemed to be covered "autos" you own:

**1.** Any covered "auto" you lease, hire, rent or borrow; and

**2.** Any covered "auto" hired or rented by your "employee" under a contract in an "employee's" name, with your permission, while performing duties related to the conduct of your business.

However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

 © Insurance Services Office, Inc., 2011

POLICY NUMBER: 11PKG8931805

**COMMERCIAL AUTO**
**CA 20 56 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FELLOW EMPLOYEE COVERAGE FOR DESIGNATED EMPLOYEES / POSITIONS

This endorsement modifies insurance provided under the following:

      AUTO DEALERS COVERAGE FORM
      BUSINESS AUTO COVERAGE FORM
      MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| **Name Of Person(s), Job Title(s) Or Position(s):** |
|---|
| EXECUTIVE, SUPERVISOR OR MANAGER |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The **Fellow Employee** Exclusion contained under the **Covered Autos Liability Coverage** does not apply to the "employee(s)", job title(s) or position(s) named or listed in the Schedule.

**CA 20 56 10 13**        © Insurance Services Office, Inc., 2011        **Page 1 of 1**

POLICY NUMBER: 11PKG8931805

**COMMERCIAL AUTO**
**CA 20 70 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COVERAGE FOR CERTAIN OPERATIONS
# IN CONNECTION WITH RAILROADS

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIERS COVERAGE FORM

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| Scheduled Railroad | Designated Job Site |
|---|---|
| ANY RAILROAD WHERE REQUIRED BY | AS REQUIRED BY WRITTEN CONTRACT OR |
| WRITTEN CONTRACT OR AGREEMENT | AGREEMENT |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

With respect to the use of a covered "auto" in operations for or affecting a railroad designated in the Schedule at a Designated Job Site, the two exceptions contained in the definition of "insured contract" relating to construction or demolition operations performed within 50 feet of a railroad do not apply.

© Insurance Services Office, Inc., 2011

POLICY NUMBER: 11PKG8931805

**COMMERCIAL AUTO**
**CA 20 71 10 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AUTO LOAN / LEASE GAP COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**Named Insured:**

**Endorsement Effective Date:**

### SCHEDULE

| Vehicle No. | Description Of Loan / Lease "Auto(s)" Which Are Covered "Autos" | Other Than Collision Additional Premium | Collision Additional Premium |
|---|---|---|---|
| | ANY 'AUTO' THAT IS COVERED FOR PHYSICAL DAMAGE IF LOAN/LEASE APPLICABLE | $        INCL | $        INCL |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

**Physical Damage Coverage** is amended by the addition of the following:

In the event of a total "loss" to a covered "auto" shown in the Schedule or Declarations for which a specific premium charge indicates that Auto Loan/Lease GAP Coverage applies, we will pay any unpaid amount due on the lease or loan for a covered "auto", less:

1. The amount paid under the policy's Physical Damage Coverage; and

2. Any:

   a. Overdue lease/loan payments at the time of the "loss";

b. Financial penalties imposed under a lease for excessive use, abnormal wear and tear or high mileage;

c. Security deposits not returned by the lessor;

d. Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease; and

e. Carry-over balances from previous loans or leases.

**CA 20 71 10 13**          © Insurance Services Office, Inc., 2011          **Page 1 of 1**

POLICY NUMBER: 11PKG8931805

COMMERCIAL AUTO
CA 22 46 11 16

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VIRGINIA MEDICAL EXPENSE AND INCOME LOSS BENEFITS ENDORSEMENT

For a covered "auto" licensed or principally garaged in Virginia, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:**   JOHN MORIARTY & ASSOCIATES, INC. | |
| **Endorsement Effective Date:**   10/31/2020 | |

## SCHEDULE

The insurance afforded by this endorsement is only for the coverage(s) indicated by a specific premium charge in the Declarations or in the Schedule.

| Coverages | Limit Of Insurance | | Premium |
|---|---|---|---|
| **Section I**<br>**Medical Expense Benefits** | $10,000 | **Each Person** | INCL |
| **Section II**<br>**Income Loss Benefits** | **$100 Per Week Each Person** | | INCL |
| | **Total Premium** | | INCL |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

## SECTION I – MEDICAL EXPENSE BENEFITS

**A. Coverage**

We will pay, in accordance with Section 38.2-2201 or 46.2-465 of the Virginia Code, to a covered injured person, "medical expense" benefits as a result of "bodily injury" caused by an "accident" and arising out of the ownership, maintenance or use of a motor vehicle as a motor vehicle.

**B. Exclusions**

This insurance does not apply to "bodily injury":

**1.** Sustained by any person who intentionally injures himself or herself;

**2.** Sustained by any person to the extent that benefits for that injury are in whole or in part payable under any workers' compensation or similar law;

**3.** Sustained by the "named insured" or any "family member" while "occupying" any motor vehicle owned by or furnished or available for regular use by such "named insured" or any "family member" and that is not a "covered auto"; or

**4.** Due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or any act or condition incident to war.

**C. Limit Of Insurance**

**1.** Regardless of the number of claims made or "covered autos" to which this insurance applies, the most we will pay for "medical expense" benefits to any "insured" who sustains "bodily injury" in any one "accident" is the Limit Of Insurance for "medical expense" benefits shown in the Schedule or Declarations.

CA 22 46 11 16

© Insurance Services Office, Inc., 2016

Page 1 of 3

**2.** No "insured" will be entitled to collect under "medical expense" Coverage, more than his or her actual "medical expenses" incurred within three years after the date of the "accident", from this or any other automobile insurance policy or combination of those policies providing "medical expense" insurance applicable to that "accident".

## SECTION II – INCOME LOSS BENEFITS

### A. Coverage

We will pay, in accordance with Section 38.2-2201 or 46.2-465 of the Virginia Code, to a covered injured person, "income loss" benefits as a result of "bodily injury" caused by an "accident" and arising out of the ownership, maintenance or use of a motor vehicle.

### B. Exclusions

Exclusions **1.**, **2.**, **3.** and **4.** under Section **I** of this endorsement apply to Section **II.**

### C. Limit Of Insurance

**1.** Regardless of the number of claims made or "covered autos" to which this insurance applies, the most we will pay for "Income Loss" Benefits to any "insured" who sustains "bodily injury" in any one "accident" is the Limit Of Insurance shown in the Schedule or Declarations from the first work day lost as a result of the "accident" up to the date that the "insured" is able to return to his or her usual occupation or the date of death of that "insured", whichever occurs first.

**2.** No "insured" will be entitled to collect more than his or her actual "income loss" sustained within one year after the date of the "accident", from this or any other automobile insurance policy or combination of those policies providing "income loss" benefits insurance applicable to that "accident".

## SECTION III – CONDITIONS

The following Conditions are applicable to both Sections **I** and **II**, except as noted:

### 1. Notice

In the event of an "accident", written notice containing particulars sufficient to identify the "insured", and also reasonably obtainable information respecting the time, place and circumstances of the "accident" must be given by or on behalf of the "insured" to us or our legal representatives as soon as possible.

If an "insured" or his or her legal representative institutes legal action for damages for "bodily injury", he or she must promptly give us a copy of the summons and complaint or other process served in connection with the legal action.

### 2. Legal Action Against Us

No one may bring a legal action against us until there has been full compliance with all the terms of this endorsement.

### 3. Medical Reports; Proof Of Claim

As soon as practicable, the "insured" or someone on his or her behalf must give us written proof of claim, under oath if required, including full particulars of the nature and extent of injuries and treatment received or contemplated. He or she must also furnish us with any other information that may assist us in determining the amount due and payable. The "insured" must submit to physical examinations, at our expense, by physicians we select when and as often as we may require.

The "insured", or in the event of his or her incapacity or death, his or her legal representative, shall upon each of our requests, execute authorization to enable us to obtain medical reports, copies of records and information with respect to loss of income. We may require that the "insured", as a condition for receiving "income loss" benefits, cooperate in furnishing us reasonable medical proof of his or her inability to work.

### 4. Transfer Of Rights Of Recovery Against Others To Us

With respect to Section **II** only, if any person or organization to or for whom we make payment for "income loss" benefits under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

© Insurance Services Office, Inc., 2016

CA 22 46 11 16

**SECTION IV – DEFINITIONS**

As used in this endorsement:

1. "Covered auto" means a motor vehicle with respect to which:

   a. The "named insured" is the owner;

   b. The "bodily injury" liability or "property damage" liability coverage of the Coverage Form applies; and

   c. The insurance provided under this endorsement applies and for which a specific premium has been charged.

2. "Family member" means a person related to the "named insured" by blood, marriage or adoption who is a resident of the "named insured's" household, including a ward or foster child.

3. "Income loss" means an amount equal to the loss of income incurred by an "insured", usually engaged in a remunerative occupation, within one year after the date of the "accident", and as a result of disability caused by the "accident".

4. "Insured" means:

   a. The "named insured" or any "family member" who sustains "bodily injury" while "occupying" a motor vehicle, or if struck by a motor vehicle while not "occupying" a motor vehicle; or

   b. Any other person who sustains "bodily injury" while "occupying" a "covered auto".

5. "Medical expense" means all reasonable and necessary expenses for medical, chiropractic, hospital, x-ray, professional nursing, dental, surgical, prosthetic and rehabilitation services, services provided by an emergency medical services vehicle as defined in Section 32.1-111.1 of the Virginia Code, and funeral expenses, incurred within three years after the date of the "accident".

6. "Named insured" means the individual or organization designated in the Schedule of this endorsement and if not designated therein, means the individual or organization named in Item **1.** of the Declarations of the Policy.

7. "Occupying" means in, upon, getting in, on, out of, off or using.

**SECTION V – MEDICAL EXPENSE AND INCOME LOSS BENEFITS – INDIVIDUAL NAMED INSURED**

If "you" are an individual and a "covered auto" "you" own is of the private passenger type ("private passenger type"), the provisions of this endorsement apply, except that Paragraph **C. Limit Of Insurance** of Section **I** and **II** of this endorsement are replaced by the following:

**C. Limit Of Insurance**

Regardless of the number of "covered autos", "insureds" or claims made, the most we will pay for "bodily injury" for each "insured" injured in any one "accident" shall be determined as follows:

1. If there is only one "covered auto" of the private passenger type ("private passenger type"), the most we will pay is the limit of Medical Expenses and "Income Loss" Benefits shown in the Schedule or Declarations.

2. If there is more than one "covered auto" of the private passenger type ("private passenger type"), our limit of liability is the sum of the highest limits applicable to covered "autos" of the private passenger type ("private passenger type"), subject to a maximum of four such "autos".

© Insurance Services Office, Inc., 2016

**COMMERCIAL AUTO**
**CA 23 25 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COVERAGE FOR INJURY TO LEASED WORKERS

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to the **Employee Indemnification And Employer's Liability** Exclusion only, the definition of "employee" in the **Definitions** section is replaced by the following:

"Employee" does not include a "leased worker" or a "temporary worker".

COMMERCIAL AUTO
CA 23 84 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is enclosed in quotation marks:

   **1.** "Terrorism" means activities against persons, organizations or property of any nature:

   **a.** That involve the following or preparation for the following:

   **(1)** Use or threat of force or violence; or

   **(2)** Commission or threat of a dangerous act; or

   **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

   **b.** When one or both of the following apply:

   **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

   **2.** "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

**B.** Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

   **1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

   © Insurance Services Office, Inc., 2013

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** and **B.6.** are exceeded.

With respect to this exclusion, Paragraphs **B.5.** and **B.6.** describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**C.** With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for any "loss", loss of use or rental reimbursement after "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph **C.5.** is exceeded.

   © Insurance Services Office, Inc., 2013   **CA 23 84 10 13**

With respect to this exclusion, Paragraph **C.5.** describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**D.** In the event of any incident of "terrorism" that is not subject to the exclusion in Paragraph **B.** or **C.,** coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

© Insurance Services Office, Inc., 2013

COMMERCIAL AUTO
CA 23 94 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION FOR COVERED AUTOS EXPOSURE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following exclusion is added to **Covered Autos Liability Coverage:**

**Silica Or Silica-related Dust Exclusion For Covered Autos Exposure**

This insurance does not apply to:

**1.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**2.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**3.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any "insured" or by any other person or entity.

**B. Additional Definitions**

As used in this endorsement:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 © Insurance Services Office, Inc., 2011

COMMERCIAL AUTO
CA 99 03 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who Is An Insured**

**1.** You while "occupying" or, while a pedestrian, when struck by any "auto".

**2.** If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

**3.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

**1.** "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

**2.** "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

**3.** "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

**4.** "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5.** "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

**6.** "Bodily injury" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

   © Insurance Services Office, Inc., 2011

**7.** "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**8.** "Bodily Injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The **Conditions** are changed for **Auto Medical Payments Coverage** as follows:

**1.** The **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply.

**2.** The reference in **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

POLICY NUMBER: 11PKG8931805

**COMMERCIAL AUTO**
**CA 99 10 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DRIVE OTHER CAR COVERAGE –
# BROADENED COVERAGE FOR NAMED INDIVIDUALS

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| Name Of Individual: | | | | | |
|---|---|---|---|---|---|
| JOHN J. MORIARTY | | | | | |
| **Covered Autos Liability** | | | | | |
| **Coverage** | Limit: | $  2,000,000 | **Premium:** | $ | INCL |
| **Auto Medical Payments** | Limit: | $    10,000 | **Premium:** | $ | INCL |
| **Comprehensive** | Deductible: | $   1,000 | **Premium:** | $ | INCL |
| **Collision** | Deductible: | $   1,000 | **Premium:** | $ | INCL |
| **Uninsured Motorists** | Limit: | SEE SCHED | **Premium:** | $ | INCL |
| **Underinsured Motorists** | Limit: | SEE SCHED | **Premium:** | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

**Note:** When Uninsured Motorists Coverage is provided at limits higher than the basic limits required by a financial responsibility law, Underinsured Motorists Coverage is included, unless otherwise noted. If Underinsured Motorists Coverage is provided as a separate coverage, make appropriate entry in the Schedule above.

© Insurance Services Office, Inc., 2011

**A.** This endorsement changes only those coverages where a premium is shown in the Schedule.

**B. Changes In Covered Autos Liability Coverage**

  **1.** Any "auto" you don't own, hire or borrow is a covered "auto" while being used by any individual named in the Schedule or by his or her spouse while a resident of the same household except:

    **a.** Any "auto" owned by that individual or by any member of his or her household.

    **b.** Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

  **2.** The following is added to **Who Is An Insured:**

    Any individual named in the Schedule and his or her spouse, while a resident of the same household, are "insureds" while using any covered "auto" described in Paragraph **B.1.** of this endorsement.

**C. Changes In Auto Medical Payments And Uninsured And Underinsured Motorists Coverages**

The following is added to **Who Is An Insured:**

Any individual named in the Schedule and his or her "family members" are "insureds" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:

Any "auto" owned by that individual or by any "family member".

**D. Changes In Physical Damage Coverage**

Any private passenger type "auto" you don't own, hire or borrow is a covered "auto" while in the care, custody or control of any individual named in the Schedule or his or her spouse while a resident of the same household except:

  **1.** Any "auto" owned by that individual or by any member of his or her household.

  **2.** Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

**E. Additional Definition**

As used in this endorsement:

"Family member" means a person related to the individual named in the Schedule by blood, marriage or adoption who is a resident of the individual's household, including a ward or foster child.

© Insurance Services Office, Inc., 2011

CA 99 10 10 13

POLICY NUMBER: 11PKG8931805

**COMMERCIAL AUTO**
**CA 99 16 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HIRED AUTOS SPECIFIED AS
# COVERED AUTOS YOU OWN

This endorsement modifies insurance provided under the following:

      AUTO DEALERS COVERAGE FORM
      BUSINESS AUTO COVERAGE FORM
      MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| Description Of Auto: |
|---|
| AS PER WRITTEN CONTRACT PROVIDED SUCH CONTRACT WAS EXECUTED PRIOR TO THE DATE OF THE LOSS |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** Any "auto'' described in the Schedule will be considered a covered "auto'' you own and not a covered ''auto'' you hire, borrow or lease.

**B.** **Changes In Covered Autos Liability Coverage**

The following is added to the **Who Is An Insured** provision:

While any covered "auto" described in the Schedule is rented or leased to you and is being used by or for you, its owner or anyone else from whom you rent or lease it is an "insured" but only for that covered ''auto''.

CA 99 16 10 13             © Insurance Services Office, Inc., 2011             **Page 1 of 1**

POLICY NUMBER: 11PKG8931805

**COMMERCIAL AUTO**
CA 99 23 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RENTAL REIMBURSEMENT COVERAGE

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

## SCHEDULE

| Coverage | Designation Or Description Of Covered "Autos" To Which This Insurance Applies | Maximum Payment Each Covered "Auto" | | | Premium |
|---|---|---|---|---|---|
| | | **Any One Day** | **No. Of Days** | **Any One Period** | |
| **Comprehensive** | SYMBOL 2 OWNED AUTOS | $100 | 30 | $ 3,000 | $          INCL |
| **Collision** | SYMBOL 2 OWNED AUTOS | $100 | 30 | $ 3,000 | $          INCL |
| **Specified Causes Of Loss** | | | | | |
| | | | | **Total Premium** | $          INCL |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

**A.** This endorsement provides only those coverages where a premium is shown in the Schedule. It applies only to a covered "auto" described or designated in the Schedule.

**B.** We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductibles apply to this coverage.

**C.** We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

    **1.** The number of days reasonably required to repair or replace the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you.

© Insurance Services Office, Inc., 2011

**2.** The number of days shown in the Schedule.

**D.** Our payment is limited to the lesser of the following amounts:

   **1.** Necessary and actual expenses incurred.

   **2.** The maximum payment stated in the Schedule applicable to "any one day" or "any one period".

**E.** This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

**F.** If "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under the Physical Damage Coverage Extension.

 © Insurance Services Office, Inc., 2011 **CA 99 23 10 13**

**COMMERCIAL AUTO**
**CA 99 33 10 13**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYEES AS INSUREDS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

The following is added to the **Section II – Covered Autos Liability Coverage,** Paragraph **A.1. Who Is An Insured** provision:

Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

POLICY NUMBER: 11PKG8931805

**COMMERCIAL AUTO**
**CA 99 40 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OR EXCESS COVERAGE
# HAZARDS OTHERWISE INSURED

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| |
|---|
| **Designation Or Description Of Covered "Autos" You Own:** |
| ALL AUTOS GARAGED IN MASSACHUSETTS INSURED UNDER A SEPARATE POLICY ISSUED BY US |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

When you do not want **Covered Autos Liability Coverage** to apply to the covered "autos" you own that are designated in this endorsement because you have other insurance, the following provision indicated by an "X" in the ☐ will apply.

X | **Covered Autos Liability Coverage** does not apply.

☐ | **Covered Autos Liability Coverage** does not apply to "bodily injury" or "property damage" occurring before the other insurance ends.

Date other insurance ends:

☐ | **Covered Autos Liability Coverage** does not apply to "bodily injury" or "property damage" occurring before the other insurance ends except to the extent damages exceed the limits of the other insurance. However, the most we will pay is the difference between the Limit of Insurance for Covered Autos Liability Coverage in this Coverage Form and the limits of the other insurance, if this Coverage Form's limits are higher.

Date other insurance ends:                                     and Limits of Insurance:

**COMMERCIAL AUTO**
**CA 99 44 10 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy as allowed by the Cancellation Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy, we will mail you and the loss payee the same advance notice.

**D.** If we make any payments to the loss payee, we will obtain his or her rights against any other party.

COMMERCIAL AUTO
CA 99 48 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLLUTION LIABILITY – BROADENED COVERAGE FOR COVERED AUTOS – BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Covered Autos Liability Coverage** is changed as follows:

1. Paragraph **a.** of the **Pollution** Exclusion applies only to liability assumed under a contract or agreement.

2. With respect to the coverage afforded by Paragraph **A.1.** above, Exclusion **B.6. Care, Custody Or Control** does not apply.

**B. Changes In Definitions**

For the purposes of this endorsement, Paragraph **D.** of the **Definitions** Section is replaced by the following:

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraphs **a.** and **b.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

CA 99 48 10 13                © Insurance Services Office, Inc., 2011                Page 1 of 1

**Policy Number**
**11PKG8931805**

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

**COMMON POLICY CHANGE ENDORSEMENT**

Endorsement No.  001

## ARCH INSURANCE COMPANY

Named Insured  JOHN MORIARTY & ASSOCIATES,          Effective Date: 01-22-21
                                                      12:01 A.M., Standard Time

Agent Name   ALLIANT INSURANCE SERVICES, INC.        Agent No.  18921

This endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured.

**COVERAGE PART INFORMATION — Coverage parts affected by this change as indicated by ☒ below.**

- [ ] Commercial Property
- [X] Commercial General Liability          NO CHARGE
- [ ] Commercial Crime
- [ ] Commercial Inland Marine
- [ ]
- [ ]

The following item(s):

| | |
|---|---|
| [ ] Insured's Name | [ ] Insured's Mailing Address |
| [ ] Policy Number | [ ] Company |
| [ ] Effective/Expiration Date | [ ] Insured's Legal Status/Business of Insured |
| [ ] Payment Plan | [ ] Premium Determination |
| [ ] Additional Interested Parties | [ ] Coverage Forms and Endorsements |
| [ ] Limits/Exposures | [ ] Deductibles |
| [ ] Covered Property/Location Description | [ ] Classification/Class Codes |
| [ ] Rates | [ ] Underlying Exposure/Insurance |

is (are) changed to read  **{See Additional Page(s)}**

```
THE FOLLOWING FORM(S) HAS BEEN AMENDED:
CG 20 10      04-13      ADDL INSD - OWNERS/LESSEES/CONTRACTORS
CG 20 37      04-13      ADDL INSD-OWNERS/LESSEES/CONTR-COMP OPS

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME
```

The above amendments result in a change in the premium as follows:

**This premium does not include taxes and surcharges.**

| [ ] No Changes | [X] To be Adjusted at Audit | Additional NO CHARGE | Return NO CHARGE |
|---|---|---|---|

**Tax and Surcharge Changes**

| Additional | Return |
|---|---|

Countersigned By:

_____

AUTHORIZED AGENT

**FAIC-SKLBUS-COCHG (6/01)**

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| LMP GP HOLDINGS, LLC C/O LEGGAT MCCALL PROPERTIES LLC LMP THORNDIKE, LLC C/O LEGGAT MCCALL PROPERTIES LLC GRANITE PROPERTIES, INC. ST 2008 (DELAWARE) MANAGEMENT, LLC, C/O GRANITE PROPERTIES, INC. LEGGAT MCCALL PROPERTIES LLC | 40 THORNDIKE STREET; CAMBRIDGE MA |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**CG 20 10 04 13**              © Insurance Services Office, Inc., 2012              **Page 1 of 2**

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf.

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| LMP GP HOLDINGS, LLC C/O LEGGAT MCCALL PROPERTIES LLC LMP THORNDIKE, LLC C/O LEGGAT MCCALL PROPERTIES LLC GRANITE PROPERTIES, INC. ST 2008 (DELAWARE) MANAGEMENT, LLC, C/O GRANITE PROPERTIES, INC. LEGGAT MCCALL PROPERTIES LLC | 40 THORNDIKE STREET; CAMBRIDGE MA |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**CG 20 37 04 13**          © Insurance Services Office, Inc., 2012          **Page 1 of 2**

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 **CG 20 37 04 13**

**Policy Number**
**11PKG8931805**

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

**COMMON POLICY CHANGE ENDORSEMENT**

Endorsement No.   002

# ARCH INSURANCE COMPANY

Named Insured   JOHN MORIARTY & ASSOCIATES,        Effective Date:  10-31-20
                                                          12:01 A.M., Standard Time

Agent Name   ALLIANT INSURANCE SERVICES, INC.       Agent No.  18921

This endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured.

**COVERAGE PART INFORMATION — Coverage parts affected by this change as indicated by [x] below.**

| | |
|---|---|
| [ ] Commercial Property | |
| [X] Commercial General Liability | NO CHARGE |
| [ ] Commercial Crime | |
| [ ] Commercial Inland Marine | |
| [X] COMMERCIAL AUTOMOBILE | NO CHARGE |
| [ ] | |

The following item(s):

| | |
|---|---|
| [ ] Insured's Name | [ ] Insured's Mailing Address |
| [ ] Policy Number | [ ] Company |
| [ ] Effective/Expiration Date | [ ] Insured's Legal Status/Business of Insured |
| [ ] Payment Plan | [ ] Premium Determination |
| [ ] Additional Interested Parties | [ ] Coverage Forms and Endorsements |
| [ ] Limits/Exposures | [ ] Deductibles |
| [ ] Covered Property/Location Description | [ ] Classification/Class Codes |
| [ ] Rates | [ ] Underlying Exposure/Insurance |

is (are) changed to read **{See Additional Page(s)}**

SEE NEXT PAGE

The above amendments result in a change in the premium as follows:

**This premium does not include taxes and surcharges.**

| [ ] No Changes | [X] To be Adjusted at Audit | Additional NO CHARGE | Return NO CHARGE |
|---|---|---|---|

**Tax and Surcharge Changes**

| Additional | Return |
|---|---|

Countersigned By:

_____
                                    AUTHORIZED AGENT

**FAIC-SKLBUS-COCHG (6/01)**

**Policy Number**
**11PKG8931805**

**COMMON POLICY CHANGE ENDORSEMENT**

Endorsement No. 002

# ARCH INSURANCE COMPANY

Named Insured   JOHN MORIARTY & ASSOCIATES,

Effective Date: 10-31-20
12:01 A.M., Standard Time

Agent Name   ALLIANT INSURANCE SERVICES, INC.

Agent No. 18921

**POLICY CHANGES ENDORSEMENT DESCRIPTION** (CONT'D)

THE UNINSURED MOTORIST COVERAGE COMBINED SINGLE LIMIT FOR THE STATE
OF CONNECTICUT HAS BEEN CHANGED FROM $50,000 TO $2,000,000.

THE UNDERINSURED MOTORIST COMBINED SINGLE LIMIT FOR THE STATE OF
CONNECTICUT HAS BEEN CHANGED FROM $50,000 TO $2,000,000.

THE UNINSURED MOTORIST COVERAGE COMBINED SINGLE LIMIT FOR THE STATE
OF VIRGINIA HAS BEEN CHANGED FROM $70,000 TO $2,000,000.

THE UNDERINSURED MOTORIST COMBINED SINGLE LIMIT FOR THE STATE OF
VIRGINIA HAS BEEN CHANGED FROM $70,000 TO $2,000,000.

THE FOLLOWING FORM(S) HAS BEEN AMENDED:
CG 20 12      04-13      ADDL INS-ST,GOV AGY,SUB,POL SUB-PERM

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME

**REMOVAL PERMIT**

If this policy includes the Commercial Property Coverage Part, the following applies with respect to the Coverage Part:

If Covered Property is removed to a new location that is described on this Policy Change, you may extend this insurance to include that Covered Property at each location during the removal.  Coverage at each location will apply in the proportion that the value at each location bears to the value of all Covered Property being removed.  This permit applies up to 10 days after the effective date of this Policy Change; after that, this insurance does not apply at the previous location.

**FAIC-SKLBUS-COCHG (6/01)**

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 12 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **State Or Governmental Agency Or Subdivision Or Political Subdivision:** |
| ALL PARTIES WHERE REQUIRED BY CONTRACT OR AGREEMENT |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

**Policy Number**
**11PKG8931805**

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

**COMMON POLICY CHANGE ENDORSEMENT**

Endorsement No.   003

# ARCH INSURANCE COMPANY

Named Insured   JOHN MORIARTY & ASSOCIATES,    Effective Date:  10-31-20
12:01 A.M., Standard Time

Agent Name   ALLIANT INSURANCE SERVICES, INC.    Agent No.  18921

This endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured.

**COVERAGE PART INFORMATION — Coverage parts affected by this change as indicated by [x] below.**

| | |
|---|---|
| [ ] Commercial Property | |
| [X] Commercial General Liability | NO CHARGE |
| [ ] Commercial Crime | |
| [ ] Commercial Inland Marine | |
| [X] COMMERCIAL AUTOMOBILE | NO CHARGE |
| [ ] | |

The following item(s):

| | |
|---|---|
| [ ] Insured's Name | [X] Insured's Mailing Address |
| [ ] Policy Number | [ ] Company |
| [ ] Effective/Expiration Date | [ ] Insured's Legal Status/Business of Insured |
| [ ] Payment Plan | [ ] Premium Determination |
| [ ] Additional Interested Parties | [ ] Coverage Forms and Endorsements |
| [ ] Limits/Exposures | [ ] Deductibles |
| [ ] Covered Property/Location Description | [ ] Classification/Class Codes |
| [ ] Rates | [ ] Underlying Exposure/Insurance |

is (are) changed to read **{See Additional Page(s)}**

SEE NEXT PAGE

The above amendments result in a change in the premium as follows:

**This premium does not include taxes and surcharges.**

| [ ] No Changes | [X] To be Adjusted at Audit | Additional NO CHARGE | Return NO CHARGE |
|---|---|---|---|

**Tax and Surcharge Changes**

Additional                                                          Return

Countersigned By:

_____
AUTHORIZED AGENT

**FAIC-SKLBUS-COCHG (6/01)**

**Policy Number**
**11PKG8931805**

**COMMON POLICY CHANGE ENDORSEMENT**

Endorsement No.  003

## ARCH INSURANCE COMPANY

Named Insured  JOHN MORIARTY & ASSOCIATES,

Effective Date:  10-31-20
12:01 A.M., Standard Time

Agent Name  ALLIANT INSURANCE SERVICES, INC.

Agent No.  18921

**POLICY CHANGES ENDORSEMENT DESCRIPTION** (CONT'D)

```
THE INSURED ADDRESS HAS BEEN CHANGED FROM:
3 CHURCH STREET
WINCHESTER, MA  01890
TO:
3 CHURCH STREET  SUITE 2
WINCHESTER, MA  01890

THE UNINSURED MOTORIST COVERAGE COMBINED SINGLE LIMIT FOR THE STATE
OF FLORIDA HAS BEEN CHANGED FROM $1,000,000 TO $2,000,000.

THE UNDERINSURED MOTORIST COMBINED SINGLE LIMIT FOR THE STATE OF
FLORIDA HAS BEEN CHANGED FROM $1,000,000 TO $2,000,000.

THE FOLLOWING FORM(S) HAS BEEN AMENDED:
00GL0472000614   06-14    BROAD FORM NAMED INSURED-DESIGNATED END
CG 20 10        04-13    ADDL INSD - OWNERS/LESSEES/CONTRACTORS
CG 20 10        10-01    ADDL INSD - OWNERS/LESSEES/CONTRACTORS
CG 20 37        04-13    ADDL INSD-OWNERS/LESSEES/CONTR-COMP OPS
CG 20 37        10-01    ADDL INSD-OWNERS/LESSEES/CONTR-COMP OPS

THE FOLLOWING FORM(S) HAS BEEN AMENDED:
00 CA0087 00    06-08    BROAD FORM NAMED INSURED - DESIGNATED
AU-DEC C/W CONT 10-13    BUSINESS AUTO COVERAGE FORM DECLARATIONS
CA 20 01        10-13    ADDL INSD-LESSOR
CA 21 72        06-17    FL UNINSURED MOTORISTS COV - NON STACKED
MCS 90          03-20    MOTOR CARRIER PUBLIC LIABILITY

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME
```

**REMOVAL PERMIT**

If this policy includes the Commercial Property Coverage Part, the following applies with respect to the Coverage Part:

If Covered Property is removed to a new location that is described on this Policy Change, you may extend this insurance to include that Covered Property at each location during the removal.  Coverage at each location will apply in the proportion that the value at each location bears to the value of all Covered Property being removed.  This permit applies up to 10 days after the effective date of this Policy Change; after that, this insurance does not apply at the previous location.

**FAIC-SKLBUS-COCHG (6/01)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## BROAD FORM NAMED INSURED - DESIGNATED ENDORSEMENT

This Endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

It is hereby agreed that Item 1. of the Declarations is amended to include the following entity as a Named Insured:

```
JOHN MORIARTY & ASSOCIATES OF VIRGINIA LLC
WINCHESTER CONCRETE & CARPENTRY, INC.
WINCHESTER CHURCH STREET LIMITED PARTNERSHIP
BRAMHALL PARTNERS, LIMITED PARTNERSHIP
BRAMHALL COMPANY, INC.
MORIARTY HOLDINGS, INC.
JMA COMPANY
JOHN MORIARTY & ASSOCIATES SOUTHEAST, LLC
AMERICARIBE-MORIARTY JV
MCT PARK STREET, LLC
WINCHESTER MECHANICAL CORPORATION, INC.
WINCHESTER AIR, INC.
584 MAIN STREET LLC
585 MAIN STREET LLC
JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC.
JOHN MORIARTY & ASSOCIATES, INC. 401K RETIREMENT PLAN
OH NBH MORIARTY / JANEY VENTURE LLC
```

And all subsidiary corporations and all affiliated or subsidiary companies now existing or hereinafter acquired or formed and any other legal entity in which you have more than fifty percent (50%) ownership or over which you exercise management or financial control and all partnerships in which the named insured or its subsidiaries have more than fifty percent (50%) ownership interest.

The person or organization first named in Item 1 of the Declarations, by acceptance of this policy, is authorized to act and agrees to act on behalf of all persons or organizations insured under the policy with respect to all matters pertaining to the insurance afforded by the policy, including the giving or receipt of notice of cancellation, the payment of premiums and deductibles, and the receiving of return premiums, if any.

The insurance provided by this endorsement remains subject to paragraph **3.** under **SECTION II – WHO IS AN INSURED** regarding newly acquired or formed organizations.  Further, nothing in this endorsement shall be construed to affect any of our rights to amend the policy premium during the policy period upon the acquisition of a new subsidiary or other entity by the Named Insured.  The first Named Insured shall report to us, as soon as practicable, any acquisitions, dissolution, mergers or ownership changes that occur at any time throughout the policy period.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 003

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this Policy unless

otherwise stated herein: Endorsement Effective Date: 10-31-2020

00 GL0472 00 06 14

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| ALL PARTIES WHERE REQUIRED BY CONTRACT OR AGREEMENT | ALL PARTIES WHERE REQUIRED BY CONTRACT OR AGREEMENT |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

  **1.** Your acts or omissions; or

  **2.** The acts or omissions of those acting on your behalf.

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

  **1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

  **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

  **1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

  **2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

  **1.** Required by the contract or agreement; or

  **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

POLICY NUMBER:  11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Name of Person or Organization:** |
| --- |
| ALL PARTIES WHERE THIS EDITION DATE IS REQUIRED BY CONTRACT OR AGREEMENT |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

**B.** With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2. Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| ALL PARTIES WHERE REQUIRED BY CONTRACT OR AGREEMENT | ALL PARTIES WHERE REQUIRED BY CONTRACT OR AGREEMENT |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**CG 20 37 04 13**

© Insurance Services Office, Inc., 2012

**Page 1 of 2**

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 **CG 20 37 04 13**

POLICY NUMBER:  11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 37 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

  COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name of Person or Organization:**<br><br> ALL PARTIES WHERE THIS EDITION DATE IS REQUIRED BY CONTRACT OR AGREEMENT |
| **Location And Description of Completed Operations:**<br>WHERE REQUIRED BY CONTRACT OR AGREEMENT |
| **Additional Premium:** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS**

| COVERED AUTOS LIABILITY COVERAGE – Cost Of Hire Rating Basis for Autos Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| **COVERED AUTOS LIABILITY COVERAGE** | **STATE** | **ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE** | **PREMIUM** |
| Primary Coverage | | | |
| Excess Coverage | | | |
| | | **TOTAL HIRED AUTO PREMIUM** | |

For "autos" used in your motor carrier operations, cost of hire means:

1. The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers), and if not included therein,

2. The total remunerations of all operators and drivers' helpers, of hired automobiles whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and

3. The total dollar amount of any other costs (*i.e.*, repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

| COVERED AUTOS LIABILITY COVERAGE – Cost Of Hire Rating Basis for Autos NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| **COVERED AUTOS LIABILITY COVERAGE** | **STATE** | **ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE** | **PREMIUM** |
| Primary Coverage | | | |
| Excess Coverage | ALL | IF ANY | INCL |
| | | **TOTAL HIRED AUTO PREMIUM** | INCL |

For "autos" **NOT** used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**AU-DEC C/W  10 13**

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)**

| Physical Damage Coverages – Cost Of Hire Rating Basis For All Autos (Other Than Mobile or Farm Equipment) | | | | |
|---|---|---|---|---|
| **COVERAGE** | **STATE** | **LIMIT OF INSURANCE** | **ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE (Excluding Autos Hired With A Driver)** | **PREMIUM** |
| **COMPREHENSIVE** | ALL | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000 DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | IF ANY | INCL |
| **SPECIFIED CAUSES OF LOSS** | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS          DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | | |
| **COLLISION** | ALL | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000 DEDUCTIBLE FOR EACH COVERED AUTO. | IF ANY | INCL |
| | | | **TOTAL HIRED AUTO PREMIUM** | INCL |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**BROAD FORM NAMED INSURED - DESIGNATED ENDORSEMENT**

This Endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

It is hereby agreed that Item 1. of the Declarations is amended to include the following entity as a Named Insured:

```
JOHN MORIARTY & ASSOCIATES OF VIRGINIA LLC
WINCHESTER CONCRETE & CARPENTRY, INC.
WINCHESTER CHURCH STREET LIMITED PARTNERSHIP
BRAMHALL PARTNERS, LIMITED PARTNERSHIP
BRAMHALL COMPANY, INC.
MORIARTY HOLDINGS, INC.
JMA COMPANY
JOHN MORIARTY & ASSOCIATES SOUTHEAST, LLC
AMERICARIBE-MORIARTY JV
MCT PARK STREET, LLC
WINCHESTER MECHANICAL CORPORATION, INC.
WINCHESTER AIR, INC.
JOHN MORIARTY & ASSOCIATES OF FLORIDA, INC.
OH NBH MORIARTY / JANEY VENTURE LLC
```

And all subsidiary corporations and all affiliated or subsidiary companies now existing or hereinafter acquired or formed and any other legal entity in which you have more than fifty percent (50%) ownership or over which you exercise management or financial control and all partnerships in which the named insured or its subsidiaries have more than fifty percent (50%) ownership interest.

The person or organization first named in Item 1 of the Declarations, by acceptance of this policy, is authorized to act and agrees to act on behalf of all persons or organizations insured under the policy with respect to all matters pertaining to the insurance afforded by the policy, including the giving or receipt of notice of cancellation, the payment of premiums and deductibles, and the receiving of return premiums, if any.

Nothing in this endorsement shall be construed to affect any of our rights to amend the policy premium during the policy period upon the acquisition of a new subsidiary or other entity by the Named Insured. The first Named Insured shall report to us, as soon as practicable, any acquisitions, dissolution, mergers or ownership changes that occur at any time throughout the policy period.

All other terms and conditions of this policy remain unchanged.

Endorsement Number: 003

Policy Number: 11PKG8931805

Named Insured: JOHN MORIARTY & ASSOCIATES, INC.

This endorsement is effective on the inception date of this policy unless otherwise stated

herein. Endorsement Effective Date: 10-31-20

00 CA0087 00 06 08                                                                                          Page 1 of 1

POLICY NUMBER: 11PKG8931805

**COMMERCIAL AUTO**
**CA 20 01 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LESSOR – ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| | | |
|---|---|---|
| **Insurance Company:** | ARCH INSURANCE COMPANY | |
| **Policy Number:** 11PKG8931805 | | **Effective Date:** 10-31-2020 |
| **Expiration Date:** 10-31-2021 | | |
| **Named Insured:** JOHN MORIARTY & ASSOCIATES, | | |
| **Address:** 3 CHURCH STREET<br>WINCHESTER | MA | 01890- |
| **Additional Insured (Lessor):**<br>**Address:** | ANY PERSON OR ORGANIZATION WHERE REQUIRED IN A WRITTEN CONTRACT THAT SUCH PERSON OR ORGANIZATION IS AN ADDITIONAL INSURED ON THIS POLICY. | |
| **Designation Or Description Of "Leased Autos":** | ANY LEASED AUTO AS DEFINED IN E. ADDITIONAL DEFINITION BELOW. | |

© Insurance Services Office, Inc., 2011

| Coverages | Limit Of Insurance |
|---|---|
| **Covered Autos Liability** | $  2,000,000          Each "Accident" |
| **Comprehensive** | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus<br>$       1,000          Deductible For Each Covered "Leased Auto" |
| **Collision** | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus<br>$       1,000          Deductible For Each Covered "Leased Auto" |
| **Specified<br>Causes Of Loss** | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus<br>Deductible For Each Covered "Leased Auto" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, the **Who Is An Insured** provision under **Covered Autos Liability Coverage** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

 © Insurance Services Office, Inc., 2011 CA 20 01 10 13

| USDOT Number:_____ Date Received: _____ |

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this information collection is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.



United States Department of Transportation
**Federal Motor Carrier Safety Administration**

### Endorsement for Motor Carrier Policies of Insurance for Public Liability
### under Sections 29 and 30 of the Motor Carrier Act of 1980

# FORM MCS-90

Issued to **JOHN MORIARTY & ASSOCIATES, INC.** of FLORIDA
*(Motor Carrier name)*                                                                                   *(Motor Carrier state or province)*

Dated at 12:00 NOON on this 11TH day of DECEMBER ,2020

**Amending Policy Number:** 11PKG8931805 **Effective Date:** 10-31-2020

**Name of Insurance Company:** ARCH INSURANCE COMPANY

**Countersigned by:** _____
*(authorized company representative)*

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown *(check only one)*:

☒ *This insurance is primary and the company shall not be liable for amounts in excess of* $2,000,000 *for each accident.*
☐ *This insurance is excess and the company shall not be liable for amounts in excess of   for each accident in excess of the underlying limit of   for each accident.*

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA , to verify that the policy is in force as of a particular date. The telephone number to  call is: (651) 855-7178.

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington,  DC).

*(continued on next page)*

# DEFINITIONS AS USED IN THIS ENDORSEMENT

*Accident* includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

*Motor Vehicle* means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

*Bodily Injury* means injury to the body, sickness, or disease to any person, including death resulting from any of these.

*Property Damage* means damage to or loss of use of tangible property.

*Environmental Restoration* means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

*Public Liability* means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

*(continued on next page)*

## SCHEDULE OF LIMITS — PUBLIC LIABILITY

| Type of carriage | Commodity transported | January 1, 1985 |
|---|---|---|
| **(1)** For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous) | $750,000 |
| **(2)** For-hire and Private (in interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| **(3)** For-hire and Private (in interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| **(4)** For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

*The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

POLICY NUMBER: 11PKG8931805

COMMERCIAL AUTO
CA 21 72 06 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA UNINSURED MOTORISTS
# COVERAGE – NONSTACKED

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Florida, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:**   JOHN MORIARTY & ASSOCIATES, INC. | |
| **Endorsement Effective Date:**   10/31/2020 | |

**SCHEDULE**

| | |
|---|---|
| **Limit Of Insurance:**   $2,000,000 | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", we will pay under this coverage only if Paragraph **a.** or **b.** below applies:

    **a.** The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

    **b.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

    **(1)** Have been given prompt written notice of such tentative settlement; and

    **(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

    **a.** The Named Insured and any "family members".

CA 21 72 06 17

© Insurance Services Office, Inc., 2016

Page 1 of 5

**b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

**a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to:

**1.** Any claim settled or judgment reached without our consent, unless our right to recover payment has not been prejudiced by such settlement or judgment. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle".

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**4.** "Bodily injury" sustained by:

**a.** An individual Named Insured while "occupying" or when struck by a vehicle owned by that individual Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this coverage form;

**b.** Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this coverage form;

**c.** Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other coverage form or policy; or

**d.** Any "insured" with respect to damages for pain, suffering, mental anguish or inconvenience unless the "bodily injury" consists in whole or in part of:

**(1)** Significant and permanent loss of an important bodily function;

**(2)** Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

**(3)** Significant and permanent scarring or disfigurement; or

**(4)** Death.

**5.** Punitive or exemplary damages.

**6.** "Bodily injury" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Schedule or Declarations.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Liability Coverage form, No-fault Coverage endorsement, Medical Payments Coverage endorsement, or Uninsured Motorists Coverage endorsement attached to this Coverage Part.

**3.** We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

**4.** We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

© Insurance Services Office, Inc., 2016

**E. Changes In Conditions**

The Conditions are changed for Uninsured Motorists Coverage Nonstacked as follows:

**1. Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

**a.** If there is other applicable insurance available under one or more coverage forms, policies or provisions of coverage, any recovery for damages sustained by an individual Named Insured or any "family member":

**(1)** While "occupying" a vehicle owned by that Named Insured or any "family member" may equal, but not exceed, the limit of insurance for Uninsured Motorists Coverage applicable to that vehicle.

**(2)** While "occupying" a vehicle not owned by that Named Insured or any "family member" may equal, but not exceed, the sum of:

**(a)** The limit of insurance for Uninsured Motorists Coverage applicable to the vehicle such Named Insured or any "family member" was "occupying" at the time of the "accident"; and

**(b)** The highest limit of insurance for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to such Named Insured or any "family member".

**(3)** While not "occupying" any vehicle may equal, but not exceed, the highest limit of insurance for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to an individual Named Insured or any "family member".

**b.** Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any collectible uninsured motorists insurance providing coverage on a primary basis.

**c.** If the coverage under this coverage form is provided:

**(1)** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

**(2)** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved; and

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**c.** A person seeking Uninsured Motorists Coverage must also promptly notify us in writing by certified or registered mail of a tentative settlement between the "insured" and the insurer of the vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle".

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to Uninsured Motorists Coverage if we:

**a.** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of an "uninsured motor vehicle"; and

© Insurance Services Office, Inc., 2016

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

**b.** We also have a right to recover the advanced payment.

**4.** The following condition is added:

**a. Arbitration**

**(1)** If we and an "insured" do not agree:

**(a)** Whether that person is legally entitled to recover damages under this endorsement; or

**(b)** As to the amount of damages that are recoverable by that person;

then the matter may be mediated, in accordance with the Mediation Provision contained in General Conditions, if the damages resulting from "bodily injury" are for $10,000 or less, or arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**(2)** Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**(3)** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**b. Florida Arbitration Act**

If we and an "insured" agree to arbitration, the **Florida Arbitration Act** will not apply.

**c. Mediation**

**(1)** In any claim filed by an "insured" with us for:

**(a)** "Bodily injury" in an amount of $10,000 or less, arising out of the ownership, operation, use or maintenance of a covered "auto";

**(b)** "Property damage" in any amount, arising out of the ownership, operation, maintenance or use of a covered "auto"; or

**(c)** "Loss" to a covered "auto" or its equipment, in any amount;

either party may make a written demand for mediation of the claim prior to the institution of litigation.

**(2)** A written request for mediation must be filed with the Florida Department of Financial Services on an approved form, which may be obtained from the Florida Department of Financial Services.

**(3)** The request must state:

**(a)** Why mediation is being requested.

**(b)** The issues in dispute, which are to be mediated.

**(4)** The Florida Department of Financial Services will randomly select mediators. Each party may reject one mediator, either before or after the opposing side has rejected a mediator. The mediator will notify the parties of the date, time and place of the mediation conference. The mediation conference will be held within 45 days of the request for mediation. The conference will be held by telephone, if feasible. Participants in the mediation conference must have the authority to make a binding decision, and must mediate in good faith. Each party will bear the expenses of the mediation equally, unless the mediator determines that one party has not mediated in good faith.

**(5)** Only one mediation may be requested for each claim unless all parties agree to further mediation. A party demanding mediation shall not be entitled to demand or request mediation after a suit is filed relating to the same facts already mediated.

 © Insurance Services Office, Inc., 2016 **CA 21 72 06 17**

**(6)** The mediation shall be conducted as an informal process and formal rules of evidence and procedures need not be observed.

## F. Additional Definitions

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

**a.** For which no liability bond or policy applies at the time of an "accident";

**b.** That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which a "bodily injury" liability bond or policy applies at the time of an "accident" but the amount paid under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages caused by the "accident";

**c.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

**d.** For which neither the driver nor owner can be identified. The land motor vehicle or "trailer" must:

**(1)** Hit an individual Named Insured or any "family member", a covered "auto" or a vehicle such Named Insured or any "family member" is "occupying"; or

**(2)** Cause an "accident" resulting in "bodily injury" to an individual Named Insured or any "family member" without hitting that Named Insured, any "family member", a covered "auto" or a vehicle such Named Insured or any "family member" is "occupying".

If there is no physical contact with the land motor vehicle or "trailer", the facts of the "accident" must be proved. We will only accept competent evidence other than the testimony of a person making claims under this or any similar coverage.

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned by a governmental unit or agency;

**b.** Designed for use mainly off public roads while not on public roads; or

**c.** Owned by or furnished or available for the regular use of the Named Insured, or if the Named Insured is an individual, any "family member" unless it is a covered "auto" to which the coverage form's Liability Coverage applies and liability coverage is excluded for any person or organization other than the Named Insured, or if the Named Insured is an individual, any "family member".

**Policy Number**
**11PKG8931805**

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY.**

**COMMON POLICY CHANGE ENDORSEMENT**

Endorsement No.  004

# ARCH INSURANCE COMPANY

Named Insured   JOHN MORIARTY & ASSOCIATES,          Effective Date:  10-31-20
                                                                  12:01 A.M., Standard Time

Agent Name   ALLIANT INSURANCE SERVICES, INC.          Agent No.  18921

This endorsement will not be used to decrease coverages, increase rates or deductibles or alter any terms or conditions of coverage unless at the sole request of the insured.

**COVERAGE PART INFORMATION — Coverage parts affected by this change as indicated by [X] below.**

| | |
|---|---|
| [ ] | Commercial Property |
| [X] | Commercial General Liability                NO CHARGE |
| [ ] | Commercial Crime |
| [ ] | Commercial Inland Marine |
| [X] | COMMERCIAL AUTOMOBILE                        NO CHARGE |
| [ ] | |

The following item(s):

| | | |
|---|---|---|
| [ ] Insured's Name | [ ] Insured's Mailing Address |
| [ ] Policy Number | [ ] Company |
| [ ] Effective/Expiration Date | [ ] Insured's Legal Status/Business of Insured |
| [ ] Payment Plan | [ ] Premium Determination |
| [ ] Additional Interested Parties | [ ] Coverage Forms and Endorsements |
| [ ] Limits/Exposures | [ ] Deductibles |
| [ ] Covered Property/Location Description | [ ] Classification/Class Codes |
| [ ] Rates | [ ] Underlying Exposure/Insurance |

is (are) changed to read **{See Additional Page(s)}**

```
THE FOLLOWING FORM(S) HAS BEEN AMENDED:
CG 20 18      04-13    ADDL INSD-MORTGAGEE ASSIGNEE OR RECEIVER
CG 20 28      04-13    ADDL INSD-LESSOR OF LEASED EQUIPMENT

THE FOLLOWING FORM(S) HAS BEEN AMENDED:
AU-DEC C/W      10-13    BUSINESS AUTO COVERAGE FORM DECLARATIONS
AU-DEC C/W CONT 10-13    BUSINESS AUTO COVERAGE FORM DECLARATIONS
```

The above amendments result in a change in the premium as follows:

**This premium does not include taxes and surcharges.**

| [ ] No Changes | [X] To be Adjusted at Audit | Additional NO CHARGE | Return NO CHARGE |
|---|---|---|---|

**Tax and Surcharge Changes**

Additional                                                    Return

Countersigned By:

_____
                                                    AUTHORIZED AGENT

**FAIC-SKLBUS-COCHG (6/01)**

**Policy Number**
**11PKG8931805**

**COMMON POLICY CHANGE ENDORSEMENT**

Endorsement No.   004

# ARCH INSURANCE COMPANY

Named Insured    JOHN MORIARTY & ASSOCIATES,

Effective Date:  10-31-20
12:01 A.M., Standard Time

Agent Name    ALLIANT INSURANCE SERVICES, INC.

Agent No.   18921

**POLICY CHANGES ENDORSEMENT DESCRIPTION (CONT'D)**

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME

**REMOVAL PERMIT**

If this policy includes the Commercial Property Coverage Part, the following applies with respect to the Coverage Part:

If Covered Property is removed to a new location that is described on this Policy Change, you may extend this insurance to include that Covered Property at each location during the removal. Coverage at each location will apply in the proportion that the value at each location bears to the value of all Covered Property being removed. This permit applies up to 10 days after the effective date of this Policy Change; after that, this insurance does not apply at the previous location.

**FAIC-SKLBUS-COCHG (6/01)**

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| ALL PARTIES WHERE REQUIRED BY CONTRACT OR AGREEMENT. | WHERE REQUIRED BY CONTRACT OR AGREEMENT |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

POLICY NUMBER: 11PKG8931805

**COMMERCIAL GENERAL LIABILITY**
**CG 20 28 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| ALL PARTIES WHERE REQUIRED BY CONTRACT OR AGREEMENT. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**POLICY NUMBER:**     11PKG8931805                                              **COMMERCIAL AUTO**

**ARCH INSURANCE COMPANY**

# BUSINESS AUTO DECLARATIONS

**ITEM ONE**

---

**PRODUCER:**
ALLIANT INSURANCE SERVICES, INC.

---

**NAMED INSURED:**     JOHN MORIARTY & ASSOCIATES, INC.

**MAILING ADDRESS:**    3 CHURCH STREET
                        SUITE 2
                        WINCHESTER, MA 01890

**POLICY PERIOD:**      From  10-31-2020  to  10-31-2021  at 12:01 A.M. Standard Time at your
                                                          mailing address shown above

**PREVIOUS POLICY NUMBER:**   11PKG8931804

**FORM OF BUSINESS:**

[X] CORPORATION          [ ] LIMITED LIABILITY COMPANY          [ ] INDIVIDUAL
[ ] PARTNERSHIP          [ ] OTHER    _____

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| Premium shown is payable at inception:   $      42,352 | | | | |
|---|---|---|---|---|
| AUDIT PERIOD (IF APPLICABLE) [X] | ANNUALLY | SEMI-ANNUALLY | QUARTERLY | MONTHLY |

**ENDORSEMENTS ATTACHED TO THIS POLICY:**
   **IL 00 17** — Common Policy Conditions (**IL 01 46** in Washington)
   **IL 00 21** — Broad Form Nuclear Exclusion (not Applicable in New York) (**IL 01 98** in Washington)

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

---

COUNTERSIGNED  _____  BY  _____
                          (Date)                                (Authorized Representative)

**AU-DEC C/W  10 13**                                                          **Page  1**

**ITEM TWO**

**Schedule Of Coverages And Covered Autos**
This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos section of the Business Auto Coverage Form next to the name of the coverage.**

| COVERAGES | COVERED AUTOS | LIMIT | PREMIUM |
|---|---|---|---|
| COVERED AUTOS LIABILITY | 1 | $2,000,000 | SEE |
| PERSONAL INJURY PROTECTION (or equivalent No-fault Coverage) | 5 | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS DEDUCTIBLE. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent Added No-fault Coverage) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT. | PREMIUM |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | SEPARATELY STATED IN THE PROPERTY PROTECTION INSURANCE ENDORSEMENT MINUS DEDUCTIBLE FOR EACH ACCIDENT. | |
| AUTO MEDICAL PAYMENTS | 2 | $ 10,000 EACH INSURED | COMPUTATION |
| MEDICAL EXPENSE AND INCOME LOSS BENEFITS (Virginia only) | 2 | SEPARATELY STATED IN THE MEDICAL EXPENSE AND INCOME LOSS BENEFITS ENDORSEMENT. | |
| UNINSURED MOTORISTS | 2 | $ 2,000,000 | ENDORSEMENT |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2 | $ 2,000,000 | |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 2,8 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000 DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. See ITEM FOUR For Hired or Borrowed Autos. | FOR PREMIUM |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. See ITEM FOUR For Hired Or Borrowed Autos. | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 2,8 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS $ 1,000 DEDUCTIBLE, FOR EACH COVERED AUTO. See ITEM FOUR For Hired Or Borrowed Autos. | DETAILS |
| PHYSICAL DAMAGE TOWING AND LABOR | 3 | $250 FOR EACH DISABLEMENT OF A PRIVATE PASSENGER AUTO. | |
| | | TAX / SURCHARGE / FEE | |
| | | PREMIUM FOR ENDORSEMENTS | |
| | | *ESTIMATED TOTAL PREMIUM | |

*This policy may be subject to final audit.

**AU-DEC C/W  10 13**                                                                 **Page  2**