# EXHIBIT 29



# Important Notice - In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President

Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**   Your agent or broker is best equipped to provide information about your insurance.   Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours:  8 a.m. - 4 p.m. [CT])
**Email:** info.source@zurichna.com

**Insured Name:**   JOHN MORIARTY & ASSOCIATES INC.

**Policy Number:**   AEC 9826955-09
**Effective Date:**   10/31/2020



## THIS DISCLOSURE IS ATTACHED TO AND MADE PART OF YOUR POLICY.

# DISCLOSURE OF IMPORTANT INFORMATION RELATING TO TERRORISM RISK INSURANCE ACT

### SCHEDULE*

Premium attributable to risk of loss from certified acts of terrorism for lines of insurance subject to TRIA:

$1,388

*Any information required to complete this Schedule, if not shown above, will be shown in the Declarations.

### A. Disclosure of Premium

In accordance with the federal Terrorism Risk Insurance Act ("TRIA"), as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of premium attributable is shown in the Schedule above. The premium shown in the Schedule above is subject to adjustment upon premium audit, if applicable.

### B. Disclosure of Federal Participation in Payment of Terrorism Losses

You should know that where coverage is provided by this policy for losses resulting from certified acts of terrorism, the United States Government may pay up to 80% of insured losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

### C. Disclosure of $100 Billion Cap on All Insurer and Federal Obligations

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year (January 1 through December 31) and an insurer has met its deductible under the program, that insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

### D. Availability

As required by TRIA, we have made available to you for lines subject to TRIA coverage for losses resulting from acts of terrorism certified under TRIA with terms, amounts and limitations that do not differ materially from those for losses arising from events other than acts of terrorism.

### E. Definition of Act of Terrorism under TRIA

TRIA defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.** To be an act of terrorism;

**2.** To be a violent act or an act that is dangerous to human life, property or infrastructure;

**3.** To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

Copyright © 2020 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**4.** To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

Copyright © 2020 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# Massachusetts Company Identification Form

**Insurance is provided by:**

American Guarantee and Liability Insurance Company

Administrative Offices:

Zurich Towers
1299 Zurich Way
Schaumburg, Illinois  60196-7348

# Disclosure Statement



It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.



# Following Form Excess Liability Policy
**Declarations**

☒ **AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY**
☐ **AMERICAN ZURICH INSURANCE COMPANY**
☐ **ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS**

**Policy Number:**   AEC 9826955-09          **Renewal of Number:**   AEC 9826955-08

**1.** **Named Insured:**   JOHN MORIARTY & ASSOCIATES INC.          **Producer:**   ALLIANT INSURANCE SERVICES, INC.

**2.** **Mailing Address:**   3 CHURCH STREET SUITE 2
WINCHESTER, MA  01890-1804          9891 Broken Land Pkwy.
Suite 205
Columbia, MD  21046

**3.** **Policy Period:**   FROM: **10/31/2020**   TO: **10/31/2021**
at 12:01 A.M. Standard Time at the address of the Named Insured in Item **1**.

**4.** **Limits Of Insurance:**
   **A.** **$25,000,000**   **Occurrence**
   **B.** **$25,000,000**   **Other Aggregate**
   **C.** **$25,000,000**   **Products/Completed Operations Aggregate**

**5.** **Policy Premium:**   **Advance Premium**   $140,188.00
   **Policy Minimum Earned Premium**   $35,047

**6.** **Underlying Insurance:**
   **A.** **Controlling Underlying Policy:**
      Insurance Company:   XL Specialty Insurance Company
      Policy Number:   US00068515LI20A
      Policy Period:   From:   10/31/2020   To:   10/31/2021
      Limits Of Insurance:   $10,000,000   Occurrence
      $10,000,000   Other Aggregate
      $10,000,000   Products/Completed Operations Aggregate

   **B.** **Total Limits Of All Underlying Insurance, Including The Controlling Underlying Policy Which This Policy Applies Excess Of:**
      $10,000,000   Occurrence
      $10,000,000   Other Aggregate
      $10,000,000   Products/Completed Operations Aggregate

**7.** **Endorsements Attached:**   **See Attached Schedule Of Forms And Endorsements**



# Schedule of Forms and Endorsements

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 9826955-09 | 10/31/2020 | 10/31/2021 | 10/31/2020 | 47731000 | ---------- | ---------- |

**Named Insured and Mailing Address:**
JOHN MORIARTY & ASSOCIATES INC.
3 CHURCH STREET SUITE 2
WINCHESTER, MA  01890-1804

**Producer:**
ALLIANT INSURANCE SERVICES, INC.
9891 Broken Land Pkwy.
Suite 205
Columbia, MD  21046

| Form Name | Form Number | Edition Date |
|---|---|---|
| Important Notice - In Witness Clause | U-GU-319-F CW | (01/09) |
| Disclosure of Important Information Relating to Terrorism Risk Insurance Act | U-GU-630-E CW | (01/20) |
| Following Form Excess Liability Policy Declarations | U-EXS-D-100-B CW | (04/11) |
| Following Form Excess Liability Policy | U-EXS-100-C CW | (01/12) |
| Certified Act of Terrorism Retained Amount Provisions | U-EXS-279-D CW | (01/15) |
| Communicable Disease Exclusion | U-EXS-115-C CW | (04/11) |
| Contractors Limitation Endorsement Excess Wrap-Up Coverage | U-EXS-341-C CW | (05/14) |
| Amended Defense and Supplementary Payments | U-EXS-378-B CW | (04/11) |
| Casualty Business Crisis Expense Excess Coverage | U-EXS-460-A CW | (07/18) |
| Sanctions Exclusion Endorsement | U-GU-1191-A CW | (03/15) |
| Cap on Losses From Certified Acts of Terrorism | U-GU-767-B CW | (01/15) |



# Following Form
# Excess Liability
# Policy

<u>Zurich U.S.</u>

Insurance is provided by the company designated on the declarations page of this policy.

The addresses of the Zurich U.S. companies are shown below:

ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS
1299 Zurich Way
Schaumburg, Illinois 60196-1056

AMERICAN ZURICH INSURANCE COMPANY
1299 Zurich Way
Schaumburg, Illinois 60196-1056

AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY
4 World Trade Center, 150 Greenwich Street, Floor 53
New York, New York 10007

Administrative Offices of all Zurich U.S. companies are
located at 1299 Zurich Way, Schaumburg, Illinois 60196-1056

# Following Form Excess Liability Policy



There are provisions in this policy that restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured(s)" means any person(s) or organization(s) qualifying as such in the Controlling Underlying Policy shown in Item **6.A.** of the Declarations, but only to the extent and within the scope for which such "insureds" qualify for coverage in the Controlling Underlying Policy.

Words and phrases that are printed in bold-face type are defined in this policy.  These definitions are found in **SECTION VI.  DEFINITIONS** of this policy or in the specific policy provision where they appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations and in accordance with the provisions of this policy, we agree with you to provide coverage as follows:.

**Insuring Agreements**

**SECTION I.  COVERAGE**

**A.** We will pay on behalf of the insured the sums in excess of the Total Limits Of All Underlying Insurance shown in Item **6.B.** of the Declarations that the insured becomes legally obligated to pay as damages.

**B.** This insurance applies only to damages covered by the Controlling Underlying Policy as shown in Item **6.A.** of the Declarations.  Except as otherwise provided by this policy, the coverage follows the definitions, terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

**C.** Notwithstanding anything to the contrary contained in Paragraphs **A.** and **B.** above, if the Controlling Underlying Policy does not apply to damages for reasons other than exhaustion of applicable Limits of Insurance by payment of **loss**, then this policy does not apply to such damages.

**D.** The amount we will pay is limited as described in **SECTION II.  LIMITS OF INSURANCE**.

**SECTION II.  LIMITS OF INSURANCE**

**A.** The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay regardless of the number of:

   **1.** Insureds;

   **2.** Claims made or suits brought; or

   **3.** Persons or organizations making claims or bringing suits.

**B.** The Limits of Insurance of this policy will apply as follows:

   **1.** This policy applies only in excess of the Total Limits Of All Underlying Insurance shown in Item **6.B.** of the Declarations.

   **2.** If our Limits of Insurance shown in Item **4.** of the Declarations are less than the total Limits of Insurance shown in Item **4.**, the limits of our liability will be that proportion of the **loss** which our Limits of Insurance bear to the total Limits of Insurance in Item **4.** and which is in excess of the Total Limits Of All Underlying Insurance as shown in Item **6.B.** of the Declarations.

   **3.** Subject to Paragraph **B.2.** above, the Other Aggregate Limit shown in Item **4.B.** of the Declarations is the most we will pay for all **loss** to which this policy applies, except for **loss** covered under the products/completed operations hazard, that is subject to an aggregate limit provided by the Controlling Underlying Policy.  The Other Aggregate Limit applies separately and in the same manner as the aggregate limits provided by the Controlling Underlying Policy.

   **4.** Subject to Paragraph **B.2.** above, the limit shown in Item **4.C.** of the Declarations for the Products/Completed Operations Aggregate is the most we will pay for all **loss** to which this policy applies under the products/

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-EXS-100-C CW (01/12)
Page 1 of 7

completed operations hazard.

**5.** Subject to Paragraphs **B.2.**, **B.3.** and **B.4.** above, the Occurrence Limit shown in Item **4.A.** of the Declarations is the most we will pay for all **loss** arising out of any one **occurrence** to which this policy applies.

**6.** Subject to Paragraphs **B.2.**, **B.3.**, **B.4.** and **B.5.** above, if the limits of Underlying Insurance shown in Item **6.** of the Declarations are reduced or exhausted solely by payment of **loss** to which this policy applies, such insurance provided by this policy will apply in excess of the reduced limits of Underlying Insurance or, if the Total Limits Of All Underlying Insurance shown in Item **6.B.** of the Declarations are exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions, limitations and exclusions of the Controlling Underlying Policy, except for the terms, conditions, definitions, limitations and exclusions of this policy.

**7.** Any amounts we pay for **loss** reduce the Limits of Insurance shown in Item **4.** of the Declarations.

**8.** The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the Policy Period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than 12 months.   In that case, the additional period will be deemed part of the preceding period for purposes of determining the Limits of Insurance.

## SECTION III.  DEFENSE AND SUPPLEMENTARY PAYMENTS

**A.** We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

**B.** We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for payment under this policy.

**C.** If the Total Limits Of All Underlying Insurance shown in Item **6.** of the Declarations are exhausted solely by payment of **loss**, we will have the right but not the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to a payment under this policy.  We may, however, withdraw from the defense of such suit and tender the continued defense to you if our applicable Limits of Insurance stated in Item **4.** of the Declarations are exhausted by our payment of **loss**.

**D.** If we exercise our rights under Paragraphs **B.** or **C.** above, we will pay the following:

**1.** All expenses we incur;

**2.** Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on that period of time after the offer; and

**3.** All interest on that part of a judgment, to which this insurance applies, that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limits of Insurance.

When our expenses and payments as described in this paragraph are not included in the definition of **loss**, they will not reduce the Limits of Insurance.

## SECTION IV.  EXCLUSIONS

This policy does not apply to any liability, damage, **loss**, cost or expense:

## ASBESTOS

**A.** Arising out of or related in any way to:

**1.** Asbestos or which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to any injury or damage; or

**2.** Any:

**a.** Request, demand, order, statutory or regulatory requirement, direction or  determination, that any insured or others test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**b.** Claim or suit for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination than any insured or others test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos.

## POLLUTION

**B. 1.** Arising directly or indirectly out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

This exclusion does not apply to bodily injury or property damage arising out of heat, smoke or fumes from a **hostile fire** unless that **hostile fire** occurred or originated:

**a.** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**b.** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, **pollutants**.

**2.** Arising out of any:

**a.** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

**b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

## NUCLEAR

**C. 1.** With respect to which any insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

**2.** Resulting from the **hazardous properties** of **nuclear material** and with respect to which:

**a.** A person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**b.** Any insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

**3.** Any injury or **nuclear property damage** resulting from the **hazardous properties** of nuclear material, if:

**a.** The **nuclear material**:

**(1)** Is at any **nuclear facility** owned by, or operated by or on behalf of, any insured; or

**(2)** Has been discharged or dispersed therefrom;

**b.** The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any insured; or

**c.** The injury or **nuclear property damage** arises out of the furnishing by any insured of services, materials, parts or equipment in connection with the planning, construction, maintenance operation or use of any **nuclear facility** but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph **c.** applies only to **nuclear property damage** to such **nuclear facility** and any property thereat.

As used in this exclusion:

**1. Hazardous properties** include radioactive, toxic or explosive properties.

**2. Nuclear facility** means:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-EXS-100-C CW (01/12)
Page 3 of 7

    **a.** Any **nuclear reactor**;

    **b.** Any equipment or device designed or used for:

        **(1)** Separating the isotopes of uranium or plutonium,

        **(2)** Processing or utilizing **spent fuel**, or

        **(3)** Handling, processing or packaging **waste**;

    **c.** Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    **d.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**3.** **Nuclear material** means **source material**, **special nuclear material** or **by-product material**.

**4.** **Nuclear property damage** includes all forms of radioactive contamination of property.

**5.** **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**6.** **Source material**, **special nuclear material** and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**7.** **Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

**8.** **Waste** means any waste material:

    **a.** Containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and

    **b.** Resulting from the operation by any person or organization of any **nuclear facility** included under the first two Paragraphs of the definition of **nuclear facility**.

## SUBLIMITED UNDERLYING INSURANCE

**D.** Which is covered by any Underlying Insurance but is subject to a sublimit unless such sublimited coverage is specifically endorsed to this policy.

## VIOLATION OF STATUTES

**E.** Resulting from or arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**1.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**2.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**3.** The Fair Credit Reporting Act (FCRA) and any amendment or addition to such law including the Fair and Accurate Credit Transactions Act (FACTA); or

**4.** Any federal, state or local statute, ordinance, or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

## WAR

**F.** Arising, directly or indirectly, out of:

**1.** War, including undeclared or civil war;

**2.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-EXS-100-C CW (01/12)
Page 4 of 7

defending against any of these,

regardless of any other cause or event that contributes concurrently or in any sequence to injury or damage.

## SECTION V.  CONDITIONS

### A.  Appeals

In the event you or any underlying insurer elects not to appeal a judgment in excess of the amount of the Underlying Insurance, we may elect to appeal at our expense.  If we do so elect, we will be liable for the costs and additional interest accruing during this appeal.  In no event will this provision increase our liability beyond the applicable Limits of Insurance described in **SECTION II.  LIMITS OF INSURANCE** of this policy.

### B.  Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any insured will not relieve us from our obligation to pay damages covered by this policy.

In the event of bankruptcy, insolvency, refusal, or inability to pay, of any underlying insurer, the insurance afforded by this policy will not replace such Underlying Insurance, but will apply as if all the limits of any Underlying Insurance are fully available and collectible.

### C.  Cancellation

**1.**  The first Named Insured shown in Item **1.** of the Declarations may cancel this policy by mailing or delivering to us advance written notice stating when the cancellation is to take effect.

**2.**  We may cancel this policy.  If we cancel because of non-payment of premium, we will mail or deliver to the first Named Insured not less than ten (10) days advance written notice when the cancellation is to take effect.  If we cancel for any other reason, we will mail or deliver to the first Named Insured not less than ninety (90) days advance written notice stating the reason(s) for cancellation, as well as the date when the cancellation is to take effect.  Mailing notice to the first Named Insured's mailing address shown in Item 2. of the Declarations will be sufficient to prove notice.

**3.**  The Policy Period will end on the day and hour stated in the cancellation notice.

**4.**  If this policy is cancelled, the final premium will be calculated pro rata based on the time this policy was in force.

**5.**  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due the first Named Insured.  Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due the first Named Insured.

**6.**  The first Named Insured shown in Item **1.** of the Declarations will act on behalf of all other insureds with respect to the giving and receiving of notice of cancellation and the receipt of any premium refund that may become payable under this policy.

### D.  Maintenance of Underlying Insurance

During the Policy Period, you agree:

**1.**  To keep the policies making up the Total Limits Of All Underlying Insurance in Item **6.B.** of the Declarations in full force and effect;

**2.**  That the Total Limits Of All Underlying Insurance shown in Item **6.B.** of the Declarations will be maintained except for any reduction or exhaustion of aggregate limits by payment of claims or suits for **loss** covered by Underlying Insurance;

**3.**  The Underlying Insurance policies may not be cancelled or nonrenewed by you without notifying us, and you agree to notify us as soon as practicable before the cancellation or nonrenewal effective date in the event an insurance company cancels or declines to renew any Underlying Insurance policy; and

**4.**  Renewals or replacements of the Controlling Underlying Policy will not be materially changed without our agreement.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-EXS-100-C CW (01/12)
Page 5 of 7

you fully complied with these requirements.

### E.   Nonrenewal

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in Item **1.** of the Declarations written notice of the nonrenewal not less than thirty (30) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### F.   Notice of Occurrence

**1.**   You must see to it that we are notified as soon as practicable of an **occurrence** which may result in damages covered by this policy.  To the extent possible, notice will include:

   **a.**   How, when and where the **occurrence** took place;

   **b.**   The names and addresses of any injured persons and witnesses; and

   **c.**   The nature and location of any injury or damage arising out of the **occurrence**.

**2.**   Knowledge of an **occurrence** by the agent, servant or employee of yours, will not in itself constitute knowledge by the insured unless you, or any employee authorized by you to give or receive notice of an **occurrence**, claim or suit receives such notice from the agent, servant or employee.

**3.**   If a claim or suit against any insured is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

**4.**   You and any other involved insured must:

   **a.**   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

   **b.**   Authorize us to obtain records and other information;

   **c.**   Cooperate with us in the investigation, settlement or defense of the claim or suit; and

   **d.**   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**5.**   The insureds will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**6.**   Your failure to give notice of an **occurrence** to us will not invalidate coverage under this policy if the **occurrence** was inadvertently reported to another insurer.  However, you will report any such **occurrence** to us as soon as practicable once you become aware of such error.

### G.   Other Insurance

If other insurance applies to damages that are also covered by this policy, this policy will apply excess of the other insurance.  Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance.  However, this provision will not apply if the other insurance is written to be excess of this policy.

Other insurance includes any type of self-insurance or other mechanism by which an insured arranges for funding of legal liabilities.

### H.   Terms Conformed to Statute

The terms of this policy that are in conflict with the statutes, laws, ordinances or regulations in any country, jurisdiction, state or province where this policy is issued are amended to conform to such statutes, laws, ordinances or regulations.  If we are prevented by law or statute from paying on behalf of the insured, then we will, where permitted by law or statute, indemnify the insured.

### I.   Transfer of Rights of Recovery Against Others to Us

**1.**   If the insured has rights to recover all or part of any payment we have made under this insurance, those rights are transferred to us.  The insured must do nothing after the **loss** to impair them.  At our request, the insured will

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-EXS-100-C CW (01/12)
Page 6 of 7

bring suit or transfer those rights to us and help us enforce them.

However, if any insured is required to waive their rights of recovery from others by a written contract or agreement executed before a **loss**, we agree to waive our rights of recovery to the extent required by the written contract or agreement.   This waiver of rights will not be construed to be a waiver with respect to any other operations for which the insured has not waived their rights of recovery by contract.

**2.** Any amount recovered will be apportioned in the inverse order of payment of **loss** to the extent of actual payment.  The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

## J.  Unintentional Errors and Omissions

Any unintentional error or omission in the description of, or failure to describe completely, any exposure intended to be covered by this policy, will not invalidate or affect the coverage for that exposure.  However, the insured must report such error or omission to us as soon as practicable after its discovery.

## K.  When Loss is Payable

Coverage under this policy will not apply unless and until the insured or the insured's Underlying Insurance has paid or is obligated to pay the full amount of the Total Limits Of All Underlying Insurance shown in Item **6.B.** of the Declarations.

When the amount of **loss** is determined by an agreed settlement or a final judgment against an insured, we will promptly pay on behalf of the insured the amount of **loss** covered under the terms of this policy.

## SECTION VI.  DEFINITIONS

**A.  Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

**B.  Loss** means damages that the insured is legally obligated to pay after making proper deductions for all recoveries and salvage.  However,

**1.  Loss** also includes defense expenses and supplementary payments if any Underlying Insurance includes defense expenses and supplementary payments within the Limits of Insurance; or

**2.  Loss** does not include defense expenses and supplementary payments if none of the Underlying Insurance includes defense expenses and supplementary payments within the Limits of Insurance.

**C.  Occurrence** means a covered event as defined in the Controlling Underlying Policy.

**D.  Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned or reclaimed

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-EXS-100-C CW (01/12)
Page 7 of 7

# Certified Act of Terrorism Retained Amount Provisions



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 9826955-09 | 10/31/2020 | 10/31/2021 | 10/31/2020 | 47731000 | | |

**Named Insured and Mailing Address:**
JOHN MORIARTY & ASSOCIATES INC.
3 CHURCH STREET SUITE 2
WINCHESTER, MA  01890-1804

**Producer:**
ALLIANT INSURANCE SERVICES, INC.
9891 Broken Land Pkwy.
Suite 205
Columbia, MD  21046

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| CERTIFIED ACT OF TERRORISM RETAINED AMOUNT SCHEDULE |
|---|
| Each Occurrence Retained Amount: $ 12,000,000 |
| Products/Completed Operations Aggregate Retained Amount: $ 14,000,000 |
| Other Aggregate Retained Amount: $ 14,000,000 |

**Certified Act of Terrorism Retained Amount Provisions**

The following additional provisions apply to this policy as respects any liability, damage, loss, cost or expense arising, directly or indirectly, out of a **certified act of terrorism**, including any action taken in hindering or defending against an actual or expected **certified act of terrorism**, regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage:

**A.** We will pay on behalf of the insured the sums in excess of the Total Limits Of Underlying Insurance shown in Item **6.B.** of the Declarations or in excess of the **retained amount**, whichever is greater, that the insured legally becomes obligated to pay as damages.

**B.** Except as otherwise provided by this policy and by this endorsement, coverage as respects a **certified act of terrorism** follows the terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

**C.** The amount we will pay for damages is limited as described in **SECTION II. LIMITS OF INSURANCE** except that Paragraph **B.6.** is replaced with the following:

   **6.** Subject to Paragraphs **B.2.**, **B.3.**, **B.4.** and **B.5.** above, if the limits of Underlying Insurance shown in Item **6.** of the Declarations or the applicable **retained amount** are reduced or exhausted solely by payment of **loss** to which this policy applies, such insurance provided by this policy will apply in excess of the reduced limits of Underlying Insurance or **retained amount** or, if the Total Limits of All Underlying Insurance or **retained amounts** are exhausted, will apply as underlying insurance subject to the same terms, conditions, definitions, limitations and exclusions of the Controlling Underlying Policy, except for the terms, conditions, definitions, limitations and exclusions of this policy.

**D.** If the coverage of this policy applies in excess of the **retained amount**, per paragraph **A.** of this endorsement, rather than the Total Underlying Limits of Insurance shown in Item **6.B.** of the Declarations, the specific **retained amounts** applying to any **certified acts of terrorism** are as follows:

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1.  The Each Occurrence Retained Amount shown in the Schedule above is the total **retained amount** of damages for which the insured is responsible, applicable to each occurrence.

2.  The Products/Completed Operations Aggregate Retained Amount shown in the Schedule above is the total **retained amount** of damages for which the insured is responsible, applicable to all occurrences included within the products/completed operations hazard.

3.  The Other Aggregate Retained Amount shown in the Schedule above is the total **retained amount** of damages for which the insured is responsible, applicable to all occurrences except for occurrences included within the products/completed operations hazard.

**E.**  The following provision is added to **SECTION V. CONDITIONS, Notice of Occurrence**:

You must notify us immediately in writing of any claim or suit which seeks damages in an amount which is fifty (50) percent or more of the amount of the Each Occurrence Retained Amount stated in the Certified Act of Terrorism Retained Amount Schedule of this endorsement.

**F.**  As used in this endorsement, **certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism.  TRIA provides that the Secretary of Treasury shall certify an act of terrorism:

1.  To be an act of terrorism;

2.  To be a violent act or an act that is dangerous to human life, property or infrastructure;

3.  To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4.  To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

**G.**  As used in this endorsement, **retained amount** means the amount of damages for which the insured is responsible as shown in the Certified Act of Terrorism Retained Amount Schedule of this endorsement.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**Endorsement #** 02

# Communicable Disease Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 9826955-09 | 10/31/2020 | 10/31/2021 | 10/31/2020 | 47731000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

JOHN MORIARTY & ASSOCIATES INC.
3 CHURCH STREET SUITE 2
WINCHESTER, MA  01890-1804

**Producer:**

ALLIANT INSURANCE SERVICES, INC.
9891 Broken Land Pkwy.
Suite 205
Columbia, MD  21046

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This policy does not apply to any liability, damage, **loss**, cost or expense arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**1.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**2.** Testing for communicable disease;

**3.** Failure to prevent the spread of the disease; or

**4.** Failure to report the disease to authorities.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-EXS-115-C CW (04/11)
Page 1 of 1

# Contractors Limitation Endorsement Excess Wrap-Up Coverage



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 9826955-09 | 10/31/2020 | 10/31/2021 | 10/31/2020 | 47731000 | | |

**Named Insured and Mailing Address:**

JOHN MORIARTY & ASSOCIATES INC.
3 CHURCH STREET SUITE 2
WINCHESTER, MA  01890-1804

**Producer:**

ALLIANT INSURANCE SERVICES, INC.
9891 Broken Land Pkwy.
Suite 205
Columbia, MD  21046

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Following Form Excess Liability Policy**
**Straight Excess Liability Policy**

<u>**SCHEDULE**</u>

**Description of Project(s) and Location:**

" per the schedule on the GL policy "

This policy does not apply to any liability, damage, **loss**, cost or expense:

**1.** Arising out of any project insured under a joint venture, wrap-up or any consolidated insurance program unless described in the Schedule above.

This coverage is excess over any available liability insurance purchased specifically to insure the joint venture, wrap-up or consolidated insurance program and shall be limited to the amount by which the liability limits of this policy exceed the available liability limits of the joint venture, wrap up or consolidated insurance policies.

Subject to the terms, conditions and exclusions in this policy, coverage provided by this endorsement will be no broader than insurance afforded to the insured by the policies issued to specifically cover the joint venture, wrap-up or consolidated insurance program for the project(s) listed on the Schedule above.

The coverage provided by this endorsement will not inure to the benefit of any other party except the insured.

**2.** Arising out of the rendering of, or failure to render, any professional services by any insured or by any person for whose acts any insured is legally liable in the conduct of the insured's business as an architect, engineer or surveyor, including, but not limited to:

**a.** The preparation or approval or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

**b.** Supervisory, inspection, architectural or engineering services.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the **occurrence** which caused the liability, damage, **loss**, cost or expense involved the rendering of, or failure to render, any professional services by the insured or any engineer, architect or surveyor who is either employed by the insured or performing work on the insured's behalf in such capacity.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

U-EXS-341-C CW (05/14)
Page 1 of 1

**Endorsement #**   04



# Amended Defense and Supplementary Payments

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 9826955-09 | 10/31/2020 | 10/31/2021 | 10/31/2020 | 47731000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

JOHN MORIARTY & ASSOCIATES INC.
3 CHURCH STREET SUITE 2
WINCHESTER, MA  01890-1804

**Producer:**

ALLIANT INSURANCE SERVICES, INC.
9891 Broken Land Pkwy.
Suite 205
Columbia, MD  21046

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SECTION III.  DEFENSE AND SUPPLEMENTARY PAYMENTS** is deleted and replaced by the following:

**SECTION III.  DEFENSE AND SUPPLEMENTARY PAYMENTS**

**A.** We have the right and duty to assume control of the investigation and settlement of any claim, or defense of any suit against the insured for damages covered by this policy when the Total Limits Of All Underlying Insurance shown in Item **6.** of the Declarations are exhausted solely by payment of **loss** for which coverage is afforded under this policy.

**B.** In those circumstances where paragraph **A.** above applies, in addition to the applicable Limits of Insurance, we will pay our expenses and the following to the extent that they are not included in Underlying Insurance:

    **1.** Up to $2,000 for the cost of bail bonds.  We do not have to furnish these bonds;

    **2.** The cost of bonds to release attachments, but only for bond amounts within the amount of insurance available. We do not have to furnish these bonds;

    **3.** Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or suit, including actual loss of earnings because of time off from work;

    **4.** Costs taxed against the insured in the suit;

    **5.** Pre-judgment interest awarded against the insured on that part of the judgment we pay. However, if we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer; and

    **6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of the judgment that is within the applicable Limits of Insurance.

We will not investigate and settle any claim, or defend any suit after we have exhausted the applicable Limit of Insurance as shown in Item **4.** of the Declarations.

If we are prevented by law from carrying out the provisions of Section III. Paragraph **A.** above, we will pay any expense incurred with our consent.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-EXS-378-B CW (04/11)
Page 1 of 1



# Casualty Business Crisis Expense Excess Coverage

| THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. | |
|---|---|
| Policy No.   AEC 9826955-09 | Effective Date:   10/31/2020 |

This endorsement modifies insurance provided under the:

**Following Form Excess Liability Policy**

### SCHEDULE

| Casualty Business Crisis Expense Aggregate Limit: | $250,000 |
|---|---|
| **Retained Limit**:  $100,000 | $100,000   per **occurrence** |
| If an amount is not shown for the **Retained Limit** in this Schedule, the **Retained Limit** will be $300,000.<br><br>Defense costs will not erode the **Retained Limit**. | |

## I.   COVERAGE

The following Insuring Agreement is added to **SECTION I. COVERAGE**:

**Casualty Business Crisis Expense Excess Insurance**

We will pay for **casualty business crisis expense** regardless of fault arising from a **casualty business crisis** which:

**1.**   First commences during the Policy Period; and

**2.**   Is reasonably likely to involve damages covered by this policy.

Subject to the other terms and conditions of the coverage provided by this endorsement, we shall pay **casualty business crisis expense** in excess of the **retained limit** shown in the Schedule of this endorsement.  We will not be liable for **casualty business crisis expense** incurred prior to, or more than one hundred eighty (180) days after, the date notice of such **casualty business crisis** is first given to us, unless prior approval is given by us for **casualty business crisis expense** incurred more than one hundred eighty (180) days after notice of such **casualty business crisis** is first given to us.

The amount we will pay for **casualty business crisis expense** is limited as described in **SECTION II. LIMITS OF INSURANCE** of this endorsement.

Any amounts that we pay under the coverage provided by this endorsement will not obligate us in any way under any other coverage provided by this policy.

## II.   LIMITS OF INSURANCE

For the purposes of the coverage provided by this endorsement, **SECTION II. LIMITS OF INSURANCE** is replaced by the following:

**SECTION II. LIMITS OF INSURANCE**

**A.**   The limit shown as the Casualty Business Crisis Expense Aggregate Limit in the Schedule of this endorsement and the rules below describe the most we will pay regardless of the number of:

**1.**   Insureds;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-EXS-460-A CW (07/18)
Page 1 of 4

    **2.** Claims made or suits brought; or

    **3.** Persons or organizations making claims or bringing suits.

**B.** The Casualty Business Crisis Expense Aggregate Limit is the most we will pay for all **casualty business crisis expense** which first commences during the Policy Period shown in the Declarations.  This Limit is in addition to, and **casualty business crisis expense** does not reduce or exhaust, any other Limit of Insurance applicable to this policy.

## III. RETAINED LIMIT

**A.** For the purposes of the coverage provided by this endorsement, the **retained limit** shown in the Schedule of this endorsement applies.

**B.** If there is Underlying Insurance applicable to a **loss** which provides **casualty business crisis expense** insurance coverage, amounts received through such Underlying Insurance for payment of **casualty business crisis expense** insurance may be applied to reduce or exhaust the **retained limit**.

## IV. DEFENSE AND SUPPLEMENTARY PAYMENTS

For the purposes of the coverage provided by this endorsement, **SECTION III. DEFENSE AND SUPPLEMENTARY PAYMENTS** is replaced by the following:

### SECTION III. DEFENSE

We do not assume any duty to control the investigation and settlement of any claim, or defense of any suit that may arise from a covered **casualty business crisis**.

## V. EXCLUSIONS

For the purposes of the coverage provided by this endorsement, **SECTION IV. EXCLUSIONS** is replaced by the following:

### SECTION IV. EXCLUSIONS

The insurance provided by this endorsement does not apply to any **casualty business crisis** arising out of, based upon or attributable to:

### PRIOR NOTICE

**A.** Facts alleged, or to the same or related acts alleged or contained, in any crisis, claim or suit that has been reported, or in any circumstances where notice has been given under any policy of which this policy or any Underlying Insurance is a renewal or replacement.

### PENDING OR PRIOR CRISIS CLAIM OR SUIT

**B.** Any pending or prior claim or suit as of the inception date of this policy.

### COMMUNICABLE DISEASE

**C.** The actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

    **1.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

    **2.** Testing for communicable disease;

    **3.** Failure to prevent the spread of the disease; or

    **4.** Failure to report the disease to authorities.

## VI.  CONDITIONS

For the purposes of the coverage provided by this endorsement, the following Conditions are added to **SECTION V. CONDITIONS**:

### Notice of a Casualty Business Crisis

You must see to it that we are notified of a **casualty business crisis** as soon as practicable after it first commences.  Such notice shall include a description of the **casualty business crisis** and the reason it is likely to involve damages covered by this policy that are in excess of the applicable limits of Underlying Insurance and significant adverse regional or national media coverage.  Notice to us shall be given to Zurich Claim Reporting, Care Center, P.O. Box 49547, Colorado Springs, CO 80949, Phone 1-800-987-3373, Fax 1-877-962-2567, E-Mail USZ Care Center@Zurichna.com.

### Arbitration

If you and we disagree as to whether a **casualty business crisis** has occurred, both parties may, by mutual consent agree in writing to arbitration of the disagreement and the right to any reimbursement for **casualty business crisis expense**.

In this event, each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, both parties must request that selection be made by a judge of a court having jurisdiction.  Each party will:

**1.**  Pay the expenses it incurs; and

**2.**  Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the state, county or parish in which the address shown in the Declarations is located.  Local rules of law as to procedure and evidence will apply.

## VII. DEFINITIONS

For the purposes of this endorsement:

**A.  Casualty business crisis** means an event that in the good faith opinion of your **principal**, in the absence of **casualty business crisis services**, has been or may be associated with:

**1.**  Damages covered by this policy that are in excess of the applicable limits of Underlying Insurance; and

**2.**  Significant adverse regional or national media coverage.

**Casualty business crisis** shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths or injuries, burns, dismemberment, traumatic brain injury, paraplegia, or contamination of food, drink or pharmaceuticals.

For purposes of the coverage provided by this endorsement, a **casualty business crisis** will first commence when your **principal** first becomes aware of the **occurrence** and will conclude at the earliest of the time when the **casualty business crisis advisor** advises you that the crisis no longer exists or when the Casualty Business Crisis Expense Aggregate Limit has been exhausted.

**B.  Casualty business crisis advisor** means any public relations firm or crisis management firm approved by us that is hired by you to perform **casualty business crisis services** in connection with a **casualty business crisis**.  We will not unreasonably withhold our approval of such public relations firm or crisis management firm chosen by you.

**C.  Casualty business crisis expense** means amounts paid:

**1.**  To you for the reasonable and necessary:

**a.**  Fees and expenses of a **casualty business crisis advisor** in the performance for you of **casualty business crisis services** solely for a covered **casualty business crisis**; and

**b.**  Amounts for printing, advertising, mailing of materials or travel by your directors, officers, employees or agents or a **casualty business crisis advisor** solely for a **casualty business crisis**; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-EXS-460-A CW (07/18)
Page 3 of 4

**2.** To others for the following reasonable and necessary expenses resulting from such covered **casualty business crisis** provided that such expenses have been approved by us:

    **a.** Medical expenses;

    **b.** Funeral expenses;

    **c.** Psychological counseling;

    **d.** Travel expenses;

    **e.** Temporary living expenses;

    **f.** Expenses to secure the scene of a **casualty business crisis**; and

    **g.** Any other expenses pre-approved by us.

**D.** **Casualty business crisis services** means those services performed by a **casualty business crisis advisor** in advising you on minimizing potential harm to you from a covered **casualty business crisis** by maintaining or restoring public confidence in you.

**E.** **Principal** means your Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel, Risk Manager, or general partner (if you are a partnership) or sole proprietor (if you are a proprietorship).

**F.** **Retained limit** means the amount of **casualty business crisis expense** applicable to each **occurrence** for which the insured is responsible.

All other terms, conditions, provisions and exclusions of this policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

U-EXS-460-A CW (07/18)
Page 4 of 4

**Endorsement #**  05

# Sanctions Exclusion Endorsement



**Policyholder:**   JOHN MORIARTY & ASSOCIATES INC.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided. Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

**Endorsement #** 06

# Cap On Losses From Certified Acts Of Terrorism



| Insured's Name | Policy Number | Effective Date | Endorsement Number |
|---|---|---|---|
| JOHN MORIARTY & ASSOCIATES INC. | AEC 9826955-09 | 10/31/2020 | 06 |

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies your insurance.
**Following Form Excess Liability Policy**

**A. Cap on Losses From Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with provisions of the federal Terrorism Risk Insurance Act ("TRIA"), to be an act of terrorism. The Terrorism Risk Insurance Act provides that the Secretary of Treasury shall certify an act of terrorism:

**1.** To be an act of terrorism;

**2.** To be a violent act or an act that is dangerous to human life, property or infrastructure;

**3.** To have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of Title 49, United States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

**4.** To have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

No act may be certified as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or if losses resulting from the act, in the aggregate for insurance subject to TRIA, do not exceed $5,000,000.

If aggregate insured losses attributable to one or more "certified acts of terrorism" exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

**B. Application of Other Exclusions**

The terms and limitations of a terrorism exclusion or any other exclusion, or the inapplicability or omission of a terrorism exclusion or any other exclusion, do not serve to create coverage which would otherwise be excluded, limited or restricted under this policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.**

Copyright © 2015 Zurich American Insurance Company
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
U-GU-767-B CW (01/15)
Page 1 of 1

Endorsement # 07

# **Change Endorsement**



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| AEC 9826955-09 | 10/31/2020 | 10/31/2021 | 10/31/2020 | 47731000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

JOHN MORIARTY & ASSOCIATES INC.
3 CHURCH STREET SUITE 2
WINCHESTER, MA  01890-1804

**Producer:**

ALLIANT INSURANCE SERVICES, INC.
10320 Little Patuxent Pkwy
Suite 560
Columbia, MD  21044

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is hereby understood and agreed that the Broker's mailing address is amended as follows effective 10/31/2020:

10320 Little Patuxent Pkwy

Suite 560

Columbia, MD 21044

All other terms and conditions remain the same.