# EXHIBIT 31



ATTORNEYS AT LAW

**Corporate Center Three at International Plaza**
4221 W. Boy Scout Boulevard | Suite 1000
Tampa, Florida 33607-5780
P.O. Box 3239 | Tampa, Florida 33601-3239
813.223.7000 | fax 813.229.4133
www.carltonfields.com

Atlanta
Florham Park
Hartford
Los Angeles
Miami
New York
Orlando
Tallahassee
**Tampa**
Washington, DC
West Palm Beach

Heidi Hudson Raschke, Esq.
(813)229-4271 Direct Dial
hraschke@carltonfields.com

April 6, 2022

<u>**Via E-Mail and Certified Mail Return Receipt Requested**</u>
**USPS Tracking No. 9414 7266 9904 2973 9454 37**

Peter G. Hermes, Esq.
Hermes, Netburn, O'Connor & Spearing, P.C.
265 Franklin Street, 7th Floor
Winchester, Massachusetts 02110-3113
Phermes@hermesnetburn.com

RE:     **Champlain Towers South Condo Collapse**

|  |  |
|---|---|
| **Insured:** | John Moriarty & Associates of Florida, Inc. |
| **Insurer:** | Starr Indemnity & Liability Company |
| **Policy No.:** | 1000586652201 |
| **Claim No.:** | GLSIL0545582 |

Dear Mr. Hermes:

As you know, our firm is insurance coverage counsel for Starr Indemnity & Liability Company (**"Starr Indemnity"**) with respect to the above-referenced claim in which John Moriarty & Associates of Florida, Inc. (**"JMAF"**) seeks coverage under the above-referenced insurance policy (the **"Starr Practice Policy"**) for the claims against JMAF in the Champlain Towers Claims (defined below). Please send all notices, updates, correspondence, and other pertinent information regarding this matter to Steven Brodie, Andrew Daechsel, and me.

Starr Indemnity understands that Aspen Specialty Insurance Company (**"Aspen"**) – the primary and first-level excess insurer in the CCIP Tower (defined below) – is currently defending JMAF against the Champlain Towers Claims under Aspen's CCIP policies. The Starr Practice Policy has not been triggered, and Starr Indemnity has no present obligation to take a coverage position. Nonetheless, this correspondence is intended to provide Starr Indemnity's current coverage position under the Starr Practice Policy with respect to the claims against JMAF in the Champlain Towers Claims. As discussed below, pursuant to the Anti-Stacking Endorsement in the Starr Practice Policy, to the extent the Starr Practice Policy is ever implicated

Carlton Fields, P.A.
Carlton Fields, P.A. practices law in California through Carlton Fields, LLP.

April 6, 2022
Page 2

with respect to the Champlain Towers Claims, the maximum limit of insurance available will be, at most, the limits of the Starr CCIP Policy (defined below). No additional coverage would be available under the Starr Practice Policy. Starr Indemnity reserves all rights accordingly, and for additional reasons discussed below, in the event the Starr Practice Policy is ever implicated with respect to the Champlain Towers Claims. In the meantime, Starr Indemnity will continue to monitor this matter out of an abundance of caution.

## I.      THE CHAMPLAIN TOWERS CLAIMS[1]

Based on your and Patrick Ryan's correspondence dated January 21, 2022, and March 10, 2022, we understand that JMAF seeks coverage for the claims against it in the lawsuits identified below pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County (collectively, the **"Champlain Towers Lawsuits"**).

1. *In re: Champlain Towers South Collapse Litigation* (Case No. 2021-015089-CA-01) (the **"Main Champlain Towers Lawsuit"**)

2. *Valentina Arango Gomez, as Personal Representative of the Estate of Catalina Gomez Ramirez* (Case No. 2021-020530-CA-01)

3. *Vivian Mora Duenas and Cristina Mora Bonfante, as Co-Personal Representatives of the Estate of Juan Alberto Mora, Jr.* (Case No. 2021-020950-CA-01)

4. *Vivian Mora Duenas and Cristina Mora Bonfante, as Co-Personal Representatives of the Estate of Juan Alberto Mora, Sr.* (Case No. 2021-020877-CA-01)

5. *Sergio Barth Tobar and Juliana Gomez, as Co-Personal Representatives of the Estate of Valeria Barth Gomez* (Case No. 2021-022374-CA-01)

6. *Sergio Barth Tobar, as Personal Representatives of the Estate of Luis Fernando Barth* (Case No. 2021-027161-CA-01)

7. *Maximiliano Lucero, as Personal Representative of the Estates of Fabian Alberto Nunez and Sofia Galfrascoli Nunez* (Case No. 2021-026638-CA-01)

8. *Adriana LaFont, as Personal Representative of the Estate of Manuel Victor LaFont, Jr.* (Case No. 2021-025137-CA-01)

9. *Abraham Benhayoun, as Personal Representative of the Estate of Cristina Elvira Betarte* (Case No. 2021-017562-CA-01)

10. *Abraham Benhayoun, as Personal Representative of the Estate of Leon Oliwkowicz Paitnika* (Case No. 2021-017558-CA-01)

---

[1] Nothing contained in this letter is intended to suggest that the allegations in the Champlain Towers Claims have any legal or factual merit.

April 6, 2022
Page 3

11. *Enrique Arango, as Personal Representative of the Estate of S.C.* (Case No. 2021-018527-CA-01)

12. *Josefina Henriquez, as Personal Representative of the Estate of Ana Isabel Ortiz* (Case No. 2021-019164-CA-01)

13. *Erika Giganti, as Personal Representative for the Estate of Francis Rosa Fernandez* (Case No. 2021-016855-CA-01)

14. *Sergio Lozano, as the Personal Representative for the Estates of Antonio and Gladys Lozano* (Case No. 2021-016856-CA-01)

15. *Juana Villalba Rojas, as Personal Representative of the Estate of Leidy Vanessa Luna Villalba* (Case No. 2021-17238-CA-01)

16. *Universal Property & Casualty Insurance Company a/s/o Max Friedman and Ellen Friedman, et al.* (Case No. 2022-001944-CA-01)

17. *Konstantinos Giannitsopoulos and Fatima Baghat Giannitsopoulos, as Co-Personal Representatives of the Estate of Andreas Konstantinos Giannitsoploulos* (Case No. 2022-003172-CA-01)

The Champlain Towers Lawsuits are brought by alleged victims (and/or their representatives) of the June 24, 2021 collapse of the Champlain Towers South condominium building located at 8777 Collins Avenue, Surfside, Florida, as well as by a purported subrogee of certain alleged victims. The collapse allegedly resulted in extensive damage to property and bodily injuries, including 98 deaths. It is our understanding that the Main Champlain Towers Lawsuit is currently proceeding while lawsuits 2-17 above (the **"Other Champlain Towers Lawsuits"**) are currently stayed. If the stay as to any of the Other Champlain Towers Lawsuits is lifted, or if there are any other notable developments with respect to any of the Champlain Towers Claims (defined below), please let us know immediately.

While the cause of the collapse has not yet been determined, the Champlain Towers Lawsuits generally allege that the construction of a condominium building next to Champlain Towers South known as "Eighty-Seven Park" compromised the structure of Champlain Towers South and contributed to its collapse. The Champlain Towers Lawsuits further allege that JMAF was the general contractor for the construction of Eighty-Seven Park.

The Main Champlain Towers Lawsuit is a putative class action. According to the Third Amended Complaint in the Main Champlain Towers Lawsuit, the named plaintiffs seek to certify the following classes/subclasses:

- **The Liability Class:** All persons and entities located at, residing at, and/or owning units at the Champlain Towers South condominium building at the time of Champlain Towers South's collapse on June 24, 2021.

- **The Personal Injury and Wrongful Death Subclass:** All persons who suffered personal injuries as a result of the collapse of the Champlain Towers South

April 6, 2022
Page 4

condominium building on June 24, 2021, and the personal representatives, survivors, and beneficiaries of the estates of all persons killed as a result of the collapse.

- **The Non-Owner Personal Injury and Wrongful Death Subclass:** All persons who suffered personal injuries as a result of the collapse of the Champlain Towers South condominium building on June 24, 2021, and the personal representatives, survivors, and beneficiaries of the estates of all persons killed as a result of the collapse who held no legal ownership interest in any condominium located in the Champlain Towers South condominium building.

- **The Economic Loss and Property Damage Subclass:** All persons and entities located at, residing at, and/or owning units at the Champlain Towers South condominium building at the time of the Champlain Towers South's collapse on June 24, 2021, and that lost real property and/or personal property as a result of the damage to the structure or units at Champlain Towers South and the resulting collapse on June 24, 2021.

The Third Amended Complaint in the Main Champlain Towers Lawsuit asserts counts against JMAF for Negligence (Count III) and Strict Liability (Count IV) and seeks to recover damages, attorneys' fees and costs, pre- and post-judgment interest, and "any further and different relief as this case may require or as determined by th[e] Court to be just, equitable, and proper under the circumstances." Similar causes of action are asserted and similar relief is requested against JMAF in the Other Champlain Towers Lawsuits.

Additionally, in the Main Champlain Towers Lawsuit, co-defendant Champlain Towers South Condominium Association, Inc. (the **"Champlain Association"**) has asserted cross-claims against JMAF and other defendants. The Champlain Association's cross-claims against JMAF are for Negligence (Count X) and Strict Liability (Count XI), and seek to recover compensatory damages (including attorneys' fees expended in defending third party claims), interest, costs, and such relief as the Court deem just and proper.

You also forwarded to Starr Indemnity a purported subrogation demand letter dated December 7, 2021, from St. Johns Insurance Company, Inc. (**"St. Johns"**) to JMAF (the **"St. Johns Subrogation Demand"**). The St. Johns Subrogation Demand and the Champlain Towers Lawsuits are collectively referred to herein as the **"Champlain Towers Claims."** Based on the St. Johns Subrogation Demand, it appears that St. Johns claims to have paid property damage losses allegedly sustained by certain of its purported insureds in connection with the Champlain Towers South collapse. In the St. Johns Subrogation Demand, St. Johns alleges that JMAF provided "general contracting services for the construction project at 'Eighty-Seven Park,' which may be contributed to the collapse." St. Johns further asserts that it is a subrogee of the aforementioned individuals and demands that JMAF pay St. Johns the amount it allegedly paid to the individuals for their alleged property damage losses. Starr Indemnity understands that, at the request of JMAF, Aspen and/or JMAF have rejected the St. Johns Subrogation Demand.

April 6, 2022
Page 5

If there are any other lawsuits or claims for which JMAF seeks coverage under the Starr Practice Policy, please let us know immediately.

## II.   INSURANCE POLICIES

### A.   CCIP Tower

JMAF was issued a tower of insurance policies in a Contractor Controlled Insurance Program (**"CCIP"**) for the Eighty-Seven Park project that is comprised of at least $101 million in limits (the **"CCIP Tower"**). Starr Indemnity understands that Aspen – the primary and first-level excess insurer in the CCIP Tower – is currently providing a defense to JMAF for the Champlain Towers Claims under Aspen's CCIP policies.

### B.   2020-2021 Practice Tower

John Moriarty & Associates, Inc. (**"JMA"**) was issued a tower of commercial general liability insurance for the Policy Period[2] from October 31, 2020 to October 31, 2021 (the **"2020-2021 Practice Tower"**). The Starr Practice Policy is the third-level excess policy in the 2020-2021 Practice Tower. The Starr Practice Policy has limits of liability of $25,000,000 Each Occurrence, $25,000,000 Other Aggregate(s), Where Applicable, and $25,000,000 Products-Completed Operations Aggregate. The limits of liability for the Starr Practice Policy apply in excess of the "Underlying Insurance" in the 2020-2021 Practice Tower, which includes the following:

- A primary general liability insurance policy (no. 11PKG8931805) issued by Arch Insurance Company (**"Arch"**) with limits of liability of $2 million any one occurrence, $4 million Products/Completed Operations Aggregate, and $4 million General Aggregate (other than Products/Completed Operations), as well as a deductible of $500,000 each occurrence which is included within and is not in addition to the limits of insurance (the **"Arch Practice Policy"**).

- A first-level excess liability insurance policy (no. US00068515LI20A) issued by XL Specialty Insurance Company (**"XL"**) with limits of liability of $10 million Each Occurrence, $10 million General Aggregate, and $10 million Products-Completed Operations Aggregate (the **"XL Practice Policy"**).

- A second-level excess liability insurance policy (no. AEC 9826955-09) issued by American Guarantee Liability Insurance Company (**"American Guarantee"**) with limits of liability of $25 million Each Occurrence, $25 million Other

---

[2] Unless indicated otherwise, capitalized terms used herein shall have the meanings ascribed to them in the pertinent sections of the Starr, Arch, XL, and/or American Guarantee Practice Policies. This letter discusses certain terms and conditions from the Starr, Arch, XL, and American Guarantee Practice Policies. Please refer to each Policy for its complete terms and conditions. This letter does not modify any of the terms and conditions of the Starr, Arch, XL, or American Guarantee Practice Policies, all of which are incorporated by reference.

Aggregate, and $25 million Products-Completed Operations Aggregate (the **"American Guarantee Practice Policy"**).

### III.   COVERAGE ANALYSIS

####   A.   Following-Form Coverage Under The Starr Practice Policy

Section I. Coverage in the Excess Liability Policy Form (XS 100 (10/08)) in the Starr Practice Policy states, in part:

**A.** We will pay on behalf of the Insured, the "Ultimate Net Loss" in excess of the "Underlying Insurance" as shown in **ITEM 5.** of the Declarations, that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies and that takes place in the Coverage Territory. Except for the terms, definitions, conditions and exclusions of this Policy, the coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy(ies) shown in **ITEM 5.A.** of the Declarations.

**B.** Regardless of any other warranties, terms, conditions, exclusions or limitations of this Policy, if any applicable Underlying Insurance Policy(ies) does not cover "Ultimate Net Loss" for reasons other than exhaustion of its limit of liability by payment of claims or suits, then this Policy will not cover such "Ultimate Net Loss".

**C.** The amount we will pay for the "Ultimate Net Loss" is limited as described in **SECTION II. LIMITS OF INSURANCE.**

Section III in the Excess Liability Policy Form (XS 100 (10/08)) in the Starr Practice Policy includes the following definitions:

**A.** "Ultimate Net Loss"

"Ultimate Net Loss" means the total sum, after reduction for all recoveries including other valid and collectible insurance, excepting only the "Underlying Insurance" scheduled under **ITEM 5.** of the Declarations, actually paid or payable due to a claim or suit for which you or an Insured are liable either by a settlement to which we agreed or a final judgment.

The term "Ultimate Net Loss" shall also include defense costs when such defense costs are included within the limits of insurance of any applicable "Underlying Insurance".

**B.** "Underlying Insurance"

"Underlying Insurance" means the Policy(ies) and/or self-insured retention identified in ITEM 5. of the Declarations. "Underlying Insurance" shall include:

**1.** The First Underlying Insurance Policy(ies) scheduled in **ITEM 5.A.** of the Declarations;

**2.** Any Additional Underlying Insurance Policy(ies) scheduled in **ITEM 5.B.** of the Declarations; and

**3.** Any renewal or replacement of such Policy(ies).

The Arch, XL, and American Guarantee Practice Policies are the applicable First Underlying Insurance Policy(ies). *See* Starr Practice Policy, Excess Liability Policy Schedule of Underlying Insurance (XS 102 (10/08)). Accordingly, except as noted in Section I. Coverage, the Starr Practice Policy follows the terms, definitions, conditions and exclusions of these policies.

### B.        JMAF Is An Insured Under The Starr Practice Policy

Page 3 of the Excess Liability Policy Form (XS 100 (10/08)) in the Starr Practice Policy defines Insured as follows:

The word Insured means the Named Insured and any person or organization qualifying as an Insured in the First Underlying Insurance Policy(ies), but only to the extent to which such person(s) or organization(s) qualify as an Insured in the First Underlying Insurance Policy(ies) at the inception date of this Policy. Newly acquired or formed organizations must comply with **SECTION IV. CONDITIONS, D. Changes** in order to qualify for coverage.

The Broad Form Named Insured – Designated Endorsement (00 GL0472 00 06 14), as modified by Endorsement No. 003, in the Arch Practice Policy adds JMAF as a Named Insured under the Arch Practice Policy. Therefore, JMAF is an Insured under the Starr Practice Policy.

### C.        Any Coverage Provided By The Starr Practice Policy Is In Excess of The CCIP Tower And The Underlying 2020-2021 Practice Tower Policies

Section IV.M, When "Ultimate Net Loss" is Payable, in the Excess Liability Policy Form (XS 100 (10/08)) in the Starr Practice Policy states:

Coverage under this Policy will not apply unless and until the Insured or the Insured's "Underlying Insurance" has paid or is obligated to pay the full amount of the limits of the "Underlying Insurance" scheduled in **ITEM 5.** of the Declarations. If other insurance applies, coverage under

this Policy will not apply until the other insurance has paid or is obligated to pay the full amount of its limit of insurance.

When the "Ultimate Net Loss" is determined, we will pay on behalf of the Insured the amount of "Ultimate Net Loss" to which this insurance applies.

The Wrap-Up Exclusion With Limited Exception for Excess Coverage Endorsement (00 GL0540 00 02 11) in the Arch Practice Policy states:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of either your ongoing operations or operations included in the "products-completed operations hazard" at or from any project for which a "wrap-up insurance program" in which you have been enrolled, except as follows:

This insurance will be excess for the conduct of your business in a construction project which is the subject of a "wrap-up insurance program" in which you are or were a participant.

However, this coverage is contingent upon all of the following conditions:

1. The limits of the "wrap up insurance program" at its inception are at least:

a. $50,000,000 Each Occurrence;

b. $50,000,000 General Aggregate; and

c. $50,000,000 Product-Completed Operations Aggregate; and

The above Limits of Insurance are minimal limits. If the actual Limits of Insurance are greater, this policy is excess over the greater limits; and

2. The Limits of Insurance of the "wrap-up insurance program" have not been reduced or exhausted by any cause other than the payment of covered damages only.

Failure of any of the conditions listed in 1. or 2. above will not invalidate this insurance. However in the event of any such failure, or if the insurance for the "wrap-up insurance program" is not valid or collectible for any reason, this insurance shall only apply as if the Limits of Insurance of the "wrap up insurance program" were in full effect. You are responsible for the payment of such amounts equal to the Limits of Insurance, and the satisfaction of any deductible or retention for the "wrap-up insurance program" before this insurance becomes applicable.

April 6, 2022
Page 9

Limits of Insurance provided by this policy are excess of the total limits of the "wrap-up insurance program" but no less than the Limits of Liability shown in Item (1) above, or the remaining available limits of insurance, if any, for the "wrap-up insurance program" if they have been reduced or exhausted by the payment of covered damages. However, under no circumstances will our Limits of Insurance exceed those listed in the Declarations of this policy.

The coverage provided by this insurance is solely for the benefit of you alone and will not inure to the benefit of any other party.

When this coverage applies as excess, we will have the right, but not the duty, to defend the insured against any "suit".

"Wrap-up insurance program" means an insurance program, whether primary or excess, that:

1. requires some or all of the contractors working on the project to participate;

2. is purchased by you or is purchased for you by the owner of the project or by another contractor; and

3. is limited to a specific construction project, joint venture, or all work for another contractor under a controlled insurance program.

The preamble of the Commercial General Liability Coverage Form (CG 00 01 04 13) in the Arch Practice Policy states, "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." As noted, JMAF is a Named Insured under the Arch Practice Policy and, therefore, "you" as used in the Arch Practice Policy includes JMAF.

JMAF is enrolled in the CCIP Tower, which is a "wrap-up insurance program" for the Eighty-Seven Park construction project. The "bodily injury" and "property damage" alleged in the Champlain Towers Claims is alleged to arise out of operations included in the "products-completed operations hazard" at the Eighty-Seven Park project. *See* Arch Practice Policy, Commercial General Liability Coverage Form (CG 00 01 04 13) at 15 (defining "products-completed operations hazard").

Therefore, any coverage available to JMAF for the Champlain Towers Claims under the Starr Practice Policy is in excess of the limits of the CCIP Tower as well as the "Underlying Insurance" in the 2020-2021 Practice Tower, and the Starr Practice Policy is not implicated unless all of the aforementioned policies are properly and completely exhausted.

April 6, 2022
Page 10

     **D.**     **If The Starr Practice Policy Is Implicated, There Will Be No Coverage Pursuant To The Anti-Stacking Endorsement**

The Anti-Stacking Endorsement (XS 107 (04/11)) in the Starr Practice Policy states:

> If this insurance and any other insurance issued to the Insured by the Company or any of its affiliated companies shall apply to the same Claim or Suit, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy. This condition does not apply to any other insurance issued by the Company or any of its affiliated companies specifically to apply as excess insurance of over this policy.

Page 1 of the Excess Liability Policy Form (XS 100 (10/08)) in the Starr Practice Policy defines "the Company" as Starr Indemnity. Starr Surplus Lines Insurance Company (**"Starr Surplus"**) is an affiliated company of Starr Indemnity.

Starr Surplus issued to JMAF insurance policy no. 1000015609 for the Policy Period from September 1, 2017, to April 1, 2020 (the **"Starr CCIP Policy"**). The Starr CCIP Policy is the fourth-level excess policy in the CCIP Tower. The Starr CCIP Policy has limits of liability of $25,000,000 Each Occurrence, $25,000,000 Other Aggregate(s), Where Applicable, and $25,000,000 Products-Completed Operations Aggregate. These limits of liability apply in excess of the "Underlying Insurance" (as that term is defined in the Starr CCIP Policy) in the CCIP Tower.

As discussed above, the only way for the Starr Practice Policy to be implicated with respect to the Champlain Towers Claims is if the policies in the CCIP Tower, including the Starr CCIP Policy, apply to those Lawsuits and are properly and completely exhausted (among other requirements). In other words, for the Starr Practice Policy to apply to the Champlain Towers Claims, the Starr CCIP Policy will also need to apply to the Champlain Towers Claims. However, pursuant to the Anti-Stacking Endorsement, to the extent the Starr CCIP Policy and the Starr Practice Policy are ever implicated with respect to the Champlain Towers Claims, the maximum limit of insurance available will be, at most, the "highest applicable limit of insurance available under any one policy." Because the Starr CCIP Policy and the Starr Practice Policy each have limits of $25,000,000 Each Occurrence, $25,000,000 Other Aggregate(s), Where Applicable, and $25,000,000 Products-Completed Operations Aggregate, if the Starr CCIP Policy limit is exhausted, no additional coverage would be available under the Starr Practice Policy. Starr Indemnity reserves all rights accordingly in the event the Starr Practice Policy is ever implicated.

     **E.**     **Additional Issues**

Although the foregoing is dispositive of coverage for the Champlain Towers Claims under the Starr Practice Policy, please be advised that the following additional policy provisions and issues may also serve to limit or preclude coverage in this matter.

April 6, 2022
Page 11

## 1.      Other Insurance

The Starr Practice Policy contains an Other Insurance provision set forth in the Other Insurance – Primary and Noncontributory for Additional Insured Amendatory Endorsement (XS 373 (0219)). Please let us know immediately if any other insurance and/or other potential sources of defense or indemnification are available to JMAF and promptly seek defense/indemnification from them. Starr Indemnity reserves all rights to limit or disclaim coverage under the Starr Practice Policy pursuant to the Other Insurance provision in the Starr Practice Policy and/or any Other Insurance or similar provisions contained in any of the First Underlying Insurance Policies to the extent applicable to the Starr Practice Policy.

## 2.      Notification of Accidents or Occurrences

Section IV.H, Notification of Accidents or Occurrences, in the Excess Liability Policy Form (XS 100 (10/08)) in the Starr Practice Policy states:

**1.** You or an Insured must see to it that we are notified as soon as practicable of an accident, occurrence or wrongful act which is reasonably likely to result in a claim or suit to which this insurance may apply.

To the extent possible, notice will include:

**a.** How, when and where the accident, occurrence or wrongful act took place;

**b.** The names and addresses of any injured persons and witnesses;

**c.** The nature and location of any loss, injury or damage arising out of the accident, occurrence or wrongful act.

**2**. If a claim is made or a suit is brought against an Insured that is reasonably likely to involve this Policy, you or an Insured must notify us in writing as soon as practicable.

**3.** You and an Insured must:

**a.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;.

**b.** Authorize us to obtain records and other information;

**c.** Cooperate with us in the investigation, settlement or defense of the claim or suit; and

**d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of loss or damage to which this insurance may also apply.

April 6, 2022
Page 12

**4.** No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Starr Indemnity reserves all rights to limit or disclaim coverage under the Starr Practice Policy based on any non-compliance with any of the foregoing provisions and/or any similar provisions (including any duties in the event of loss) contained in any of the First Underlying Insurance Policies to the extent applicable to the Starr Practice Policy.

### 3.    Intentional Failure To Disclose All Hazards Existing At Inception Of Starr Practice Policy

Section IV.L, Unintentional Errors or Omissions, in the Excess Liability Policy Form (XS 100 (10/08)) in the Starr Practice Policy states, "Your failure to disclose all hazards existing as of the inception date of this Policy shall not prejudice you with respect to the coverage afforded by this Policy provided such failure or any omission is not intentional." Starr Indemnity reserves all rights to limit or disclaim coverage under the Starr Practice Policy to the extent JMA intentionally failed to disclose all hazards existing as of the inception date of the Starr Practice Policy.

### 4.    Additional Reservations Of Rights On Grounds Raised By Underlying Insurers

As noted, except for the terms, definitions, conditions and exclusions of the Starr Practice Policy, the coverage provided by the Starr Practice Policy shall follow the terms, definitions, conditions and exclusions of the Arch, XL, and American Guarantee Practice Policies. *See* Starr Practice Policy, Excess Liability Policy Form § I, Excess Liability Policy Schedule of Underlying Insurance (XS 102 (10/08)). Furthermore, if any of the Arch, XL, or American Guarantee Practice Policies do not cover "Ultimate Net Loss" for reasons other than exhaustion of their limits of liability by payment of claims or suits, then the Starr Practice Policy will not cover such "Ultimate Net Loss". *See id.*

Thus, Starr Indemnity reserves the right to deny or limit coverage based on any reason that Arch, XL, and/or American Guarantee has asserted, or in the future asserts, to deny or limit coverage under any of their respective Practice Policies, including the following:

1. Item 1 in the Contractors Limitation Endorsement Excess Wrap-Up Coverage Endorsement (U-EXS-341-C CW (05/14)) in the American Guarantee Practice Policy excludes from coverage all liability, damage, loss, cost or expense that arises out of any project that is insured under a wrap up, unless described in the schedule. The referenced schedule provides "per the schedule on the GL policy". There may be no coverage for the Champlain Towers Claims or any liability arising out of the Eighty-Seven Park project to the extent that the project was not named or included "per the schedule of the GL policy". To the extent that the Eighty-Seven Park project was included in "the schedule of the GL policy," any coverage available to JMAF for the Champlain Towers Claims under the Starr Practice Policy is in excess of the limits of the CCIP Tower as well as the

"Underlying Insurance" in the 2020-2021 Practice Tower, and the Starr Practice Policy is not implicated unless all of the aforementioned policies are properly exhausted.

2.  Item 1 in the Contractors Limitation Endorsement Excess Wrap-Up Coverage Endorsement (U-EXS-341-C CW (05/14)) in the American Guarantee Practice Policy provides that "coverage provided by [the] endorsement will be no broader than insurance afforded to the insured by the policies issued to specifically cover the joint venture, wrap-up or consolidated insurance program for the project(s) listed on the Schedule above." Accordingly, Starr Indemnity reserves the right to deny or limit coverage based on any reason that any insurer in the CCIP Tower has asserted, or in the future asserts, to deny or limit coverage.

3.  To the extent that any alleged "property damage," "bodily injury", or "occurrence" (as those terms are defined in the Arch and/or XL Practice Policies) took place, is deemed to have taken place, and/or was known prior to the Policy Period for the Starr Practice Policy, there may be limited or no coverage. To the extent that JMAF may have coverage for any "property damage" that took place prior to inception of the Starr Practice Policy, JMAF should place those insurance carriers on formal notice of the allegations of pre-Policy Period "property damage" in the Champlain Towers Claims. *See, e.g.*, Main Champlain Towers Lawsuit, Third Amended Complaint ¶ 134.

4.  Coverage may be limited or barred by the Expected or Intended Injury Exclusion set forth in the Bodily Injury or Property Damage Expected or Intended Endorsement (00 GL0599 00 04 10) in the Arch Practice Policy.

5.  To the extent that any "bodily injury" and/or "property damage" was not caused by an "occurrence" as that term is defined in the Arch and/or XL Practice Policies, there may be limited or no coverage.

6.  To the extent that any of the Champlain Towers Claims do not seek damages that JMAF is legally obligated to pay, there may be limited or no coverage.

7.  To the extent JMAF knew, prior to the Policy Period of the Starr Practice Policy, that "bodily injury" or "property damage" had occurred, in whole or in part, or had given notice of any related claim to any insurer, there may be limited or no coverage.

8.  Any obligation to provide coverage to JMAF is limited by the applicable limits of the Starr Practice Policy. In no event is there any coverage for, or other requirement to pay, any amount in excess of the limits of liability of the Starr Practice Policy.

9.  To the extent any of the plaintiffs/cross-claimant in the Champlain Towers Claims seek to recover for injuries or damages that are non-fortuitous, in progress, known or uninsurable or for which insurance is precluded by public policy, the known

April 6, 2022
Page 14

loss doctrine, the loss-in progress doctrine, or the moral hazard doctrine, there may be limited or no coverage.

For further discussion regarding these and other coverage issues, please see the September 9, 2021 and January 13, 2022 letters from Gallagher Bassett (on behalf of Arch) to Peter Hermes, the December 24, 2021 letter from American Guarantee to Patrick Ryan, and the January 11, 2022 letter from XL to Peter Hermes.

Starr Indemnity further reserves the right to deny or limit coverage based on other provisions in the Arch, XL, and/or American Guarantee Practice Policies to the extent they are applicable, including Item 2 in the Contractors Limitation Endorsement Excess Wrap-Up Coverage Endorsement (U-EXS-341-C CW (05/14)) in the American Guarantee Practice Policy, and the Modified Exclusion – Contractors –Professional Liability Endorsement (00 ML0207 00 11 03) in the Arch Practice Policy.

## IV.   **REQUESTS FOR INFORMATION**

Notwithstanding the coverage issues discussed above, Starr Indemnity will continue to monitor this matter out of an abundance of caution. To assist Starr Indemnity in doing so, please provide the following information as soon as possible and on an ongoing basis as new responsive information arises:

1. The coverage position(s) of any insurer that issued any policy under which JMAF has provided notice of any lawsuit or claim in connection with the Champlain Towers South building collapse.

2. Any information that you share with other insurers regarding this matter.

3. Any discussions and/or evaluations of litigation strategy, potential liability, potential exposure, and/or settlement value in connection with any of the Champlain Towers Claims.

## V.   **CONCLUSION**

If you have any additional information that you believe may be relevant to Starr Indemnity's coverage position, please forward such information to my attention immediately. Also, if JMAF disagrees with any aspect of Starr Indemnity's coverage position, please identify the specific issues of disagreement and JMAF's basis for the disagreement in writing to my attention as soon as possible.

Starr Indemnity reserves all of its rights, remedies, and defenses under the Starr Practice Policy and applicable law. Starr Indemnity reserves the right to modify or supplement its coverage position at any time. Starr Indemnity does not intend to waive any of its policy or coverage defenses, nor shall Starr Indemnity be estopped from asserting applicable policy or coverage defenses. Nothing in this letter, and no actions taken by Starr Indemnity, affiliated insurers, or their representatives in connection with this matter, shall be construed as a waiver of any right, remedy, or defense available to Starr Indemnity under the Starr Practice Policy, any other insurance policies, or applicable law.

April 6, 2022
Page 15


Should you have any questions or wish to discuss this matter further, please do not hesitate to contact me.

Sincerely,

*/s/ Heidi Hudson Raschke*

Heidi Hudson Raschke

HHR/ldp


cc (via email):       Kevin O'Connor (koconnor@hermesnetburn.com)
                      Patrick Ryan (pryan@hermesnetburn.com)
                      Matt Fusco (mfusco@alliant.com)
                      Steven J. Brodie (sbrodie@carltonfields.com)
                      Andrew K. Daechsel (akdaechsel@carltonfields.com)